**CASE NO. 25-8000**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CUSTODIA BANK, INC.,

Plaintiff-Appellant,

v.

BOARD OF GOVERNORS OF THE

FEDERAL RESERVE SYSTEM, ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court for the District of Wyoming
The Honorable Scott W. Skavdahl, District Judge
Civil No. 1:22-CV-00125-SWS

**BRIEF OF THE STATE OF WYOMING,**
***AMICUS CURIAE* SUPPORTING REHEARING *EN BANC***

For Appellee State of Wyoming:

Keith Kautz
Wyoming Attorney General

Mackenzie Williams
Deputy Attorney General

James Peters
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-8662
keith.kautz@wyo.gov
mackenzie.williams@wyo.gov
james.peters@wyo.gov

# TABLE OF CONTENTS

Table of Authorities ......................................................................... ii

Statement of Interest ........................................................................1

Argument Summary............................................................................2

Argument .........................................................................................3

    I.    En banc review is necessary to maintain the uniformity of this Court's decisions. ..............................................................3

        A.    *Weiser* and *Custodia* interpret the same Act with irreconcilable frameworks. ......................................................3

        B.    Custodia's Treatment of "shall" cannot be reconciled with *Weiser*'s DIDMCA analysis. ......................................................5

        C.    Declining *en banc* review will not avoid future conflicts..........7

    II.    Constitutional avoidance supports an interpretation restricting the reserve bank's discretion. ...............................................7

    III.    By allowing unreviewable discretion, the *Custodia* panel allows unchecked discrimination......................................................10

Conclusion ....................................................................................11

Certificate of Compliance.............................................................13

Certificate of Service ....................................................................14

i

## TABLE OF AUTHORITIES

**Cases**

*Bradford v. U.S. Dep't of Labor*,
101 F.4th 707 (10th Cir. 2024) ...........................................................9

*Buckley v. Valeo*,
424 U.S. 1 (1976)........................................................................7, 8

*Custodia Bank v. Fed. Rsrv. Bd. of Governors*,
157 F.4th 1235 (10th Cir. 2025) ................................. 4, 5, 6, 7, 8, 9, 10

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ...........................................................5

*Fourth Corner Credit Union v. Fed. Reserve Bank of Kan. City*,
861 F.3d 1052 (10th Cir. 2017) .......................................................6, 8

*Interstate Commerce Comm'n v. Cincinnati N.O. & T.P.R. Co.*,
167 U.S. 479 (1897)........................................................................9

*Lucia v. SEC*,
585 U.S. 237 (2018)........................................................................7

*Nat'l Archives and Records Admin. v. Favish*,
541 U.S. 157 (2004)........................................................................9

*National Ass'n of Indus. Bankers v. Weiser*,
159 F.4th 694 (10th Cir. 2025) ................................. 2, 3, 4, 5, 6, 7, 10

**Statutes**

12 U.S.C. § 1831d .......................................................... 3, 4, 5, 6

12 U.S.C. § 248a .......................................................... 3, 4, 5, 6, 8

12 U.S.C. § 248c ...........................................................................9

12 U.S.C. § 304 ...........................................................................8

12 U.S.C. § 305 ...........................................................................8

Wyo. Stat. Ann. § 13-12-105 ................................................................11

Wyo. Stat. Ann. § 13-12-106 ................................................................11

Wyo. Stat. Ann. § 13-12-110 ................................................................11

Wyo. Stat. Ann. § 13-12-115 ................................................................11

Wyo. Stat. Ann. § 13-12-119 ................................................................11

Wyo. Stat. Ann. § 9-1-603 ....................................................................1

**Rules**

Fed. R. App. P. 29 ................................................................................1

**Other Authorities**

2019 Wyo. Sess. Laws ..........................................................................11

*James M. Inhofe Nat'l Defens Auth. Act for Fiscal Year 2023*, Pub. L. 117-
    263, 136 Stat. 2395 (2022)..............................................................9

*National Ass'n of Indus. Bankers v. Weiser*,
    *Amicus Br. of the State of Utah and Eleven Other States in Support of
    Appellees and Affirmance*, 2024 WL 4929315 (2024) .......................10

U.S. Const. art. 2, § 2 ...........................................................................7

## STATEMENT OF INTEREST

Amicus State of Wyoming created the Special Purpose Depository Institution (SPDI) bank charter, granted such a charter to Appellant Custodia Bank, Inc., and oversees SPDIs such as Custodia. The State's interest in this matter is to ensure eligible SPDIs can obtain master accounts without unfettered ability for a Reserve bank to deny a master account application. Wyoming's interest extends beyond Custodia's master account application in this case. The Custodia panel decision permits Reserve Banks to exclude state-chartered institutions from obtaining a master account with no judicial review, effectively nullifying state chartering authority for any disfavored institution. This case implicates not merely one Wyoming-chartered institution, but every state-chartered institution if federal reserve banks have unfettered authority to deny master account applications.

