No. 24-8024

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

CUSTODIA BANK, INC.,

*Plaintiff-Appellant*,

v.

FEDERAL RESERVE BOARD, ET AL.,

*Defendants-Appellees*.

Appeal from the U.S. District Court for the District of Wyoming
Case No. 22-CV-125 (Skavdahl, J.)

**BRIEF OF *AMICI CURIAE* SENATOR CYNTHIA M. LUMMIS AND FORMER SENATOR PATRICK J. TOOMEY
IN SUPPORT OF THE PETITION FOR REHEARING EN BANC**

CHRIS LAND
Office of Senator
Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, DC 20510
(202) 224-3424
chris_land@lummis.senate.gov

BRENT R. BAKER
SPENCER FANE LLP
10 Exchange Place, Suite 1100
Salt Lake City, UT 84111
(801) 521-9000
bbaker@spencerfane.com

NICOLAS MORGAN
INVESTOR CHOICE ADVOCATES NETWORK
453 South Spring Street, Suite 400
Los Angeles, CA 90013
(310) 849-0384
nicolas.morgan@icanlaw.org

*Counsel for* Amici Curiae

## TABLE OF CONTENTS

STATEMENT OF INTEREST ..................................................................................1

ARGUMENT

    I.    This Decision is Exceptionally Important………………………………..3

CONCLUSION ...................................................................................................... 11

CERTIFICATE OF COMPLIANCE ..................................................................... 13

CERTIFICATE OF SERVICE ............................................................................... 14

CERTIFICATE OF DIGITAL SUBMISSION…………………………………..15

# TABLE OF AUTHORITIES

### *Cases*

*Cantero v. Bank of Am., N.A.*
    602 U.S. 205 (2024)……………………………………………………………..3

*Whitman v. Am. Trucking Ass'ns*
    531 U.S. 457 (2001)……………………………………………………...……11

*Nat'l Ass'n of Indus. Bankers v. Weiser*
    2025 U.S. App. LEXIS 29512 (10th Cir. Nov. 10, 2025)…... ……..…….5, 11

*Custodia Bank, Inc. v. Federal Reserve Bd., et al.*
    2025 U.S. App. LEXIS 28538 (10th Cir. Oct. 31, 2025)……..……..….1, 4

*Custodia Bank, Inc. v. Federal Reserve Bd., et al.*
    728 F. Supp. 3d 1227 (D. Wyo. Mar. 29, 2024)…………………………..….4

*Custodia Bank, Inc. v. Federal Reserve Bd., et al.*
    2023 U.S. Dist. LEXIS 237452 (D. Wyo. Jun. 8, 2023)…………………….4

### *Court Rules*

Fed. R. App. P. 29……………………………………………………………..1

Fed. R. App. P. 40……………………………………………………………..3

### *Statutes*

12 U.S.C. § 248c........................................................................................2, 4, 5

Federal Reserve Act, Pub. L. No. 117-263 § 5708, 136 Stat. 2395 (2022)…………1

### *Other Authorities*

*Lummis Presses Fed Nominee Raskin Over Suspicious Influence Peddling*, (Feb. 3, 2022), https://www.lummis.senate.gov/press-releases/lummis-presses-fed-nominee-raskin-over-suspicious-influence-peddling/..............................................5

*State Bank Regulator Disputes KC Fed's Claim About Fintech Firm Linked to Biden Nominee Raskin,* CNBC (Feb. 15, 2022), https://tinyurl.com/4k6jxxxd....................................................................................6

*Statement of Federal Reserve Bank of Kansas City (Feb. 7, 2022),*
https://tinyurl.com/ya6fjp9u ................................................................................... 5, 6

*Toomey Wants the Fed More 'Transparent,' Subject to Oversight,*
Bloomberg Law (June 30, 2022), https://tinyurl.com/2p9h8cma .............................. 7

H. Comm. on Financial Svcs., *Waters Secures Key Committee Provisions in 2023 National Defense and Authorization Act (Dec. 7, 2022),*
https://tinyurl.com/59x7d7c6 ..................................................................................... 12

