No. 24-8024

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

_____

CUSTODIA BANK, INC.,

*Plaintiff-Appellant,*

v.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,
FEDERAL RESERVE BANK OF KANSAS CITY,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for
the District of Wyoming
No. 1:21-cv-00125-SWS

_____

**RESPONSE TO PETITION FOR REHEARING EN BANC
BY APPELLEE FEDERAL RESERVE BOARD**

_____

Joshua P. Chadwick
Assistant General Counsel
Yvonne F. Mizusawa
Yonatan Gelblum
Katherine Pomeroy
Senior Counsels
Board of Governors of the
    Federal Reserve System
20th Street & Constitution
    Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835

*Attorneys for Defendant-Appellee
Federal Reserve Board*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..........................................................................ii

I.    The Petition Does Not Present an Exceptional
      Constitutional Avoidance Issue .........................................................1

      A.    The Panel Decision Does Not Raise Constitutional
            Concerns ...................................................................................2

      B.    Custodia Waived Its Constitutional Avoidance
            Arguments .................................................................................6

II.   The Panel Correctly Construed Section 248a ...............................10

      A.    The MCA's Plain Text Indicates that Section 248a
            Does Not Limit Reserve Banks' Section 342
            Discretion ...............................................................................10

      B.    The 2022 NDAA Amendment Provides Additional
            Support for the Panel's Decision ...........................................16

III.  Custodia's Remaining Arguments Lack Merit..............................18

CONCLUSION ........................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

Page

## Cases

*7-Eleven, Inc. v. National Union Insurance Co. of Pittsburgh.*,
   No. 01-10133, 2002 WL 432619
   (5th Cir. 2002 Feb. 28, 2002) (unpublished) ...................................13

*Andresen v. Maryland,*
   427 U.S. 463 (1976) .................................................................13

*Artis v. D.C.,*
   583 U.S. 71 (2018) ...................................................................3

*Ausmus v. Perdue,*
   908 F.3d 1248 (10th Cir. 2018) .....................................................18

*Banco San Juan Internacional, Inc. v. Federal Reserve*
*Bank of New York,*
   700 F. Supp. 3d 86 (S.D.N.Y. 2023) ................................................16

*Bandimere v. SEC,*
   844 F.3d 1168 (10th Cir. 2016) ......................................................5

*Barber v. Thomas,*
   560 U.S. 474 (2010) .................................................................18

*Bob Jones University v. United States,*
   461 U.S. 574 (1983) .................................................................17

*Carroll v. Logan,*
   735 F.3d 147 (4th Cir. 2013) ........................................................15

*CPSC v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980) .................................................................18

*DHS v. MacLean,*
   574 U.S. 383 (2015) .................................................................14

*Edmond v. United States,*
    520 U.S. 651 (1997) .................................................................. 3, 5

*Farmers & Merchants Bank of Monroe v. Federal Reserve*
*Bank of Richmond,*
    262 U.S. 649 (1923) ................................................................ 10, 11

*Free Enterprise Fund v. PCAOB,*
    561 U.S. 477 (2010) ....................................................................... 5

*Grynberg v. Kinder Morgan Energy Partners, L.P.,*
    805 F.3d 901 (10th Cir. 2015) ........................................................ 7

*High Country Citizens Alliance v. Clarke,*
    454 F.3d 1177 (10th Cir. 2006) ..................................................... 11

*In re McDaniel,*
    973 F.3d 1083 (10th Cir. 2020) ..................................................... 13

*Kansas Natural Resource Coalition v. DOI,*
    971 F.3d 1222 (10th Cir. 2020) ..................................................... 18

*Kay Electric Co-op. v. City of Newkirk, Oklahoma,*
    647 F.3d 1039 (10th Cir. 2011) ..................................................... 15

*Loughrin v. United States,*
    573 U.S. 351 (2014) ..................................................................... 14

*Lyons v. Jefferson Bank & Trust,*
    994 F.2d 716 (10th Cir. 1993) ........................................................ 9

*McFadden v. United States,*
    576 U.S. 186 (2015) ....................................................................... 2

