No. 24-8024

# In the United States Court of Appeals for the Tenth Circuit

---

CUSTODIA BANK, INC.,
PLAINTIFF-APPELLANT

*v.*

FEDERAL RESERVE BOARD OF GOVERNORS, ET AL.,
DEFENDANTS-APPELLEES

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(CIV. NO. 22-125; THE HONORABLE SCOTT W. SKAVDAHL,, J.)*

---

**REPLY BRIEF IN SUPPORT OF PETITION FOR REHEARING EN BANC
BY APPELLANT CUSTODIA BANK, INC.**

---

KANNON K. SHANMUGAM
MASHA G. HANSFORD
NATHAN W. RAAB
DAVID T. WONG
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

# ARGUMENT

Despite their best efforts, respondents can say nothing to undermine the exceptional importance of this case. As Custodia explained in its petition, the panel's holding eviscerates States' power to charter their own banks and creates constitutional trouble for the Fed by making regional Reserve Bank presidents "officers of the United States" who have not been properly appointed under the Appointments Clause. Those "extraordinary" consequences easily meet the threshold for en banc review. *See* 10th Cir. R. 40.1(B).

Respondents' attempts to minimize those consequences miss the mark. *First*, respondents all but acknowledge that the panel decision recasts States' chartering authority. *Second*, respondents whistle past the graveyard where the Constitution is concerned, insisting (wrongly) that Custodia forfeited its Appointments Clause arguments and (prematurely) that the panel did not create an Appointments Clause problem. *Third*, on the merits, respondents offer nothing to rehabilitate the panel's reasoning. Custodia's petition for en banc review should be granted.

1.  As Custodia has explained (Pet. 7-9), the panel's decision guts the States' authority to charter their own banks. To move money from place to place, a bank must hold a master account with its local Reserve Bank. *See* Pet. 2; Op. 10. So by holding that the Fed maintains "discretionary" authority over which banks may access Reserve Bank master accounts, *see* Op. 6, the panel

gave Reserve Bank presidents a veto over state chartering decisions: if a Reserve Bank president thinks that a bank should not be allowed to bank—for good reasons, bad reasons, or no reasons—he can deny that bank a master account and thus the ability to perform basic banking functions, all without due process or judicial review. *See* Pet. 8. Whether the panel erred by giving Reserve Bank presidents that "unheralded" power to squash American financial institutions, *see Utility Air Regulatory Group* v. *EPA*, 573 U.S. 302, 324 (2014), is an exceptionally important question that warrants en banc review.

In response, respondents nibble around the edges, offering three reasons that the panel's holding might not be as important as it seems. None withstands scrutiny.

Respondents first contend that banks without master accounts can "access the federal payment system through correspondent banking . . . relationships" and "can use payment services offered by private competitors of the Federal Reserve." FRBKC Resp. 6; Board Resp. 18. But as the Fed well knows and Custodia explained below, those options are not substitutes for master account access. *See* Custodia Br. 13. For one thing, they are expensive. *See id.* For another, they expose banks to operational risks, including the risk that the Fed will exert "regulatory pressure" on correspondent banks to debank those it disfavors. *Id.* at 13-14 n.10 (explaining that the Fed repeat-

2

edly did just that to Custodia's correspondent banks). Thus, as Judge Tymkovich recognized below, "a bank's business is 'effectively crippl[ed]'" without master account access regardless of whether other payment options are nominally available. Diss. Op. 5 (quoting *Fourth Corner Credit Union* v. *Federal Reserve Bank of Kansas City*, 861 F.3d 1052, 1053 (10th Cir. 2017) (opinion of Moritz, J.)).

Next, the Kansas City Reserve Bank suggests that—despite the panel's opinion—its master account decisions might be reviewable under the APA's arbitrary-and-capricious standard. FRBKC Resp. 12-13. But the Federal Reserve *Board's* brief does not suggest that review is available. *See* Board Resp. 18-20. And for good reason: FRBKC's gambit departs from the Fed's position in other litigation, where Reserve Banks have insisted that their master account decisions are categorically unreviewable. *See* Diss. Op. 23 (describing the San Francisco Reserve Bank's position in the Ninth Circuit's *PayServices* case); FRBNY Br. at 37-48, *Banco San Juan Internacional, Inc.* v. *Federal Reserve Bank of N.Y.*, No. 25-1144 (2d Cir. July 30, 2025). Likewise, in district court, FRBKC emphatically denied that it was subject to the APA. *See* J.A. 181-185.