As a state, Wyoming is entitled to "file an amicus brief without the consent of the parties or leave of the court." Fed. R. App. P. 29(b)(2). Wyoming Statute § 9-1-603(a)(iv) authorizes the Wyoming Attorney General to file this amicus brief. That statute provides that he may "[r]epresent the state in suits, actions or claims in which the state is interested in . . . any United States court[.]" *Id.*

1

**ARGUMENT SUMMARY**

This panel's decision construed a provision of the Deregulation and Monetary Control Act of 1980 ("DIDMCA") commanding that Federal Reserve services "shall be available" and concluded that language does not entitle a state charter to a master account. Moreover, the panel determined that granting a master account is discretionary and effectively insulated Federal Reserve Bank decisions from judicial review.

Ten days later, this Court decided *National Ass'n of Indus. Bankers v. Weiser*, 159 F.4th 694 (10th Cir. 2025).[1]  In *Weiser*, this Court determined DIDMCA's parity framework is judicially enforceable through equitable relief against state officials. These two decisions adopt incompatible frameworks. DIDMCA cannot protect parity at the "interest rate" layer while permitting unreviewable gatekeeping at the payments-access layer leaving master-account access to unreviewable Reserve Bank discretion. *En banc* review is necessary to maintain uniformity.

Constitutional avoidance also supports *en banc* review. The panel's reading vests Reserve Bank presidents—who are not Article II officers—with effectively

---

[1] A petition for *en banc* consideration is pending, but importantly, that petition challenges only that panel's opt-out interpretation, not its holding that DIDMCA creates judicially enforceable federal rights vindicable through *Ex parte Young*.

unreviewable authority to exclude state-chartered banks from federal payments infrastructure, raising serious Appointments Clause concerns that the rights-creating interpretation avoids.

The question is exceptionally important. Under *Weiser*, this Court held DIDMCA prevents impairment of competitive parity; under *Custodia*, Reserve Banks may achieve the same impairment by denying master-account access. That inversion threatens the very dual banking system DIDMCA was enacted to preserve.

The court should rehear this case *en banc*.

## ARGUMENT

I. **En banc review is necessary to maintain the uniformity of this Court's decisions.**

A. ***Weiser* and *Custodia* interpret the same Act with irreconcilable frameworks.**

Both *Weiser* and *Custodia* interpret provisions of DIDMCA directed at the competitive position of state-chartered institutions vis-à-vis national banks. Section 1831d addresses interest-rate parity whereas § 248a(c)(2) addresses access to Federal Reserve services. In *Weiser*, this Court understood DIDMCA to establish a substantive federal standard that state banks may enforce against state officials in equity. *Weiser*, 159 F.4th at 711. Specifically, *Weiser* held that § 1831d establishes a "national standard" ensuring "competitive equity" enforceable via *Ex parte Young*. *Id.* at 698, 721. Thus, the *Weiser* Court considered DIDMCA as rights-creating.

3

In *Custodia*, which was issued ten days earlier, a different panel understood DIDMCA to leave master-account access—and thus practical participation in the payments system—to the unreviewable discretion of Reserve Banks. *Custodia Bank v. Fed. Rsrv. Bd. of Governors*, 157 F.4th 1235, 1255 (10th Cir. 2025). Importantly, this Court held that 12 U.S.C. § 248a(c)(2)'s command that services "shall be available" creates no individual entitlement, leaving master-account access to Reserve Bank discretion. *Id.* at 1255.