S. Comm. on Banking, Housing and Urban Aff., *Annual Defense Bill Includes Toomey Provision to Require Federal Reserve Transparency on Master Accounts* (Dec. 8, 2022), https://tinyurl.com/57d74r28 ........................................................ 5, 8

S. Comm. on Banking, Housing, and Urban Aff., *Toomey on Fed's New Master Account Proposal: More Transparency Needed (Nov. 4, 2022),*
https://tinyurl.com/y4npu2vv ....................................................................................... 8

S. Comm. on Banking, Housing, and Urban Aff. *Toomey, Scott, Tillis, Lummis Blast Kansas City Fed for Again Stonewalling Congress on Master Account Process (June 29, 2022),* https://tinyurl.com/2cy8dxv8 ................................................................... 6

# STATEMENT OF INTEREST

*Amici,* Senator Cynthia M. Lummis of Wyoming and Former Senator Patrick J. Toomey of Pennsylvania, submit this brief pursuant to Fed. R. App. P. 29(a)(2).

Senator Lummis is a member of the United States Senate Committee on Banking, Housing and Urban Affairs. She is also Chair of the Senate Banking Committee's Subcommittee on Digital Assets, which has oversight jurisdiction over the Federal Reserve System's digital asset activities. Since her election to the Senate in 2020, she has made Federal Reserve transparency and accountability one of her top priorities on the Committee, with a particular focus on master account access.

Former Senator Patrick J. Toomey was Ranking Member of the United States Senate Committee on Banking, Housing and Urban Affairs from 2021-23, and served in the U.S. Congress for 18 years, first as Representative for Pennsylvania's 15th Congressional District from 1999-2005, then as a U.S. Senator from 2011-23.

Senator Toomey was the principal sponsor of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 Amendment ("Toomey Amendment") to the Federal Reserve Act, Pub. L. No. 117-263 § 5708, 136 Stat. 2395, 3419. The majority panel decision relied heavily on this amendment in its statutory interpretation of the Monetary Control and Federal Reserve Acts. *See Custodia Bank, Inc. v. Federal Reserve Bd., et al.,* 2025 U.S. App. LEXIS 28538, at *6, *32, *37, *39 (10th Cir. Oct. 31, 2025).

The Toomey Amendment requires the Board of Governors of the Federal Reserve System (the "Board of Governors" or "Board") to create and maintain a public, online, searchable database that contains a list of every entity that currently has access to a Federal Reserve master account and a list of every entity that submits an access request for a master account, including whether the request was approved, rejected, pending or withdrawn. 12 U.S.C. § 248c.

Senator Lummis' and Former Senator Toomey's robust oversight efforts with respect to master accounts and the Federal Reserve have resulted in the withdrawal of one Federal Reserve Board nominee because of alleged improprieties relating to master account access and removal of reputation risk as a factor in considering master account applications. These legislative oversight efforts remain ongoing.

# ARGUMENT

## I. This Is a Question of Exceptional Importance

Rehearing en banc is appropriate when "questions of exceptional importance" recur. *See* Fed. R. App. P. 40(b)(2)(D). This case meets that standard.

The majority decision fundamentally upsets the careful State/Federal balance in our dual banking system by giving the Federal Reserve System a de facto veto over State chartering decisions. As the United States Supreme Court noted, "[t]he United States maintains a dual system of banking. Banks with federal charters—called national banks—are subject primarily to federal oversight and regulation. Banks with state charters are subject to additional state oversight and regulation." *Cantero v. Bank of Am.,* 602 U.S. 205 (2024).

The majority impermissibly relied upon the Toomey Amendment to find that Fed had pulled an elephant out of a mousehole and—through a provision primarily designed to provide transparency on master account actions—handed itself staggering, unreviewable power to effectively veto reasoned State bank chartering decisions.