*Melcher v. FOMC, aff'd on other grounds,* 836 F.2d 561 (D.C. Cir. 1987)
    644 F. Supp. 510 (D.D.C. 1986) ................................................. 4, 5

*Merit Management Group, LP v. FTI Consulting, Inc.*,
   583 U.S. 366 (2018) ............................................................... 12, 13

*Nelson v. United States*,
   40 F.4th 1105 (10th Cir. 2022) ............................................ 14, 15

*Sierra Club v. Hodel*,
   848 F.2d 1068 (10th Cir. 1988) ....................................................... 6

*Smith v. Board of Governors of the Federal Reserve System*,
   73 F.4th 815 (10th Cir. 2023) ........................................................ 7

*Steele v. United States*,
   267 U.S. 505 (1926) ........................................................................ 2

*Stern v. Marshall*,
   564 U.S. 462 (2011) ...................................................................... 10

*Trump v. Wilcox*,
   145 S. Ct. 1415 (2025) ................................................................... 4

*Turner Brothers, Inc. v. Conley*,
   757 F. App'x 697 (10th Cir. 2018) ................................................. 7

*United States v. Allen*,
   983 F.3d 463 (10th Cir. 2020) ...................................................... 11

*United States v. Cooper*,
   654 F.3d 1104 (10th Cir. 2011) ...................................................... 9

*United States v. Games-Perez*,
   695 F.3d 1104 (10th Cir. 2012) .................................................. 6, 8

*Zobrest v. Catalina Foothills School District*,
   509 U.S. 1 (1993) ........................................................................... 7

iv

## Statutes

12 U.S.C. § 248a ............................................................ 10, 11, 12, 15, 16, 17

12 U.S.C. § 248a(c) ........................................................................... 12, 14

12 U.S.C. § 248a(c)(1) ............................................................................. 13

12 U.S.C. § 248a(c)(2) ............................................................................. 13

12 U.S.C. § 248a(c)(3) ............................................................................. 13

12 U.S.C. § 248a(c)(4) ............................................................................. 13

12 U.S.C. § 248(f) ..................................................................................... 5

12 U.S.C. § 248(j) .................................................................................. 3, 6

12 U.S.C. § 341(fifth) ................................................................................ 4

12 U.S.C. § 342 ....................................................................... 10, 11, 12, 14, 15

12 U.S.C. § 347 .......................................................................................... 3

12 U.S.C. § 347b(a) ................................................................................... 3

12 U.S.C. § 347d ........................................................................................ 3

12 U.S.C. § 461(b)(7) ................................................................................ 3

28 U.S.C. § 2412(b) ................................................................................. 14

Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq*, ................................ 2
      Pub. L. No. 63-43, § 13(1), 38 Stat. 251 ........................................... 10

James M. Inhofe National Defense Authorization Act for Fiscal Year
      2023, Pub. L. No. 117-263, § 5708, 136 Stat. 2395, 3419
      (Dec. 23, 2022) (codified at 12 U.S.C. § 248c(b)(1)) ......................... 16

Monetary Control Act of 1980, Pub. L. No. 96-221,
94 Stat. 132 ..................................................................... 1
§ 105(a)(1)–(6), 94 Stat. 132, 139 ..................................... 11

## Regulatory Materials

Guidelines for Evaluating Account and Services Requests,
87 Fed. Reg. 51,099 (Aug. 19, 2022) ................................ 19

Policy Statement Regarding Risks on Large-Dollar
Wire Transfer Systems,
50 Fed. Reg. 21,120 (May 22, 1985) ................................. 19

## Other Authorities

Board of Governors of the Federal Reserve System, Federal Reserve
System Administrative Manual (2001-2010),
https://www.governmentattic.org/33docs/FRS-FRAM_2001-
2010.pdf ................................................................ 19, 20

Bobby R. Baldock, *et al.*, *Strategic Considerations for Going En Banc
in the Tenth Circuit*,
100 Denv. L. Rev. 325 (2023) ........................................... 7

Department of Justice, *Appointment & Removal of Federal Reserve
Bank Members of the FOMC*,
43 Op. O.L.C. 263 (2019) ................................................. 6