Even setting aside respondents' inconsistency, APA review would do little to confine the Fed's discretion in this context. Arbitrary-and-capricious

3

review is always "highly deferential." *Ecology Center, Inc.* v. *U.S. Forest Service*, 451 F.3d 1183, 1188 (10th Cir. 2006) (citation omitted). And it would be particularly lax here, where—if respondents are to be believed—no statute limits Reserve Banks' discretion over master account access. Thus, in Judge Tymkovich's words, "[t]his case presents a choice between a nondiscretionary entitlement for Custodia . . . and unreviewable discretion for the Kansas City Fed." Diss. Op. 22. Except, of course, the Fed would have ample discretion to manage the risks associated with specific master account features even under Custodia's reading of the Monetary Control Act—as one Fed official recently admitted. *See* Interview with Christopher J. Waller by Eleanor Terrett at 8:05-8:45 (Oct. 21, 2025) <tinyurl.com/WallerInterview>.

Finally, on federalism, respondents emphasize that "a State's decision to charter an entity has never been understood as granting that entity unfettered access to the federal payment system." FRBKC Resp. 14-15. But Custodia does not want "unfettered" access to anything: for instance, it would happily accept a master account on conditions that limited its access to credit. *See* Pet. 6. What Custodia wants is *some* way of accessing a master account—and thus the American payments system. Nothing in "our Nation's banking tradition," FRBKC Resp. 14, suggests that the Fed can choke off a bank's access to crucial payment rails by fiat. *See* Pet. 16-17; *Fourth Corner*, 861 F.3d at 1070 (opinion of Bacharach, J.).

2. As Custodia has also explained (Pet. 9-12), en banc review is warranted to address the serious constitutional problems created by the panel's holding. Respondents' submissions do not allay those concerns.

*First*, respondents contend that Custodia forfeited its Appointments Clause arguments by failing to raise them before the panel. *See* FRBKC Resp. 16-17; Board Resp. 6-10. But Custodia's opening brief below could not have been clearer: "The adjudication of master account applications is an exercise of 'significant authority pursuant to the laws of the United States' that only an 'Officer of the United States,' properly appointed under the Appointments Clause, may hold." Custodia Br. 56; *see also* Digital Chamber of Commerce Br. at 15-21. The Board and FRBKC emphasize (Board Resp. 8-10, FRBKC Resp. 16-17) Custodia's occasional references to "Reserve Banks" rather than "Reserve Bank *presidents*," but those references did not tacitly limit its argument—which by its terms applied to all the relevant decisionmakers—to "directors of Reserve Banks." Perhaps most importantly, having properly presented its statutory claim under 12 U.S.C. § 248a below, Custodia is free to raise new arguments in support of that claim now. *See* Pet. 11-12 (citing *Lebron* v. *National Railroad Passenger Corp.*, 513 U.S. 374, 379 (1995)).

That principle applies with particular force here because, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent

5

power to identify and apply the proper construction of governing law." *Kamen v. Kemper*, 500 U.S. 90, 99 (1991). Hence, regardless of Custodia's arguments, the panel "was not free" to interpret the Monetary Control Act incorrectly—*i.e.*, in a way that created unnecessary constitutional problems. *Id.* Neither *Zobrest v. Catalina Foothills School District*, 509 U.S. 1 (1993), nor *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901 (10th Cir. 2015), is to the contrary. In *Zobrest*, the Supreme Court did not ignore constitutional arguments that could have altered its reading of a statute; rather, it declined to revive a forfeited *statutory* argument so that it could avoid a constitutional question. *See* 509 U.S. at 7. And in *Grynberg*, there was no indication that—by failing to address a plaintiff's belated constitutional arguments—the panel risked adopting an incorrect construction of governing law. *See* 805 F.3d at 908 & n.5.

*Second*, the Board emphasizes that Reserve Bank presidents already exercise "discretionary authority" over "whether to advance funds to depository institutions." Board Resp. 2-3. The idea, it seems, is that the presidents might be in trouble regardless of the panel's decision. But the power to give a Fed member bank a brief advance on a secured promissory note, 12 U.S.C. § 347, is fundamentally different from the power to bar State-chartered banks from our Nation's payments system. The former, but not the latter, is a classic banking function that "can . . . be performed by private individuals."