Though *Weiser* concerns § 1831d and state enforcement and *Custodia* concerns § 248a(c)(2) and Reserve Bank action, the two decisions establish conflicting frameworks for interpreting DIDMCA. If DIDMCA protects the competitive position of state-chartered institutions through judicially enforceable standards in one context, it cannot simultaneously be read to render **mandatory parity language** nonoperative at the critical point of access to Federal Reserve services. Under *Custodia*, a Reserve Bank's decision to deny a master account is insulated from judicial scrutiny—whether based on the applicant's race, politics, or other impermissible grounds, or even an unwarranted lack of confidence in state regulators. *Custodia*, 157 F.4th at 1272 (Tymkovich, J., dissenting) ("When pressed at oral argument to give us another way the Kansas City Fed's discretion would be subject to judicial review, counsel could not."). Such insulation from judicial review is contrary to the rights-creating interpretation of DIDMCA in *Weiser*.

**B.    Custodia's Treatment of "shall" cannot be reconciled with *Weiser*'s DIDMCA analysis.**

The conflict is especially stark when reviewing the plain language of the statutes. Section 1831d uses "may"—permissive language—yet *Weiser* reads it as conferring judicially enforceable rights. *Weiser*, 159 F.4th at 711. Conversely, Section 248a(c)(2) uses "shall be available"—mandatory language—yet *Custodia* reads it as conferring none. This Court has compared the two terms and recognized that "shall" is a stronger command than "may." *See e.g.*, *Fish v. Kobach*, 840 F.3d 710, 733 (10th Cir. 2016) (comparing "shall" to "may").

Despite the varying commands used, *Weiser* interpreted the weaker "may" as conferring a judicially enforceable protection, while *Custodia* interpreted the stronger "shall" as nothing more than a class-wide principle on one topic addressed in the statute (pricing) but not another (access). As Judge Tymkovich explained in his dissent, "The word 'shall' issues a command beyond the Fed's discretion." *Custodia*, 157 F.4th at 1268 (Tymkovich, J., dissenting). The majority's reading, he argued, "reads the phrase 'shall be available to nonmember institutions' entirely out of the statute. That, I'm convinced, we cannot do." *Id.* "The Kansas City Fed cannot get around statutorily mandated access to payment systems by damming the river upstream." *Id.*

Moreover, Judge Tymkovich's dissent is consistent with Judge Bacharach's concurrence in *Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*, in which he concluded that § 248a(c)(2) "unambiguously entitles" eligible institutions to master accounts. *Fourth Corner Credit Union v. Fed. Reserve Bank of Kan. City*, 861 F.3d 1052, 1068 (10th Cir. 2017).

*Weiser*'s treatment of DIDMCA confirms that Judge Tymkovich's reading of § 248a(c)(2) is not merely plausible, but the one most consistent with this Court's own recent approach to the DIDMCA. Under *Weiser*, DIDMCA is a rights-creating, parity-preserving framework. *Weiser*, 159 F.4th at 711. Under *Custodia*, the decision to grant a master account is completely discretionary, and Reserve Banks may deny an application on any basis. Moreover, While the *Custodia* panel suggested that Congress would not have "hidden" a rights-creating mandate in § 248a(c)(2), which appears in a section labeled "Pricing of services" *Weiser* rejected that kind of narrow, label-driven reading of DIDMCA. *Weiser* treats § 1831d—a provision likewise embedded within a larger statutory framework—as a vehicle for a national, judicially enforceable standard. If *Weiser* is correct about how DIDMCA operates, then the "shall be available" command in § 248a(c)(2) cannot be downgraded to mere surplusage without undermining the statute's structure and purpose. As a result, the *Custodia* panel's decision cannot be reconciled with *Weiser*'s interpretation of DIDMCA—focusing on Congress's stated purpose of preserving competitive parity

between state- and nationally-chartered banks and giving that purpose concrete operative effect.

### C. Declining *en banc* review will not avoid future conflicts.

Declining *en banc* review will not avoid the need to reconcile *Weiser* and *Custodia*; it will simply force litigants to navigate an area of federal banking law in which one line of precedent treats DIDMCA as a source of enforceable federal protections for state-chartered banks, while another line treats a neighboring DIDMCA provision as preserving unreviewable federal discretion to deny the practical benefits of those protections. Leaving the conflict in place will invite attempts to distinguish *Weiser* and *Custodia* on grounds that neither opinion itself recognizes. Judicial efficiency and the integrity of the Court's DIDMCA jurisprudence are best served by resolving the conflict now, in this case, where the issue is squarely presented and fully briefed.