At the motion to dismiss stage in the district court, Judge Skavdahl rejected the rationale relied upon later by the panel majority with respect to the Toomey Amendment, concluding that the Amendment "does not, expressly or impliedly, carry the construction load the Board of Governors says it does." *See Custodia Bank,*

3

*Inc. v. Federal Reserve Bd., et. al*, 2023 U.S. Dist. LEXIS 237452, at *12 (D. Wyo. Jun. 8, 2023). Judge Skavdahl observed that:

> *It is public knowledge that master account applications have been 'rejected' or denied for non-discretionary reasons in the past. For example, in* Fourth Corner*, the district court dismissed the credit union's lawsuit after determining FRBKC could not have issued a master account in that case because doing so would have aided the credit union in providing banking services to marijuana-related businesses, which would have violated federal drug laws.* Fourth Corner*, 861 F.3d at 1053-54 (Moritz, J.). Thus, at the time Congress passed § 248c, it was known that Federal Reserve Banks had 'rejected' master account applications in the past, but § 248c cannot be read as Congress' imprimatur on Federal Reserve Banks holding carte blanche to grant or deny master account applications*. Id.

Judge Skavdahl subsequently reversed his compelling rationale at summary judgment without oral argument, supplemental briefing from the parties on a potential shift, or any explanation at all for the reversal. *See Custodia Bank, Inc. v. Federal Reserve Bd., et al.*, 728 F. Supp. 3d 1227, 1243 (D. Wyo. Mar. 29, 2024).

The majority panel decision concluded that "the plain text of § 248c contemplates the rejection of master account access requests from eligible entities[,]" and "it would seem oddly indirect for Congress, if it intended for Reserve Banks to approve all applications without discretion, to amend the statute simply to monitor these wrongful rejections instead of directly instructing the Reserve Banks to approve all eligible applications." *Custodia Bank, Inc. v. Federal Reserve Bd., et al.,* 2025 U.S. App. LEXIS 28538, at *37, *48 (10th Cir. Oct. 31, 2025).

However, as Judge Rossman (also a member of the *Custodia* panel) recently noted in her opinion in *Nat'l Ass'n of Industrial Bankers v. Weiser*, a court's "primary task is to determine congressional intent." 2025 U.S. App. LEXIS 29512, at *71 (10th Cir. Nov. 10, 2025) (Rossman, J., concurring and dissenting in part) (citations and internal quotations omitted).

Senator Lummis and Former Senator Toomey would like to elucidate the Court as to Congress' intent on § 248c. During the confirmation process for President Biden's nominee to be Vice Chair of Supervision at the Federal Reserve Board, Senator Toomey and Senator Lummis learned that Reserve Trust—a Colorado-chartered non-depository trust company—had been denied a master account, and then subsequently granted an account by Appellee Federal Reserve Bank of Kansas City. *See Lummis Presses Fed Nominee Raskin Over Suspicious Influence Peddling*, (Feb. 3, 2022), https://www.lummis.senate.gov/press-releases/lummis-presses-fed-nominee-raskin-over-suspicious-influence-peddling/.

In late 2016, Reserve Trust applied for a master account—but the Kansas City Fed rejected its application because it "did not meet the definition of a depository institution," and thus was statutorily ineligible for a master account. Statement of Federal Reserve Bank of Kansas City (Feb. 7, 2022), https://tinyurl.com/ya6fjp9u. A few months later, the previous denial was reversed and Reserve Trust was granted an account. S. Comm. on Banking, Housing and Urban Aff., *Annual Defense Bill*

*Includes Toomey Provision to Require Federal Reserve Transparency on Master Accounts* (Dec. 8, 2022), https://tinyurl.com/57d74r28).

Senator Toomey and Senator Lummis began seeking information from the Kansas City Fed and the Board about Reserve Trust's application for a master account and the Kansas City Fed's reversal of its previous denial. On February 7, 2022, the Kansas City Fed issued a one-page statement explaining that the master account was granted because Reserve Trust "changed its business model and the Colorado Division of Banking reinterpreted the state's law in a manner that meant [Reserve Trust] met the definition of a depository institution." *Statement of Fed. Reserve Bank of Kansas City* (Feb. 7, 2022), https://tinyurl.com/ya6fjp9u. However, just a week later, the Colorado Division of Banking publicly disputed this narrative and that the Kansas City Fed had "misrepresent[ed]" its role. *State Bank Regulator Disputes KC Fed's Claim About Fintech Firm Linked to Biden Nominee Raskin*, CNBC (Feb. 15, 2022), https://tinyurl.com/4k6jxxxd.