Federal Reserve Bank Operating Circular 1, Account Relationships
(Jan. 2, 1998), web.archive.org/web/20000116011948/http://www.
frbservices.org/Industry/pdf/Oc1.pdf ................................. 17

Federal Reserve Bank Operating Circular 1, Account Relationships
(Sept. 1, 2023), https://www.frbservices.org/binaries/content/
assets/crsocms/resources/rules-regulations/090123-operating-
circular-1.pdf ............................................................... 17

Petitioner Custodia Bank objects to the panel's determination that it does not have an absolute and unqualified right to a deposit account ("master account") at a Federal Reserve Bank. But its conclusory assertions fail to show that the ruling raises a serious constitutional question warranting en banc review or threatens the existence of the "dual" federal-state banking system, and Custodia has in any event waived its constitutional avoidance arguments. And contrary to Custodia's contentions, the panel correctly interpreted the provisions of the Federal Reserve Act ("FRA") as amended by the Monetary Control Act of 1980 ("MCA").

## I. The Petition Does Not Present an Exceptional Constitutional Avoidance Issue

Custodia claims the panel "threatens the Federal Reserve System's constitutionality" by "giving [Reserve Bank] presidents unbounded discretion," thus "making [them] 'officers'" subject to the Appointments Clause but not appointed pursuant to its provisions. Pet. at 9–10. But Reserve Bank presidents have discretionary powers regardless of the panel ruling, the ruling does not address limits on their discretion such as the Board's supervisory authority, and their appointment in any event does not violate the Clause. Moreover,

1

Custodia waived the purported constitutional avoidance concerns it now raises, making them an improper basis for seeking en banc review.

## A.   The Panel Decision Does Not Raise Constitutional Concerns

As discussed in Section II, the panel correctly construed the statute's unambiguous terms and constitutional avoidance plays no role as a result. *McFadden v. United States*, 576 U.S. 186, 197 (2015). But even if that weren't so, the panel's refusal to require Reserve Banks to ministerially grant master account requests does not transform Reserve Bank presidents from otherwise-discretionless "lesser functionaries" into invalidly-appointed "Officers." They already exercise discretion elsewhere;[1] the ruling did not address potential limits to this discretion, for example due to the Board's supervisory authority; and their appointment does not raise serious constitutional questions regardless of their authority over master account decisions.

Multiple FRA provisions not implicated here already provide Reserve Bank presidents discretionary authority over significant issues.

---

[1] Discretion alone is not decisive. *See Steele v. United States*, 267 U.S. 505, 508 (1926) ("The deputy marshal is not in the constitutional sense an officer of the United States [despite being] called upon to exercise great . . . discretion.").

2

*See*, *e.g.*, 12 U.S.C. §§ 347, 347b(a), 347d, 461(b)(7) (discretion on whether to advance funds to depository institutions). Nor did the panel—which merely rejected Custodia's assertion that Reserve Banks lack *any* discretion to deny master accounts—purport to establish how this discretion might be limited, for example, by the Board's supervisory authority in this or other matters. *See* 12 U.S.C. § 248(j) (Board "exercise[s] general supervision" over Reserve Banks). The panel's narrow holding does not dictate any answer with respect to Reserve Bank presidents' status under the Appointments Clause, as Custodia claims. *See Edmond v. United States*, 520 U.S. 651, 663 (1997) ("'inferior officers' are . . . directed and supervised at some level"). For these reasons alone, the opinion is not constitutionally significant.

In any event, Custodia's arguments are not only untimely, *see infra* at 6–10, but also fail to demonstrate that the avoidance canon applies. Only "serious constitutional problems" implicate the canon, *Artis v. D.C.,* 583 U.S. 71, 89 (2018), which does not apply when judicial "precedent[s] . . . undermine" assertions of unconstitutionality, *id.*, as is the case here.