6

*Melcher* v. *Federal Open Market Committee*, 644 F. Supp. 510, 523 (D.D.C. 1986). Notably, FRBKC does not endorse the Board's argument that its president already exercises an abundance of discretionary authority.

*Third*, respondents race to litigate Custodia's Appointments Clause arguments on their merits. But that is premature: for now, the question is only whether the constitutional problem the panel created is sufficiently serious to warrant review by the full court. Plus, respondents' arguments fall short on their own terms.

Respondents begin by suggesting that authority over master account access "does not implicate the Appointments Clause" because it accords with "longstanding historical practice under the First and Second Bank[s] of the United States." Board Resp. 4; *cf.* FRBKC Resp. 19. But respondents provide no evidence that the First and Second Banks gatekept the Nation's antebellum payments system in any manner comparable to the Fed today—*i.e.*, that eighteenth-century banks needed an account at the First Bank of the United States to make payments in specie.

Next, respondents emphasize that the Board must ratify the appointment of every Reserve Bank's president. Board Resp. 4-5; FRBKC Resp. 19. That requirement, they say, means that the Board is deemed to appoint the presidents under *Free Enterprise Fund* v. *Public Company Accounting Oversight Board*, 561 U.S. 477 (2010). But respondents' ratification rule applies

7

when a principal officer approves one "inferior officer's appointment of another inferior officer." *Kennedy* v. *Braidwood Management, Inc.*, 606 U.S. 748, 785 (2025). And here, a principal officer does not approve one inferior officer's appointment of another: Reserve Bank presidents are selected by their banks' Class B and Class C directors, 12 U.S.C. § 341, and Class B directors are not inferior officers, *see id.* § 304. So the Board's role in ratifying the appointment of Reserve Bank presidents does not fix respondents' Article II problem.

At a minimum, respondents contend, Reserve Bank presidents cannot be "principal" officers because they are subject to the Board's general supervisory power. Board Resp. 5-6; FRBKC Resp. 19-20. But the Supreme Court has specifically rejected the proposition that general "administrative oversight" of this sort can render a principal officer inferior. *United States* v. *Arthrex, Inc.*, 594 U.S. 1, 14 (2021). Likewise, without more, it is not enough that Reserve Bank presidents are removable by the Board. *See Edmond* v. *United States*, 520 U.S. 651, 660-661 (1997) (treating removability as only one of several factors governing principal-officer status).

3.     Finally, as Custodia has explained (Pet. 12-18), the panel's decision was incorrect as a matter of statutory interpretation. Respondents' counterarguments are unpersuasive. On the text, respondents cannot surmount the Monetary Control Act's mandatory language: the Federal Reserve "*shall*"

8

provide its payments services to "nonmember depository institution[s]," meaning "*any* bank which is eligible" to apply for FDIC insurance. 12 U.S.C. §§ 248a(c)(2), 461(b)(1)(A)(i) (emphases added); *see also* Wyoming Amicus Br. 3-11 (explaining the tension between the panel's holding and *National Association of Industrial Bankers* v. *Weiser*, 159 F.4th 694 (10th Cir. 2025)). And on statutory context, respondents cannot plausibly contend that Congress gave the Fed the kingly power to choke off banks' access to the payments system—a key public good. *Cf. Utility Air Regulatory Group*, 573 U.S. at 324.

In any event, at this stage, Custodia need not definitively demonstrate that the panel erred. It need only show that the question presented is worthy of en banc review. Custodia respectfully submits that it is.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM
MASHA G. HANSFORD
NATHAN W. RAAB
DAVID T. WONG
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

JANUARY 27, 2026

# CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for petitioner Custodia Bank, Inc. and a member of the Bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 5(c)(1) and 32(c)(2), that the attached Reply Brief in Support of Petition for Rehearing En Banc by Appellant is proportionately spaced, has a typeface of 14 points or more, and contains 1949 words.

/s/ Kannon K. Shanmugam  
KANNON K. SHANMUGAM

JANUARY 27, 2026

## CERTIFICATE OF SERVICE

I, Kannon K. Shanmugam, counsel for petitioner Custodia Bank, Inc. and a member of the Bar of this Court, certify that, on January 27, 2026, a copy of the attached Reply Brief in Support of Petition for Rehearing En Banc by Appellant was filed through the Court's electronic filing system. I further certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

/s/ Kannon K. Shanmugam<br>
KANNON K. SHANMUGAM