## II. Constitutional avoidance supports an interpretation restricting the reserve bank's discretion.

The Appointments Clause in article II, section 2 of the U.S. Constitution establishes the fundamental constitutional framework governing federal officer appointments. U.S. Const. art. 2, ¶ 2, cl. 2. An officer of the United States is one that exercises "significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976); *accord Lucia v. SEC*, 585 U.S. 237, 249 (2018).

Reserve bank presidents are not appointed by the President and confirmed by the Senate. 12 U.S.C. §§ 304, 305.

If issuing master accounts is non-discretionary, then reserve bank presidents are neither inferior nor principal officers because they lack significant authority in account issuing matters. *See Buckley* at 137-38 (holding that the Federal Election Commission's investigative and informative functions are permissible functions without presidential appointment). But the panel decision vests reserve bank presidents with unreviewable discretion to deny master accounts to eligible depository institutions. *Custodia* at 1253-55. This decision elevates the reserve bank presidents to the status of officers of the United States, which necessarily implicates the Appointments Clause.

The rights-creating interpretation avoids this constitutional problem. If § 248a(c)(2) creates a mandatory entitlement for eligible institutions, reserve bank presidents exercise ministerial authority in processing master account applications. They merely verify eligibility and grant access. Ministerial execution of a clear statutory command does not implicate the Appointments Clause because it does not constitute "significant authority." *See Buckley* at 137-38.

Before 2015, it appears no reserve bank has denied a master account to an eligible institution. *See Custodia* at 1272 (Tymkovich, J., dissenting) (citing *Fourth Corner Credit Union*, 861 F.3d at 1053 (Moritz, J., concurring)). Congress legislated

against that backdrop, and presumably was aware of the historical facts. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 169 (2004) (assuming that Congress was aware of law, scholarship, and history when enacting legislation). When it enacted section 248c, Congress required only transparency about account administration—not authorization for discretionary denials. *James M. Inhofe Nat'l Defens Auth. Act for Fiscal Year 2023*, Pub. L. 117-263, 136 Stat. 2395, 3419-3420 (2022). If Congress understood the Fed to possess the boundless authority that the *Custodia* panel attributes to it, Congress would have explicitly granted that authority. *See Interstate Commerce Comm'n v. Cincinnati N.O. & T.P.R. Co.*, 167 U.S. 479, 494-95 (1897) (holding that courts should not construe statutes to find implied vast agency authority); *Bradford v. U.S. Dep't of Labor*, 101 F.4th 707, 725-26 (10th Cir. 2024) (noting that expansive authority may not be found in modest words or vague terms).

The panel decision ratifies a dramatic expansion of reserve bank authority with no constitutional footing, no historical practice, and no congressional sanction. This expansion gives reserve banks significant authority under the laws of the United States, implementing the Appointments Clause. Constitutional avoidance counsels an interpretation that constrains, rather than expands, the unreviewable authority of non-Article II officers.

9

### III. By allowing unreviewable discretion, the *Custodia* panel allows unchecked discrimination.

The panel decision effectively gives reserve banks unfettered discretion to discriminate against any institution for any reason. As judge Tymkovich accurately noted, "[t]here is really no way around the fact that *any* discretion becomes *unreviewable* discretion." *Custodia* at 1272 (Tymkovich, J., dissenting).

Unfettered discretion allows unfettered mischief. If the Kansas City Fed may deny Custodia a master account based on digital asset concerns, nothing prevents another reserve bank from excluding institutions serving industries that the reserve bank dislikes. It could deny accounts to institutions serving firearms manufacturers, distributors, and dealers. Or it could deny accounts to institutions serving renewable energy developers. Any institution that serves industries disfavored by reserve bank is at risk.

To the extent this discrimination encourages institutions to pursue federal bank charters, it disrupts the dual-banking system. As twenty States observed in *Weiser*, discriminatory federal treatment "creat[es] pressure on state-chartered institutions to convert to a federal charter." *Weiser, Amicus Br. of the State of Utah and Eleven Other States in Support of Appellees and Affirmance*, 2024 WL 4929315 at *5 (2024). State charters become second-class instruments, and the dual banking system erodes.