By this point, Senator Toomey, Senator Lummis and their colleagues on the Senate Banking Committee were concerned about the lack of transparency and accountability represented by this episode. The Committee wrote to the Kansas City Fed several times about these issues, and Senator Toomey raised questions to Chair of the Board Jerome Powell during public hearings. *See, e.g.,* S. Comm. on Banking, Housing, and Urban Affairs, *Toomey, Scott, Tillis, Lummis Blast Kansas City Fed*

6

*for Again Stonewalling Congress on Master Account Process* (Jun. 29, 2022), https://tinyurl.com/2cy8dxv8.) One item Senator Toomey sought specifically from the Board during this period was a listing of each institution holding a master account; the Board refused several times to provide this information. Writing to Senator Toomey in June 2022, Chair Powell echoed the Kansas City Fed, asserting that "information regarding which institutions have requested or maintain master accounts is considered confidential business information of the requestors and the Reserve Banks . . . [which] the Federal Reserve does not disclose . . . publicly." In an interview on Bloomberg TV at the time, Senator Toomey expressed that the Board took "a position that they're not accountable to anyone," including Congress. *Toomey Wants the Fed More 'Transparent,' Subject to Oversight,* Bloomberg Law (June 30, 2022), https://tinyurl.com/2p9h8cma.

    The Board and Kansas City Fed's refusal to provide information regarding the master account approval process led Senator Toomey to consider legislation requiring greater transparency and disclosures from the Board and/or the Reserve Banks. In September 2022, Senator Toomey introduced the first draft of what ultimately became the Toomey Amendment, requiring the Board to publicly maintain a listing of institutions that hold master accounts, as well as those that have applied, been granted, and rejected for a master account. As Senator Toomey publicly stated after introducing the draft Amendment, "[e]vents and information

7

gleaned over the last year have raised significant policy questions about the Fed's approach to awarding master accounts. Access to the Fed's payment system is a highly valuable public good, and Congress has a responsibility to taxpayers to ensure regulators give out public goods fairly, transparently, consistently, and without favoritism." S. Comm. on Banking, Housing, and Urban Affairs, *Toomey on Fed's New Master Account Proposal: More Transparency Needed* (Nov. 4, 2022), https://tinyurl.com/y4npu2vv.

In Senator Toomey's public comments and private conversations with the Board and with his colleagues, he and his staff were clear about the purpose of the Amendment: to "provide the American people with the information about master account applications that they deserve, but which the Fed has refused to provide," and to make clear to "[t]he Fed and other regulators [] that if they won't be transparent, Congress will hold them accountable." S. Comm. on Banking, Housing and Urban Aff., *Annual Defense Bill Includes Toomey Provision to Require Federal Reserve Transparency on Master Accounts* (Dec. 8, 2022), https://tinyurl.com/57d74r28.

Moreover, during Senator Toomey's many conversations with colleagues, legislative staff, and with the Board, there was not a single instance in which any Member of Congress, legislative staff, or individual from the Board suggested that the Amendment was intended to, or could be interpreted as, opining on either the

8

Board's, or the Reserve Bank's, substantive legal authority—and whether discretion exists—to grant or reject master account applications.

The effort to pass the Amendment was bipartisan, and it was ultimately supported by a broad range of both Republicans and Democrats across both the House and Senate, who recognized the importance of providing transparency in line with other federal regulators. *See, e.g.,* H. Comm. on Financial Services, *Waters Secures Key Committee Provisions in 2023 National Defense and Authorization Act* (Dec. 7, 2022), https://tinyurl.com/59x7d7c6.

During this period, the Federal Reserve Board of Governors opposed the Toomey Amendment, maintaining that it could provide transparency voluntarily and without further legislation. Chair Powell and other senior officials at the Board contacted Senator Toomey and legislative staff to express their concerns about the Amendment. Senior attorneys from the Board were also invited to engage on the text of the Amendment and offer "technical assistance" on the wording of the Amendment. One wording suggestion that the Board attorneys sought was to include the phrase "reserve bank" before the definition of a master account in the Amendment—the first reference to a master account in the Federal Reserve Act's history. The Board attorneys stated that this inclusion was necessary to properly define master accounts, because, once established, the accounts are associated with and managed by the Reserve Banks. They did not suggest that this technical phrasing

9

would carry any substantive or policy weight in establishing whether the Reserve Banks or the Board was ultimately responsible for the approval or issuance of master accounts. The Board attorneys' suggestion was accepted, and the original Amendment was modified to include the phrase "reserve bank master account" in the definitions section.