3

First, the Supreme Court recently reaffirmed that Founding-era and longstanding historical practice under the First and Second Bank of the United States is relevant to separation of powers issues concerning the Federal Reserve System. *Trump v. Wilcox*, 145 S. Ct. 1415, 1417 (2025). This practice, in turn, confirms that authority over banking matters like deposit accounts, even if consequential, does not implicate the Appointments Clause. Specifically, the First and Second Bank wielded unique and important banking powers meant to serve public goals (including exclusive authority to provide deposit and other services across state lines and issue banknotes recognized as legal tender by the government), but their leadership was not appointed pursuant to the Clause. *See* J.A.144–47; *see also Melcher v. FOMC*, 644 F. Supp. 510, 520 (D.D.C. 1986), *aff'd on other grounds*, 836 F.2d 561 (D.C. Cir. 1987) (functions comparable to those performed by the First and Second Bank do not implicate the Clause).

Moreover, even if the Clause applied, binding precedent establishes that the FRA's requirement that the Board (a constitutional "Head of Department") "approv[e]" the selection of Reserve Bank presidents, 12 U.S.C. § 341(fifth), satisfies constitutional rules for

inferior officer appointments. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 512 n.13 (2010) (citing cases). Custodia's reliance on a contrary assertion in *Melcher*, Pet. at 10, is misplaced because *Melcher* preceded the Supreme Court's clarification in *Free Enterprise Fund*.

Lastly, Custodia's insinuation that all officials with final decisionmaking authority are principal officers requiring Senate confirmation, Pet. at 11, also ignores controlling precedent. *See Free Enter. Fund*, 561 U.S. at 504, 510 (officials wielding prosecutorial discretion involving unreviewable decisions to initiate or terminate investigations were inferior officers); *accord Bandimere v. SEC*, 844 F.3d 1168, 1183–84 (10th Cir. 2016) (noting that some inferior officers make final decisions). Even the dissent appears to agree on this point. Dissent at 27 (asserting that discretion over master accounts "makes it much more likely that [Reserve Bank presidents] are inferior officers"). Reserve Bank presidents are not principal officers as long as they are "directed and supervised at some level," *Edmond*, 520 U.S. at 663, and various FRA provisions ensure such supervision. The Board can, *inter alia*, remove them, 12 U.S.C. § 248(f),[2] and "exercise[s] general

_____

[2] The Department of Justice has advised that this provision authorizes

supervision over . . . reserve banks," *id.* § 248(j), as Custodia

acknowledges. Pet. at 15 (citing § 248(j)) ("The Board can set general

policies that Reserve Banks must apply when making master account

decisions."). Custodia's assertions that the panel decision raises

constitutional doubts therefore not only mischaracterize the effects and

scope of the opinion but are also precluded by controlling precedents.

## B.   Custodia Waived Its Constitutional Avoidance Arguments

Custodia did not properly raise or preserve its constitutional

avoidance arguments, which are subject to ordinary rules of waiver, and

these arguments are therefore an improper basis for en banc review.

*See Sierra Club v. Hodel*, 848 F.2d 1068, 1101 (10th Cir. 1988)

(rehearing petition cannot raise issues "not argued as part of the

original appeal" or "previously conceded"), *overruled on other grounds*

*by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th

Cir. 1992); *United States v. Games-Perez*, 695 F.3d 1104, 1105–06, 1118

(10th Cir. 2012) (Murphy, J., concurring) (en banc review properly

---

at-will removal and that Reserve Bank presidents are properly
appointed. *Appointment & Removal of Federal Reserve Bank Members
of the FOMC*, 43 Op. O.L.C. 263, 273 (2019) ("Nothing in the statute
limits the Board's removal authority.").

denied despite claim the panel subjected petitioner and "criminal

defendants generally to a continuing injustice," where issue was first

raised in dissent rather than by petitioner); Bobby R. Baldock *et al.*,

*Strategic Considerations for Going En Banc in the Tenth Circuit*, 100

Denv. L. Rev. 325, 337 (2023) ("forfeiture or waiver" can "also preclude

en banc determination").