10

For Wyoming, this is not a hypothetical concern. Wyoming created the SPDI charter to provide a regulatory framework for digital asset custody and payment services. 2019 Wyo. Sess. Laws 329. Wyoming subjects SPDI applicants to rigorous capital requirements, examination procedures, and ongoing supervision. Wyo. Stat. Ann. §§ 13-12-105(a) (liquid asset requirements); 13-12-106(a) (contingency account requirement); 13-12-110 (capital requirements); 13-12-119 (report and examination requirements). When Wyoming grants an SPDI charter, it represents a sovereign judgment that the institution satisfies safety and soundness standards and serves the public interest. Wyo. Stat. Ann. § 13-12-115 (establishing criteria for approval). The panel decision permits the reserve bank to override that judgment with no explanation, no process, and no review.

## CONCLUSION

For the reasons discussed above, the government officials respectfully request that this Court grant Custodia's petition for rehearing *en banc*.

DATED this 22nd day of December, 2025.

/s/ Keith G. Kautz
Keith G. Kautz # 5-1698
Wyoming Attorney General

/s/ Mackenzie Williams
Mackenzie Williams # 6-4250
Deputy Attorney General

/s/ James Peters
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7886
mackenzie.williams@wyo.gov

Attorneys for *Amicus Curiae* State of Wyoming

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-volume Limit, Typeface Requirements, and Type Style Requirements.

1. This document complies with the word limit of Fed. R. App. P. 29(a)(4), (b)(4), and 32(g) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[x] this document contains 2,157 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 29(b)(4) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x] this document has been prepared in a proportionally spaced typeface using Microsoft Word in Size 14 Times New Roman.

Date: December 22, 2025

‾‾‾‾‾‾/s/ James Peters‾‾‾‾‾‾
James Peters
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-8662
james.peters@wyo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2025, I electronically filed the foregoing with the court's CM/ECF system, which will send notification of such filing to the following:

Joshua P. Chadwick                    VIA CM/ECF
BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM
20th Street & Constitution Ave. NW
Washington, DC 20551
joshua.p.chadwick@frb.gov

Yvonne F. Mizusawa                    VIA CM/ECF
Yonatan Gelblum
Katherine Pomeroy
BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM
20th Street and Constitution Ave.
NW
Washington, DC 20551
yvonne.f.mizusawa@frb.gov
yonatan.gelblum@frb.gov
katherine.pomeroy@frb.gov

Jeffrey S. Bucholtz                   VIA CM/ECF
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
jbucholtz@kslaw.com

Andrew Z. Michaelson                  VIA CM/ECF
KING & SPALDING LLP
1185 Ave. of the Americas, 34th Fl.
New York, NY 10036
amichaelson@kslaw.com

Billie LM Addleman                    VIA CM/ECF
Erin E. Berry
HIRST APPLEGATE, LLP
PO Box 1083
Cheyenne, WY 82003
baddleman@hirstapplegate.com
eberry@hirstapplegate.com


Christine M. Carletta                 VIA CM/ECF
E. Caroline Freeman
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
ccarletta@kslaw.com
cfreeman@kslaw.com


Jared Lax                             VIA CM/ECF
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
jlax@kslaw.com


Scott E. Ortiz                        VIA CM/ECF
Williams, Porter, Day & Neville, P.C.
159 No. Wolcott, Suite 400
Casper, WY 82602
sortiz@wpdn.net


Ryan Scarborough                      VIA CM/ECF
Jamie Wolfe
Williams & Connolly LLP
680 Washington, DC 20024
rscarborough@wc.com
jwolfe@wc.com


Michelle S. Kallen                    VIA CM/ECF
Ian Heath Gershengorn

15

Laurel L. Rimon
Emanuel Powell III
Maria La Bella
Jenner & Block LLP
1099 New York Ave, NW, Ste 900
Washington, DC 20001
MKallen@jenner.com
IGershengorn@jenner.com
EPowell@jenner.com
MLaBella@jenner.com
Masha G. Hansford
Email: mhansford@paulweiss.com
Akin Gump Strauss Hauer & Feld
Firm: 202-887-4000
2001 K Street N.W.
Washington, DC 20006
Kannon K. Shanmugam
David Wong
Nathan Raab
Paul, Weiss, Rifkind, Wharton & Garrison
Firm: 202-223-7380
2001 K Street, NW
Washington, DC 20006
kshanmugam@paulweiss.com
dwong@paulweiss.com
nraab@paulweiss.com


_____/s/ James Peters_____
James Peters
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-8662
james.peters@wyo.gov