The Amendment was consciously drafted to avoid opining on any contested legal questions of the Board's or Reserve Bank's authority—and was intended to garner broad bipartisan support on the less controversial matter of disclosure requirements through the establishment and maintenance of a public database of master accounts. This Amendment does merely what it says it does and nothing more: it requires the Board to maintain a public database of master account holders and pending or rejected applicants, without expressing any view about the appropriate reasons for granting or rejecting a master account application.

Congress specifically authorized delegation of certain Board functions to the Reserve Banks, such as entering into enforcement actions, written agreements, cease-and-desist orders, and certain applications requiring Board approval. If, as the Kansas City Fed argues, Congress intended to delegate to the quasi-private Reserve Banks, or recognize a previous delegation of, primary authority over the important issue of approving master accounts, this would have been no minor matter. Congress would not have hidden such a weighty statement on the balance of power in the

10

Federal Reserve System within a few words creating a database of master account applications—especially ones only included after being offered by the Board staff as merely "technical" suggestions to address operational matters, and not as sources of authority or to settle any disputed matters about master account approval authority or discretion. *See, e.g., Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.")

## CONCLUSION

If a court's "primary task is to determine congressional intent," this case has it in spades—directly from the sponsors of the legislation. *Nat'l Ass'n of Indus. Bankers v. Weiser,* 2025 U.S. App. LEXIS 29512, at *71 (10th Cir. Nov. 10, 2025) (Rossman, J., concurring and dissenting in part) (citations and internal quotations omitted).

Congress' intent as to the Toomey Amendment is crystal clear—it is a provision exclusively focused on Federal Reserve master account transparency. It did not grant or ratify Federal Reserve authority to reject master account applications, and should not be relied by this Court for such purposes.

The majority decision erred in relying upon the Toomey Amendment as evidence that Congress has afforded either the Federal Reserve Board or Reserve

11

Banks authority to deny master account applications, and in doing so, has granted an effective veto over State bank chartering decisions to the Federal Reserve System.

For these reasons, the petition for rehearing en banc should be granted.

Dated:   December 22, 2025

        Respectfully submitted,

        By: /s/ Chris Land

        CHRIS LAND
        Office of Senator Cynthia M. Lummis
        UNITED STATES SENATE
        127A Russell Senate Office Building
        Washington, DC 20510
        (202) 224-3424
        chris_land@lummis.senate.gov

        BRENT R. BAKER
        SPENCER FANE LLP
        10 Exchange Place, Suite 1100
        Salt Lake City, UT 84111
        (801) 521-9000
        bbaker@spencerfane.com

        NICHOLAS MORGAN
        INVESTOR CHOICE ADVOCATES NETWORK
        453 S. Spring Street, Suite 400
        Los Angeles, CA 90013
        (310) 849-0384
        nicolas.morgan@icanlaw.org

        *Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Chris Land

Chris Land
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510
(202) 224-3424
chris_land@lummis.senate.gov

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5)(G), (a)(5), and 32(a)(7), (g) because excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,466 words, which is less than the maximum of 2,600 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

    Dated:   December 22, 2025

                                    /s/ Chris Land

                                    Chris Land
                                    Office of Senator Cynthia M. Lummis
                                    UNITED STATES SENATE
                                    127A Russell Senate Office Building
                                    Washington, D.C. 20510
                                    (202) 224-3424
                                    chris_land@lummis.senate.gov

                                    *Counsel for* Amici Curiae

14

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Anti-Virus, and according to the program are free of viruses.

Dated:   December 22, 2025

/s/ Chris Land

Chris Land
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510
(202) 224-3424
chris_land@lummis.senate.gov

*Counsel for* Amici Curiae