    Contrary to Custodia's contention that the panel was not

"empowered" to deem its avoidance arguments waived, Pet. at 11,

controlling precedents hold otherwise. *Zobrest v. Catalina Foothills Sch.*

*Dist.*, 509 U.S. 1, 7–8 (1993) ("the prudential rule of avoiding

constitutional questions has no application" when parties fail to raise

the issue); *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d

901, 908 n.5 (10th Cir. 2015) (refusing to consider argument first raised

in reply that a statutory interpretation "raises grave . . . constitutional

concerns"); *see also Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 700

(10th Cir. 2018) (Appointments Clause claims "have no special

entitlement to review, and may be waived or forfeited"), *cited with*

*approval by Smith v. Bd. of Governors of Fed. Reserve Sys.*, 73 F.4th

815, 823 (10th Cir. 2023).

Because Custodia waived its constitutional avoidance arguments concerning Reserve Bank presidents on appeal, Op. at 44, 46–47 (describing Custodia's waiver), "this case is simply not an appropriate vehicle" for addressing them en banc. *Games-Perez*, 695 F.3d at 1109. Moreover, in district court, Custodia had already waived any claim that Reserve Bank presidents' appointments may violate the Clause's rules for inferior officers, *cf.* Pet. at 10, because in opposing a motion to dismiss, it failed to respond to arguments that binding precedents establish otherwise. *See* J.A.300 (noting waiver).

Custodia, whose appellate arguments only referred to the appointment process for directors of Reserve Banks rather than their presidents, Opening Br. at 56, now claims without explanation that its conclusory assertions that "delegation to Reserve Banks" was "improper under the Appointments . . . Clause" somehow preserved its present argument about Reserve Bank presidents. It also incorrectly asserts that the panel only addressed waiver of constitutional merits arguments. Pet. at 11. But these assertions do not address Custodia's waiver below of any argument that Reserve Bank presidents' appointments may not conform to the Clause's rules for inferior officers.

8

Moreover, they miscast the panel's understanding of Custodia's Appointments Clause assertions the panel deemed waived—the panel expressly viewed these as attempting to involve "the canon of constitutional avoidance." Op. at 44.

The panel correctly found that Custodia waived these avoidance arguments. As it explained, Custodia's "bare assertion of Appointments Clause *concerns*" was too conclusory to preserve *any* argument. Op. at 46–47 (emphasis added); *see also United States v. Cooper,* 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.'"); *Lyons v. Jefferson Bank & Tr.,* 994 F.2d 716, 721 (10th Cir. 1993) ("[V]ague, arguable references . . . do not . . . preserve the issue."). Moreover, rather than arguing about Reserve Bank presidents' appointments, as it does now, on appeal Custodia asserted a different constitutional concern—"rais[ing] Appointments Clause concerns only with the appointment process for Reserve Bank *directors*." Op. at 46–47;[3] *see also* Opening Br. at 56 (asserting concerns about decisions on master

---

[3] The panel did not need to reach the issue because Custodia failed to allege that these directors decided its master account request. Op. at 45–46.

accounts by "Reserve Banks, whose boards [of directors] are comprised primarily of members of the public and stockholding banks"); *id.* n.27 (describing process for appointing directors). As the panel explained, Custodia failed to "make[] any mention of the appointment process for a Reserve Bank's *president*" or explain "how the appointment process for a Reserve Bank's president violates the Appointments Clause." Op. at 47. Custodia therefore failed to preserve its arguments on how to construe the MCA to sidestep supposedly "serious constitutional concerns" implicating the avoidance canon. *Stern v. Marshall*, 564 U.S. 462, 478 (2011), and they are therefore not a proper basis for seeking en banc review.

## II.    The Panel Correctly Construed Section 248a

### A.    The MCA's Plain Text Indicates that Section 248a Does Not Limit Reserve Banks' Section 342 Discretion

Before the MCA's enactment, the Supreme Court construed the statement that Reserve Banks "may receive" cash and other items for deposit, FRA § 13(1), 12 U.S.C. § 342, as granting discretion concerning whether to accept deposits. *Farmers & Merchs. Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 662 (1923). While acknowledging that the FRA as originally enacted granted such

10

"discretionary authority," Custodia boldly asserts that the MCA's addition of Section 248a "remove[d]" the discretion conferred by Section 342. Pet. at 2, 13. Such a conclusion cannot withstand scrutiny given the MCA's various changes to Section 342 without disturbing its "may receive" language. *See* MCA § 105(a)(1)–(6).

Custodia advances an interpretation of Section 248a that is inconsistent with the more logical interpretation articulated by the panel and would result in an implied repeal of Section 342's discretionary authority. But "[c]lear legislative intent" is required to repeal the earlier grant of discretion, and even language "not entirely harmonious with an earlier [statute]" is insufficient to meet the "high bar" required for implied repeal. *United States v. Allen*, 983 F.3d 463, 471 & n.3 (10th Cir. 2020). Moreover, because the MCA made several changes to Section 342 without altering its discretionary language, it is especially unlikely that Congress intended to overturn the result in *Farmers & Merchants. Cf. High Country Citizens All. v. Clarke*, 454 F.3d 1177, 1190 (10th Cir. 2006) (Congressional "silence as to one [part of a statute construed by the courts] coupled with a myriad of revisions

within the same statutory scheme begins to look like acquiescence" to the judicial construction).

In any event, Section 248a cannot bear the weight Custodia places on it. It instructs the Board—not Reserve Banks—to publish pricing principles for services and a fee schedule based on those principles. In setting the fee schedule, the Board needed to consider that Reserve Banks would be offering services to a larger universe of institutions in light of Section 342's expansion of Reserve Bank discretion to begin accepting deposits from nonmember depository institutions. Thus, one of the enumerated pricing principles in Section 248a(c) is that, should a Reserve Bank offer a service to member banks, that service must also be offered to nonmember depository institutions at the same price. Contrary to Custodia's position, Section 248a is not a command to grant access to services covered by the fee schedule to each and every nonmember depository institution regardless of risk, as underscored by the fact that no such requirement exists as to member banks.

The statute's text provides additional indicia that the actions it mandates only concern pricing and not mandatory access. Section 248a's title indicates that it concerns "*[p]ricing* of services." *See Merit*

*Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018)

(section headings "supply cues as to what Congress intended").

Additionally, the section's sole reference to availability of services is in

subparagraph (c)(2), which is part of a list of what the statute indicates

are pricing principles, preceded by a colon. Such prefatory language

preceding a colon limits the scope of what follows. *See Andresen v.*

*Maryland*, 427 U.S. 463, 481 (1976) (a clause that "is one of a series

that follows the colon . . . [is] limited by what precedes that colon"); *7-*

*Eleven, Inc. v. Nat'l Union Ins. Co. of Pittsburgh.*, No. 01-10133, 2002

WL 432619, at *5 (5th Cir. Feb. 28, 2002) (unpublished) ("[A colon

preceding a list] tells [readers] that everything following the colon will

deal exclusively with [what precedes it]."). And the other listed items

only concern pricing, 12 U.S.C. § 248a(c)(1), (3)–(4), further indicating

that Section 248a(c)(2) concerns pricing rather than access. *In re*

*McDaniel*, 973 F.3d 1083, 1098 (10th Cir. 2020) (applying *noscitur a*

*sociis* to construe a phrase in a list based on its "common quality" with

other list items).

　　And even if subsection 248a(c)(2) were somehow construed as a

mandate concerning access to services, it would not guarantee Custodia

a master account because it says nothing about granting access to *all* depository institutions. Instead, subsection 248a(c) uses, in the same sentence, the word "[a]ll" in relation to the services it covers, but not to the institutions that might access these services. "When Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presumes that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014). This presumption "applies with particular force" if the inclusion and omission occur "in close proximity—indeed [as here], in the same sentence." *DHS v. MacLean*, 574 U.S. 383, 392 (2015). The statute's text thus indicates that it at most concerns provision of "*all* Reserve bank services" to nonmember banks *as a class*, not to all banks in that class.[4] *Cf. Nelson v. United States*, 40 F.4th 1105, 1115 (10th Cir. 2022) ("The rule against surplusage . . . counsel[s] us to construe 'any statute,' in [28 U.S.C.] § 2412(b), in a different and

---

[4] The fact that the MCA only amended section 342 to *allow* Reserve Banks to accept deposits from nonmember banks, rather than ordering that they "shall" do so, is consistent with reading it as authorizing the provision of services to nonmembers as a class, without mandating that such services be provided to any individual institution.

broader manner than the provision's initial, unadorned reference to 'statute' in order to give meaning to the term 'any.'").[5]

Interpreting Section 248a to require that Reserve Banks grant all master account requests would also be disfavored because the more specific statute is Section 342. Section 342 governs Reserve Bank authority to accept deposits (and thereby provide master accounts and corresponding services) and is in the FRA subchapter on the "Powers and Duties of Reserve Banks," whereas Section 248a does not mention deposits and is in the FRA subchapter concerning *the Board*, which indisputably does not open accounts or provide Reserve Bank services. *Cf. Kay Elec. Co-op. v. City of Newkirk, Okla.*, 647 F.3d 1039, 1044 (10th Cir. 2011) ("a specific statute controls over a general one"); *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013) (provision in Chapter 13 of Bankruptcy Code was more specific provision in context of proceeding

---

[5] Custodia posits a convoluted analogy to a hypothetical statute requiring provision of "all listed services to students with disabilities" when arguing that Section 248a does not apply to nonmember banks as a class. Pet. at 14–15. But the panel articulated a much more apt analogy, wherein if a law school was instructed that admission "shall be available to women who had graduated from college," "that would mean the law school should consider women just as they considered men, but it would not mean that every woman who graduated college and applied got into that law school." Op. at 33 n.16.

15

governed by that chapter); *Banco San Juan Internacional, Inc. v. Fed. Reserve Bank of New York*, 700 F. Supp. 3d 86, 100 (S.D.N.Y. 2023) (Congressional direction for Reserve Banks to provide specific services "would reasonably have been found in the section dealing with the duties and powers of Federal reserve banks and not in the section dealing with fee schedules set by the Board").

**B.    The 2022 NDAA Amendment Provides Additional Support for the Panel's Decision**

Congress enacted legislation in 2022 recognizing that requests for master accounts and services (including services set forth in Section 248a) from a noninsured depository institution—a category encompassing Custodia—may be "rejected." Pub. L. No. 117-263 § 5708, 136 Stat. 2395, 3419 (Dec. 23, 2022) (codified at 12 U.S.C. § 248c(b)(1)). If it were the case that the grant of a master account is purely ministerial, then Congress could have readily clarified that expectation given its clear awareness of the Federal Reserve's practices and the dispute at hand. *See* Op. at 34 n.17. Regardless of the provision's purpose, it would be odd for Congress to contemplate that master account requests by depository institutions may be "rejected" in the newly enacted Section 248c, while ignoring just two sections away (in

16

Section 248a) a purported Congressional mandate that they always be granted.

Moreover, the 2022 Amendment was enacted following longstanding administrative practice that noted the discretionary nature of Reserve Bank authority over master accounts. *See, e.g.*, Operating Circular 1, Account Relationships (Jan. 2, 1998) ¶¶ 2.3, 2.8 (stating that "[a]ll master accounts are subject to Reserve Bank approval," without distinguishing between member or non-member banks, and that the Reserve Bank "may close your master account . . . at any time");[6,7] *Bob Jones Univ. v. United States*, 461 U.S. 574, 599 (1983) ("Congress' awareness of [agency rulings] when enacting other and related legislation make[s] out an unusually strong case of legislative acquiescence in and ratification by implication"). That the

---

[6] *Available at* web.archive.org/web/20000116011948/http://www.frbservices.org/Industry/pdf/Oc1.pdf.

[7] Custodia's argument that that the current Operating Circular, https://www.frbservices.org/binaries/content/assets/crsocms/resources/rules-regulations/090123-operating-circular-1.pdf, should be ignored because it postdates the denial of its master account application, Pet. at 17, wholly misses the point that Operating Circulars have *consistently* shown since 1998 that Reserve Banks have master account discretion.

17

Operating Circular "says nothing about *why* a Reserve Bank can withhold such approval," Pet. at 17 (emphasis added), does nothing to undermine its authority to do so.

Although Custodia relies on post-enactment amicus briefing from the principal sponsor of the bill, *see* Pet. at 15, "post-enactment statements by [] members of Congress . . . do not bear on the meaning of the law," *Ausmus v. Perdue*, 908 F.3d 1248, 1257 n.3 (10th Cir. 2018) (citing *Barber v. Thomas*, 560 U.S. 474, 486 (2010)), and constitute "an extremely hazardous basis for inferring the meaning of a congressional enactment." *Kansas Nat. Res. Coal. v. DOI*, 971 F.3d 1222, 1237 (10th Cir. 2020) (quoting *CPSC v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n.13 (1980)).

## III.  Custodia's Remaining Arguments Lack Merit

Reserve Bank discretion over master accounts does not jeopardize the dual banking system, as described more fully in the merits briefing. Bd. Resp. Br. at 43–49; FRBKC Resp. Br. at 47–54. Custodia wholly ignores that nonmember depository institutions may access the Federal Reserve's payment system through correspondent relationships with entities that already hold a master account. *See* Op. at 10. Neither

18

Wyoming's chartering authority nor that of other states is in jeopardy as a result, as the Wyoming banks have themselves made clear. *See Amicus Curiae* Wyo. Bankers Ass'n Br. at 13–18.

Moreover, contrary to Custodia's protestation, Pet. at 16, the Federal Reserve has consistently and for many decades viewed Reserve Banks as having discretion to deny account access and, more generally, to operate in a manner that aligns with monetary policy and other responsibilities. Multiple Board surveys and minutes dating from 1935 address Reserve Bank authority to decline to open deposit accounts. *See* Bd. Resp. Br. at 21–24. The Board continued to maintain this view of Reserve Bank discretion following the MCA's passage, as evidenced by guidance documents dating to the 1980s. *See, e.g.*, *Policy Statement Regarding Risks on Large-Dollar Wire Transfer Systems*, 50 Fed. Reg. 21,120 at 21,124 (May 22, 1985) (acknowledging Reserve Bank power "to reject funds transferred" for risk-related reasons); 87 Fed. Reg. 51,099, Guidelines for Evaluating Account and Services Requests (Aug. 19, 2022). And Operating Circulars, which are subject to Board review,[8]

---

[8] *See* Federal Reserve Administrative Manual at 1-049 § 13(C), *available at* https://www.governmentattic.org/33docs/FRS-FRAM_2001-2010.pdf (excerpts).

19

issued since 1998 have repeatedly affirmed Reserve Banks' ability to restrict access to master accounts.

Finally, Custodia points to the Federal Reserve's contemplation of a new type of account with heightened controls as a means of counteracting the negative impacts of its absolute entitlement theory. Pet. at 6–7, 12, 15. But pointing to something that does not yet exist and that would be distinct from what Custodia has sought, *i.e.*, an absolute entitlement to a master account irrespective of risk, merely serves to underscore that the Federal Reserve necessarily has discretion over whether and what type of deposit account an entity may be approved to receive, and that such discretion is critical. Custodia's acknowledgement that there may—and indeed *must*—be guardrails to the federal payment system undermines its claim to unfettered access.

## CONCLUSION

For all of the foregoing reasons, the petition for rehearing en banc should be denied.

Dated: January 20, 2026

       Respectfully submitted,

       /s/ Joshua P. Chadwick
       Joshua P. Chadwick
       Assistant General Counsel
       Yvonne F. Mizusawa
       Yonatan Gelblum
       Katherine Pomeroy
       Senior Counsels
       Board of Governors of the
           Federal Reserve System
       20th Street & Constitution
           Avenue, N.W.
       Washington, D.C. 20551
       joshua.p.chadwick@frb.gov
       (202) 263-4835

       *Attorneys for Defendant-Appellee*
       *Federal Reserve Board*

## CERTIFICATE OF COMPLIANCE

I hereby certify:

1.    This document complies with the type-volume limitation of Federal Rules of Appellate Procedure 40(d)(3)(A)–(4) because, excluding the parts of the document exempted by Rule 32(f), this document contains 3,893 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

/s/ Joshua P. Chadwick
Joshua P. Chadwick

*Attorney for Defendant-Appellee*
*Federal Reserve Board*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Joshua P. Chadwick
Joshua P. Chadwick

*Attorney for Defendant-Appellee*
*Federal Reserve Board*