Case No. 24-8024

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

### CUSTODIA BANK, INC.,

Appellant,

v.

### FEDERAL RESERVE BOARD OF GOVERNORS et al.,

Appellees.

On Appeal from the U. S. District Court for the District of Wyoming

The Honorable Scott W. Skavdahl, District Judge

District Court No. 1:22-CV-125-SWS

## JOINT APPENDIX

Joshua P. Chadwick
BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM
20th Street & Constitution Ave. NW
Washington, DC 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Appellee Federal
Reserve Board*

Jeffrey S. Bucholtz
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
(202) 737-0500
jbucholtz@kslaw.com

*Counsel for Appellee Federal
Reserve Bank of Kansas City*

Michelle S. Kallen
JENNER & BLOCK LLP
1099 New York Ave. NW,
Suite 900
Washington, DC, 20001-4412
Telephone: 202-639-6000
MKallen@jenner.com

*Counsel for Appellant*

Yvonne F. Mizusawa
Yonatan Gelblum
Katherine Pomeroy
BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM
20th Street and Constitution Ave.
NW
Washington, DC 20551
(202) 263-4835
yvonne.f.mizusawa@frb.gov
yonatan.gelblum@frb.gov
katherine.pomeroy@frb.gov

*Counsel for Appellee Federal
Reserve Board*

Andrew Z. Michaelson
KING & SPALDING LLP
1185 Ave. of the Americas, 34th Fl.
New York, NY 10036
(212) 556-2100
amichaelson@kslaw.com

Billie LM Addleman
Erin E. Berry
HIRST APPLEGATE, LLP
PO Box 1083
Cheyenne, WY 82003
(307) 632-0541
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

Christine M. Carletta
E. Caroline Freeman
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
(202) 737-0500
ccarletta@kslaw.com
cfreeman@kslaw.com

Ian Heath Gershengorn
Laurel L. Rimon
Emanuel Powell III
Maria LaBella
JENNER & BLOCK LLP
1099 New York Ave. NW,
Suite 900
Washington, DC, 20001-4412
Telephone: 202-639-6000
IGershengorn@jenner.com
LRimon@jenner.com
EPowell@jenner.com
MLaBella@jenner.com

Scott E. Ortiz
WILLIAMS, PORTER, DAY & NEVILLE,
P.C.
159 No. Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602
Telephone: 307-265-0700
sortiz@wpdn.net

Ryan Scarborough
Jamie Wolfe
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW,
Washington, DC 20024
Telephone: 202-434-5173
rscarborough@wc.com
jwolfe@wc.com

*Counsel for Appellant*

Jared Lax
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
(720) 535-2300
jlax@kslaw.com

*Counsel for Appellee Federal*
*Reserve Bank of Kansas City*

# TABLE OF CONTENTS

## Volume I of X

District Court Docket Report, *Custodia Bank Inc. v. Federal Reserve Board of Governors et al,* No. 1:22-cv-00125 (D. Wyo.) .................................................................. J.A.1

Complaint (D. Wyo. June 7, 2022), ECF No. 1 ............................... J.A.41

Exhibit 1 to Complaint (D. Wyo. June 7, 2022), ECF No. 1-2 ......... J.A.86

Defendant Board of Governors of the Federal Reserve System's Motion to Dismiss Complaint (D. Wyo. Aug. 16, 2022) ECF No. 48 .................................................... J.A.88

Defendant Board of Governors of the Federal Reserve System's Memorandum of Points and Authorities in Support of Its Motion to Dismiss (D. Wyo. Aug. 16, 2022) ECF No. 49 ............................................................... J.A.91

Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss Complaint (D. Wyo. Aug. 16, 2022) ECF No. 50..... J.A.153

Defendant Federal Reserve Bank of Kansas City's Memorandum of Points and Authorities in Support of Its Motion to Dismiss (D. Wyo. Aug. 16, 2022) ECF No. 51 ...... J.A.157

## Volume II of X

Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's Complaint (D. Wyo. Sept. 13, 2022) ECF No. 58 .......................................................... J.A.216

Defendant Board of Governors of the Federal Reserve System's Reply in Support of Its Motion to Dismiss Complaint (D. Wyo. Oct. 4, 2022) ECF No. 96 .................... J.A.269

Defendant Federal Reserve Bank of Kansas City's Reply in Support of Its Motion to Dismiss (D. Wyo. Oct. 4, 2022) ECF No. 97 .......................................................... J.A.304

Plaintiff Custodia Bank, Inc.'s Notice of Submission of Supplemental Authority (D. Wyo. Oct. 12, 2022) ECF No. 98 .................................................................................... J.A.340

Defendant Board of Governors of the Federal Reserve System's Response to Plaintiff's Notice and Submission of Supplemental Authority (D. Wyo. Oct. 19, 2022) ECF No. 99 .................................................................................... J.A.353

Order Granting in Part and Denying in Part Defendants' 12(b)(6) Motions to Dismiss Complaint (D. Wyo. Nov. 11, 2022) ECF No. 102 ............................................................ J.A.359

Joint Motion of Defendants Federal Reserve Bank of Kansas City and Federal Reserve Board of Governors to Dismiss the Complaint as Moot (D. Wyo. Jan. 27, 2023) ECF No. 116 .................................................................................. J.A.397

First Amended Complaint (D. Wyo. Feb. 28, 2023) ECF No. 121 .................................................................................. J.A.401

Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss First Amended Complaint (D. Wyo. Mar. 28, 2023) ECF No. 124 ............................................................ J.A.438

## Volume III of X

Defendant Board of Governors of the Federal Reserve System's Motion to Dismiss the First Amended Complaint (D. Wyo. Mar. 28, 2023) ECF No. 126 ............... J.A.459

Defendant Board of Governors of the Federal Reserve System's Memorandum of Points and Authorities in Support of Its Motion to Dismiss the First Amended Complaint (D. Wyo. Mar. 28, 2023) ECF No. 127 .............. J.A.462

Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (D. Wyo. Apr. 11, 2023) ECF No. 135 ........................................ J.A.497

Brief of Amicus Curiae Former Senator Patrick J. Toomey in Support of Neither Party (D. Wyo. Apr. 20, 2023) ECF No. 151 ................................................................. J.A.537

Defendant Federal Reserve Bank of Kansas City's Reply in Support of Its Motion to Dismiss First Amended Complaint (D. Wyo. May 2, 2023) ECF No. 159 .................. J.A.559

Defendant Board of Governors of the Federal Reserve System's Reply in Support of Its Motion to Dismiss the Amended Complaint (D. Wyo. May 2, 2023) ECF No. 160 ........................................................................... J.A.572

Order on Defendants' Motions to Dismiss First Amended Complaint (D. Wyo. June 8, 2023) ECF No. 164 ................. J.A.601

Defendant Federal Reserve Bank of Kansas City's Answer to Custodia's First Amended Complaint (D. Wyo. June 22, 2023) ECF No. 166 ............................................................. J.A.617

Defendant Board of Governors of the Federal Reserve System's Notice of Lodging of the Administrative Record (D. Wyo. Aug. 21, 2023) ECF No. 178 .................................. J.A.641

Second Amended Scheduling Order (D. Wyo. Nov. 13, 2023) ECF No. 211 ....................................................................... J.A.644

Order Granting Joint Motion and Stipulation to Align and Consolidate APA and Summary Judgment Briefing (D. Wyo. Nov. 28, 2023) ECF No. 220 ........................................ J.A.656

Plaintiff Custodia Bank, Inc.'s Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Dec. 22, 2023) ECF No. 238 ............................................................. J.A.657

Proposed Order (D. Wyo. Dec. 22, 2023) ECF No. 238-1 .............. J.A.660

**Volume IV of X**

Plaintiff Custodia Bank, Inc.'s Omnibus Brief in Support of Its Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Dec. 22, 2023) ECF No. 239 ................................................................................ J.A.661

Declaration of Ryan Scarborough in Support of Plaintiff Custodia Bank, Inc.'s Omnibus Brief in Support of Its Petition for Review on Its APA Claim and Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Dec. 22, 2023) ECF No. 240 ................................................................................ J.A.725

Exhibit A, Peter Conti-Brown's Expert Report (Oct. 20, 2023) ECF No. 240-1 ..................................................... J.A.740

Exhibit C, Excerpts from Federal Reserve Bank of Kansas City's 30(b)(6) Deposition (Nov. 16, 2023) ECF No. 240-3 ................................................................................ J.A.811

Exhibit E, Excerpts from Deposition of Tara Humston (Nov. 3, 2023) ECF No. 240-5 ..................................... J.A.858

Exhibit I, Letter from The Federal Reserve Bank of Kansas City to Chuck Thompson (Jan. 27, 2022) ECF No. 240-9 ................................................................................ J.A.879

Exhibit J, Excerpts from Deposition of Esther George (Nov. 9, 2023) ECF No. 240-10 ..................................... J.A.881

Exhibit K, Excerpts from Deposition of Jackie Nugent (Nov. 15, 2023) ECF No. 240-11 ................................. J.A.912

### Volume V of X

Exhibit O, Email from Caitlin Long with the subject line "Re: Interest data points for you" (Jan. 29, 2021) ECF No. 240-15 ................................................................ J.A.919

Exhibit Z, Katie S. Cox's Expert Report (Oct. 25, 2023) ECF No. 240-26 .......................................................... J.A.921

iv

Exhibit AE, Excerpts from Deposition of Caitlin Long (Nov. 29, 2023) ECF No. 240-31 .................................................... J.A.971

Exhibit AK, Letter from The Federal Reserve Bank of Kansas City to Caitlin Long (Aug. 19, 2022) ECF No. 240-37 ......... J.A.978

Exhibit AL, Email from Judith Hazen with the subject line "RE: Custodia Memo to Esther" (Dec. 6, 2022) ECF No. 240-38 .................................................................................... J.A.983

Exhibit AN, Email from Jeff Imgarten with the subject line "RE: Notes from 1/26 Meeting with the Board" (Feb. 28, 2022) ECF No. 240-40 ......................................................... J.A.986

Exhibit AS, S-2677 Letter from the Board of Governors of the Federal Reserve System to the President and First Vice President of each Federal Reserve Bank (Jan. 17, 2023) ECF No. 240-45 .................................................................... J.A.988

Exhibit AU, Katie S. Cox's Supplemental Expert Report (Dec. 4, 2023) ECF No. 240-47 ...................................................J.A.1043

Exhibit BA, List of individuals from the Board who had contact with individuals from the Federal Reserve Bank of Kansas City about Custodia's master account, excerpted from the binder used by Judith Hazen to prepare as the Federal Reserve Bank of Kansas City's 30(b)(6) deposition witness, ECF No. 240-53 .....................J.A.1051

Exhibit BB, List of individuals involved with non-traditional accounts, like Special Purpose Depository Institutions, while working at the Federal Reserve Board of Governors, created during the Federal Reserve Bank of Kansas City's 30(b)(6) deposition, ECF No. 240-54 ............J.A.1056

Exhibit BL, Email from Jeff Imgarten with the subject line "Initial Draft of Commitments/Conditions for Custodia Bank-Supplemental Information" (Nov. 14, 2022 ) ECF No. 240-64 .........................................................................J.A.1058

Exhibit BM, Potential Membership Application Commitments Summary, ECF No. 240-65 ........................J.A.1061

Exhibit BO, Email from Jeff Imgarten with the subject line "RE: Copy of Custodia Briefing Memo?" (Nov. 27, 2022) ECF No. 240-67 ..................................................................J.A.1062

Exhibit BP, Short Message Report (Nov. 30, 2022) ECF No. 240-68 ..................................................................J.A.1065

Exhibit BQ, Email from Jason Hinkle with the subject line "RE: Draft Recommendation Memo" (Jan. 9, 2023) ECF No. 240-69 ..........................................................................J.A.1068

Exhibit BS, Draft Executive Summary to Esther George with the subject line "Custodia Bank, Inc. (fka Avanti Bank & Trust) Master Account Recommendation" (Jan. 2023) ECF No. 240-71 ..................................................................J.A.1071

Exhibit BW, Short Message Report (Jan. 26, 2022) ECF No. 240-75 ..................................................................J.A.1081

Exhibit BY, Email from Matthew Malloy with the subject line "RE: Draft Recommendation Memo" (Jan. 10, 2023) ECF No. 240-77 ..........................................................................J.A.1087

Exhibit BZ, Draft Executive Summary to Esther George with the subject line "Custodia Bank, Inc. (fka Avanti Bank & Trust) Master Account Recommendation" (Jan. 2023) ECF No. 240-78 ..................................................................J.A.1089

Exhibit CB, Email from Judith Hazen with the subject line "Custodia Bank Master Account Request" (Jan. 24, 2023) ECF No. 240-80 ......................................................J.A.1099

Exhibit CC, Email from Matthew Eichner with the subject line "Custodia response: S-Letter - 2667 with no concerns identified" (Jan. 26, 2023) ECF No. 240-81 .........J.A.1101

vi

Exhibit CD, Letter from Caitlin Long to the Office of the
  Inspector General of the Federal Reserve Board of
  Governors (Mar. 8, 2023) ECF No. 240-82 .........................J.A.1103

Exhibit CE, Email from Amy LaFave with the subject line
  "Correspondence from Federal Reserve Bank of Kansas
  City President Esther George" (Jan. 27, 2023) ECF No.
  240-83 ..................................................................................J.A.1117

Exhibit CF, Letter from The Federal Reserve Bank of Kansas
  City to Caitlin Long (Jan. 27, 2022) ECF No. 240-84 ........J.A.1119

Order Granting Unopposed Motion to Amend the Scheduling
  Order (D. Wyo. Dec. 26, 2023) ECF No. 241 .......................J.A.1127

Amicus Curiae Brief of the State of Wyoming (D. Wy. Jan. 18,
  2024) ECF No. 251 ...........................................................J.A.1129

## Volume VI of X

Amici Curiae Brief in Support of Plaintiff filed by Amicus
  Parties Blockchain Association, Payment System
  Scholars (D. Wy. Jan. 19, 2024) ECF No. 257 ...................J.A.1137

Amici Curiae Brief in Support of Plaintiff's Motion for
  Judgment as a Matter of Law filed by Amicus Parties
  United States House of Representatives Financial
  Services Committee Members, United States Senate
  Banking, Housing and Urban Affairs Committee
  Members (D. Wy. Jan. 19, 2024) ECF No. 259 ...................J.A.1173

Defendant Board of Governors of the Federal Reserve
  System's Opposition to Plaintiff's Petition for
  Administrative Procedure Act Review (D. Wyo. Jan. 26,
  2024) ECF No. 271 ...........................................................J.A.1200

Federal Reserve Bank of Kansas City's Cross-Motion for
  Summary Judgment (D. Wyo. Jan. 26, 2024) ECF No.
  272 ..................................................................................J.A.1257

Defendant Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Petition for Review and Motion for Judgment as a Matter of Law (D. Wyo. Feb. 2, 2024) ECF No. 282 ...J.A.1260

Declaration of Andrew Michaelson in Support of Defendant Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Petition for Review and Motion for Judgment as a Matter of Law (D. Wyo. Feb. 2, 2024) ECF No. 283 ..........J.A.1318

Amicus Brief in Support of Defendants filed by Amicus David Zaring (D. Wy. Feb. 9, 2024) ECF No. 286 .......................J.A.1331

**Volume VII of X**

Plaintiff Custodia Bank, Inc.'s Omnibus Opposition to the Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Reply Brief in Support of Custodia's Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Feb. 21, 2024) ECF No. 299 .....................................................................J.A.1349

Declaration of Ryan Scarborough in Support of Plaintiff Custodia Bank, Inc.'s Omnibus Opposition to the Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Reply Brief in Support of Custodia's Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Feb. 21, 2024) ECF No. 300 .....................................................................J.A.1402

Exhibit CX, Excerpts from the deposition of Peter Conti-Brown (Dec. 14, 2023) ECF No. 300-7 ...............................J.A.1407

Exhibit CY, Excerpts from the deposition of Zev Shimko (Nov. 30, 2023) ECF No. 300-8 ....................................................J.A.1414

Exhibit DF, Excerpts from the deposition of Katie Cox (Dec. 19, 2023) ECF No. 300-15 ....................................................J.A.1418

Defendant Federal Reserve Bank of Kansas City's Reply in Support of Its Cross-Motion for Summary Judgment (D. Wyo. Feb. 27, 2024) ECF No. 313 ......................................J.A.1423

Order on Dispositive Motions (D. Wyo. Mar. 29, 2024) ECF No. 317 ................................................................................J.A.1449

Judgment (D. Wyo. Mar. 29, 2024) ECF No. 318 .......................J.A.1476

Plaintiff Custodia Bank, Inc.'s Notice of Appeal (D. Wyo. Apr. 26, 2024) ECF No. 321 ........................................................J.A.1477

## UNDER SEAL
## Volume VIII of X

Plaintiff Custodia Bank, Inc.'s Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Dec. 20, 2023) ECF No. 233 ..........................................................J.A.1480

Proposed Order (D. Wyo. Dec. 20, 2023) ECF No. 233-1 .............J.A.1483

Plaintiff Custodia Bank, Inc.'s Omnibus Brief in Support of Its Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Dec. 20, 2023) ECF No. 234 ........................................................................................J.A.1484

Declaration of Ryan Scarborough in Support of Plaintiff Custodia Bank, Inc.'s Omnibus Brief in Support of Its Petition for Review on Its APA Claim and Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Dec. 20, 2023) ECF No. 236 ........................................................................................J.A.1548

Exhibit A, Peter Conti-Brown's Expert Report (Oct. 20, 2023) ECF No. 236-1 ..................................................................J.A.1563

Exhibit C, Excerpts from Federal Reserve Bank of Kansas City's 30(b)(6) Deposition (Nov. 16, 2023) ECF No. 236-3 ........................................................................ J.A.1634

Exhibit E, Excerpts from Deposition of Tara Humston (Nov. 3, 2023) ECF No. 236-5 ....................................... J.A.1681

Exhibit I, Letter from The Federal Reserve Bank of Kansas City to Chuck Thompson (Jan. 27, 2022) ECF No. 236-9 ........................................................................ J.A.1702

### Volume IX of X

Exhibit J, Excerpts from Deposition of Esther George (Nov. 9, 2023) ECF No. 236-10 ...................................... J.A.1704

Exhibit K, Excerpts from Deposition of Jackie Nugent (Nov. 15, 2023) ECF No. 236-11 ................................... J.A.1735

Exhibit O, Email from Caitlin Long with the subject line "Re: Interest data points for you" (Jan. 29, 2021) ECF No. 236-15 .................................................................. J.A.1742

Exhibit Z, Katie S. Cox's Expert Report (Oct. 25, 2023) ECF No. 236-26 ........................................................ J.A.1744

Exhibit AE, Excerpts from Deposition of Caitlin Long (Nov. 29, 2023) ECF No. 236-31 ................................... J.A.1794

Exhibit AK, Letter from The Federal Reserve Bank of Kansas City to Caitlin Long (Aug. 19, 2022) ECF No. 236-37 ........ J.A.1801

Exhibit AL, Email from Judith Hazen with the subject line "RE: Custodia Memo to Esther" (Dec. 6, 2022) ECF No. 236-38 .................................................................. J.A.1806

Exhibit AN, Email from Jeff Imgarten with the subject line "RE: Notes from 1/26 Meeting with the Board" (Feb. 28, 2022) ECF No. 236-40 ...................................... J.A.1809

Exhibit AS, S-2677 Letter from the Board of Governors of the Federal Reserve System to the President and First Vice President of each Federal Reserve Bank (Jan. 17, 2023) ECF No. 236-45 ..................................................................J.A.1811

Exhibit AU, Katie S. Cox's Supplemental Expert Report (Dec. 4, 2023) ECF No. 236-47 .....................................................J.A.1866

Exhibit BA, List of individuals from the Board who had contact with individuals from the Federal Reserve Bank of Kansas City about Custodia's master account, excerpted from the binder used by Judith Hazen to prepare as the Federal Reserve Bank of Kansas City's 30(b)(6) deposition witness, ECF No. 236-53 .....................J.A.1874

Exhibit BB, List of individuals involved with non-traditional accounts, like Special Purpose Depository Institutions, while working at the Federal Reserve Board of Governors, created during the Federal Reserve Bank of Kansas City's 30(b)(6) deposition, ECF No. 236-54 ............J.A.1879

Exhibit BL, Email from Jeff Imgarten with the subject line "Initial Draft of Commitments/Conditions for Custodia Bank-Supplemental Information" (Nov. 14, 2022 ) ECF No. 236-64 ........................................................................J.A.1881

Exhibit BM, Potential Membership Application Commitments Summary, ECF No. 236-65 .........................J.A.1884

Exhibit BO, Email from Jeff Imgarten with the subject line "RE: Copy of Custodia Briefing Memo?" (Nov. 27, 2022) ECF No. 236-67 ..................................................................J.A.1893

Exhibit BP, Short Message Report (Nov. 30, 2022) ECF No. 236-68 ................................................................................J.A.1896

Exhibit BQ, Email from Jason Hinkle with the subject line "RE: Draft Recommendation Memo" (Jan. 9, 2023) ECF No. 236-69 ........................................................................J.A.1899

Exhibit BS, Draft Executive Summary to Esther George with the subject line "Custodia Bank, Inc. (fka Avanti Bank & Trust) Master Account Recommendation" (Jan. 2023) ECF No. 236-71 ...................................................................J.A.1902

Exhibit BW, Short Message Report (Jan. 26, 2022) ECF No. 236-75 ...................................................................J.A.1912

Exhibit BY, Email from Matthew Malloy with the subject line "RE: Draft Recommendation Memo" (Jan. 10, 2023) ECF No. 236-77 ...................................................................J.A.1918

Exhibit BZ, Draft Executive Summary to Esther George with the subject line "Custodia Bank, Inc. (fka Avanti Bank & Trust) Master Account Recommendation" (Jan. 2023) ECF No. 236-78 ...................................................................J.A.1920

Exhibit CB, Email from Judith Hazen with the subject line "Custodia Bank Master Account Request" (Jan. 24, 2023) ECF No. 236-80 ...................................................................J.A.1930

Exhibit CD, Letter from Caitlin Long to the Office of the Inspector General of the Federal Reserve Board of Governors (Mar. 8, 2023) ECF No. 236-82 ...................................................................J.A.1932

Exhibit CE, Email from Amy LaFave with the subject line "Correspondence from Federal Reserve Bank of Kansas City President Esther George" (Jan. 27, 2023) ECF No. 236-83 ...................................................................J.A.1946

Exhibit CF, Letter from The Federal Reserve Bank of Kansas City to Caitlin Long (Jan. 27, 2022) ECF No. 236-84 ........J.A.1948

### Volume X of X

Defendant Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Petition for Review and Motion for Judgment as a Matter of Law (D. Wyo. Jan. 26, 2024) ECF No. 273 ...................................................................J.A.1956

Declaration of Andrew Michaelson in Support of Defendant Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Petition for Review and Motion for Judgment as a Matter of Law (D. Wyo. Jan. 26, 2024) ECF No. 274 .........J.A.2014

Errata to ECF No. 274 (D. Wyo. Feb. 2, 2024) ECF No. 277 ......J.A.2027

Plaintiff Custodia Bank, Inc.'s Omnibus Opposition to the Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Reply Brief in Support of Custodia's Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Feb. 16, 2024) ECF No. 295 ....................................................................J.A.2029

Declaration of Ryan Scarborough in Support of Plaintiff Custodia Bank, Inc.'s Omnibus Opposition to the Federal Reserve Bank of Kansas City's Cross-Motion for Summary Judgment and Reply Brief in Support of Custodia's Petition for Review on Its APA Claim and Its Motion for Judgment as a Matter of Law on Its Statutory Mandamus Claim (D. Wyo. Feb. 16, 2024) ECF No. 296 ....................................................................J.A.2082

Exhibit CX, Excerpts from the deposition of Peter Conti-Brown (Dec. 14, 2023) ECF No. 296-7 ...............................J.A.2087

Exhibit CY, Excerpts from the deposition of Zev Shimko (Nov. 30, 2023) ECF No. 296-8 ....................................................J.A.2094

Exhibit DF, Excerpts from the deposition of Katie Cox (Dec. 19, 2023) ECF No. 296-15 ..................................................J.A.2098

Defendant Federal Reserve Bank of Kansas City's Reply in Support of Its Cross-Motion for Summary Judgment (D. Wyo. Feb. 23, 2024) ECF No. 310 ......................................J.A.2103

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 27, 2024, I filed a true and correct copy of the foregoing with the Clerk of the United States Court of Appeals for the Tenth Circuit by using the appellate case filing CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Michelle S. Kallen
Michelle S. Kallen

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that (1) all required privacy redactions have been made and (2) any paper copies of this document submitted to the Court will be identical copies of the version electronically filed.

/s/ Michelle S. Kallen
Michelle S. Kallen

# U.S. District Court
## District of Wyoming (Casper)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00125-SWS

| | |
|---|---|
| Custodia Bank Inc v. Federal Reserve Board of Governors et al | Date Filed: 06/07/2022 |
| Assigned to: Honorable Scott W Skavdahl | Date Terminated: 03/29/2024 |
| Referred to: US Magistrate Judge Stephanie A Hambrick | Jury Demand: None |
| Case in other court: USCA 10th Circuit, 24-08024 | Nature of Suit: 899 Other Statutes: |
| Cause: 05:706(2) Administrative Procedures Act | Administrative Procedures Act/Review or |
| | Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Custodia Bank Inc**                    represented by **John K Villa**
JOHN K VILLA
680 Maine Avenue SW
Washington, DC 20024
202-434-5117
Email: jvilla@wc.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Thomas Scarborough**
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
202-434-5173
Fax: 202-434-5029
Email: rscarborough@wc.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah M. Harris**
Williams & Connolly
680 Maine Avenue SW
Washington, DC 20024
202-434-5599
Fax: 202-434-5029
Email: sharris@wc.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ian Swenson**
WILLIAMS & CONNOLLY

**J.A.1**

680 Maine Ave. SW
Ste 452
Washington, DC 20024
202-434-5529
Email: iswenson@wc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie Wolfe**
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
202-434-5766
Email: jwolfe@wc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Weinberger**
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
202-434-5953
Email: lweinberger@wc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Russell Meir Mendelson**
WILLIAMS & CONNOLLY
680 Maine Ave SW
Washington, DC 20024
202-434-5668
Email: rmendelson@wc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Whitney D Hermandorfer**
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
202-434-5112
Fax: 202-434-5029
Email: whitney.hermandorfer@ag.tn.gov
*TERMINATED: 08/21/2023*
*PRO HAC VICE*

**Scott E Ortiz**
WILLIAMS PORTER DAY & NEVILLE
159 North Wolcott, Suite 400
P O Box 10700
Casper, WY 82602
307/265-0700
Fax: 307/266-2306
Email: sortiz@wpdn.net
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Federal Reserve Board of Governors** | represented by | **Joshua Paul Chadwick** |

Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, NW
Washington, DC 20551
202-263-4835
Email: joshua.p.chadwick@frb.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine Pomeroy**
Board of Governors of the Federal Reserve System
Litigation, Enforcement, and System Matters
20th Street and Constitution Avenue NW
Washington, DC 20551
202-912-4329
Email: katherine.pomeroy@frb.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yonatan Gelblum**
Board of Governors of the Federal Reserve System
20th Street & Constitution Avenue NW
Mailstop I-4312
Washington, DC 20551
202-452-2046
Email: yonatan.gelblum@frb.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**C Levi Martin**
UNITED STATES ATTORNEYS OFFICE
PO Box 668
Cheyenne, WY 82003-0668
307/772-2124
Fax: 307/772-2123
Email: christopher.martin@usdoj.gov
*TERMINATED: 08/01/2022*

**Yvonne Facchina Mizusawa**
Board of Governors of the Federal Reserve System
20th Street and Constitution Ave., N.W.
Washington, DC 20551

202-452-3436
Fax: 202-736-5615
Email: yvonne.f.mizusawa@frb.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Federal Reserve Bank of Kansas City**          represented by     **Andrew Z. Michaelson**
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
212-790-5358
Fax: 212-556-2222
Email: amichaelson@kslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Angela Tarasi**
KING & SPAULDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
720-535-2319
Fax: 720-535-2400
Email: atarasi@kslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Billie L M Addleman**
HIRST APPLEGATE LLP
1720 Carey Avenue, Suite 400
PO Box 1083
Cheyenne, WY 82003-1083
307/632-0541
Fax: 307/632-4999
Email: baddleman@hirstapplegate.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Carletta**
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Ste 200
20006
Washington, DC 20006
202-626-2997
Email: ccarletta@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily Caroline Snell Freeman**
KING & SPALDING
1700 Pennsylvania Ave NW

**J.A.4**

Suite 900
Washington, DC 20006
202-626-8971
Email: cfreeman@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erin Elizabeth Berry**
HIRST APPLEGATE LLP
1720 Carey Avenue, Suite 400
Cheyenne, WY 82001
307/632-0541
Fax: 307/632-4999
Email: eberry@hirstapplegate.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared Michael Lax**
KING & SPALDING
Government Matters
1401 Lawrence Street
Suite 1900
Denver, CO 80202
720-535-2300
Email: jlax@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S. Bucholtz**
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
202-737-0500
Email: jbucholtz@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Mitchell**
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
202-626-5571
Email: jmitchell@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Harris**
King & Spalding
1185 Avenue of the Americas
New York, NY 10036
212-790-5360
Fax: 212-556-2222
Email: lharris@kslaw.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Wyoming**                    represented by    **Bridget L. Hill**
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
307-777-7841
Email: bridget.hill@wyo.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin Kenney**
WYOMING ATTORNEY GENERAL
Kendrick Building, 2320 Capitol Avenue
Cheyenne, WY 82002
307/777-3350
Fax: 307/777-3687
Email: devin.kenney1@wyo.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karl D Anderson**
WYOMING ATTORNEY GENERAL
2424 Pioneer, 3rd Floor
2320 Capitol Avenue
Cheyenne, WY 82002
307/777-6892
Fax: 307/777-3687
Email: karl.anderson@wyo.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**United States Senate Banking, Housing**       represented by    **Christopher Land**
**and Urban Affairs Committee Members**
United States Senate
Senator Cynthia M. Lummis
Russell Senate Office Building
Ste 127a
Washington, DC 20510
850-252-5053
Email: chris_land@lummis.senate.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Wyoming Select Committee on**                 represented by    **David Gossett**
**Blockchain, Financial Technology and**
**Digital Innovation Technology Co-Chair**                        DAVIS WRIGHT TREMAINE LLP
**Rothfuss**                                                      1301 K Street NW
*also known as*                                                  Suite 500 East
Christopher Rothfuss                                             Washington, DC 20005
                                                                 202-262-4156
                                                                 Email: davidgossett@dwt.com

**J.A.6**

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Jerde Spillman**
Sterlington Law
Wyoming Attorney General's Office
1603 Capitol Avenue
Suite 211b
Cheyenne, WY 82001
307-314-8091
Email: lisa.spillman@sterlingtonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen Gannon**
DAVIS WRIGHT TREMAINE
1301 K Street, NW
Ste 500 East
Washington, DC 20005
804-762-5339
Email: stevegannon@dwt.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Weingarten Richards**
DAVIS WRIGHT TREMAINE
1301 K Street, NW
Ste 500 East
Washington, DC 20005
202-661-7016
Email: lisarichards@dwt.com
*TERMINATED: 08/09/2023*
*PRO HAC VICE*

<u>Amicus</u>

**United States House of Representatives**          represented by **Christopher Land**
**Financial Services Committee Members**          (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Wyoming Select Committee on**          represented by **David Gossett**
**Blockchain, Financial Technology and**          (See above for address)
**Digital Innovation Technology Co-Chair**          *LEAD ATTORNEY*
**Olsen**          *PRO HAC VICE*
*also known as*          *ATTORNEY TO BE NOTICED*
Jaren Olsen

**Lisa Jerde Spillman**
Sterlington Law
1603 Capitol Avenue
Suite 211b
Cheyenne, WY 82001

307-314-8091
Email: lisa.spillman@sterlingtonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen Gannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa Weingarten Richards**
(See above for address)
*TERMINATED: 08/09/2023*
*PRO HAC VICE*

**Amicus**

**Patrick J Toomey, Jr**
represented by **Benjamin Gruenstein**
CRAVATH SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
212/474-1000
Email: bgruenstein@cravath.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darin Boyd Scheer**
CROWLEY FLECK PLLP
111 W. 2nd Street, Suite 200
Casper, WY 82601
307/265-2279
Fax: 307/265-2307
Email: dscheer@crowleyfleck.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Buretta**
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
212-474-1000
Fax: 212-474-3700
Email: jburetta@cravath.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Blockchain Association**
represented by **Michelle Kallen**
Jenner & Block LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
202-639-6093
Email: mkallen@jenner.com
*TERMINATED: 05/06/2024*

**J.A.8**

*LEAD ATTORNEY*
*PRO HAC VICE*

**Tyler John Garrett**
HATHAWAY & KUNZ
2515 Warren Avenue, Suite 500
P O Box 1208
Cheyenne, WY 82003-1208
307/634-7723
Fax: 307/634-0985
Email: tgarrett@hkwyolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew I. Summers**
Berger Montague PC
505 Montgomery Street
Suite 625
San Francisco, CA 94111
415-906-1626
Email: msummers@jenner.com
*TERMINATED: 02/27/2024*
*PRO HAC VICE*

**Amicus**

**Payment System Scholars**     represented by    **Michelle Kallen**
(See above for address)
*TERMINATED: 05/06/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Tyler John Garrett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew I. Summers**
(See above for address)
*TERMINATED: 02/27/2024*
*PRO HAC VICE*

**Amicus**

**David Zaring**     represented by    **David Zaring**
The Wharton School
The University of Pennsylvania
600 Jon M. Hunstman Hall
3730 Walnut Street, #600
Philadelphia, PA 19104-6340
PRO SE

| Date Filed | # | Docket Text |
|------------|---|-------------|

| 06/07/2022 | 1 | COMPLAINT against Federal Reserve Bank of Kansas City, Federal Reserve Board of Governors (Filing fee $ 402,Receipt Number AWYDC-2111736) filed by Custodia Bank Inc. (Ortiz, Scott) Modified text on 6/7/2022 (Court Staff, stbd). (Additional attachment(s) added on 6/7/2022: # 1 Civil Cover Sheet) (Court Staff, stbd). (Additional attachment(s) added on 6/7/2022: # 2 Exhibit 1) (Court Staff, stbd). (Entered: 06/07/2022) |
|---|---|---|
| 06/07/2022 | 2 | CORPORATE DISCLOSURE filed by Custodia Bank Inc,. (Ortiz, Scott) (Entered: 06/07/2022) |
| 06/07/2022 | 3 | NOTICE of Attorney Appearance by Scott E Ortiz on behalf of Custodia Bank Inc (Ortiz, Scott) (Entered: 06/07/2022) |
| 06/07/2022 | 4 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Whitney Hermandorfer to appear pro hac vice; Check not tendered; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) Modified text on 6/7/2022 (Court Staff, stbd). (Entered: 06/07/2022) |
| 06/07/2022 | 5 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Ryan Scarborough to appear pro hac vice; Check not tendered; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) Modified text on 6/7/2022 (Court Staff, stbd). (Entered: 06/07/2022) |
| 06/07/2022 | 6 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for John K. Villa to appear pro hac vice; Check not tendered; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 06/07/2022) |
| 06/07/2022 |  | 4 MOTION for Whitney Hermandorfer to appear pro hac vice; Check not tendered;, 5 MOTION for Ryan Scarborough to appear pro hac vice; Check not tendered; REFERRED to Magistrate Judge (Court Staff, stbd) (Entered: 06/07/2022) |
| 06/07/2022 | 7 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Jamie Wolfe to appear pro hac vice; Check not tendered; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 06/07/2022) |
| 06/07/2022 | 8 | Notice of Judge Assignment and Consent to Proceed before a Magistrate Judge. The case has been assigned to the Honorable Scott W. Skavdahl (Presiding Judge) and the Honorable Kelly H. Rankin (Referral Judge). (Court Staff, stbd) (Entered: 06/07/2022) |
| 06/07/2022 | 9 | ORDER by the Honorable Kelly H Rankin granting 4 MOTION for Whitney Hermandorfer to appear pro hac vice, 5 MOTION for Ryan Scarborough to appear pro hac vice, 6 MOTION for John K. Villa to appear pro hac vice and 7 MOTION for Jamie Wolfe to appear pro hac vice filed by Custodia Bank Inc. (cc: Counsel via email)(Court Staff, stbd) (Entered: 06/07/2022) |
| 06/08/2022 | 10 | Notice of Pro Hac Vice Attorney Appearance by Ryan Thomas Scarborough on behalf of Custodia Bank Inc (Scarborough, Ryan) (Entered: 06/08/2022) |
| 06/08/2022 | 11 | Notice of Pro Hac Vice Attorney Appearance by Whitney D Hermandorfer on behalf of Custodia Bank Inc (Hermandorfer, Whitney) (Entered: 06/08/2022) |
| 06/09/2022 | 12 | Notice of Pro Hac Vice Attorney Appearance by John K Villa on behalf of Custodia Bank Inc (Villa, John) (Entered: 06/09/2022) |
| 06/13/2022 | 13 | Notice of Pro Hac Vice Attorney Appearance by Jamie Wolfe on behalf of Custodia Bank Inc (Wolfe, Jamie) (Entered: 06/13/2022) |
| 06/13/2022 |  | FINANCIAL ENTRY: PAYMENT OF $400 RECEIVED FOR PRO HAC VICE FEES FOR WHITNEY HERMANDORFER, RYAN SCARBOROUGH, JOHN K VILLA, & JAMIE WOLFE. RECEIPT CAS002729. (Court Staff, sjk) (Entered: 06/13/2022) |

| 06/13/2022 | 14 | Praecipe for summons filed by Plaintiff Custodia Bank Inc (Attachments: # 1 Summons) (Ortiz, Scott) (Entered: 06/13/2022) |
|---|---|---|
| 06/13/2022 | 15 | Summons Issued. (Court Staff, skb) (Entered: 06/13/2022) |
| 06/15/2022 | 16 | Praecipe for summons filed by Plaintiff Custodia Bank Inc (Attachments: # 1 summons) (Ortiz, Scott) (Entered: 06/15/2022) |
| 06/15/2022 | 17 | Praecipe for summons filed by Plaintiff Custodia Bank Inc (Attachments: # 1 summons) (Ortiz, Scott) (Entered: 06/15/2022) |
| 06/16/2022 | 18 | Summonses Issued. (Court Staff, skb) (Entered: 06/16/2022) |
| 06/16/2022 | 19 | Amended Praecipe for Summons filed by Plaintiff Custodia Bank Inc (Attachments: # 1 summons) (Ortiz, Scott) Modified text on 6/16/2022 (Court Staff, skb). (Entered: 06/16/2022) |
| 06/16/2022 | 20 | Summons Issued. (Court Staff, skb) (Entered: 06/16/2022) |
| 06/21/2022 | 21 | AMENDED at 22 . NOTICE of Attorney Appearance by Angela Tarasi on behalf of Custodia Bank Inc (Tarasi, Angela) Modified on 6/22/2022 (Court Staff, sbh). Modified text on 7/5/2022 (Court Staff, skb). (Entered: 06/21/2022) |
| 06/22/2022 | 22 | AMENDED at 23 . AMENDED NOTICE of Attorney Appearance by Angela Tarasi on behalf of Federal Reserve Board of Governors, Federal Reserve Bank of Kansas City (Tarasi, Angela) Modified text per filer's request on 6/22/2022 (Court Staff, smxb). Modified filers on 6/22/2022 (Court Staff, sbh). Modified text on 6/23/2022 (Court Staff, skb). Modified text on 7/5/2022 (Court Staff, skb). (Entered: 06/22/2022) |
| 06/23/2022 | 23 | AMENDED NOTICE of Attorney Appearance by Angela Tarasi on behalf of Federal Reserve Bank of Kansas City (Tarasi, Angela) Modified text on 6/23/2022 (Court Staff, skb). (Entered: 06/23/2022) |
| 06/27/2022 | 24 | WAIVER OF SERVICE Returned Executed by Custodia Bank Inc. Federal Reserve Bank of Kansas City 6/7/2022, answer due 8/8/2022 (Ortiz, Scott) (Entered: 06/27/2022) |
| 06/27/2022 | 25 | SUMMONS Returned Executed by Custodia Bank Inc. Federal Reserve Board of Governors served on 6/16/2022, answer due 8/16/2022 (Ortiz, Scott) Modified answer date on 6/29/2022 (Court Staff, skb). (Entered: 06/27/2022) |
| 06/27/2022 | 26 | AFFIDAVIT of Torri Schaffer re 25 Summons Returned Executed *Upon US Attorney General* filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 06/27/2022) |
| 06/27/2022 | 27 | AFFIDAVIT of Torri Schaffer re 25 Summons Returned Executed *Upon Federal Reserve Board of Governors* filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 06/27/2022) |
| 07/15/2022 | 28 | NOTICE of Attorney Appearance by Billie L M Addleman on behalf of Federal Reserve Bank of Kansas City (Addleman, Billie) (Entered: 07/15/2022) |
| 07/26/2022 | 29 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Extension of Time (Non-Dispositive) requesting extension of answer or otherwise respond to Plaintiff's Complaint filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 07/26/2022) |
| 07/27/2022 | 30 | ORDER by the Honorable Kelly H Rankin granting 29 Motion for Extension of Time. Defendants shall answer or otherwise respond to Plaintiffs Complaint on or before August 16, 2022. (Court Staff, sjgc) (Entered: 07/27/2022) |

| 08/01/2022 | 31 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Joshua P. Chadwick, Yvonne F. Mizusawa, Yonatan Gelblum, and Katherine Pomeroy to appear pro hac vice; Check not tendered; and MOTION to Withdraw as Attorney filed by Defendant Federal Reserve Board of Governors. (Attachments: # 1 Proposed Order, # 2 Exhibit Chadwick Declaration, # 3 Exhibit Gelblum Declaration, # 4 Exhibit Mizusawa Declaration, # 5 Exhibit Pomeroy Declaration)(Martin, C). Added MOTION to Withdraw as Attorney on 8/1/2022 (Court Staff, skb). Modified filer on 8/1/2022 (Court Staff, skb). Modified text on 8/8/2022 (Court Staff, sjlg). (Entered: 08/01/2022) |
|---|---|---|
| 08/01/2022 | 32 | NOTICE of Attorney Appearance by C Levi Martin on behalf of Federal Reserve Board of Governors (Martin, C) (Entered: 08/01/2022) |
| 08/01/2022 | 33 | ORDER by the Honorable Kelly H Rankin granting 31 MOTION for Joshua P. Chadwick, Yvonne F. Mizusawa, Yonatan Gelblum, and Katherine Pomeroy to appear pro hac vice; granting 31 Motion to Withdraw as Attorney. (cc: Counsel via email) Attorney C Levi Martin terminated (Court Staff, skb) Modified text on 8/1/2022 (Court Staff, skb). (Entered: 08/01/2022) |
| 08/08/2022 | 34 | MOTION for Leave to File Excess Pages regarding brief in support of motion to dismiss (unopposed) filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 08/08/2022) |
| 08/09/2022 | 35 | ORDER by the Honorable Scott W Skavdahl granting 34 Motion for Leave to File Excess Pages regarding brief in support of motion to dismiss (unopposed). It is hereby ORDERED that both Defendants may file briefs in support of their respective motions to dismiss not to exceed 45 pages. (Court Staff, skb) (Entered: 08/09/2022) |
| 08/11/2022 | 36 | Notice of Pro Hac Vice Attorney Appearance by Joshua Paul Chadwick on behalf of Federal Reserve Board of Governors (Chadwick, Joshua) (Entered: 08/11/2022) |
| 08/11/2022 | 37 | Notice of Pro Hac Vice Attorney Appearance by Yonatan Gelblum on behalf of Federal Reserve Board of Governors (Gelblum, Yonatan) (Entered: 08/11/2022) |
| 08/11/2022 | 38 | Notice of Pro Hac Vice Attorney Appearance by Katherine Pomeroy on behalf of Federal Reserve Board of Governors (Pomeroy, Katherine) (Entered: 08/11/2022) |
| 08/16/2022 | 39 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Laura Harris to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Affidavit Laura Harris, # 2 Proposed Order)(Addleman, Billie) (Entered: 08/16/2022) |
| 08/16/2022 | 40 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Andrew Michaelson to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Affidavit Andrew Michaelson, # 2 Proposed Order) (Addleman, Billie) (Entered: 08/16/2022) |
| 08/16/2022 | 41 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Christine Carletta to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Affidavit Christine Carletta, # 2 Proposed Order) (Addleman, Billie) (Entered: 08/16/2022) |
| 08/16/2022 | 42 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Joshua N. Mitchell to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Affidavit Joshua N. Mitchell, # 2 Proposed Order) (Addleman, Billie) (Entered: 08/16/2022) |
| 08/16/2022 | 43 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Jeffrey S. Bucholtz to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of |

| | | |
|---|---|---|
| | | Kansas City. (Attachments: # 1 Affidavit Jeffrey S. Bucholtz, # 2 Proposed Order) (Addleman, Billie) (Entered: 08/16/2022) |
| 08/16/2022 | 44 | NOTICE of Pro Hac Vice Attorney Appearance by Yvonne Facchina Mizusawa on behalf of Federal Reserve Board of Governors (Mizusawa, Yvonne) Modified text on 8/17/2022 (Court Staff, skb). (Entered: 08/16/2022) |
| 08/16/2022 | 45 | ORDER by the Honorable Kelly H Rankin granting 39 MOTION for Laura Harris to appear pro hac vice; 40 MOTION for Andrew Michaelson to appear pro hac vice; 41 MOTION for Christine Carletta to appear pro hac vice; 42 MOTION for Joshua N. Mitchell to appear pro hac vice & 43 MOTION for Jeffrey S. Bucholtz to appear pro hac vice; filed by Federal Reserve Bank of Kansas City. (cc: Counsel via email)(Court Staff, stbd) (Entered: 08/16/2022) |
| 08/16/2022 | 46 | FILING ERROR - Counsel refiled. ~~MOTION to Dismiss filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua)~~ Modified on 8/17/2022 (Court Staff, stmo). Modified to term motion on 8/17/2022 (Court Staff, skb). (Entered: 08/16/2022) |
| 08/16/2022 | 47 | FILING ERROR - Counsel refiled. ~~MEMORANDUM in Support of 46 Motion to Dismiss filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua)~~ Modified on 8/17/2022 (Court Staff, stmo). (Entered: 08/16/2022) |
| 08/16/2022 | 48 | MOTION to Dismiss filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 08/16/2022) |
| 08/16/2022 | 49 | MEMORANDUM in Support of 48 Motion to Dismiss filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 08/16/2022) |
| 08/16/2022 | 50 | MOTION to Dismiss filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 08/16/2022) |
| 08/16/2022 | 51 | MEMORANDUM in Support of 50 Motion to Dismiss filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 08/16/2022) |
| 08/18/2022 | 52 | Notice of Pro Hac Vice Attorney Appearance by Jeffrey S. Bucholtz on behalf of Federal Reserve Bank of Kansas City Filing fee $ 100, receipt number AWYDC-2143479. (Bucholtz, Jeffrey) (Entered: 08/18/2022) |
| 08/18/2022 | 53 | Notice of Pro Hac Vice Attorney Appearance by Joshua Nathaniel Mitchell on behalf of Federal Reserve Bank of Kansas City Filing fee $ 100, receipt number AWYDC-2143483. (Mitchell, Joshua) (Entered: 08/18/2022) |
| 08/18/2022 | 54 | Notice of Pro Hac Vice Attorney Appearance by Christine Carletta on behalf of Federal Reserve Bank of Kansas City Filing fee $ 100, receipt number AWYDC-2143489. (Carletta, Christine) (Entered: 08/18/2022) |
| 08/26/2022 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR LAURA HARRIS. RECEIPT 2-249. (Court Staff, sjk) (Entered: 08/26/2022) |
| 08/26/2022 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR ANDREW MICHAELSON. RECEIPT 1-17. (Court Staff, sjk) (Entered: 08/26/2022) |
| 08/29/2022 | 55 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of deadline for response brief to Defendants' Motion to Dismiss filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 08/29/2022) |
| 08/30/2022 | 56 | ORDER by the Honorable Kelly H Rankin granting 55 Motion for Extension of Time. Plaintiff shall file its omnibus response brief to Defendants' motions to dismiss on or by |

| | | |
|---|---|---|
| | | September 13, 2022. Plaintiff shall have up to and including 60 pages for its omnibus response brief to Defendants' motions to dismiss.(Court Staff, sjgc) (Entered: 08/30/2022) |
| 09/13/2022 | 57 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Sarah M. Harris to appear pro hac vice; Check tendered; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Ortiz, Scott) Modified filer on 9/13/2022 (Court Staff, scat). (Entered: 09/13/2022) |
| 09/13/2022 | 58 | MEMORANDUM in Opposition to 48 Motion to Dismiss, 50 Motion to Dismiss filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 09/13/2022) |
| 09/13/2022 | 59 | REQUEST for hearing on by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order) (Ortiz, Scott) (Entered: 09/13/2022) |
| 09/14/2022 | 60 | ORDER SETTING HEARING on 48 Defendant Board of Governors of the Federal Reserve Systems Motion to Dismiss and 50 Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss by the Honorable Scott W Skavdahl. It is ORDERED that Plaintiff Custodia Bank, Inc.'s Request for Hearing 59 is GRANTED. IT IS FURTHER ORDERED that a hearing on Defendant Board of Governors of the Federal Reserve System's Motion to Dismiss, ECF No. 48 , and the Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss, ECF No. 50 , is hereby set for the 13th day of October, 2022, at 1:30 p.m., via Videoconference. Videoconference connection information will be provided to counsel via email prior to the date of the hearing. (Court Staff, skb) (Entered: 09/14/2022) |
| 09/14/2022 | 61 | (TEXT-ONLY) NOTICE of Hearing on 50 MOTION to Dismiss, 48 MOTION to Dismiss VIA ZOOM - <br><br>NOTE:<br><br>1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely;the Zoom ID and Passcode will be provided separately to the participants email address of record.<br><br>2. Participants should connect to the proceeding 15 minutes prior to its scheduled start time to allow for troubleshooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality, participants are encouraged to utilize a headset to reduce static and background noise. If not using a headset, participants must ensure the audio feed at their location is muted when not speaking.<br><br>***REMINDER: Recording or broadcasting of this hearing is prohibited. ***<br><br>Motion Hearing set for 10/13/2022 at 01:30 PM before Honorable Scott W Skavdahl. (Court Staff, skb) (Entered: 09/14/2022) |
| 09/14/2022 | 62 | ORDER by the Honorable Kelly H Rankin granting 57 MOTION for Sarah M. Harris to appear pro hac vice filed by Custodia Bank Inc. (cc: Counsel via Email) (Court Staff, stbd) (Entered: 09/14/2022) |
| 09/15/2022 | 63 | MOTION REFERRED TO Judge Kelly H Rankin. Joint MOTION for Order to File Reply Briefs by October 4, 2022 filed by Defendants Federal Reserve Bank of Kansas City, Federal Reserve Board of Governors. (Attachments: # 1 Proposed Order)(Fritz, John) (Entered: 09/15/2022) |
| 09/15/2022 | 64 | Notice of Pro Hac Vice Attorney Appearance by Andrew Z. Michaelson on behalf of Federal Reserve Bank of Kansas City (Michaelson, Andrew) (Entered: 09/15/2022) |

J.A.14

| | | |
|---|---|---|
| 09/15/2022 | 65 | Notice of Pro Hac Vice Attorney Appearance by Laura Harris on behalf of Federal Reserve Bank of Kansas City (Harris, Laura) (Entered: 09/15/2022) |
| 09/16/2022 | 66 | ORDER by the Honorable Kelly H Rankin granting 63 Motion for Order Permitting Reply Briefs. Defendants may file Reply briefs to the three expected Amicus Briefs and Plaintiff's Opposition to Defendants' Motion to Dismiss on or before October 4, 2022, not to exceed 25 pages. (Court Staff, sjdl) (Entered: 09/16/2022) |
| 09/16/2022 | 67 | MOTION to Continue (Dispositive). Requesting continuance of hearing and oral arguments filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 09/16/2022) |
| 09/17/2022 | 68 | RESPONSE to 67 Motion to Continue (Dispositive) filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 09/17/2022) |
| 09/19/2022 | 69 | Notice of Pro Hac Vice Attorney Appearance by Sarah M. Harris on behalf of Custodia Bank Inc Filing fee $ 100, receipt number CWYDC-2156656. (Harris, Sarah) (Entered: 09/19/2022) |
| 09/19/2022 | 70 | (TEXT-ONLY) ORDER by the Honorable Scott W Skavdahl granting 67 Motion to Continue hearing and oral arguments. The hearing on 50 MOTION to Dismiss and 48 MOTION to Dismiss is reset for Friday, October 28, 2022, at 1:00 p.m. via videoconference. (Court Staff, skb) (Entered: 09/19/2022) |
| 09/19/2022 | 71 | (TEXT-ONLY) NOTICE of Hearing on 50 MOTION to Dismiss , 48 MOTION to Dismiss VIA ZOOM - <br><br>NOTE:<br><br>1. This proceeding will be held via Zoom Video/Web Conferencing with all participants appearing remotely;the Zoom ID and Passcode will be provided separately to the participants email address of record.<br><br>2. Participants should connect to the proceeding 15 minutes prior to its scheduled start time to allow for troubleshooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality, participants are encouraged to utilize a headset to reduce static and background noise. If not using a headset, participants must ensure the audio feed at their location is muted when not speaking.<br><br>***REMINDER: Recording or broadcasting of this hearing is prohibited. ***<br><br>**Motion Hearing RESET for 10/28/2022 at 01:00 PM before Honorable Scott W Skavdahl.** (Court Staff, skb) (Entered: 09/19/2022) |
| 09/20/2022 | 72 | NOTICE of Attorney Appearance by Bridget L. Hill on behalf of State of Wyoming (Hill, Bridget) (Entered: 09/20/2022) |
| 09/20/2022 | 73 | NOTICE of Attorney Appearance by Devin Kenney on behalf of State of Wyoming (Kenney, Devin) (Entered: 09/20/2022) |
| 09/20/2022 | 74 | NOTICE of Attorney Appearance by Karl D Anderson on behalf of State of Wyoming (Anderson, Karl) (Entered: 09/20/2022) |
| 09/20/2022 | 75 | NOTICE of Attorney Appearance by Christopher Land on behalf of United States Senate Banking, Housing and Urban Affairs Committee Members, United States House of |

J.A.15

| | | |
|---|---|---|
| | | Representatives Financial Services Committee Members (Land, Christopher) Modified filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 76 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Dispositive) *Brief of Amici* filed by Amicus United States Senate Banking, Housing and Urban Affairs Committee Members, United States House of Representatives Financial Services Committee Members. (Attachments: # 1 Exhibit Proposed Brief of Amici, # 2 Proposed Order)(Land, Christopher) Modified text and filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 77 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Non-Dispositive) *Amicus Curiae Brief* filed by Amicus State of Wyoming. (Attachments: # 1 Proposed Amicus Curiae Brief, # 2 Proposed Order) (Anderson, Karl) (Entered: 09/20/2022) |
| 09/20/2022 | 78 | Amended at 80 - NOTICE of Attorney Appearance by Lisa Jerde Spillman on behalf of Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen (Spillman, Lisa) Modified text and filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 79 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Stephen T. Gannon to appear pro hac vice; Check not tendered; filed by Amicus Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Spillman, Lisa) Modified filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 80 | AMENDED NOTICE of Attorney Appearance by Lisa Jerde Spillman on behalf of Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen (Spillman, Lisa) Modified text on 9/21/2022 (Court Staff, skb). Modified filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 81 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for David M. Gossett to appear pro hac vice; Check not tendered; filed by Amicus Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Spillman, Lisa) Modified filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 82 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Lisa Richards to appear pro hac vice; Check not tendered; filed by Amicus Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Spillman, Lisa) Modified filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |
| 09/20/2022 | 83 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Dispositive) filed by Amicus Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Exhibit, # 3 Proposed Order)(Spillman, Lisa) Modified text and filers on 9/21/2022 (Court Staff, skb). (Entered: 09/20/2022) |

| | | |
|---|---|---|
| 09/21/2022 | 84 | ORDER by the Honorable Kelly H Rankin GRANTING 79 MOTION for Stephen T. Gannon to appear pro hac vice; 81 MOTION for David M. Gossett to appear pro hac vice; & 82 MOTION for Lisa Richards to appear pro hac vice; filed by Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen. (cc: Counsel via email.)(Court Staff, stbd) Modified text on 9/21/2022 (Court Staff, skb). (Entered: 09/21/2022) |
| 09/21/2022 | | 76 MOTION for Leave to File Reply/Brief/Supplement (Dispositive) *Brief of Amici*, 83 MOTION for Leave to File Reply/Brief/Supplement (Dispositive) REFERRED to Magistrate Judge (Court Staff, skb) (Entered: 09/21/2022) |
| 09/21/2022 | 85 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin denying 76 Motion to File Reply/Brief/Supplement (Dispositive). Counsel failed to attach a certificate of conferral in accordance with the Local Rules. Counsel may re-file after conferring with the interested parties and indicate whether the motion is opposed or unopposed. (Court Staff, sjdl) (Entered: 09/21/2022) |
| 09/21/2022 | 86 | ORDER by the Honorable Kelly H Rankin granting 77 Motion to File Reply/Brief/Supplement (Non-Dispositive). The Court grants the State of Wyoming's Unopposed Motion for Leave to file its proposed Amicus Brief. (Court Staff, sjdl) (Entered: 09/21/2022) |
| 09/21/2022 | 87 | ORDER by the Honorable Kelly H Rankin granting 83 Motion to File Reply/Brief/Supplement (Dispositive). Senator Christopher Rothfuss and Representative Jared Olsen's Unopposed Motion to File an Amicus Brief is granted. (Court Staff, sjdl) (Entered: 09/21/2022) |
| 09/21/2022 | 88 | Amended at 163 . *Amicus Curiae* BRIEF *State of Wyoming in Opposition to Defendants' 48 Motion to Dismiss and 50 Motion to Dismiss* filed by Amicus State of Wyoming. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Anderson, Karl) Modified to add links on 9/22/2022 (Court Staff, skb). Modified text on 6/8/2023 (Court Staff, skb). (Entered: 09/21/2022) |
| 09/21/2022 | | FINANCIAL ENTRY: PHV FEES PAID ($300.00 RECEIPT #2-386) for Stephen T. Gannon, David M. Gossett, and Lisa Richards. (Court Staff, stmo) (Entered: 09/21/2022) |
| 09/21/2022 | 89 | *Amicus* BRIEF in Opposition to Defendants' 48 Motion to Dismiss and 50 Motion to Dismiss filed by Amicus Parties Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss. (Attachments: # 1 Exhibit) (Spillman, Lisa) Modified text and add links on 9/22/2022 (Court Staff, skb). (Entered: 09/21/2022) |
| 09/21/2022 | 90 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Non-Dispositive) filed by Amicus Parties United States House of Representatives Financial Services Committee Members, United States Senate Banking, Housing and Urban Affairs Committee Members. (Attachments: # 1 Exhibit Proposed Brief of Amici, # 2 Proposed Order)(Land, Christopher) (Entered: 09/21/2022) |
| 09/22/2022 | 91 | ORDER by the Honorable Kelly H Rankin granting 90 Motion to File Reply/Brief/Supplement (Non-Dispositive). Movants may file an amicus curiae brief on or before September 26, 2022. (Court Staff, sjdl) (Entered: 09/22/2022) |
| 09/22/2022 | 92 | *Amici* BRIEF in Opposition to Defendants' 48 Motion to Dismiss and 50 Motion to Dismiss filed by Amicus Parties United States House of Representatives Financial Services Committee Members, United States Senate Banking, Housing and Urban Affairs |

| | | |
|---|---|---|
| | | Committee Members. (Land, Christopher) Modified to add links on 9/22/2022 (Court Staff, skb). (Entered: 09/22/2022) |
| 09/22/2022 | 93 | Notice of Pro Hac Vice Attorney Appearance by David Gossett on behalf of Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss (Gossett, David) (Entered: 09/22/2022) |
| 09/23/2022 | 94 | Notice of Pro Hac Vice Attorney Appearance by Lisa Weingarten Richards on behalf of Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss ~~Filing fee $ 100, receipt number AWYDC-2159777~~. (Richards, Lisa) Modified on 9/23/2022 to strike filing fee. Receipt AWYDC-2159777 voided via Pay.gov on 9/23/22 as $100 fee was already paid on 9/21/22 with receipt 2-386 (Court Staff, sjk). (Entered: 09/23/2022) |
| 09/23/2022 | 95 | Notice of Pro Hac Vice Attorney Appearance by Stephen Gannon on behalf of Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen, Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Rothfuss ~~Filing fee $ 100, receipt number AWYDC-2159786~~. (Gannon, Stephen) Modified on 9/23/2022 to strike filing fee. Receipt AWYDC-2159786 voided via Pay.gov on 9/23/22 as $100 fee was already paid on 9/21/22 with receipt 2-386(Court Staff, sjk). (Entered: 09/23/2022) |
| 10/04/2022 | 96 | REPLY to 58 Memorandum in Opposition filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 10/04/2022) |
| 10/04/2022 | 97 | REPLY to 50 Motion to Dismiss filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 10/04/2022) |
| 10/12/2022 | 98 | SUPPLEMENT to 58 Memorandum in Opposition to Defendants' Motions to Dismiss Complaint filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit, # 2 Exhibit) (Ortiz, Scott) Modified text on 10/14/2022 (Court Staff, skb). (Entered: 10/12/2022) |
| 10/19/2022 | 99 | RESPONSE to 98 Supplement to 58 Memorandum in Opposition to Defendants' Motions to Dismiss Complaint filed by Defendant Federal Reserve Board of Governors. (Mizusawa, Yvonne) Modified text on 10/21/2022 (Court Staff, skb). (Entered: 10/19/2022) |
| 10/28/2022 | 100 | MINUTES for proceedings held before Honorable Scott W Skavdahl: Motion Hearing held on 10/28/2022. (Court Reporter Megan Strawn.) (Court Staff, skb) (Entered: 10/28/2022) |
| 11/03/2022 | 101 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on 10/28/2022 before Judge Scott W. Skavdahl. To purchase a copy of this transcript, please contact Court Reporter Megan Strawn, phone (307) 232-2626 or email strawnreporting@gmail.com. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. Notice of Intent to Redact due 11/10/2022. Notice of Redaction Request due 11/24/2022. Redacted Transcript Deadline set for 12/5/2022. Release of Transcript Restriction set for 2/1/2023. (Strawn, Megan) (Entered: 11/03/2022) |
| 11/11/2022 | 102 | ORDER by the Honorable Scott W Skavdahl granting in part and denying in part 48 Federal Reserve Board of Governors' Motion to Dismiss and 50 Federal Reserve Bank of Kansas City's Motion to Dismiss. Claims I, II, IV, and part of Claim III (alleging a due process violation) state plausible causes of action for relief. Claims V, VI, VII, VIII, and |

| | | |
|---|---|---|
| | | the remainder of Claim III (alleging a nondelegable doctrine violation) do not state plausible claims on which relief can be granted and are hereby dismissed. (Skavdahl, Scott) Modified text on 11/15/2022 (Court Staff, skb). (Entered: 11/11/2022) |
| 11/22/2022 | 103 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of unopposed Answer deadline filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order) (Addleman, Billie) (Entered: 11/22/2022) |
| 11/23/2022 | 104 | ORDER by the Honorable Kelly H Rankin granting 103 Motion for Extension of Time. Defendants shall have up to and including 11/30/22 to respond to Plaintiff's Complaint. (Court Staff, sjdl) (Entered: 11/23/2022) |
| 11/30/2022 | 105 | ANSWER to Complaint with Affirmative Defenses, by Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 11/30/2022) |
| 11/30/2022 | 106 | STATUS REPORT by Federal Reserve Board of Governors. (Gelblum, Yonatan) (Entered: 11/30/2022) |
| 12/02/2022 | 107 | DISREGARD ERROR IN FILING - COUNSEL WILL REFILE ~~MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Strike~~ 106 ~~Status Report and MOTION for Default Judgment filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) Modified text on 12/2/2022 (Court Staff, seat).~~ Modified on 12/2/2022 (Court Staff, scat). (Entered: 12/02/2022) |
| 12/02/2022 | 108 | ~~MOTION REFERRED TO Judge Kelly H. Rankin.~~ MOTION to Strike 106 Status Report, MOTION for Default Judgment as to filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) Modified docket text/unreferred motion on 12/6/2022 (Court Staff, szf). (Entered: 12/02/2022) |
| 12/02/2022 | | Motions No Longer Referred: 108 MOTION to Strike 106 Status Report MOTION for Default Judgment as to (Court Staff, szf) (Entered: 12/06/2022) |
| 12/07/2022 | 109 | (TEXT-ONLY) NOTICE of Initial Pretrial Conference: BY TELEPHONE - All parties shall appear by telephone through the Court's conference call system. Guests call: 307-735-3644 Conference ID: 275 440 149#. Parties should have their calendars on hand for scheduling. Under Local Rule 16.1(a)(2) the parties are reminded to file a written Joint Case Management Plan three business days prior to the Initial Pretrial Scheduling Conference. The Plan form may be located at www.wyd.uscourts.gov/judges-info under Judge Rankin. **Initial Pretrial Conference set for 1/17/2022 at 09:00 AM before Honorable Kelly H Rankin.** (Court Staff, smxb) (Entered: 12/07/2022) |
| 12/07/2022 | 110 | RESPONSE in Opposition re 108 MOTION to Strike 106 Status Report MOTION for Default Judgment as to filed by Defendant Federal Reserve Board of Governors. (Attachments: # 1 Exhibit A) (Chadwick, Joshua) (Entered: 12/07/2022) |
| 12/08/2022 | 111 | REPLY to 110 Response in Opposition to Motion filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order) (Ortiz, Scott) (Entered: 12/08/2022) |
| 12/12/2022 | 112 | ORDER by the Honorable Scott W Skavdahl denying 108 MOTION to Strike 106 Status Report; denying 108 Motion for Default Judgment. (Court Staff, skb) (Entered: 12/12/2022) |
| 12/14/2022 | 113 | (TEXT-ONLY) NOTICE RESETTING Initial Pretrial Conference: BY TELEPHONE - All parties shall appear by telephone through the Court's conference call system. Guests call: 307-735-3644 Conference ID: 275 440 149#. Parties should have their calendars on hand for scheduling. Under Local Rule 16.1(a)(2) the parties are reminded to file a written Joint Case Management Plan three business days prior to the Initial Pretrial Scheduling Conference. The Plan form may be located at www.wyd.uscourts.gov/judges- |

| | | |
|---|---|---|
| | | info under Judge Rankin. **Initial Pretrial Conference set for 1/17/2023 at 09:00 AM before Honorable Kelly H Rankin.** (Court Staff, smxb) (Entered: 12/14/2022) |
| 01/13/2023 | [114](#) | JOINT CASE MANAGEMENT PLAN by Custodia Bank Inc. (Ortiz, Scott) (Entered: 01/13/2023) |
| 01/17/2023 | [115](#) | SCHEDULING ORDER by the Honorable Kelly H Rankin. Dispositive Motions filing deadline 7/21/2023. Dispositive Motion response deadline 8/21/2023. Dispositive Motion replies due by 9/5/2023. Appellate Brief filing deadline 7/21/2023. Appellate Brief response due by 8/21/2023. Appellate Brief reply due by 9/5/2023. Expert Witness Designation-Plaintiff deadline 5/15/2023. Expert Witness Designation-Defendant deadline 6/15/2023. Other Fact Witness Deadline 6/30/2023. Discovery due by 7/21/2023. **Final Pretrial Conference set for 10/17/2023 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial set for 11/6/2023 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial set for 11/7/2023 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial set for 11/8/2023 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial (8 days/Stacked #1) set for 11/9/2023 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.**(Court Staff, smxb) (Entered: 01/18/2023) |
| 01/27/2023 | [116](#) | MOTION to Dismiss Case, filed by Defendants Federal Reserve Bank of Kansas City, Federal Reserve Board of Governors. (Addleman, Billie) (Entered: 01/27/2023) |
| 02/07/2023 | [117](#) | MOTION REFERRED TO Judge Kelly H Rankin. Joint MOTION to Stay Discovery *and Filing of Administrative Record and to Extend Deadline to Respond to Motion to Dismiss and/or Move to Amend Complaint* filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # [1](#) Proposed Order)(Addleman, Billie) (Entered: 02/07/2023) |
| 02/08/2023 | [118](#) | ORDER by the Honorable Kelly H Rankin granting [117](#) Motion to Stay Discovery. Discovery is stayed pending further Order of the Court. Plaintiff has up to and including February 17, 2023, to respond to Defendants' Motion to Dismiss. (Court Staff, sjdl) (Entered: 02/08/2023) |
| 02/17/2023 | [119](#) | ~~MOTION REFERRED TO Judge Kelly H Rankin.~~ Unopposed MOTION to Amend Complaint in Response to [116](#) Defendant's Motion to Dismiss filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](#) Exhibit-A Amended Complaint, # [2](#) Proposed Order)(Ortiz, Scott) (Additional attachment added on 2/17/2023: # [3](#) Redlined Amended Complaint) (Court Staff, skb). Modified text on 2/17/2023 (Court Staff, skb). Unreferred on 2/21/2023 (Court Staff, sjdl). (Entered: 02/17/2023) |
| 02/21/2023 | | Motions No Longer Referred: [119](#) MOTION to Amend/Correct Complaint. (Court Staff, sjdl) (Entered: 02/21/2023) |
| 02/22/2023 | [120](#) | ORDER by the Honorable Scott W Skavdahl granting [119](#) Plaintiff's MOTION to Amend Complaint and denying as moot [116](#) Defendant's Motion to Dismiss Case. Plaintiff is directed to file its First Amended Complaint within seven days of the date of this Order. (Court Staff, scat) (Entered: 02/22/2023) |
| 02/28/2023 | [121](#) | AMENDED COMPLAINT against Defendant Federal Reserve Bank of Kansas City, Federal Reserve Board of Governors, filed by Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/28/2023) |
| 03/10/2023 | [122](#) | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of (unopposed) respond to Plaintiff's First Amended Complaint filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # [1](#) Proposed Order)(Addleman, Billie) (Entered: 03/10/2023) |

| 03/13/2023 | 123 | ORDER by the Honorable Kelly H Rankin granting 122 Motion for Extension of Time. Defendant Federal Reserve Bank of Kansas City has up to and including 3/28/2023 to answer or otherwise respond to the Amended Complaint. (Court Staff, sjdl) (Entered: 03/13/2023) |
|---|---|---|
| 03/28/2023 | 124 | MOTION to Dismiss filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 03/28/2023) |
| 03/28/2023 | 125 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order to File Exhibit Related to Motion to Dismiss Under Seal filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 03/28/2023) |
| 03/28/2023 | 126 | MOTION to Dismiss *Amended Complaint* filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 03/28/2023) |
| 03/28/2023 | 127 | MEMORANDUM in Support of 126 Motion to Dismiss filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 03/28/2023) |
| 03/29/2023 | 128 | ORDER by the Honorable Kelly H Rankin granting 125 Motion for Order. Defendants may file the referenced exhibit under seal. (Court Staff, sjdl) (Entered: 03/29/2023) |
| 03/29/2023 | 129 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - EXHIBIT in reference to 124 Motion to Dismiss *(Declaration of Billie LM Addleman with Exhibit A)* filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) Modified text on 3/30/2023 (Court Staff, skb). (Entered: 03/29/2023) |
| 04/07/2023 | 130 | MOTION for Leave to File Excess Pages regarding response brief to Defendants' Motion to Dismiss filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 04/07/2023) |
| 04/07/2023 | 131 | ORDER by the Honorable Scott W Skavdahl granting 130 Motion to File Excess Pages. Plaintiff is directed to file a single, omnibus response to Defendants' Motion to Dismiss totaling no more than thirty-five (35) pages in length. (Court Staff, skb) (Entered: 04/07/2023) |
| 04/10/2023 | 132 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Intervene filed by Amicus State of Wyoming. (Attachments: # 1 Proposed Order)(Kenney, Devin) (Entered: 04/10/2023) |
| 04/10/2023 | 133 | MEMORANDUM in Support of 132 Motion to Intervene filed by Amicus State of Wyoming. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Kenney, Devin) (Entered: 04/10/2023) |
| 04/11/2023 | 134 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin denying 132 Motion to Intervene without prejudice. Prospective intervenor has failed to confer with the parties in accordance with Local Rule 7.1(b)(1)(A). (Court Staff, sjdl) (Entered: 04/11/2023) |
| 04/11/2023 | 135 | MEMORANDUM in Opposition to 126 MOTION to Dismiss *Amended Complaint*, 124 MOTION to Dismiss filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 04/11/2023) |
| 04/13/2023 | 136 | MOTION for Hearing re 126 MOTION to Dismiss *Amended Complaint*, 124 MOTION to Dismiss filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 04/13/2023) |
| 04/13/2023 | 137 | MOTION for Leave to File Reply/Brief/Supplement (Dispositive) filed by Defendants Federal Reserve Bank of Kansas City, Federal Reserve Board of Governors. (Attachments: # 1 Proposed Order)(Chadwick, Joshua) (Entered: 04/13/2023) |

| 04/13/2023 | 138 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Intervene filed by Amicus State of Wyoming. (Attachments: # 1 Proposed Order)(Kenney, Devin) (Entered: 04/13/2023) |
|---|---|---|
| 04/13/2023 | 139 | DISREGARD. Filing Error - Counsel to Re-File. ~~MEMORANDUM in Support of 138 Motion to Intervene filed by Amicus State of Wyoming. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Kenney, Devin)~~ Modified on 4/13/2023 (Court Staff, stmo). (Entered: 04/13/2023) |
| 04/13/2023 | 140 | MEMORANDUM in Support of 138 Motion to Intervene filed by Amicus State of Wyoming. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Kenney, Devin) (Entered: 04/13/2023) |
| 04/14/2023 | 141 | ORDER by the Honorable Scott W Skavdahl denying 136 Motion for Hearing; granting 137 Motion to File Reply. It is ORDERED that Plaintiff Custodia Bank, Inc.'s Request for Hearing (ECF 136 ) is DENIED. It is further ORDERED that the Defendants' Motion for Leave to File Reply Briefs (ECF 137 ) is GRANTED. Defendants may file their reply briefs on or before April 25, 2023. Additionally, Defendant Federal Reserve Board of Governors may file a reply brief of up to 20 pages. (Court Staff, skb) (Entered: 04/14/2023) |
| 04/18/2023 | 142 | NOTICE of Attorney Appearance by Darin Boyd Scheer on behalf of Patrick J Toomey, Jr (Scheer, Darin) (Entered: 04/18/2023) |
| 04/18/2023 | 143 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Benjamin Gruenstein, John Buretta to appear pro hac vice; Check not tendered; filed by Amicus Patrick J Toomey, Jr. (Attachments: # 1 Affidavit Declaration of B. Gruenstein, # 2 Affidavit Declaration of J. Buretta, # 3 Proposed Order)(Scheer, Darin) (Entered: 04/18/2023) |
| 04/18/2023 | 144 | ORDER by the Honorable Kelly H Rankin granting 143 MOTION for Benjamin Gruenstein, John Buretta to appear pro hac vice; Check not tendered; filed by Patrick J Toomey, Jr (Court Staff, scat) (Main Document 144 replaced on 4/20/2023 to include file stamp) (Court Staff, scat). (Entered: 04/18/2023) |
| 04/18/2023 | 145 | Notice of Pro Hac Vice Attorney Appearance by Benjamin Gruenstein on behalf of Patrick J Toomey, Jr Filing fee $ 100, receipt number AWYDC-2248474. (Gruenstein, Benjamin) (Entered: 04/18/2023) |
| 04/18/2023 | 146 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Non-Dispositive) *Amicus Curiae Brief* filed by Amicus Patrick J Toomey, Jr. (Attachments: # 1 Proposed Amicus Curiae Brief, # 2 Proposed Order) (Gruenstein, Benjamin) (Entered: 04/18/2023) |
| 04/19/2023 | 147 | Notice of Pro Hac Vice Attorney Appearance by John Buretta on behalf of Patrick J Toomey, Jr Filing fee $ 100, receipt number AWYDC-2248580. (Buretta, John) (Entered: 04/19/2023) |
| 04/20/2023 | 148 | MOTION REFERRED TO Judge Kelly H Rankin. Joint MOTION for Order for Leave to Each File Consolidated Reply Briefs and Responses to the Amicus Brief by May 2, 2023 filed by Defendants Federal Reserve Bank of Kansas City, Federal Reserve Board of Governors. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 04/20/2023) |
| 04/20/2023 | 149 | DISREGARD per the Honorable Kelly H. Rankin - ~~(TEXT-ONLY) ORDER by the Honorable Kelly H Rankin denying 146 Motion to File Reply/Brief/Supplement (Non-Dispositive). Counsel failed to attach a certificate of conferral in accordance with the Local Rules 7.1(b)(2)(G) and 7.1(b)(1). Counsel may re-file after conferring with the interested parties and indicate whether the motion is opposed or unopposed. (Court Staff, sjdl)~~ Modified text on 4/20/2023 (Court Staff, smxb). (Entered: 04/20/2023) |

| 04/20/2023 | 150 | ORDER by the Honorable Kelly H Rankin granting 146 Motion to File Reply/Brief/Supplement (Non-Dispositive). IT IS ORDERED THAT Senator Patrick J. Toomey may file an amicus curiae brief on or before April 25, 2023. (Court Staff, smxb) (Entered: 04/20/2023) |
|---|---|---|
| 04/20/2023 | 151 | BRIEF *of Amicus Curiae Former Senator Patrick J. Toomey in Support of Neither Party*, filed by Amicus Patrick J Toomey, Jr. (Gruenstein, Benjamin) Modified text on 4/21/2023 (Court Staff, skb). (Entered: 04/20/2023) |
| 04/21/2023 | 152 | ORDER by the Honorable Kelly H Rankin granting 148 Motion for Order. Each Defendant may file a consolidated brief due no later than May 2, 2023, and that the consolidated brief of Defendant Board of Governors of the Federal Reserve System shall not exceed 25 pages and the consolidated brief of Defendant Federal Reserve Bank of Kansas City shall not exceed 15 pages. (Court Staff, sjdl) (Entered: 04/21/2023) |
| 04/27/2023 | 153 | NOTICE of Attorney Appearance by Erin Elizabeth Berry on behalf of Federal Reserve Bank of Kansas City (Berry, Erin) (Entered: 04/27/2023) |
| 04/27/2023 | 154 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order to Withdraw John P. Fritz as attorney filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 04/27/2023) |
| 04/27/2023 | 155 | OPPOSITION to 138 Motion to Intervene filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 04/27/2023) |
| 04/27/2023 | 156 | OPPOSITION to 138 Motion to Intervene filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 04/27/2023) |
| 04/27/2023 | 157 | MEMORANDUM in Support of 138 Motion to Intervene filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 04/27/2023) |
| 04/28/2023 | 158 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting 154 Attorney John P. Fritz terminated. (Court Staff, sjdl) (Entered: 04/28/2023) |
| 05/02/2023 | 159 | REPLY to 124 Motion to Dismiss filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 05/02/2023) |
| 05/02/2023 | 160 | REPLY to 126 Motion to Dismiss *Amended Complaint* filed by Defendant Federal Reserve Board of Governors. (Attachments: # 1 Exhibit A) (Chadwick, Joshua) (Entered: 05/02/2023) |
| 05/03/2023 | 161 | REPLY to 155 Opposition, 156 Opposition filed by Amicus State of Wyoming. (Kenney, Devin) (Entered: 05/03/2023) |
| 05/17/2023 | 162 | ORDER by the Honorable Kelly H Rankin denying 138 Motion to Intervene. The State of Wyoming's Intervention would unduly prejudice Defendants and change the nature of the case. (Court Staff, sjdl) (Entered: 05/17/2023) |
| 06/02/2023 | 163 | *Amended Amicus Curiae* BRIEF in Opposition to Defendants' 48 Motion to Dismiss and 50 Motion to Dismiss filed by Amicus State of Wyoming. (Kenney, Devin) Modified text and added link on 6/7/2023 (Court Staff, skb). Modified text on 6/8/2023 (Court Staff, skb). (Entered: 06/02/2023) |
| 06/08/2023 | 164 | ORDER by the Honorable Scott W Skavdahl denying 124 Motion to Dismiss; granting in part and denying in part 126 Motion to Dismiss. It is ORDERED that Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss (ECF 124 ) is DENIED. It is further ORDERED that Defendant Board of Governors of the Federal Reserve System's Motion to Dismiss the Amended Complaint (ECF 126 ) is GRANTED IN PART AND DENIED IN PART. The motion is granted solely as to Claim II, which is dismissed only as against |

| | | |
|---|---|---|
| | | the Board of Governors. The remainder of the motion to dismiss is denied. (Court Staff, skb) (Entered: 06/08/2023) |
| 06/22/2023 | 165 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Amend/Correct 115 Scheduling Conference Order, filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Wolfe, Jamie) Modified text on 6/23/2023 (Court Staff, skb). (Entered: 06/22/2023) |
| 06/22/2023 | 166 | ANSWER to 121 Amended Complaint with Affirmative Defenses, by Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 06/22/2023) |
| 06/23/2023 | 167 | (TEXT-ONLY) NOTICE of Status Conference: BY TELEPHONE - All parties shall appear by telephone through the Court's conference call system. Guests call: 307-735-3644 Conference ID: 275 440 149#. Status Conference set for 6/30/2023 at 03:00 PM before Honorable Kelly H Rankin. (Court Staff, smxb) (Entered: 06/23/2023) |
| 06/30/2023 | 168 | MINUTES for proceedings held before Honorable Kelly H Rankin: Court held an informal telephonic status conference regarding Plaintiff's motion to amend/ correct the scheduling order. Court and parties agreed on new trial dates and deadlines. Amended scheduling order will be entered. Magistrate Judge Status Conference held on 6/30/2023. (Court Staff, smxb) (Entered: 06/30/2023) |
| 06/30/2023 | 169 | AMENDED SCHEDULING ORDER by the Honorable Kelly H Rankin. Dispositive Motions filing deadline 12/18/2023. Dispositive Motion response deadline 1/18/2024. Dispositive Motion Replies due by 2/1/2024. Appellate Brief due by 12/18/2023. Appellate Response Brief due by 1/18/2024. Appellate Reply Brief due by 2/1/2024. Other Fact Witness Deadline 11/20/2023. Expert Witness Designation-Plaintiff deadline 10/6/2023. Administrative Record filing deadline 8/21/2023. Administrative Record objections deadline 9/5/2023. Expert Witness Designation-Defendant deadline 11/6/2023. Discovery due by 12/18/2023. **Final Pretrial Conference set for 3/21/2024 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial (8 days/Stacked #2) set for 4/8/2024 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, smxb) Modified text on 7/10/2023 (Court Staff, smxb). (Entered: 06/30/2023) |
| 07/18/2023 | 170 | (TEXT-ONLY) NOTICE of Hearing: IN-PERSON **Final Pretrial Conference RESET for 3/19/2024 at 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, skb) (Entered: 07/18/2023) |
| 07/20/2023 | 171 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Protective Order filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A)(Ortiz, Scott) (Entered: 07/20/2023) |
| 07/21/2023 | 172 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin denying 171 Motion for Protective Order without prejudice. Pursuant to Local Rule 7.1(b)(1)(A) & (E) all non-dispositive motions must be filed with both a motion certifying conferral and the requested relief as well as an accompanying proposed order. Plaintiff's filing only contains a proposed order with no motion requesting relief or certifying conferral. Plaintiff may refile its motion in the format required. (Court Staff, sjdl) (Entered: 07/21/2023) |
| 07/21/2023 | 173 | MOTION REFERRED TO Judge Kelly H Rankin. Joint MOTION for Protective Order filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 07/21/2023) |
| 07/24/2023 | 174 | ORDER by the Honorable Kelly H Rankin granting 173 Motion for Protective Order. The parties shall follow the procedures as stipulated. (Court Staff, sjdl) (Entered: 07/24/2023) |

| 08/07/2023 | 175 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin. The Court held a discovery conference regarding Plaintiff's discovery requests. Plaintiff seeks various documents from Defendants and third parties regarding other bank's master account applications. Defendants oppose the request on the basis the requests are overbroad and irrelevant. After hearing argument, the Court determined the requests were outside the scope of discovery at this stage of the litigation. The parties may reach out to the Court for further guidance in the future if needed. (Court Staff, sjdl) (Entered: 08/07/2023) |
|---|---|---|
| 08/09/2023 | 176 | NOTICE of Withdrawal of Lisa Weingarten Richards by Amicus Wyoming Select Committee on Blockchain, Financial Technology and Digital Innovation Technology Co-Chair Olsen (Spillman, Lisa) Modified text on 8/10/2023 (Court Staff, skb). (Entered: 08/09/2023) |
| 08/21/2023 | 177 | NOTICE by Plaintiff Custodia Bank Inc *of Withdrawal of Counsel* (Hermandorfer, Whitney) (Entered: 08/21/2023) |
| 08/21/2023 | 178 | NOTICE of Filing Administrative Record by Defendant Federal Reserve Board of Governors (Chadwick, Joshua). 4 USBs containing the Administrative Record (public and non-public versions) received in the Cheyenne Office of the Clerk on 8/21/2023. Delivered to SWS chambers via Casper bin. Modified on 8/21/2023 (Court Staff, stmo). (Entered: 08/21/2023) |
| 08/28/2023 | 179 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION TO SEAL DOCUMENTS IN THE ADMINISTRATIVE RECORD filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Ortiz, Scott) Modified text on 8/29/2023 (Court Staff, skb). (Entered: 08/28/2023) |
| 08/29/2023 | 180 | ORDER by the Honorable Kelly H Rankin granting 179 Motion for Order. Good cause exists to refrain from placing the identified documents on the public docket and replace them with redacted versions. Plaintiff Custodia Bank, Inc.'s Unopposed Motion to Seal Documents in the Administrative Record is GRANTED. The clerk is ordered to refrain from placing the identified documents on the public docket and replace them with redacted versions. (Court Staff, sjgc) (Main Document 180 replaced on 8/30/2023 to correct date in the Order.) (Court Staff, sjlg). (Entered: 08/29/2023) |
| 08/29/2023 | 181 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of time to move to supplement the Administrative Record filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 08/29/2023) |
| 08/30/2023 | 182 | ORDER by the Honorable Kelly H Rankin granting 181 Motion for Extension of Time. Plaintiff Custodia Bank, Inc.'s Motion for an Extension of Time to Move to Supplement the Administrative Record is granted. The deadline to move to supplement the administrative record is extended to October 27, 2023.(Court Staff, sjgc) (Entered: 08/30/2023) |
| 09/01/2023 | 183 | Notice of Withdrawal of Document in Administrative Record filed by Federal Reserve Board of Governors. (Chadwick, Joshua) Modified text on 9/5/2023 (Court Staff, skb). (Entered: 09/01/2023) |
| 09/05/2023 | 184 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of deadline to designate expert witnesses filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 09/05/2023) |
| 09/06/2023 | 185 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting 184 Motion for Extension of Time Expert Witness Designation-Plaintiff deadline 10/20/2023. Expert |

| | | Witness Designation-Defendant deadline 11/20/2023. (Court Staff, sjdl) (Entered: 09/06/2023) |
|---|---|---|
| 10/11/2023 | 186 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Ian M. Swenson to appear pro hac vice; Fee paid, receipt 1-323; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) Modified text on 10/11/2023 (Court Staff, semt). (Entered: 10/11/2023) |
| 10/11/2023 | 187 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Lauren Weinberger to appear pro hac vice; Fee paid, receipt 1-324; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) Modified text on 10/11/2023 (Court Staff, semt). (Entered: 10/11/2023) |
| 10/12/2023 | 188 | ORDER by the Honorable Kelly H Rankin granting 186 MOTION for Ian M. Swenson to appear pro hac vice & 187 MOTION for Lauren Weinberger to appear pro hac vice; filed by Custodia Bank Inc.(cc: Counsel) (Court Staff, stbd) (Entered: 10/12/2023) |
| 10/12/2023 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR IAN M SWENSON. RECEIPT 1-323. (Court Staff, sjk) (Entered: 10/12/2023) |
| 10/12/2023 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR LAUREN WEINBERGER. RECEIPT 1-324. (Court Staff, sjk) (Entered: 10/12/2023) |
| 10/19/2023 | 189 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of Supplement the Administrative Record filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 10/19/2023) |
| 10/20/2023 | 190 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting in part and denying in part 189 Motion for Extension of Time. For good cause shown, Petitioners have up to and including 11/27/2023 to file a motion to supplement the administrative record. (Court Staff, sjdl) (Entered: 10/20/2023) |
| 10/20/2023 | 191 | Designation of Expert Witnesses by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Swenson, Ian) (Entered: 10/20/2023) |
| 10/23/2023 | 192 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Motion to Seal filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 10/23/2023) |
| 10/24/2023 | 193 | ORDER by the Honorable Kelly H Rankin granting 192 Plaintiff's Motion to Seal its Motion on the Federal Reserve Bank of Kansas City's Unjustified Invocation of the Deliberative Process Privilege Order. (Court Staff, sjgc) Modified text on 10/27/2023 (Court Staff, semt). (Entered: 10/24/2023) |
| 10/24/2023 | 194 | MOTION REFERRED TO Judge Kelly H Rankin. NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - MOTION for Order Motion on the Federal Reserve Bank of Kansas City's Unjustified Invocation of the Deliberative Process Privilege filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Proposed Order)(Ortiz, Scott) (Entered: 10/24/2023) |
| 10/26/2023 | 195 | (TEXT-ONLY) NOTICE of Discovery Status Conference: BY TELEPHONE - All parties shall appear by telephone through the Court's conference call system. Guests call: 307-735-3644 Conference ID: 275 440 149#. Discovery Status Conference set for 11/2/2023 |

| | | | |
|---|---|---|---|
| | | | at 02:00 PM before Honorable Kelly H Rankin. (Court Staff, smxb) Modified date on 10/26/2023 (Court Staff, smxb). (Entered: 10/26/2023) |
| 10/26/2023 | 196 | | (TEXT-ONLY) NOTICE RESETTING Discovery Status Conference: BY TELEPHONE - All parties shall appear by telephone through the Court's conference call system. Guests call: 307-735-3644 Conference ID: 275 440 149#. Discovery Status Conference reset for 10/30/2023 at 03:30 PM before Honorable Kelly H Rankin. (Court Staff, smxb) (Entered: 10/26/2023) |
| 10/30/2023 | 197 | | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin. The Court held an informal conference regarding the scope of discovery. At issue is if the Federal Reserve Bank of Kansas City is statutorily required to grant Plaintiff a master account. The soundness and correctness of that decision is not at issue. Plaintiff may pursue discovery concerning the independence of the Federal Reserves assessment. Such areas would include the policy and procedures the Federal Reserve followed in making its assessment, whether the Board of Governors (or others) inserted itself into the decisionmaking process, and foundational questions relating to disclosed documents. Plaintiff should sparingly seek discovery comparing Plaintiff to other depositories, as discrimination is not at issue and would lead to areas outside the scope of discovery. (Court Staff, sjdl) (Entered: 10/30/2023) |
| 11/02/2023 | 198 | | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Amend the Scheduling Order filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) Modified to terminate motion per order on 11/13/2023 (Court Staff, smxb). Modified text on 11/14/2023 (Court Staff, semt). (Entered: 11/02/2023) |
| 11/03/2023 | 199 | | NOTICE of Attorney Appearance by Ian Swenson on behalf of Custodia Bank Inc (Swenson, Ian) (Entered: 11/03/2023) |
| 11/03/2023 | 200 | | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin. Plaintiff shall Respond to ECF No. 198 on or before 11/8/2023. (Court Staff, sjdl) Modified text on 11/14/2023 (Court Staff, semt). (Entered: 11/03/2023) |
| 11/03/2023 | 201 | | (TEXT-ONLY) NOTICE of Hearing: BY TELEPHONE - All parties may appear by telephone through the Courts conference call system. Guests call: 307-735-3644, Access code 275440149#. Status Conference set for 11/13/2023 03:00 PM before Honorable Kelly H Rankin. (Court Staff, sjdl) (Entered: 11/03/2023) |
| 11/06/2023 | 202 | | NOTICE of Attorney Appearance by Lauren Weinberger on behalf of Custodia Bank Inc (Weinberger, Lauren) (Entered: 11/06/2023) |
| 11/07/2023 | 203 | | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Granting Unopposed Motion for Leave to File Response to Motion Under Seal filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 11/07/2023) |
| 11/07/2023 | 204 | | ORDER by the Honorable Kelly H Rankin granting 203 Motion for Order. Defendant may file its response as non-public. (Court Staff, sjdl) (Entered: 11/07/2023) |
| 11/07/2023 | 205 | | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - RESPONSE in Opposition re 194 MOTION for Order Motion on the Federal Reserve Bank of Kansas City's Unjustified Invocation of the Deliberative Process Privilege filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (Addleman, Billie) (Entered: 11/07/2023) |

| Date | Doc # | Description |
|---|---|---|
| 11/07/2023 | 206 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Excess Pages regarding Opposition to Plaintiff's Motion on the Federal Reserve Bank of Kansas City's Invocation of the Deliberative Process Privilege filed by Defendant Federal Reserve Board of Governors. (Attachments: # 1 Proposed Order)(Chadwick, Joshua) (Entered: 11/07/2023) |
| 11/07/2023 | 207 | RESPONSE in Opposition re 194 MOTION for Order Motion on the Federal Reserve Bank of Kansas City's Unjustified Invocation of the Deliberative Process Privilege filed by Defendant Federal Reserve Board of Governors. (Attachments: # 1 Declaration of David G. Caperton) (Chadwick, Joshua) (Entered: 11/07/2023) |
| 11/08/2023 | 208 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting 206 Motion to File Excess Pages Non-Dispositive. The Court will accept Defendant's overlength Response. (Court Staff, sjdl) (Entered: 11/08/2023) |
| 11/08/2023 | 209 | RESPONSE in Opposition re 198 MOTION for Order to Amend the Scheduling Order filed by Plaintiff Custodia Bank Inc. (Swenson, Ian) (Entered: 11/08/2023) |
| 11/13/2023 | 210 | MINUTES for proceedings held before Honorable Kelly H Rankin: Court held a telephonic status conference to discuss the defendant's motion to amend the scheduling order 198 and plaintiff's response 209 . After discussion with parties, the final pretrial conference will remain as scheduled for 3/21/24 and the bench trial will remain as scheduled for 4/8/2024. Defendant's expert designation deadline and listing of other witnesses will be moved to 12/4/23. Dispositive motions will be due no later than 1/19/24 with responses due three weeks later and replies due two weeks thereafter. Second Amended scheduling order to be entered reflecting the new deadlines. Magistrate Judge Status Conference held on 11/13/2023. (Court Staff, smxb) (Entered: 11/13/2023) |
| 11/13/2023 | 211 | SECOND AMENDED SCHEDULING ORDER by the Honorable Kelly H Rankin, granting in part and denying in part 198 Motion to Amend Scheduling Order. Dispositive Motions filing deadline 1/19/2024. Dispositive Motion response deadline 2/9/2024. Dispositive Motion Replies due by 2/23/2024. Other Fact Witness Deadline 12/4/2023 Expert Witness Designation-Defendant deadline 12/4/2023. Discovery due by 12/18/2023. **Final Pretrial Conference set for 3/21/2024 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial (8 days/Stacked #2) set for 4/8/2024 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, smxb) (Entered: 11/13/2023) |
| 11/14/2023 | 212 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Order Motion to Seal Plaintiff's Reply Brief filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 11/14/2023) |
| 11/14/2023 | 213 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting 212 Motion for Order. THIS MATTER came before the Court on Plaintiff Custodia Bank, Inc.'s Unopposed Motion to Seal its Reply Brief in Support of its Motion on the Federal Reserve Bank of Kansas City's Unjustified Invocation of the Deliberative Process Privilege. Finding good cause,IT IS HEREBY ORDERED that Plaintiff Custodia Bank, Inc.'s Motion to Seal is GRANTED.(Court Staff, sjgc) (Entered: 11/14/2023) |
| 11/14/2023 | 214 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - REPLY to 194 Motion for Order,, filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J) (Ortiz, Scott) (Entered: 11/14/2023) |

| | | |
|---|---|---|
| 11/15/2023 | 215 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Leave to File Excess Pages regarding REPLY BRIEF IN SUPPORT OF ITS MOTION ON THE FEDERAL RESERVE BANK OF KANSAS CITYS UNJUSTIFIED INVOCATION OF THE DELIBERATIVE PROCESS PRIVILEGE filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 11/15/2023) |
| 11/15/2023 | 216 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting 215 Motion to File Excess Pages Non-Dispositive. Plaintiff's overlength Reply is accepted. (Court Staff, sjdl) (Entered: 11/15/2023) |
| 11/27/2023 | 217 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Russell M. Mendelson to appear pro hac vice; Check tendered; filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Ortiz, Scott) (Entered: 11/27/2023) |
| 11/27/2023 | 218 | ORDER by the Honorable Kelly H. Rankin granting 217 MOTION for Russell M. Mendelson to appear pro hac vice. (Court Staff, semt) Modified text on 12/1/2023 (Court Staff, semt). (Entered: 11/27/2023) |
| 11/27/2023 | 219 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Amend/Correct 211 Scheduling Conference Order,, filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 11/27/2023) |
| 11/28/2023 | 220 | ORDER by the Honorable Kelly H Rankin granting 219 MOTION to Amend/Correct 211 Scheduling Conference Order. The briefing schedule is consolidated. (Court Staff, sjdl) (Entered: 11/28/2023) |
| 11/28/2023 | 221 | NOTICE of Pro Hac Vice Attorney Appearance by Russell Meir Mendelson on behalf of Custodia Bank Inc (Mendelson, Russell) Modified text on 12/4/2023 (Court Staff, semt). (Entered: 11/28/2023) |
| 11/29/2023 | | FINANCIAL ENTRY: Pro Hac Vice Fee $100 Paid on Behalf of Russell Mendelson (Receipt #2-2379). (Court Staff, stmo) (Entered: 11/29/2023) |
| 12/04/2023 | 222 | Witness List by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 12/04/2023) |
| 12/04/2023 | 223 | Witness List by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 12/04/2023) |
| 12/04/2023 | 224 | Designation of Expert Witnesses by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit A) (Addleman, Billie) (Entered: 12/04/2023) |
| 12/07/2023 | 225 | ORDER by the Honorable Kelly H Rankin denying 194 PLAINTIFF'S MOTION ON THE UNJUSTIFIED INVOCATION OF THE DELIBERATIVE PROCESS PRIVILEGE. (Court Staff, sjgc) (Entered: 12/07/2023) |
| 12/12/2023 | 226 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Jared Lax to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Affidavit Jared Lax, # 2 Proposed Order)(Addleman, Billie) (Entered: 12/12/2023) |
| 12/12/2023 | 227 | ORDER by the Honorable Kelly H Rankin granting 226 MOTION for Jared Lax to appear pro hac vice (cc: Counsel via email)(Court Staff, semt) (Entered: 12/12/2023) |
| 12/15/2023 | 228 | Notice of Pro Hac Vice Attorney Appearance by Jared Michael Lax on behalf of Federal Reserve Bank of Kansas City Filing fee $ 100, receipt number AWYDC-2355886. (Lax, Jared) (Entered: 12/15/2023) |
| 12/19/2023 | 229 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Order Motion to Seal filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, |

| | | |
|---|---|---|
| | | Scott) (Entered: 12/19/2023) |
| 12/19/2023 | [230](#) | Stipulated MOTION for Leave to File Excess Pages regarding Omnibus Brief filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](#) Proposed Order)(Ortiz, Scott) (Entered: 12/19/2023) |
| 12/19/2023 | [231](#) | ~~Stipulated MOTION for Leave to File Excess Pages regarding Omnibus Brief filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott)~~ Terminated and modified text on 12/20/2023. Duplicate motion. See [230](#) , 235 . (Court Staff, semt). (Entered: 12/19/2023) |
| 12/20/2023 | 232 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting [229](#) Motion for Order. Custodia may redact or seal portions of its brief. (Court Staff, sjdl) (Entered: 12/20/2023) |
| 12/20/2023 | [233](#) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - MOTION for Judgment *as a matter of law on its Statutory Mandamus Claim* filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](#) Proposed Order)(Ortiz, Scott) (Entered: 12/20/2023) |
| 12/20/2023 | [234](#) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - *Omnibus* BRIEF re [233](#) Motion for Judgment, filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 12/20/2023) |
| 12/20/2023 | 235 | (TEXT-ONLY) ORDER by the Honorable Scott W Skavdahl granting [230](#) Plaintiff's Unopposed Motion for Leave to File Excess Pages. Plaintiff may file an Omnibus Brief not exceeding 55 pages in support of its Motion for Judgment as a Matter of Law. (Court Staff, semt) (Entered: 12/20/2023) |
| 12/20/2023 | [236](#) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Ryan Scarborough re [233](#) MOTION for Judgment *as a matter of law on its Statutory Mandamus Claim*, [234](#) Brief filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G, # [8](#) Exhibit H, # [9](#) Exhibit I, # [10](#) Exhibit J, # [11](#) Exhibit K, # [12](#) Exhibit L, # [13](#) Exhibit M, # [14](#) Exhibit N, # [15](#) Exhibit O, # [16](#) Exhibit P, # [17](#) Exhibit Q, # [18](#) Exhibit R, # [19](#) Exhibit S, # [20](#) Exhibit T, # [21](#) Exhibit U, # [22](#) Exhibit V, # [23](#) Exhibit W, # [24](#) Exhibit X, # [25](#) Exhibit Y, # [26](#) Exhibit Z, # [27](#) Exhibit AA, # [28](#) Exhibit AB, # [29](#) Exhibit AC, # [30](#) Exhibit AD, # [31](#) Exhibit AE, # [32](#) Exhibit AF, # [33](#) Exhibit AG, # [34](#) Exhibit AH, # [35](#) Exhibit AI, # [36](#) Exhibit AJ, # [37](#) Exhibit AK, # [38](#) Exhibit AL, # [39](#) Exhibit AM, # [40](#) Exhibit AN, # [41](#) Exhibit AO, # [42](#) Exhibit AP, # [43](#) Exhibit AQ, # [44](#) Exhibit AR, # [45](#) Exhibit AS, # [46](#) Exhibit AT, # [47](#) Exhibit AU, # [48](#) Exhibit AV, # [49](#) Exhibit AW, # [50](#) Exhibit AX, # [51](#) Exhibit AY, # [52](#) Exhibit AZ, # [53](#) Exhibit BA, # [54](#) Exhibit BB, # [55](#) Exhibit BC, # [56](#) Exhibit BD, # [57](#) Exhibit BE, # [58](#) Exhibit BF, # [59](#) Exhibit BG, # [60](#) Exhibit BH, # [61](#) Exhibit BI, # [62](#) Exhibit BJ, # [63](#) Exhibit BK, # [64](#) Exhibit BL, # [65](#) Exhibit BM, # [66](#) Exhibit BN, # [67](#) Exhibit BO, # [68](#) Exhibit BP, # [69](#) Exhibit BQ, # [70](#) Exhibit BR, # [71](#) Exhibit BS, # [72](#) Exhibit BT, # [73](#) Exhibit BU, # [74](#) Exhibit BV, # [75](#) Exhibit BW, # [76](#) Exhibit BX, # [77](#) Exhibit BY, # [78](#) Exhibit BZ) (Ortiz, Scott) (Additional attachment(s) added on 12/20/2023: # [79](#) Exhibit CA, # [80](#) Exhibit CB, # [81](#) Exhibit CC, # [82](#) Exhibit CD, # [83](#) Exhibit CE, # [84](#) Exhibit CF, # [85](#) Exhibit CG, # [86](#) Exhibit CH, # [87](#) Exhibit CI, # [88](#) Exhibit CJ, # [89](#) Exhibit CK, # [90](#) Exhibit CL, # [91](#) Exhibit CM, # [92](#) Exhibit CN, # [93](#) Exhibit CO, # [94](#) Exhibit CP, # [95](#) Exhibit CQ) (Court Staff, semt). (Attachments 54 and 88 blank pages removed on 12/21/2023) (Court Staff, semt). (Entered: 12/20/2023) |
| 12/22/2023 | [237](#) | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Amend/Correct [211](#) Scheduling Conference Order, *Unopposed* filed by Defendant Federal Reserve Bank of |

| | | |
|---|---|---|
| | | Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) Modified text on 12/26/2023 (Court Staff, semt). (Entered: 12/22/2023) |
| 12/22/2023 | 238 | MOTION for Judgment filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Proposed Order)(Ortiz, Scott) (Entered: 12/22/2023) |
| 12/22/2023 | 239 | *Omnibus* BRIEF re 238 Motion for Judgment filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 12/22/2023) |
| 12/22/2023 | 240 | AFFIDAVIT of Ryan Scarborough re 239 Brief, 238 MOTION for Judgment filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit AB, # 29 Exhibit AC, # 30 Exhibit AD, # 31 Exhibit AE, # 32 Exhibit AF, # 33 Exhibit AG, # 34 Exhibit AH, # 35 Exhibit AI, # 36 Exhibit AJ, # 37 Exhibit AK, # 38 Exhibit AL, # 39 Exhibit AM, # 40 Exhibit AN, # 41 Exhibit AO, # 42 Exhibit AP, # 43 Exhibit AQ, # 44 Exhibit AR, # 45 Exhibit AS, # 46 Exhibit AT, # 47 Exhibit AU, # 48 Exhibit AV, # 49 Exhibit AW, # 50 Exhibit AX, # 51 Exhibit AY, # 52 Exhibit AZ, # 53 Exhibit BA, # 54 Exhibit BB, # 55 Exhibit BC, # 56 Exhibit BD, # 57 Exhibit BE, # 58 Exhibit BF, # 59 Exhibit BG, # 60 Exhibit BH, # 61 Exhibit BI, # 62 Exhibit BJ, # 63 Exhibit BK, # 64 Exhibit BL, # 65 Exhibit BM, # 66 Exhibit BN, # 67 Exhibit BO, # 68 Exhibit BP, # 69 Exhibit BQ, # 70 Exhibit BR, # 71 Exhibit BS, # 72 Exhibit BT, # 73 Exhibit BU, # 74 Exhibit BV, # 75 Exhibit BW, # 76 Exhibit BX, # 77 Exhibit BY, # 78 Exhibit BZ, # 79 Exhibit CA, # 80 Exhibit CB, # 81 Exhibit CC, # 82 Exhibit CD, # 83 Exhibit CE, # 84 Exhibit CF, # 85 Exhibit CG, # 86 Exhibit CH, # 87 Exhibit CI, # 88 Exhibit CJ, # 89 Exhibit CK, # 90 Exhibit CL, # 91 Exhibit CM, # 92 Exhibit CN, # 93 Exhibit CO, # 94 Exhibit CP, # 95 Exhibit CQ) (Ortiz, Scott) (Attachments 54 and 88 blank pages removed on 12/27/2023) (Court Staff, semt). Modified text on 12/27/2023 (Court Staff, semt). (Entered: 12/22/2023) |
| 12/26/2023 | 241 | ORDER by the Honorable Kelly H Rankin granting 237 MOTION to Amend/Correct 211 Scheduling Conference Order, *Unopposed*. All deadlines in the Second Amended Scheduling Order dated February 23, 2023, not modified herein, shall remain in effect, including the pre-trial conference and bench trial dates. (Court Staff, sjgc) Modified text on 1/3/2024 (Court Staff, semt). (Entered: 12/26/2023) |
| 12/26/2023 | | Set/Reset Deadlines/Hearings: Plaintiff Dispositive Motions filing deadline 12/20/2023. Motion response deadline 1/26/2024. Reply Brief due by 2/16/2024. Plaintiff Amicus Briefs due 1/19/2024. Defendant Amicus Briefs due by 2/9/2024. (Court Staff, semt) (Entered: 01/03/2024) |
| 01/12/2024 | 242 | NOTICE of Attorney Appearance by Tyler John Garrett on behalf of Blockchain Association (Garrett, Tyler) (Entered: 01/12/2024) |
| 01/12/2024 | 243 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Matthew I. Summers to appear pro hac vice; Check not tendered; filed by Movant Blockchain Association. (Attachments: # 1 Declaration of Matthew I. Summers, # 2 Proposed Order to Admit Pro Hac Vice)(Garrett, Tyler) (Entered: 01/12/2024) |
| 01/12/2024 | 244 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Michelle S. Kallen to appear pro hac vice; Check not tendered; filed by Movant Blockchain Association. (Attachments: # 1 Declaration of Michelle S. Kallen, # 2 Proposed Order to Admit Pro Hac Vice)(Garrett, Tyler) (Entered: 01/12/2024) |
| 01/16/2024 | 245 | ORDER by the Honorable Kelly H Rankin granting 243 MOTION for Matthew I. Summers to appear pro hac vice, 244 MOTION for Michelle S. Kallen to appear pro hac |

| | | |
|---|---|---|
| | | vice, filed by Blockchain Association. (cc: Counsel via email) (Court Staff, semt) (Entered: 01/16/2024) |
| 01/17/2024 | [246](#) | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Non-Dispositive) *State's Second Motion for Leave to File Brief as Amicus Curiae* filed by Amicus State of Wyoming. (Attachments: # [1](#) Exhibit, # [2](#) Proposed Order)(Kenney, Devin) (Entered: 01/17/2024) |
| 01/18/2024 | [247](#) | Notice of Pro Hac Vice Attorney Appearance by Michelle Kallen on behalf of Blockchain Association and Scholars, Filing fee $ 100, receipt number AWYDC-2370366. (Kallen, Michelle) Modified text on 1/18/2024 (Court Staff, semt). (Entered: 01/18/2024) |
| 01/18/2024 | [248](#) | Notice of Pro Hac Vice Attorney Appearance by Matthew I. Summers on behalf of Blockchain Association and Scholars, Filing fee $ 100, receipt number AWYDC-2370500. (Summers, Matthew) Modified text on 1/18/2024 (Court Staff, semt). (Entered: 01/18/2024) |
| 01/18/2024 | [249](#) | NOTICE of Attorney Appearance by Tyler John Garrett on behalf of Payment System Scholars (Garrett, Tyler) Modified party text on 1/19/2024 (Court Staff, semt). (Entered: 01/18/2024) |
| 01/18/2024 | [250](#) | ORDER by the Honorable Kelly H Rankin granting [246](#) Motion to File Reply/Brief/Supplement (Non-Dispositive). The State of Wyoming shall file its Amicus Brief within three business days. (Court Staff, sjdl) (Entered: 01/18/2024) |
| 01/18/2024 | [251](#) | *Amicus Curiae* BRIEF *of the State of Wyoming* filed by Amicus State of Wyoming. (Kenney, Devin) (Entered: 01/18/2024) |
| 01/18/2024 | [252](#) | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Non-Dispositive) */ Blockchain Association and Payment Systems Scholars' Motion for Leave to File Brief as Amici Curiae in Support of Plaintiff* filed by Movants Blockchain Association, Payment System Scholars. (Attachments: # [1](#) Proposed Blockchain Association and Payment Systems Scholars' Amici Curiae Brief, # [2](#) Proposed Order)(Kallen, Michelle) Modified party text on 1/19/2024 (Court Staff, semt). (Entered: 01/18/2024) |
| 01/18/2024 | [253](#) | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Reply/Brief/Supplement (Non-Dispositive) *Motion for Leave to File Amici Curiae Brief in Support of Plaintiff's Motion for Judgment as a Matter of Law (ECF [238](#) )* filed by Amicus Parties United States House of Representatives Financial Services Committee Members, United States Senate Banking, Housing and Urban Affairs Committee Members. (Attachments: # [1](#) Exhibit 1- Proposed Brief, # [2](#) Proposed Order)(Land, Christopher) Modified to add hyperlink on 1/19/2024 (Court Staff, sjlg). Removed repetitive text on 1/19/2024 (Court Staff, semt). (Entered: 01/18/2024) |
| 01/19/2024 | 254 | (TEXT-ONLY) ORDER by the Honorable Kelly H Rankin granting [252](#) Motion to File Reply/Brief/Supplement (Non-Dispositive); granting [253](#) Motion to File Reply/Brief/Supplement (Non-Dispositive). The movants shall file their Amicus Briefs within three business days. (Court Staff, sjdl) Modified on 1/19/2024 (Court Staff, sjdl). (Entered: 01/19/2024) |
| 01/19/2024 | [255](#) | MOTION REFERRED TO Judge Kelly H Rankin. Amended MOTION for Michelle S. Kallen to appear pro hac vice; Check not tendered; filed by Movants Blockchain Association, Payment System Scholars. (Attachments: # [1](#) Amended Declaration of Michelle S. Kallen, # [2](#) Proposed Order to Admit Pro Hac Vice)(Garrett, Tyler) Modified party text on 1/19/2024 (Court Staff, semt). (Entered: 01/19/2024) |

| | | |
|---|---|---|
| 01/19/2024 | 256 | MOTION REFERRED TO Judge Kelly H Rankin. Amended MOTION for Matthew I. Summers to appear pro hac vice; Check not tendered; filed by Movants Blockchain Association, Payment System Scholars. (Attachments: # 1 Amended Declaration of Matthew I. Summers, # 2 Proposed Order to Admit Pro Hac Vice)(Garrett, Tyler) Modified party text on 1/19/2024 (Court Staff, semt). Modified attachment text on 1/19/2024 (Court Staff, semt). (Entered: 01/19/2024) |
| 01/19/2024 | 257 | *Amici Curiae* BRIEF *in Support of Plaintiff* filed by Amicus Parties Blockchain Association, Payment System Scholars. (Kallen, Michelle) Modified party text on 1/19/2024 (Court Staff, semt). (Entered: 01/19/2024) |
| 01/19/2024 | 258 | ORDER by the Honorable Kelly H. Rankin granting 255 Amended MOTION for Michelle S. Kallen to appear pro hac vice; and 256 Amended MOTION for Matthew I. Summers to appear pro hac vice, filed by Blockchain Association, Payment System Scholars (Court Staff, semt) Modified judge text on 1/22/2024 (Court Staff, semt). (Entered: 01/19/2024) |
| 01/19/2024 | 259 | *Amici Curiae* BRIEF *in Support of Plaintiff's Motion for Judgment as a Matter of Law (ECF 238 )* filed by Amicus Parties United States House of Representatives Financial Services Committee Members, United States Senate Banking, Housing and Urban Affairs Committee Members. (Land, Christopher) Modified text on 2/9/2024 (Court Staff, sjlg). (Entered: 01/19/2024) |
| 01/22/2024 | 260 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for E. Caroline Freeman to appear pro hac vice; Check not tendered; filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Affidavit E. Caroline Freeman, # 2 Proposed Order) (Addleman, Billie) (Entered: 01/22/2024) |
| 01/22/2024 | 261 | ORDER by the Honorable Kelly H Rankin granting 260 MOTION for E. Caroline Freeman to appear pro hac vice, filed by Federal Reserve Bank of Kansas City (cc: Counsel via email) (Court Staff, semt) Modified cc text on 1/22/2024 (Court Staff, semt). (Entered: 01/22/2024) |
| 01/23/2024 | 262 | Notice of Pro Hac Vice Attorney Appearance by Emily Caroline Snell Freeman on behalf of Federal Reserve Bank of Kansas City Filing fee $ 100, receipt number AWYDC-2372465. (Freeman, Emily) (Entered: 01/23/2024) |
| 01/23/2024 | 263 | Stipulated MOTION for Leave to File Excess Pages regarding 50 and 15 filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order) (Addleman, Billie) (Entered: 01/23/2024) |
| 01/24/2024 | 264 | ORDER by the Honorable Kelly H Rankin granting 263 Motion to File Excess Pages. Defendants are granted the requested page extensions. (Court Staff, sjdl) (Entered: 01/24/2024) |
| 01/25/2024 | 265 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Granting FRBKC's Unopposed Motion to File Its Motions Under Seal filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 01/25/2024) |
| 01/26/2024 | 266 | ORDER by the Honorable Kelly H Rankin granting 265 Motion for Order. Defendant is permitted to file Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Petition for Review and Motion for Judgment as a Matter of Law, Defendant's Motion to Strike Reports and Exclude Testimony of Professor Peter Conti-Brown, Defendants Motion to Strike Reports and Exclude Testimony of Katie Cox under seal through February 1, 2024. (Court Staff, sjgc) (Entered: 01/26/2024) |

| 01/26/2024 | 267 | MOTION REFERRED TO Judge Kelly H Rankin. NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - MOTION for Order to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order) (Addleman, Billie) (Entered: 01/26/2024) |
|---|---|---|
| 01/26/2024 | 268 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Andrew Michaelson re 267 MOTION for Order to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22) (Addleman, Billie) (Entered: 01/26/2024) |
| 01/26/2024 | 269 | MOTION REFERRED TO Judge Kelly H Rankin. NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - MOTION for Order to Strike Reports and Exclude the Testimony of Katie S. Cox filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 01/26/2024) |
| 01/26/2024 | 270 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Andrew Michaelson re 269 MOTION for Order to Strike Reports and Exclude the Testimony of Katie S. Cox filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 ~~Exhibit 22~~ DISREGARD - will be refiled by counsel, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25) (Addleman, Billie) Modified text on 2/1/2024 (Court Staff, sbh). (Entered: 01/26/2024) |
| 01/26/2024 | 271 | MEMORANDUM in Opposition to 238 Motion for Judgment, 233 Motion for Judgment, filed by Defendant Federal Reserve Board of Governors. (Chadwick, Joshua) (Entered: 01/26/2024) |
| 01/26/2024 | 272 | MOTION for Summary Judgment filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) Removed non-public restriction per counsel on 2/1/2024 (Court Staff, sbh). (Entered: 01/26/2024) |
| 01/26/2024 | 273 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - MEMORANDUM IN SUPPORT of 272 Motion for Summary Judgment and OPPOSITION to 238 Motion for Judgment and 233 Motion for Judgment filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) Modified text on 1/30/2024 (Court Staff, sjlg). (Entered: 01/26/2024) |
| 01/26/2024 | 274 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Andrew Michaelson re 272 MOTION for Summary Judgment, , 273 Brief, filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 |

| | | |
|---|---|---|
| | | Exhibit 37, # [38] Exhibit 38, # [39] Exhibit 39, # [40] Exhibit 40, # [41] Exhibit 41, # [42] Exhibit 42, # [43] Exhibit 43, # [44] Exhibit 44, # [45] Exhibit 45, # [46] Exhibit 46, # [47] Exhibit 47, # [48] Exhibit 48, # [49] Exhibit 49, # [50] Exhibit 50, # [51] Exhibit 51, # [52] Exhibit 52, # [53] Exhibit 53, # [54] Exhibit 54, # [55] Exhibit 55, # [56] Exhibit 56, # [57] Exhibit 57, # [58] Exhibit 58, # [59] Exhibit 59, # [60] Exhibit 60, # [61] Exhibit 61, # [62] Exhibit 62, # [63] Exhibit 63, # [64] Exhibit 64, # [65] Exhibit 65, # [66] Exhibit 66, # [67] Exhibit 67, # [68] Exhibit 68, # [69] Exhibit 69, # [70] Exhibit 70, # [71] Exhibit 71, # [72] Exhibit 72, # [73] Exhibit 73, # [74] Exhibit 74, # [75] Exhibit 75, # [76] Exhibit 76, # [77] Exhibit 77, # [78] Exhibit 78, # [79] Exhibit 79, # [80] Exhibit 80, # [81] Exhibit 81, # [82] Exhibit 82, # [83] Exhibit 83, # [84] Exhibit 84) (Addleman, Billie) (Entered: 01/26/2024) |
| 02/02/2024 | [275] | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - ERRATA re [268] Affidavit, by Defendant Federal Reserve Bank of Kansas City. (Attachments: # [1] Exhibit 2, # [2] Exhibit 15) (Addleman, Billie) Modified text on 2/6/2024 (Court Staff, semt). (Entered: 02/02/2024) |
| 02/02/2024 | [276] | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - ERRATA re [270] Affidavit,,, by Defendant Federal Reserve Bank of Kansas City. (Attachments: # [1] Exhibit 22) (Addleman, Billie) (Entered: 02/02/2024) |
| 02/02/2024 | [277] | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - ERRATA re [274] Affidavit, by Defendant Federal Reserve Bank of Kansas City. (Attachments: # [1] Exhibit 12, # [2] Exhibit 14, # [3] Exhibit 16, # [4] Exhibit 18) (Addleman, Billie) Modified text on 2/6/2024 (Court Staff, semt). (Entered: 02/02/2024) |
| 02/02/2024 | [278] | NOTICE by Defendant Federal Reserve Bank of Kansas City re [267] MOTION for Order to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown *REDACTED VERSION* (Addleman, Billie) (Entered: 02/02/2024) |
| 02/02/2024 | [279] | NOTICE by Defendant Federal Reserve Bank of Kansas City re [268] Affidavit, *REDACTED VERSION (of certain exhibits)* (Attachments: # [1] Exhibit 1, # [2] Exhibit 2 (redacted), # [3] Exhibit 3, # [4] Exhibit 4, # [5] Exhibit 5, # [6] Exhibit 6, # [7] Exhibit 7, # [8] Exhibit 8, # [9] Exhibit 10, # [10] Exhibit 11, # [11] Exhibit 12, # [12] Exhibit 13, # [13] Exhibit 14 (redacted), # [14] Exhibit 15, # [15] Exhibit 16, # [16] Exhibit 17, # [17] Exhibit 19, # [18] Exhibit 20, # [19] Exhibit 21, # [20] Exhibit 22) (Addleman, Billie) Modified text on 2/6/2024 (Court Staff, semt). (Entered: 02/02/2024) |
| 02/02/2024 | [280] | NOTICE by Defendant Federal Reserve Bank of Kansas City re [269] MOTION for Order to Strike Reports and Exclude the Testimony of Katie S. Cox *REDACTED VERSION* (Addleman, Billie) (Entered: 02/02/2024) |
| 02/02/2024 | [281] | NOTICE by Defendant Federal Reserve Bank of Kansas City re [270] Affidavit, *REDACTED VERSION (of certain exhibits)* (Attachments: # [1] Exhibit 1, # [2] Exhibit 2 (redacted), # [3] Exhibit 3 (redacted), # [4] Exhibit 4 (redacted), # [5] Exhibit 5, # [6] Exhibit 6, # [7] Exhibit 7, # [8] Exhibit 8, # [9] Exhibit 9, # [10] Exhibit 10, # [11] Exhibit 11, # [12] Exhibit 12, # [13] Exhibit 13, # [14] Exhibit 14, # [15] Exhibit 18, # [16] Exhibit 20, # [17] Exhibit 21) (Addleman, Billie) Modified text on 2/6/2024 (Court Staff, semt). (Entered: 02/02/2024) |
| 02/02/2024 | [282] | NOTICE by Defendant Federal Reserve Bank of Kansas City re [273] Brief, *REDACTED VERSION* (Addleman, Billie) (Entered: 02/02/2024) |
| 02/02/2024 | [283] | NOTICE by Defendant Federal Reserve Bank of Kansas City re [277] Errata, [274] Affidavit, *REDACTED VERSION (of certain exhibits)* (Attachments: # [1] Exhibit 1, # [2] Exhibit 2, # [3] Exhibit 3, # [4] Exhibit 4, # [5] Exhibit 5, # [6] Exhibit 6, # [7] Exhibit 9, # [8] Exhibit 10, # [9] Exhibit 11, # [10] Exhibit 12 (redacted), # [11] Exhibit 13 (redacted), # [12] Exhibit 14, # [13] Exhibit 16 (redacted), # [14] Exhibit 17, # [15] Exhibit 18 (redacted), # [16] Exhibit 19, # [17] Exhibit 20, # [18] Exhibit 21, # [19] Exhibit 23, # [20] Exhibit 26 (redacted), # [21] Exhibit 28, # [22] Exhibit 29, # [23] Exhibit 31, # [24] Exhibit 34, # [25] Exhibit 35 |

| | | |
|---|---|---|
| | | (redacted), # [26](Exhibit) Exhibit 37, # [27](Exhibit) Exhibit 38, # [28](Exhibit) Exhibit 39, # [29](Exhibit) Exhibit 40, # [30](Exhibit) Exhibit 41, # [31](Exhibit) Exhibit 42, # [32](Exhibit) Exhibit 43, # [33](Exhibit) Exhibit 44, # [34](Exhibit) Exhibit 45, # [35](Exhibit) Exhibit 48, # [36](Exhibit) Exhibit 51, # [37](Exhibit) Exhibit 53, # [38](Exhibit) Exhibit 54 (redacted), # [39](Exhibit) Exhibit 56, # [40](Exhibit) Exhibit 57, # [41](Exhibit) Exhibit 58, # [42](Exhibit) Exhibit 59, # [43](Exhibit) Exhibit 60, # [44](Exhibit) Exhibit 61, # [45](Exhibit) Exhibit 62, # [46](Exhibit) Exhibit 63, # [47](Exhibit) Exhibit 64, # [48](Exhibit) Exhibit 65, # [49](Exhibit) Exhibit 66, # [50](Exhibit) Exhibit 67, # [51](Exhibit) Exhibit 68 (redacted), # [52](Exhibit) Exhibit 69, # [53](Exhibit) Exhibit 70, # [54](Exhibit) Exhibit 71, # [55](Exhibit) Exhibit 72, # [56](Exhibit) Exhibit 73, # [57](Exhibit) Exhibit 74, # [58](Exhibit) Exhibit 75 (redacted), # [59](Exhibit) Exhibit 76, # [60](Exhibit) Exhibit 77, # [61](Exhibit) Exhibit 78, # [62](Exhibit) Exhibit 79, # [63](Exhibit) Exhibit 81, # [64](Exhibit) Exhibit 82, # [65](Exhibit) Exhibit 83 (redacted) (Addleman, Billie) Modified text on 2/6/2024 (Court Staff, semt). (Entered: 02/02/2024) |
| 02/09/2024 | [284](doc) | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Leave to File Amicus Brief filed by Movant David Zaring. (Attachments: # [1](doc) Proposed Order)(Court Staff, smxb) (Entered: 02/09/2024) |
| 02/09/2024 | [285](doc) | ORDER by the Honorable Kelly H Rankin granting [284](doc) Motion to File Reply/Brief/Supplement. David Zaring, the Elizabeth F. Putzel Professor of the Wharton School of the University of Pennsylvania may file an amicus brief on or before February 9, 2024. pro se Movant sent a copy of this Order via U.S. Postal Service sent on 2/9/2024. (Court Staff, sjgc) (Entered: 02/09/2024) |
| 02/09/2024 | [286](doc) | AMICUS BRIEF is Support of Defendants filed by Amicus David Zaring. (Court Staff, sjlg) (Entered: 02/09/2024) |
| 02/15/2024 | [287](doc) | Stipulated MOTION for Leave to File Excess Pages regarding Omnibus Opposition/Reply Brief and Oppositions to FRBKC Motions to Exclude Plaintiff's Expert Witnesses filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](doc) Proposed Order)(Ortiz, Scott) (Entered: 02/15/2024) |
| 02/15/2024 | [288](doc) | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Order Motion to Redact or Seal Portions of Its Omnibus Opposition/Reply Brief and Oppositions to the FRBKC Motions to Exclude Plaintiff's Expert Witnesses filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](doc) Proposed Order)(Ortiz, Scott) (Entered: 02/15/2024) |
| 02/15/2024 | [289](doc) | ORDER by the Honorable Scott W Skavdahl granting Plaintiff Custodia Bank Inc's [287](doc) Motion to File Excess Pages (Copy of order sent to Pro Se Amicus David Zaring via US Mail on 2/15/24) (Court Staff, semt) (Entered: 02/15/2024) |
| 02/16/2024 | [290](doc) | ORDER by the Honorable Kelly H Rankin granting [288](doc) Motion for Order. Plaintiff shall follow the procedure as outlined. (Court Staff, sjdl) (Entered: 02/16/2024) |
| 02/16/2024 | [291](doc) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - RESPONSE in Opposition re [269](doc) MOTION for Order to Strike Reports and Exclude the Testimony of Katie S. Cox filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/16/2024) |
| 02/16/2024 | [292](doc) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Ryan Scarborough re [291](doc) Response in Opposition to Motion, filed by Plaintiff Custodia Bank Inc. (Attachments: # [1](doc) Exhibit A, # [2](doc) Exhibit B, # [3](doc) Exhibit C, # [4](doc) Exhibit D) (Ortiz, Scott) (Entered: 02/16/2024) |
| 02/16/2024 | [293](doc) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - RESPONSE in Opposition re [267](doc) MOTION for Order to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/16/2024) |
| 02/16/2024 | [294](doc) | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Ryan Scarborough re [293](doc) Response in Opposition to |

| | | |
|---|---|---|
| | | Motion, filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Ortiz, Scott) (Entered: 02/16/2024) |
| 02/16/2024 | 295 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - REPLY BRIEF re 238 Motion for Judgment filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/16/2024) |
| 02/16/2024 | 296 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - AFFIDAVIT of Ryan Scarborough re 295 Reply Brief filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit CR, # 2 Exhibit CS, # 3 Exhibit CT, # 4 Exhibit CU, # 5 Exhibit CV, # 6 Exhibit CW, # 7 Exhibit CX, # 8 Exhibit CY, # 9 Exhibit CZ, # 10 Exhibit DA, # 11 Exhibit DB, # 12 Exhibit DC, # 13 Exhibit DD, # 14 Exhibit DE, # 15 Exhibit DF, # 16 Exhibit DG, # 17 Exhibit DH, # 18 Exhibit DI) (Ortiz, Scott) (Entered: 02/16/2024) |
| 02/21/2024 | 297 | RESPONSE in Opposition re 267 MOTION for Order to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/21/2024) |
| 02/21/2024 | 298 | AFFIDAVIT of Ryan Scarborough re 297 Response in Opposition to Motion filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Ortiz, Scott) (Entered: 02/21/2024) |
| 02/21/2024 | 299 | REPLY BRIEF re 238 Motion for Judgment filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/21/2024) |
| 02/21/2024 | 300 | AFFIDAVIT of Ryan Scarborough re 299 Reply Brief filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit CR, # 2 Exhibit CS, # 3 Exhibit CT, # 4 Exhibit CU, # 5 Exhibit CV, # 6 Exhibit CW, # 7 Exhibit CX, # 8 Exhibit CY, # 9 Exhibit CZ, # 10 Exhibit DA, # 11 Exhibit DB, # 12 Exhibit DC, # 13 Exhibit DD, # 14 Exhibit DE, # 15 Exhibit DF, # 16 Exhibit DG, # 17 Exhibit DH, # 18 Exhibit DI) (Ortiz, Scott) (Entered: 02/21/2024) |
| 02/21/2024 | 301 | RESPONSE in Opposition re 269 MOTION for Order to Strike Reports and Exclude the Testimony of Katie S. Cox filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 02/21/2024) |
| 02/21/2024 | 302 | AFFIDAVIT of Ryan Scarborough re 301 Response in Opposition to Motion filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Ortiz, Scott) (Entered: 02/21/2024) |
| 02/22/2024 | 303 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Order Granting Leave to File Excess Pages filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 02/22/2024) |
| 02/22/2024 | 304 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Order Granting Unopposed Motion to File Replies Under Seal filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Proposed Order)(Addleman, Billie) (Entered: 02/22/2024) |
| 02/23/2024 | 305 | ORDER by the Honorable Kelly H Rankin granting 303 Motion for Order. Defendant Federal Reserve Bank of Kansas City may file its Reply in Support of its Cross-Motion for Summary Judgment not to exceed 20 pages and replies in support of motions to exclude Plaintiffs expert witnesses not to exceed 10 pages for each reply in support of the motions to exclude. (Court Staff, sjdl) (Entered: 02/23/2024) |
| 02/23/2024 | 306 | ORDER by the Honorable Kelly H Rankin granting 304 Motion for Order. The Replies may be filed under seal through February 27, 2024, with redacted versions filed on or |

| | | |
|---|---|---|
| | | before February 28, 2024. (Court Staff, sjdl) (Entered: 02/23/2024) |
| 02/23/2024 | 307 | REPLY to 267 Motion for Order, *to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown* filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) Removed restriction per 314 Notice on 2/27/2024 (Court Staff, sbh). (Entered: 02/23/2024) |
| 02/23/2024 | 308 | AFFIDAVIT of Andrew Michaelson re 307 Reply, *in Support of Motion to Strike Reports & Exclude the Testimony of Professor Peter Conti-Brown* filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit 23) (Addleman, Billie) Removed restriction per 314 Notice on 2/27/2024 (Court Staff, sbh). (Entered: 02/23/2024) |
| 02/23/2024 | 309 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - REPLY to 269 Motion for Order, *to Strike Reports and Exclude the Testimony of Katie Cox* filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 02/23/2024) |
| 02/23/2024 | 310 | NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access - REPLY to 272 Motion for Summary Judgment, 273 Brief, *in Support of Its Cross-Motion for Summary Judgment* filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 02/23/2024) |
| 02/23/2024 | 311 | AFFIDAVIT of Andrew Michaelson re 310 Reply, *in Support of Defendant FRBKC's Reply in Support of Its Cross-Motion for Summary Judgment* filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit 85, # 2 Exhibit 86, # 3 Exhibit 87, # 4 Exhibit 88, # 5 Exhibit 89, # 6 Exhibit 90, # 7 Exhibit 91, # 8 Exhibit 92, # 9 Exhibit 93, # 10 Exhibit 94) (Addleman, Billie) Removed restriction per 314 Notice on 2/27/2024, sbh). (Attachment 7 blank pages removed on 2/28/2024) (Court Staff, semt). Modified text on 2/28/2024 (Court Staff, semt). (Entered: 02/23/2024) |
| 02/27/2024 | 312 | REDACTED REPLY by Defendant Federal Reserve Bank of Kansas City re 309 Reply, *in Support of 269 Motion to Strike Reports and Exclude the Testimony of Katie Cox REDACTED VERSION* (Addleman, Billie) Modified text on 2/29/2024 (Court Staff, semt). (Entered: 02/27/2024) |
| 02/27/2024 | 313 | REDACTED REPLY by Defendant Federal Reserve Bank of Kansas City re 310 Reply, *in Support of Its 272 Cross-Motion for Summary Judgment REDACTED VERSION* (Addleman, Billie) Modified text on 2/29/2024 (Court Staff, semt). (Entered: 02/27/2024) |
| 02/27/2024 | 314 | NOTICE by Defendant Federal Reserve Bank of Kansas City re 308 Affidavit, 311 Affidavit,, 307 Reply, *of Request to Lift Restrictions of ECF Nos. 307, 308 and 311* (Addleman, Billie) (Entered: 02/27/2024) |
| 02/27/2024 | 315 | NOTICE by Amicus Parties Blockchain Association, Payment System Scholars / *Notice of Withdrawal of Matthew I. Summers as Counsel for Amici Curiae* (Summers, Matthew) (Entered: 02/27/2024) |
| 03/05/2024 | 316 | (TEXT-ONLY) ORDER Vacating Trial Setting. The Court has had the opportunity to digest a substantial portion of the summary-judgment briefing and expansive materials submitted by all parties. Based upon this review, the Court currently does not find a decision on the merits depends on a disputed material fact, and the claims and issues can be resolved based upon the extensive record currently before it. Therefore, the Court hereby VACATES the TRIAL SETTING and FINAL PRETRIAL CONFERENCE AND ASSOCIATED FILING DEADLINES. A decision on the merits will be issued forthwith. (Court Staff, semt) (Copy of docket sheet and Text-Only order sent to Pro Se parties via US Mail on 3/5/24) Modified text on 3/5/2024 (Court Staff, semt). (Entered: 03/05/2024) |

| 03/29/2024 | 317 | ORDER ON DISPOSITIVE MOTIONS by the Honorable Scott W Skavdahl. IT IS THEREFORE ORDERED that Plaintiff's 233 , 238 Petition for Review on its APA Claim and its Motion for Judgment as a Matter of Law on its Statutory Mandamus Claim is DENIED. Plaintiff's petition for review under the APA alleged against Defendant Board of Governors (Claim I) is DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION. Defendant FRBKC's 272 Cross-Motion for Summary Judgment is GRANTED. Judgment as a matter of law is granted in Defendant FRBKC's favor and against Plaintiff on the statutory mandamus claim (Claim II). Plaintiff's cause of action requesting declaratory judgment (Claim III) is DISMISSED. Defendant FRBKC's 267 Motion to Strike Reports and Exclude Testimony of Professor Peter Conti-Brown and 269 Motion to Strike Reports and Exclude the Testimony of Katie S. Cox are DENIED AS MOOT. See order for details. (Copy of order sent to pro se parties via US Mail on this date) (Court Staff, semt) (Entered: 03/29/2024) |
|---|---|---|
| 03/29/2024 | 318 | JUDGMENT as a matter of law in favor of Defendant Federal Reserve Bank of Kansas City against Plaintiff Custodia Bank, Inc. on Plaintiff Custodia's cause of action seeking a writ of mandamus (Claim II), ordering and adjudging that Plaintiff Custodia's petition for review under the Administrative Procedure Act (Claim I) asserted against Defendant Federal Reserve Board of Governors is dismissed without prejudice for lack of jurisdiction, and dismissing Plaintiff Custodia's cause of action for declaratory judgment under the Declaratory Judgment Act (Claim III) by the Honorable Scott W Skavdahl. (Court Staff, semt)The AO133 Bill of Cost form is available at https://www.wyd.uscourts.gov/forms/bill-costs. (Copy of order sent to pro se parties via US Mail on this date) Modified text on 3/29/2024 (Court Staff, semt). (Entered: 03/29/2024) |
| 04/12/2024 | 319 | BILL OF COSTS filed by Defendant Federal Reserve Bank of Kansas City. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Affidavit) (Michaelson, Andrew) (Entered: 04/12/2024) |
| 04/26/2024 | 320 | OBJECTION to 319 Bill of Costs filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) (Entered: 04/26/2024) |
| 04/26/2024 | 321 | NOTICE OF APPEAL as to 317 Order on Dispositive Motions, 318 Judgment, filed by Plaintiff Custodia Bank Inc. (Attachments: # 1 Exhibit, # 2 Exhibit) (Ortiz, Scott) Modified text on 4/26/2024 (Court Staff, semt). (Entered: 04/26/2024) |
| 04/26/2024 | 322 | Preliminary Record of appeal sent to USCA and counsel re 321 Notice of Appeal **The procedures and appeals forms may be obtained from the U.S. Court of Appeals website: www.ca10.uscourts.gov.** (Attachments: # 1 Preliminary Record on Appeal Including Notice of Appeal) (Court Staff, semt) (Entered: 04/26/2024) |
| 04/26/2024 | 323 | Appeal Number **24-8024** received from USCA for 321 Notice of Appeal (Attorney) filed by Custodia Bank Inc. Civil case docketed. Preliminary record filed. DATE RECEIVED: 04/26/2024. Fee, docketing statement, transcript order form notice of appearance and disclosure statement due by 05/10/2024 for Custodia Bank, Inc. Notice of appearance and disclosure statement due on 05/10/2024 for Federal Reserve Bank of Kansas City. Notice of appearance due 05/10/2024 for Federal Reserve Board of Governors. [24-8024] (Court Staff, semt) (Entered: 04/26/2024) |
| 04/30/2024 | 324 | USCA Appeal Fees received $ 605 receipt number CAS 1-482 re 321 Notice of Appeal (Attorney) filed by Custodia Bank Inc. (Court Staff, stbd) (Entered: 04/30/2024) |
| 05/02/2024 | 325 | CLERK'S Award of Costs regarding 319 Bill of Costs filed by Defendant Federal Reserve Bank of Kansas City. Defendant Federal Reserve Bank of Kansas City awarded costs in the amount of $25,728.25. (Court Staff, semt) (Entered: 05/02/2024) |

| 05/02/2024 | 326 | ~~MOTION REFERRED TO Judge Stephanie A Hambrick.~~ MOTION for Court to Review Taxation of Costs filed by Plaintiff Custodia Bank Inc. (Ortiz, Scott) Modified text on 5/2/2024 (Court Staff, semt). Modified text on 5/6/2024 (Court Staff, semt). (Entered: 05/02/2024) |
|---|---|---|
| 05/06/2024 | | Motions No Longer Referred: 326 MOTION for Order Motion for Court to Review Taxation of Costs (Court Staff, semt) (Entered: 05/06/2024) |
| 05/06/2024 | 327 | NOTICE by Amicus Parties Blockchain Association, Payment System Scholars re 247 Notice of Attorney Appearance (Pro Hac Vice) /*NOTICE of Withdrawal of Michelle S. Kallen as Counsel for Amici Curiae* (Kallen, Michelle) (Entered: 05/06/2024) |
| 05/10/2024 | 328 | TRANSCRIPT REQUEST (No Transcripts Necessary) by Plaintiff Custodia Bank Inc re 321 Notice of Appeal (Attorney). Transcripts Already on File. (Kallen, Michelle) Modified text on 5/10/2024. Transcripts already on file per notice from USCA 10th Circuit on 5/10/24. (Court Staff, semt). (Entered: 05/10/2024) |
| 05/10/2024 | 329 | (TEXT-ONLY) APPEAL ORDER from USCA as to 321 Notice of Appeal filed by Custodia Bank Inc **Record on appeal/Notice due 5/17/2024**. Minute order filed - Notice due that record is complete by 05/17/2024 for Margaret Botkins. (Text Only - No Attachment) [24-8024] (Court Staff, semt) (Entered: 05/10/2024) |
| 05/16/2024 | 330 | RESPONSE in Opposition re 326 MOTION for Order Motion for Court to Review Taxation of Costs filed by Defendant Federal Reserve Bank of Kansas City. (Addleman, Billie) (Entered: 05/16/2024) |
| 05/17/2024 | 331 | Transcript Letter transmitted to USCA re 321 Notice of Appeal. All transcripts for this appeal are already on file with the Court. For purposes of appeal, the record is now ready. (Court Staff, semt) (Entered: 05/17/2024) |
| 05/30/2024 | 332 | ORDER by the Honorable Scott W Skavdahl regarding 326 Motion for Court to Review Taxation of Costs. The Court finds Custodia's Motion for Court Review of the Taxation of Costs is DENIED. The 325 Clerk's Award of Costs in the amount of $25,728.25 is hereby CONFIRMED. (Court Staff, semt) (Entered: 05/30/2024) |

Scott E. Ortiz   WSB 5-2550
WILLIAMS PORTER DAY NEVILLE  PC
PO Box 10700
Casper  WY 82602
Phone:  307-265-0700
Fax:      307-266-2306
Email:  sortiz@wpdn.net

WILLIAMS & CONNOLLY  LLP
John K. Villa (*pro hac vice* admission pending)
Ryan Scarborough (*pro hac vice* admission pending)
Whitney D. Hermandorfer (*pro hac vice* admission pending)
Jamie Wolf (*pro hac vice* admission pending)
680 Maine Avenue SW
Washington  DC 20024
Phone:  202-434-5000
Email:  jvilla@wc.com
            rscarborough@wc.com
            whermandorfer@wc.com
            jwolfe@wc.com

*Attorneys for Plaintiff Custodia Bank*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CUSTODIA BANK, INC.,<br>2120 Carey Avenue, Suite 300<br>Cheyenne, WY 82001<br><br>     *Plaintiff*,<br><br>       v.<br><br>FEDERAL RESERVE BOARD OF<br>GOVERNORS,<br>Constitution Ave NW & 20th St NW<br>Washington, DC 20551 | Civil Case No.: _____ |

FEDERAL RESERVE BANK
OF KANSAS CITY,
1 Memorial Drive
Kansas City, MO 64108,

     *Defendants*.

## COMPLAINT

1.     Plaintiff Custodia Bank, Inc. ("Custodia") (f/k/a Avanti) brings this Complaint against Defendants the Federal Reserve Board of Governors ("Board") and the Federal Reserve Bank of Kansas City ("Kansas City Fed") and alleges as follows.

## <u>INTRODUCTION</u>

2.     This case involves Defendants' patently unlawful delay in processing an application critical to Custodia's business. Custodia is a Wyoming-headquartered and chartered bank led by experienced and respected members of the financial-services industry, specializing in payment services and digital asset custody. For more than 19 months, Defendants have refused to act upon Custodia's application for a master account with the Federal Reserve. Such an account would allow Custodia to directly access the Federal Reserve, rather than going through an intermediary bank. This wholly unlawful delaying conduct is aggravated by the standardless processes the Defendants have apparently adopted, which they have interpreted to allow agencies of the federal government to act in complete secrecy whenever and however they choose with no accountability or rules to govern their decision-making. This government-in-secrecy has the effect, if not the purpose, of precluding the judicial review required by the most elementary standards of due process of law. Continued delay, in these circumstances, prevents newcomers like Custodia from introducing innovation and competition in the financial services marketplace

J.A.42

and, not coincidentally, benefits the established financial institutions whose interests are represented on the Board of Directors of the Kansas City Fed.

3.      Granting Custodia an account to access the Federal Reserve, as the statute commands and for which it is legally eligible and has met all requirements, would allow Custodia to access directly the Federal Reserve, sharply reduce its costs, and bring new products and options to users of financial services.  Direct access to the Federal Reserve is vital to Custodia's ability to operate effectively and efficiently in pursuit of its core mission to offer a secure, compliant bridge between digital assets and the United States dollar payment system.  Custodia has devoted years of effort by a number of skilled professionals and substantial resources to preparing its business, including by undergoing intense review and satisfying stringent regulatory requirements imposed by its chartering state of Wyoming—a nationwide leader in developing charters tailored for banking in the digital asset industry.  These efforts, however, are stalemated by Defendants' unexplained and indefensible refusal to act upon Custodia's application—ultimately to the detriment of potential customers who are entitled to make the decision about which financial institutions to utilize.

4.      As a state-chartered bank whose charter expressly permits U.S. dollar deposit-taking and whose business plan includes U.S. dollar deposit-taking in the ordinary course of business, Custodia is plainly eligible for a master account under the express terms of the governing federal law.  *See* 12 U.S.C. § 226 *et seq.*  Indeed, a federal statute prohibits the Board from discriminating against such institutions when offering financial services.  *Id.* § 248a. Custodia has taken the additional step of applying for Reserve System membership and its attendant supervision and regulation by the Board and the Kansas City Fed, even though these steps are not legally

required to obtain a master account.  None of this appears to have any effect on the Defendants, who have failed to take meaningful steps on processing and deciding Custodia's application.

5.     Defendants have a nondiscretionary duty to process applications for master accounts.  The Kansas City Fed, for its part, received Custodia's business plan in May 2020, months before Custodia submitted its master account application.  Defendants have confirmed that Custodia's master account application, submitted in late October 2020, is complete.  In early 2021, a representative of the Kansas City Fed moreover informed Custodia there were "no showstoppers" with Custodia's application.

6.     Upon information and belief, the Kansas City Fed's consideration and impending approval of Custodia's application was derailed when, in spring 2021, the Board asserted control over the decision-making process.  The result is that Defendants have failed to meaningfully consider—let alone decide—Custodia's long-pending application.  Defendants' resulting 19-plus-month delay in processing Custodia's completed application has clearly violated the 1-year statutory deadline for doing so.  *See* 12 U.S.C. § 4807(a).  The delay also breaches the schedule contained on the master account paperwork itself, which provides that a master account decision ordinarily takes "5 – 7 business days."  Compl. Ex. 1 (Fed. Reserve Bank, Operating Circular 1, Appx. 1, Master Account Agreement).  Custodia's application was submitted nearly 600 business days ago with no action.  This litigation will bring into the sunshine not only this impermissible delay, but also the fact that the Defendants have a standardless process for deciding who can compete in the financial services market—a process that favors incumbents in violation of federal law.

7.     Custodia—through countless meetings, phone calls, and written communications—has exhausted all informal means of obtaining a decision on its application.  There is a black-box

4

bureaucratic process with no clear rules or standards for processing applications, no clear lines of accountability or responsibility between the Board and Kansas City Fed, and no clear end to Custodia's application saga in sight.

8.    This delay in processing Custodia's master account application is resulting in substantial, ongoing injury to Custodia.  The immediate injury is that the delay has forced Custodia to defer its solo entry into the financial services market in favor of a decidedly second-best and far more expensive alternative:  launching with a correspondent bank—which has a master account— while Custodia awaits a decision on its long-pending application.  This makeshift solution is much costlier and introduces counterparty credit risk and settlement risk that would have been avoided if Defendants had acted on Custodia's master account application in a reasonable time period.  It also eliminates much of the competitive benefit that Custodia would enjoy from using the charter that Wyoming granted it, thus benefiting existing and entrenched competitors and ignoring Wyoming's sovereignty as a state that has clear statutory authority to charter depository institutions.

9.    Custodia has exhausted all options short of litigation to end Defendants' unreasonable and unlawful inaction on Custodia's application.  Custodia respectfully requests that this Court require Defendants to promptly provide a decision on the application and articulate the reasons for the decision as well as the standards that the Defendants believe are applicable.  This is, after all, a federal government agency which must operate under articulable and defined rules to conform itself to due process of law.  After more than 19 months of delay, the governing statutes—as well as baseline administrative and constitutional principles barring unreasonable and unlawful agency inaction—entitle Custodia to at least this much.

**J.A.45**

## PARTIES

10.     Plaintiff Custodia is a Wyoming bank.  It was granted a Special Purpose Depository Institution bank charter by the Wyoming State Banking Board in October of 2020.  It has its primary place of business at 2120 Carey Avenue, Suite 300, Cheyenne, WY 82001.  Custodia is currently regulated by the Wyoming Division of Banking.  Custodia's founders include experienced executives, such as Caitlin Long (CEO), a 22-year Wall Street veteran who was a managing director and head of Morgan Stanley's pension solutions business until 2016 and was appointed by then-Governor Mead to serve on the Wyoming Blockchain Task Force in 2018-2019.

11.     Defendant Federal Reserve Board of Governors is the main governing body of the Federal Reserve System.  The Board is charged with overseeing the 12 regional Federal Reserve Banks.  It has its principal place of business at Constitution Ave N.W. & 20th St. N.W., Washington, DC 20551.  The Board is an agency of the United States, and comprises seven members, or "governors," who are nominated by the President and confirmed by the Senate.

12.     Defendant Federal Reserve Bank of Kansas City is one of 12 regional Federal Reserve Banks that, along with the Board, make up the United States Federal Reserve System. The Kansas City Fed serves at least portions of seven states, including the entirety of Wyoming. In this role, it operates pursuant to statutory and regulatory authority delegated to it by the Board. The Kansas City Fed has its principal place of business at 1 Memorial Drive, Kansas City, MO 64108.  The Kansas City Fed is separately incorporated as a non-profit governmental corporation with the capacity to sue and be sued in its own name.  The Kansas City Fed is headed by a nine-member board of directors comprising three representatives of commercial member banks, three representatives of the public, and three representatives appointed by the Board.  The Kansas City Fed supervises and regulates bank holding companies and Federal Reserve System member banks in its district, acts on applications within its authority, and enforces compliance with federal

J.A.46

banking laws against relevant banking institutions in its district.  The Kansas City Fed is an agency of the United States for purposes of the legal causes of action Custodia asserts.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action under 12 U.S.C. § 632, which provides that "all suits of a civil nature at common law or in equity to which any Federal Reserve bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits."  Additionally, 28 U.S.C. § 1331 gives this Court jurisdiction over all civil actions "arising under the Constitution, laws or treaties of the United States."  And 28 U.S.C. § 2201(a) provides jurisdiction because Custodia is an "interested party" for whom the Court "may declare the rights" in this "actual controversy."

14.    Venue is proper in this District under 28 U.S.C. §1391(b)(1) because both the Board and the Kansas City Fed reside in this District for purposes of 28 U.S.C. §1391(c)(2).  The Board and the Kansas City Fed are entities with the capacity to be sued.  They are subject to this Court's personal jurisdiction because they have purposefully availed themselves of the privileges of conducting business in this District, the claims herein arose in this District, many material witnesses are located in this District, and Defendants are subject to this Court's jurisdiction under Wyo. Stat. Ann. § 5-1-17, Wyoming's Long-Arm Statute.  Venue is also proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this matter occurred in this District.  In addition, venue is proper under 28 U.S.C. § 1391(e) because Custodia resides in this district and a substantial part of the events or omissions giving rise to its claims occurred here.

15.    An actual controversy exists between the parties concerning the legality of Defendants' process for and delay in processing Custodia's master account application.  That

J.A.47

controversy is justiciable:  Custodia already is suffering injury on account of Defendants' unlawful withholding of action on Custodia's application.

16.     A declaratory judgment will end the uncertainty and controversy between the parties.  It is presumed that if the Court were to declare the legal obligations incumbent upon the Defendants, they would conform their conduct to the Court's order, and injunctive relief would not be necessary.

17.     Under Federal Rule of Civil Procedure 57, this Court may order a speedy hearing on Custodia's request for a declaratory judgment in this matter and Custodia seeks such a hearing as continued delay is the very injury of which Custodia complains.  Allowing the Defendants to draw this case out for years simply extends the injury that the Defendants are knowingly and unlawfully inflicting on Custodia.  Justice delayed here is clearly justice denied.

## FACTUAL ALLEGATIONS

18.     On October 29, 2020, Custodia, an eligible state-chartered bank, applied for a Federal Reserve master account.  As required by Federal Reserve System regulations, Custodia submitted its application to the Federal Reserve Bank responsible for its district, the Kansas City Fed.  Despite regular meetings and thousands of pages of responses to various inquiries, more than 19 months have passed without a decision on Custodia's master account application, and no assurance has been provided that a decision is forthcoming at all, let alone in the near future.

### A.     History of Dual-Chartering and State-Level Banking Regulation

19.     The United States operates a dual banking system, which allows banks to be chartered by either the state or federal government.  At the founding of the United States, almost all banks were state chartered.

20.     It was not until the 1863 passage of the National Bank Act that nationally chartered banks started to proliferate.  12 U.S.C. § 38 *et seq*.

21.     In 1913, Congress established the federal banking system as we know it today with the passage of the Federal Reserve Act.  12 U.S.C. § 226 *et seq.*

22.     The dual-chartering system's division of regulatory responsibility among state and federal authorities is a hallmark of federalism.  It allows financial institutions to choose among various options to reflect their intended business plans, factoring in geographic concerns and operational concerns such as business models, accessibility of regulators, regulatory philosophies, and costs.  The availability of state charters allows for innovation in the financial services marketplace, permitting states to develop new ideas and competitors subject, of course, to applicable review by federal authorities.  The continued existence of state bank charters allows states to be responsive to the financial needs of their citizens and to innovate and support financial institutions that meet the needs of their citizens as well as the needs of the state as a whole.

23.     Under the current dual-chartering system, banks can apply for a national charter from the Office of the Comptroller of the Currency ("OCC") or for a state charter from the relevant state's banking authority.  National banks are chartered and primarily regulated by the OCC, while state banks are chartered and principally overseen by the state's banking regulatory agency.

24.     Once an institution is chartered, the next question is whether it will be a member of the Federal Reserve System.  Nationally chartered banks must become members of the Federal Reserve System. 12 U.S.C. § 222.  Within the Federal Reserve System, the Federal Reserve Board regulates, *inter alia*, bank holding companies.

25.     State-chartered banks may choose to become members of the Federal Reserve System, but, unlike nationally chartered banks, do not have to do so.  While applying to become a member of the Federal Reserve System brings additional scrutiny upon a state-chartered bank, it carries some additional prestige, and those state banks that join the Federal Reserve System are

**J.A.49**

known as "state member banks."  Those that do not are known as nonmember banks.  As a member

of the Federal Reserve System, state member banks are regulated by both the Federal Reserve and

the relevant state banking agency, whereas state-chartered nonmember banks are regulated by the

state banking agency and may also be regulated by the Federal Deposit Insurance Corporation

("FDIC").

26.     National banks are generally required to apply for and obtain FDIC insurance.

Most states require their state-chartered banking institutions engaged in taking deposits to be

FDIC-insured.  Not every state-chartered bank, though, is required to be insured by the FDIC.

Uninsured state bank charters exist in several states and U.S. territories, such as Wyoming,

Connecticut, and Puerto Rico.  Likewise, some states, such as Massachusetts, Illinois, and

Colorado, permit depository trust charters, which are eligible for Federal Reserve master accounts

and are also uninsured.

27.     Federal law mandates that state-chartered deposit-taking institutions like Custodia

must be allowed access to the Federal Reserve System through master accounts—regardless of

whether such institutions elect to become Federal Reserve member banks, and regardless of

whether they are FDIC-insured.  The Federal Reserve System cannot discriminate against state-

chartered depository banks in the provision of Federal Reserve bank services.  *See* 12 U.S.C.

§§ 248a(c)(2), 1831d(a).

**B.     The Development of SPDI Banks in Wyoming**

28.     In 2019, Wyoming legislated a new type of state bank charter, the Special Purpose

Depository Institution ("SPDI").  Wyo. Stat. § 13-12-101, *et seq*.  This legislation passed the

Wyoming legislature with a veto-proof, bi-partisan majority.  SPDI banks are regulated by the

Wyoming Division of Banking.  Unlike traditional banks, SPDIs are generally prohibited from

making loans with customer deposits of fiat currency, and further must continually back all

customer deposits with 100% cash on hand or high-quality liquid assets.  Like traditional banks, SPDIs must hold capital on top of the assets that back customer deposits.

29.     SPDI banks do not lend money; instead, they specialize in taking deposits, facilitating payments for customers, and other incidental services.  SPDI banks were designed to provide a bridge connecting digital asset companies to the U.S. payments system (for example, to pay their staff in U.S. dollars).  SPDI banks were also designed to provide custody services for digital assets such as Bitcoin via their trust departments, analogous to the custody services provided by the trust departments of custody banks for the trillions in securities held by retirement plans and mutual funds.  SPDI banks allow, for example, a customer to use his or her Bitcoin held in the trust department of an SPDI bank to make a direct transfer, a purchase, or an investment, rather than having to first convert that Bitcoin into U.S. dollars.

30.     Having a master account means that SPDI banks do not have to use an intermediary bank in order to access the Federal Reserve banking system for clearing U.S. dollar transactions.  Eliminating the "middleman" cuts costs, lowers risk (including counterparty credit risk), and provides SPDI bank customers with more efficient and customizable payment services.

31.     The sponsors of Wyoming's SPDI regime recognized that access to master accounts would be crucial for the functioning of SPDI banks.  The SPDI charter accordingly was developed to satisfy all requirements of the Federal Reserve Act.  Wyoming legislators coordinated with the federal government, holding more than 100 meetings with the Board and the Kansas City Fed.[1]

---

[1] In a *Wall Street Journal* Op-Ed, U.S. Senator Cynthia Lummis provided background information on the steps that Wyoming took in passing its SPDI bank charter legislation.  Despite mutual efforts in passing this legislation, the Federal Reserve has to this point refused to grant SPDI banks access to the Federal Reserve System.  Cynthia Lummis, "The Fed Battles Wyoming on Cryptocurrency," *The Wall Street Journal* (Nov. 30, 2021), https://tinyurl.com/5xkcjpj5.

J.A.51

The resulting SPDI charter offers the prospect of safe, efficient, and protected access to the Federal Reserve banking system for the digital-asset industry.

32.     Under the Federal Reserve Act, Federal Reserve banking services must be accessible to "nonmember deposit institutions . . . [and] be priced at the same fee schedule applicable to member banks."  12 U.S.C. § 248a(c)(2).  To be eligible for a master account, an applicant must be either a member bank or a depository institution, defined as either: (1) a bank insured by the FDIC, or (2) a bank eligible to be insured by the FDIC.  *Id.* §461(b)(1)(A)(i).

33.     Custodia currently meets the latter category because, as a state-chartered bank authorized and expected to take deposits, it is eligible to be insured by the FDIC.  The Kansas City Fed recognizes the eligibility of SPDI banks for master accounts and has specifically confirmed that Custodia is an eligible depository institution.

### C.     Custodia's Application and Defendants' Delay

34.     Custodia provided its business plan to the Kansas City Fed in May 2020.  On October 29, 2020, Custodia filed its application to open and maintain a master account with the Kansas City Fed.

35.     Along with its application, Custodia was required by the Federal Reserve to submit a one-page Master Account Agreement.  The standard form agreement, available from the Federal Reserve, stated that "[p]rocessing may take 5 – 7 business days.  Please contact the Federal Reserve Bank to confirm the date that the master account will be established."  Compl. Ex. 1.

36.     At the time the application was filed, Custodia's application was complete.  Neither the Kansas City Fed nor the Board has informed Custodia of the need for additional information necessary to complete the application.  In January 2021, Tara Humston, the Kansas City Fed's head of Supervision and Risk Management, informed Custodia that there were "no showstoppers" with its master account application.  Yet, upon information and belief, the Kansas City Fed's

impending approval of Custodia's application was stalled when, a few months later in spring 2021, the Board asserted its control over the decision-making process. This is so even though the Kansas City Fed has confirmed, including via a January 2022 letter, that Custodia meets the legal eligibility requirements for receiving a master account.

37.    While waiting to have its application considered, Custodia has been in regular contact with both the Kansas City Fed and the Board through letters, calls, emails, and remote and in-person meetings. Custodia has repeatedly offered to provide additional information about its business plan specifically, and SPDI-chartered banks more generally, to spur consideration of its application.

38.    The Board exercises ultimate control over the decision to grant or deny a master account, and has exercised that power to assert control over the decision-making process for Custodia's application in particular.

39.    In a further attempt to demonstrate its commitment to safety and soundness, Custodia applied to become a member bank of the Federal Reserve system on August 5, 2021. As a member bank, Custodia would be regulated and examined directly by the Federal Reserve Board in addition to the Wyoming Division of Banking. It is not necessary to be a member bank in order to receive a master account, and the Federal Reserve cannot discriminate against nonmember banks in granting access to Federal Reserve Bank services. 12 U.S.C. § 248a(c)(2). Custodia, however, took this additional step to demonstrate to the Kansas City Fed and the Board its willingness to submit to full federal supervision and accountability.

40.    In a March 2, 2022 meeting, nearly 17 months after the submission of Custodia's master account application, the Kansas City Fed informed Custodia that it had not started processing Custodia's master account application.

41.     After learning that the Kansas City Fed had not started processing its master account application, Custodia sent a letter to Esther George, the President and Chief Executive Officer of the Kansas City Fed.  In that March 3, 2022 letter, Custodia described the steps that it had taken to obtain approval and urged Ms. George to consider Custodia's application.

42.     Ms. George agreed to meet in person with Custodia on March 24, 2022.  Prior to that meeting, Custodia again wrote Ms. George a letter offering specific commitments Custodia would implement if granted a master account, including holding $1.08 in cash in its master account for every $1.00 of customer U.S. dollar deposits in its first three years of operation, providing monthly financial statements, and agreeing to certain restrictions.  These commitments are not necessary for the grant of a master account, but Custodia offered them in an effort to encourage the Defendants to adjudicate Custodia's master account application.  This is because Custodia's business model is safe and sound.  Custodia plans to hold all customer deposits of U.S. dollars in cash in a Federal Reserve master account and it plans to hold no digital assets for its own account. This means that Custodia will not be exposed to the volatility of digital asset prices because it will hold all digital assets in bailment on behalf of a customer in its trust department.  In other words, granting Custodia a master account would not expose the Federal Reserve System to any digital asset risk, as Custodia would only handle U.S. dollars in its master account and Custodia's trust customers would retain all digital asset risks.

43.     After the meeting, Tara Humston, the head of Supervision and Risk Management at the Kansas City Fed, sent a letter re-confirming that "Custodia is legally eligible for a master account."  Unfortunately, the Kansas City Fed still refused to provide any sort of timeline for a decision on Custodia's master account application.

J.A.54

44.     The Kansas City Fed's refusal or inability to provide any sort of timeline reflects the fact that the Board has asserted control over the decision-making process governing Custodia's master account application.

**D.     Defendants' Unlawful Application-Review Process**

**1.     Defendants' Withholding of an Overdue Application Decision**

45.     Despite the fact that Custodia's application was complete over 19 months ago, and Defendants have a nondiscretionary duty to decide master account applications in a timely fashion, neither the Board nor the Kansas City Fed has rendered an application decision.   Indeed, Defendants' representatives have declined to provide Custodia with any timeline as to when it might expect a decision.   Nor have they identified any additional steps that Custodia could take to hasten the process.   Most importantly, they have not explained what rules they believe control their decision-making or whether, as now appears likely, they feel that they can decide whenever and however they choose.

46.     Defendants' extensive delay is unlawful on its face, as a federal statute requires all federal banking agencies, including the Board, to process all completed applications within one year.   *See* 12 U.S.C. § 4807.   Time limits are, of course, essential because interminable delay allows for Kafkaesque situations where applicants have no answers and no opportunity to be heard. Statutory mandate aside, Defendants' delay unreasonably extends a ministerial process that is routinely completed within one week to one which has now taken more than 80 weeks with no end in sight.

47.     While Custodia waits in this holding pattern for an indefinite period of time, it continues to be unable to operate as designed, incurring unnecessary costs and monetary losses and losing ground to incumbent banks.   The promise of a SPDI charter remains unfulfilled, while the substantial investment Custodia made in reliance on that charter remains unrecouped.

J.A.55

### 2.    Defendants' Standardless, Black-Box Review

48.    Defendants' method for reviewing master account applications largely remains a black box, with the only clear feature being bureaucratic processes amounting to the proverbial shell game.  In various meetings and communications, the Kansas City Fed and the Board have alternately cited each other as the reason Custodia's application has yet to be processed.  Amidst Defendants' finger pointing, it remains a mystery how the Board and individual Federal Reserve Banks—including the Kansas City Fed here—allocate the decision-making authority for reviewing and granting master account applications.

49.    The Kansas City Fed, for its part, has pinned its delay on the Board.  It has cited, in particular, the Board's consideration of proposed guidelines that would, somewhat ironically, establish a "tiered-review framework to provide *additional clarity* on the level of due diligence and scrutiny to be applied to requests for Reserve Bank accounts and services."  *See* Proposed Guidelines for Evaluating Account and Services Requests, 86 Fed. Reg. 25,865 (May 11, 2021) (emphasis added).  Most recently, in early March 2022, the Board issued supplemental proposed guidelines for notice and comment.  *See* Guidelines for Evaluating Account and Services Requests, 87 Fed. Reg. 12,957 (Mar. 8, 2022).  This supplemental draft guidance included a new footnote stating that "[d]ecisions on access to accounts and services are made by the Reserve Bank in whose District the requestor is located."  *Id.* at n.4.  That footnote is at odds with the Board's exercise of control over the decision-making process for Custodia's master account application.

50.    Perhaps most importantly for purposes of due process of law and judicial review, these proposed guidelines, while purporting to provide "additional clarity," do not even suggest that the Federal Reserve Board will explain the criteria, processes, and procedures that would be used to evaluate applicants at each tier of the review framework, nor do they purport to change any statutory eligibility requirements for granting a master account (which would, in any event, be

beyond the authority of agency action).  *See Pearson v. Shalala*, 164 F.3d 650, 660 (D.C. Cir.

1999) (Under the APA, "[t]o refuse to define the criteria [the agency] is applying is equivalent to

simply saying no without explanation.").

51.     The proposed guidelines and Federal Register notices also do not explain or provide

the present standards the Board and Reserve Banks apply for assessing and adjudicating master

account applications.  Nor, to Custodia's knowledge, are any such standards otherwise available,

if they even exist.  Rather, the publicly available materials provide that the governing statute

required Defendants to grant master accounts to all eligible entities as a matter of course.  *See*

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1068 (Bacharach, J.)

(10th Cir. 2017) (discussing 12 U.S.C. § 248a(c)(2)).[2]  And depository entities chartered by one

of the several states, in this instance Wyoming, are eligible.

52.     The Board has not finalized any guidelines, nor is there any guarantee it will do so

(whether in the guidelines' present form or otherwise), and even if the Board does so, it appears

not to intend to explain what criteria it will adopt to govern agency action.  If anything, the Board's

track record indicates that any adoption will require a substantial amount of time:  a review of the

most recent 20 proposed rules by the Board, stretching back to 2018, shows that there is, on

---

[2] *See also, e.g.*, Bd. of Governors of the Fed. Rsrv. Sys. (Fed. Rsrv. Bd.), *Policies: The Federal Reserve in the Payments System* (2001), https://tinyurl.com/3ed2xu8a ("Federal Reserve payment services are available to all depository institutions . . . ."); Fed. Rsrv. Bd., *Policies: Standards Related to Priced-Service Activities of the Federal Reserve Banks* (1984), https://tinyurl.com/2p83hmfv ("The Monetary Control Act of 1980 . . . has expanded the Federal Reserve's role by requiring the Federal Reserve to provide its services to all depository institutions on an equitable basis . . . ."); Fed. Rsrv. Bd., *Policies: Principles for the Pricing of the Federal Reserve Bank Services* (1980), https://tinyurl.com/mr4cbtjb ("Services covered by the fee schedule are available to all depository institutions."); Fed. Rsrv. Bd., *Federal Reserve's Key Policies for the Provision of Financial Services*, https://tinyurl.com/2t8cthms (last updated Oct. 28, 2016) (noting that the Monetary Control Act gives "all depository institutions access to the Federal Reserve's payment services").

average, a nine-month delay between the close of the notice-and-comment period and the effective date of the final rule.  Three proposed rules have never, or at least not yet, been adopted.  So the current rulemaking process, which has already taken more than a year and has already been supplemented once, could take years, after which the Board could seek notice and comment on yet another proposed iteration.  Of course, central to this process is the Board's apparent intention not to explain even in the new guidelines, if they are ever adopted, what substantive criteria it believes it is entitled to apply.  Judicial review of agency action becomes much more difficult where, as here, the federal agency appears to believe that it is not required to explain the applicable standards.

53.     Any future Board pronouncement would be irrelevant to Custodia's application in all events.  Basic Administrative Procedure Act ("APA") and fair-notice requirements that are essential to due process of law would prohibit Defendants from retroactively applying any forthcoming rule to Custodia's long-ago filed application.

54.     On the other side of the coin, the Board and Kansas City Fed have jointly represented to Custodia that it will be the Kansas City Fed that communicates, if not makes, the decision on Custodia's master account application.   Yet in response to a recent letter from undersigned counsel for Custodia, the Defendants have taken the position that the Kansas City Fed is not a federal agency.  Defendants' position calls into question the permissibility of allowing the Kansas City Fed to exercise final decision-making authority—whether under a delegation of authority from the Federal Reserve Board or otherwise.  If this case proceeds, and if the Defendants maintain this position, the basic structure of the Defendants' decision-making processes will become the focus of this case and significant constitutional questions will be presented.

55.     The broader statutory and regulatory regime only compounds the confusion over the master account approval process.  Banks like Custodia must submit their master account

applications to individual Reserve Banks in the first instance, rather than to the Board.  And Custodia understands that the Kansas City Fed ultimately will communicate a decision on Custodia's master account application.  To support the Reserve Banks' role, the Board has elsewhere relied on 12 U.S.C. § 342 as granting the Reserve Banks statutory authority to make discretionary decisions on whether to open master accounts.  *See, e.g.*, Br. of Fed. Rsrv. Bd. of Governors as Amicus Curiae 14-15, *Fourth Corner Credit Union*, 861 F.3d 1052 (July 12, 2016). This provision, however, does not mention master accounts.  Rather, it specifies, as relevant here, that Reserve Banks "may receive from any of its member banks, or other depository institutions, and from the United States, deposits of current funds in lawful money, national-bank notes, Federal reserve notes, or checks, and drafts, payable upon presentation or other items."  12 U.S.C. § 342.

56.     Congress did not list the power to grant master accounts among the enumerated powers of Reserve Banks.  12 U.S.C. § 341.  Nor has the Board formally delegated to the Banks the power to decide master account applications. 12 C.F.R. § 265.11.

57.     Representations regarding Reserve Banks' master account application authority stand in apparent conflict with other provisions indicating that the Board maintains power over master accounts.  Of note, Congress expressly gave the Board the responsibility to "authorize a Federal Reserve Bank to open an account and provide services" for designated financial market utilities.  12 U.S.C. § 5465.[3]  Congress likewise empowered the Board with implicit authority over master account applications for nonmember depository institutions, like Custodia, by directing the Board to ensure that "[a]ll Federal Reserve bank services covered by the fee schedule shall be

---

[3] While Custodia is not a designated financial market utility, this Congressional grant of authority to the Board over master accounts implies that, absent a contrary grant of authority which does not appear to exist, the Board would also have authority over master accounts for nonmember depository institutions like Custodia.

available to nonmember depository institutions." 12 U.S.C. § 248a(c)(2).  In order for these bank services to be available to nonmember depository institutions, those institutions necessarily must have a master account.

58.     Even if the Board's power to grant master account applications was informally delegated to or vested in the Reserve Banks *sub silentio*, which would be a truly astonishing act without any discernable statutory support, the Board retains the power "[t]o exercise general supervision over" the Reserve Banks, 12 U.S.C. § 248(j), and to "act in its own name . . . in enforcing any provision of" the Federal Reserve Act, *id.* § 248(p).  The Board's oversight authority extends to decisions made by the Federal Reserve Banks on master account applications.  As a practical matter, the Board controls the decision because the Kansas City Fed has consulted with and defers to direction from the Board about Custodia's master account application, and in this case the Board has exercised control over the decision-making process for Custodia's master account application.  At a minimum, then, Reserve Banks' adjudication of master accounts would fall under the control and direction of the Board.

59.     The Board has also used its authority to affect the master account application review process through the proposed guidelines for considering master account applications, discussed above.  *See supra* ¶¶ 48-52.  That the Board proposed guidelines to standardize the Federal Reserve Banks' processes pursuant to Board specifications is alone *prima facie* evidence that the Board believes it has control.  The Reserve Banks have previously deferred to the Board with respect to individual master account applications, too.  By way of example, the New York Federal Reserve Bank consulted with the Board on a master account application for another applicant, ultimately delaying action so that the Board could weigh its "concerns" over that applicant's business model. *See* Mot. to Dismiss 7, 14, *TNB USA, Inc. v. Fed. Rsrv. Bank of N.Y.*, No. 1:18-cv-7978 (ALC)

J.A.60

(S.D.N.Y. Mar. 8, 2019), ECF No. 21.  Thus, to the extent the Board disclaims authority to dictate master account decisions here, that position would break with past practice and is inconsistent with its actions over Custodia's master account application—namely, it assertion of control over the decision-making process related to Custodia's master account application in spring 2021.

60.     In short, the only thing clear about Defendants' master account review regime is that there are no clear rules, roles, or responsibilities.  What has resulted is an unaccountable Kafkaesque process that has and continues to inflict grave, irreparable harm on Custodia.  Due process of law and the fundamentals of judicial review of agency action require prompt decisions and clearly articulated reasons so that this Court can weigh whether the Defendants are conducting themselves in a lawful manner.

### CLAIM FOR RELIEF I
### Violation of APA, 5 U.S.C. § 706(1)
### Claim for Unreasonable Delay of Agency Action Against All Defendants

61.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

62.     Under Section 706 of the APA, "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."

63.     Both the Board and the Kansas City Fed are agencies for purposes of the APA, which defines an agency as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."  5 U.S.C. § 551(1).  This APA definition of agency has been interpreted to include "any administrative unit with substantial independent

authority in the exercise of specific functions." *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971).

64.     There is no dispute that the Board is an agency of the United States government for purposes of the APA.  On its public website, the Board states that "[t]he Administrative Procedure Act sets out the requirements for federal agencies, *including the Federal Reserve Board*, to follow when issuing proposed and final regulations."[4]  The Board has substantial independent authority in the fulfillment of its specific duties, which include supervising and regulating financial institutions, fostering payment systems, and engaging in the rulemaking necessary to carry out its responsibility to set the monetary policy of the United States.  In fulfilling its duties, the Board acts with the imprimatur of the United States government.

65.     The Kansas City Fed is similarly an agency for purposes of the APA.  *See, e.g.*, *Lee Const. Co., Inc. v. Fed. Rsrv. Bank of Richmond*, 558 F. Supp. 165, 179 (D. Md. 1982) (the Reserve Bank of Richmond was an agency for APA purposes); *Flight Intern. Group, Inc. v. Fed. Rsrv. Bank of Chi.*, 583 F. Supp. 674, 680 (N.D. Ga. 1984) (same, for the Reserve Bank of Chicago). The Kansas City Fed, along with its 11 fellow Reserve Banks, operates as a governmental instrumentality pursuant to the Federal Reserve Act.  In this capacity, the Kansas City Fed wields significant powers delegated by statute and regulation to contribute to the operations of the United States monetary system, to provide supervision and oversight to financial institutions, to promote a safe and sound payment system through lending to depository institutions and providing key financial services, and to facilitate economic development and financial understanding.[5]  It acts as

---

[4] Fed. Rsrv. Bd., *What Specific Steps Does the Board Take to Issue a Regulation?* (June 29, 2018), https://tinyurl.com/3ffs8xuk (emphasis added).
[5] These functions are publicly listed on the Kansas City Fed's website.  *See* Kansas City Fed, *What We Do* (Jan. 8, 2021), https://tinyurl.com/ycksd7t4.

**J.A.62**

a "fiscal agent for the United States" and with interests indistinguishable from the monetary interests of the United States government, including the Board.[6]

66.     As an agency, the Kansas City Fed is "subject to review" by the Board.  5 U.S.C. § 551(1).[7]  For example, the Board is permitted to review the accounts and records of Federal Reserve Banks, 12 U.S.C. § 248(a); to remove Bank officers, 12 U.S.C. § 248(f); to suspend operations of the Bank if it violates its promulgating statute, 12 U.S.C. § 248(h); and to approve compensation paid to directors of the Bank, 12 U.S.C. § 307.  In addition to the Kansas City Fed's own statutory responsibilities, the Board is also permitted "[t]o delegate, by published order or rule and subject to the [Administrative Procedure Act], any of its functions, other than those relating to rulemaking or pertaining principally to monetary and credit policies, to . . . Federal Reserve banks." 12 U.S.C. § 248(k).  Such delegated responsibilities include but are not limited to deciding certain applications, requests, or petitions.  *See* 12 C.F.R. § 265.11.  This express delegation includes the authority to decide applications for Federal Reserve membership, *id.* § 265.11(e)(1); no such delegation exists, however, with respect to master account applications, *see supra* ¶ 56.  The Board thus has delegated substantial, independent decision-making authority to the Federal Reserve Banks to assist with formulating monetary policy for the United States.

67.     Like all Reserve Banks, the Kansas City Fed operates on a not-for-profit basis.  It receives its funds from the national banks within its district that are required to become members of the Federal Reserve System, from state-chartered banks that may choose to become members of the System, and in certain cases from private individuals or entities.  *See* 12 U.S.C. § 283.  To

---

[6] Henry Whitaker, Deputy Assistant Attorney General, Office of Legal Counsel, *Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee* 8 n.3 (Oct. 23, 2019), https://tinyurl.com/52bzbery.

[7] *See also* Rules of Organization of the Federal Reserve System, 26 Fed. Reg. 12638 (as revised effective Nov. 2, 1976).

J.A.63

the extent that the Kansas City Fed receives net earnings greater than those needed to pay its dividends and supply its surplus fund, it pays those additional earnings to the United States Treasury.  12 U.S.C. §§ 289, 414.

68.    Despite all this, upon being asked by Custodia to state their position on the Kansas City Fed's agency status, Defendants have informed Custodia of their position that the Kansas City Fed is not an agency for purposes of the APA.  Defendants declined to offer any justification or legal support for this view.

69.    Adopting Defendants' position—particularly in view of the Kansas City's Fed purported final decision-making authority over master account applications—would raise a number of constitutional concerns.  For one, if the Kansas City Fed were considered a private entity, it would be constitutionally impermissible for the Kansas City Fed—whose Board of Directors is made up of a majority of non-presidentially or non-Board-appointed, private-sector officials—to wield substantial executive authority and issue final decisions over the adjudication of master account applications on behalf of the U.S. government.  Insofar as the Kansas City Fed is exercising governmental powers to determine which institutions are able to access the United States Federal Reserve System, the Kansas City Fed must be treated as a government agency whose decisions, like the decisions of other adjudicatory bodies under the APA, are subject to higher-level agency review—here, by the Board.  *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995) (concluding that Amtrak is a government agency because "[i]t surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form").[8]

---

[8] Recognizing the potential constitutional issues with permitting private entities to exercise substantial regulatory authority and make final decisions on behalf of the United States government, the Office of Legal Counsel ("OLC") has previously declined to address whether or

70.     Subjecting the Kansas City Fed to Board and APA review is also necessary to stave off significant due process problems.  The Due Process Clause of the U.S. Constitution prohibits schemes that permit an "economically self-interested entity [to] exercise regulatory authority over its rivals." *Assoc. of Am. R.R.s v. U.S. Dept. of Transp.*, 821 F.3d 19, 27 (D.C. Cir. 2016).  Rather, any such regulation must come through an "official or an official body" of the government, which are considered to be "presumptively disinterested." *Id.* (citation omitted).  The Kansas City Fed comprises representatives of banks with economic interests potentially in conflict with those entities, like Custodia, seeking master accounts.  Allowing these potentially "self-interested entit[ies]" to exercise final decision-making authority outside the strictures of APA and Board review would plainly present due process problems. *Id.*

71.     For all of the reasons listed above, the Kansas City Fed is an "authority of the United States," and thus an agency for purposes of the APA.  5 U.S.C. § 551(1).  To the extent that the Kansas City Fed is subject to review in the conduct of some of its responsibilities, it is subject to the review of the Board, another United States agency. *See id.*

72.     As United States government agencies, the Board and the Kansas City Fed have a non-discretionary duty to adjudicate completed applications for master accounts.  While the Kansas City Fed may be responsible for communicating a decision, both agencies work in concert to consider and process applications and decisions are subject to the Board's supervision.  At a minimum, it is incumbent upon the Board to exercise its supervisory authority so as to ensure fair and timely adjudication of all master account applications.

---

not Reserve Bank presidents are "officers of the United States" or "the constitutional status of the Reserve Banks more broadly." Whitaker, *supra* n.6, at 8 n.3.  As OLC explained, "Reserve Banks exhibit some features of private enterprises, but they are fiscal agents of the United States empowered by delegation from the Board of Governors—an establishment of the federal government—to supervise financial institutions and activities." *Id.*

73.     Custodia completed its master account application on October 29, 2020. Defendants have acknowledged that Custodia is eligible to maintain a master account and that there are "no showstoppers" with its master account application.  To date, however, neither the Board nor the Kansas City Fed have processed Custodia's application or provided any indication of how much longer the application will remain pending.

74.     Defendants' action in withholding a decision on Custodia's master account application for more than 19 months is patently unlawful.  The Kansas City Fed and the Board have a duty to adjudicate applications.  And, Congress directed that they do so within one year. Under 12 U.S.C. § 4807, "[e]ach Federal banking agency *shall* take final action on *any application* to the agency before the end of the 1-year period beginning on the date on which a completed application is received by the agency."  (Emphasis added).  The definitional provision of the statute defines "appropriate Federal banking agency" as the "Board of Governors of the Federal Reserve, in the case of … any state member bank."  12 U.S.C. § 1813(q)(3)(A).  It also more generally defines "Federal banking agency" to mean "the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, or the [FDIC]."  12 U.S.C. § 1813(z).

75.     By its terms, then, the one-year statutory deadline applies to the Board.  The Board cannot avoid this congressionally mandated deadline by delegating authority to the Kansas City Fed to process master account applications.  As two components of the Federal Reserve System, the Board and the Kansas City Fed have a duty to promptly act on Custodia's application, and under no circumstances may they take longer than one year.  Defendants' failure to heed the "specific, non-discretionary time" for processing applications set by statute renders their inaction unlawfully withheld under the APA.  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191 (10th Cir.

J.A.66

1999).  Under Tenth Circuit precedent, this Court therefore "must compel the action unlawfully withheld."  *Id.* at 1190.

76.     Even apart from the one-year statutory deadline, a decision on Custodia's master account application has been unlawfully delayed.  Pursuant to 5 U.S.C. § 555(b), "[w]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."  The statute further directs courts to "compel agency action . . . unreasonably delayed."  *Id.* § 706(1).  The Board and the Kansas City Fed have failed to decide Custodia's master account application within a reasonable time.

77.     The Board's form, one-page Master Account Agreement, completed by Custodia, indicated that account "[p]rocessing may take 5 – 7 business days."  Compl. Ex. 1.  Even if the Kansas City Fed and the Board are not bound by that timeline, the statement indicates that the decision on master account applications is routine and does not require a substantial amount of time—certainly not 19 months and counting.

78.     Custodia has repeatedly asked both agencies if there is anything that Custodia can do to speed up the process.  Both agencies have agreed that Custodia is eligible for a master account.  Neither agency has requested any additional information necessary to decide Custodia's application.  Nor has either agency indicated a potential timeline for decision.

79.     When asked about the timing for a decision, each agency has suggested that the other is responsible and counseled patience.  The Board, for example, has identified the Kansas City Fed as holding the final decision-making authority over the completed application even though it has asserted control over the decision-making process for Custodia's master account application.  The Kansas City Fed, on the other hand, is only the vehicle for communicating an eventual decision and has attributed the delay to the fact that the Board eventually intends to issue

27

further guidance.  But these guidelines have not been finally promulgated, have already been supplemented and re-opened for a new public comment period once, and may not ever be adopted. Further, because Custodia's application is already pending—and was submitted before the proposed guidelines came about—the Board could not lawfully apply any forthcoming rule to Custodia retroactively.  *See* 5 U.S.C. § 551(4); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156-59 (2012).  At best, Defendants' delay is unreasonable in light of their stated justifications and prior prompt processing of master account applications.  At worst, it reflects a concerted effort to change and obfuscate the rules of the master account application process to Custodia's detriment.

80.     In light of these facts, and the other facts alleged herein, the Board and the Kansas City Fed's "agency action" in adjudicating Custodia's master account application is "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

81.     Custodia is therefore entitled under the APA to an order compelling the Board and/or the Kansas City Fed to promptly decide Custodia's application for a master account.

**CLAIM FOR RELIEF II**
**Relief Under the Mandamus Act, 28 U.S.C. § 1361**
**Claim for Mandamus Against All Defendants**

82.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

83.     Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  In this action, Custodia is requesting that the Court issue a writ of mandamus to the Board and Kansas City Fed directing that they promptly decide Custodia's pending application for a master account.

84. This Court has jurisdiction over Custodia's action under the Mandamus Act.

85. Based on facts already alleged, *supra* ¶¶ 62-71, both the Board and Kansas City Fed are United States agencies subject to the mandamus power of this Court.

86. Mandamus is appropriate here because Custodia has a clear and certain claim to have its master account application decided in a timely fashion. Pursuant to statute, Federal Reserve banking services "*shall* be available" on an equal and non-discriminatory basis to eligible depository institutions. 12 U.S.C. § 248a(c)(2) (emphasis added). Such services are only available through a master account. The Kansas City Fed has confirmed that Custodia is eligible for a master account. Yet despite its valid Wyoming charter and conceded eligibility, Custodia has not received the standard application processing. Instead, its application has been left to languish.

87. The Board and the Kansas City Fed were statutorily required to "take final action" on Custodia's master account application within one year—a deadline already in the distant past. 12 U.S.C. § 4807.

88. Custodia asks the Court to enforce Custodia's statutory right to have its application considered and decided in a timely manner. Defendants acknowledge that accessing Federal Reserve services requires an institution like Custodia to maintain a master account. Regardless of any argument that the Kansas City Fed or the Board may make as to whether the *granting* of master account applications is discretionary, Custodia is entitled, at a minimum, to have its master account application *adjudicated*. *Cf. In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418-19 (D.C. Cir. 2004) (agency cannot thwart court review "by withholding a reviewable decision").

89. Mandamus is necessary in this case because there are no other adequate remedies available. Custodia completed its master account application on October 29, 2020. Since that time, Custodia has been in regular communication with the Board and the Kansas City Fed in an

attempt to get its application processed.  Despite its best efforts, as well as the efforts of Custodia's stakeholders, the Board and the Kansas City Fed have not processed Custodia's application.

90.     Without a master account, Custodia will incur unnecessary costs, encounter otherwise avoidable risks (such as settlement risk and counterparty risk), and will lose ground to competitors that already have a master account.

91.     Custodia is therefore entitled under the Mandamus Act to an order compelling the Board and/or the Kansas City Fed to decide Custodia's application for a master account.

**CLAIM FOR RELIEF III**
**Violation of U.S. Const. Art. I, §1 & amend. V**
**Claim for Violation of Separation of Powers and Due Process Clause**
**Against All Defendants**

92.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

93.     Custodia asserts this claim under Article I, §1 and the Due Process Clause of the Constitution, which prohibit the government from transgressing the vesting of legislative authority in Congress and from depriving a person of property without the "due process of law."  U.S. Const. amend. V.

94.     The Board and the Kansas City Fed are governmental entities subject to separation of powers and due process requirements when determining applicants' ability to obtain a master account.   As a depository institution entitled to the services available to all depository institutions on a nondiscriminatory basis pursuant to 12 U.S.C. § 248a, Custodia has a property interest in a master account.  *Cf. Goldberg v. Kelly*, 397 U.S. 254, 262 & n.8 (1970).  This Court's equity jurisdiction empowers it to enforce and provide remedies for Defendants' violations of the Constitution.

30

95.     Baseline separation of powers and due process principles prohibit agencies from employing decision-making processes devoid of intelligible principles, public scrutiny, or discernable standards.  *See Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (government entities cannot, consistent with the Due Process Clause, deprive property under a law "so standardless that it invites arbitrary enforcement" (citation omitted)); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (requiring government to "follow a fair process of decision making when it acts to deprive a person of his possessions"); *Jarkesy v. SEC*, 2022 WL 1563613, at *9-11 (5th Cir. May 18, 2022) (Congress may not grant "open-ended" authority and "absolute discretion" to agencies).

96.     The Board and the Kansas City Fed have run afoul of these constitutional guarantees.  They have alternatively blamed each other for their extensive delay in processing Custodia's master account application.  It remains unclear from the regulations and from Custodia's communications with the Board and the Kansas City Fed who the ultimate decision-maker is, and what role each government entity plays in the decision-making process.  Custodia's efforts to obtain clarity have been met with obfuscation.  The black-box process is devoid of any meaningful public scrutiny.

97.     It is similarly unclear what considerations and standards are used to decide when or whether to grant a master account application.  The Federal Reserve Banks are not required to publish (on their websites or otherwise) applications by institutions seeking master account access or decisional records indicating which institutions had their master account access granted or revoked, when this occurred, or the reason why access was granted or revoked.  The Board and the Kansas City Fed have not provided guidance as to why some banks get their master accounts immediately while others are forced to wait indeterminate periods of time.  The lack of transparency exacerbates the Kafkaesque nature of the master account review process—a problem

that will be perpetuated if the Board's recently proposed guidelines are adopted, because they do not set or explain criteria, processes, or procedures for reviewing and evaluating master account applications.  If anything, they only raise the question of what processes and standards, if any, the Board and the Kansas City Fed have been using and are continuing to use for processing and evaluating master account applications.

98.     For many of the same reasons discussed above, *see supra* ¶¶ 61-91, Defendants have violated Custodia's due process rights by subjecting Custodia to an indefinite administrative delay in the processing of its master account application.

99.     Custodia submitted its application for a master account on October 29, 2020.  Such applications are typically granted as a matter of course within 5 to 7 business days.  Compl. Ex. 1. The Kansas City Fed has confirmed that Custodia is eligible for a master account.  However, despite the passage of over 19 months, Custodia's application remains pending.  Neither the Board nor the Kansas City Fed will provide a deadline by which a decision will be made.

100.     The Board and the Kansas City Fed's "long-continued and unreasonable delay" in processing and deciding Custodia's application for a master account "effectively take[s]" Custodia's property without the fair process the Due Process Clause requires.  *Smith v. Illinois Bell Tel. Co.*, 270 U.S. 587 (1926).

101.     Custodia is therefore entitled under Article I and the Due Process Clause to an order compelling the Board and/or the Kansas City Fed to decide Custodia's application for a master account consistent with constitutionally required discernable standards.

**CLAIM FOR RELIEF IV IN THE ALTERNATIVE**
**Relief under the Declaratory Judgment Act, 28 U.S.C. § 2201**
**Claim for Declaratory Judgment Against All Defendants**

102.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

103.     As an alternative to Custodia's above-pleaded claims for relief I and II, Custodia seeks a declaratory judgment under 28 U.S.C. § 2201(a).  This statute provides that, "[i]n the case of an actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

104.     This case presents an actual controversy.  Custodia maintains that it is entitled to a timely decision on its master account application.  The Board is statutorily charged with making banking services available to nonmember depository institutions like Custodia.  These banking services require a master account, for which Custodia has applied with the Kansas City Fed.  The Kansas City Fed and the Board have thus far refused to issue a decision, and have offered no reasonable or sufficiently definite timeline for reaching a decision.  For reasons set out above, they do not have the discretion to simply ignore or delay consideration of completed and eligible applications.

105.     The controversy arises in this Court's jurisdiction.  Custodia resides in Wyoming.  And the Kansas City Fed and the Board both reside in Wyoming for purposes of this action because they have availed themselves of the opportunity to conduct business in Wyoming.  Additionally, many of the events giving rise to this claim have occurred in Wyoming, including the issuance of Custodia's charter and the preparation of the master account application.

106.     Custodia has a right to have its master account application decided.  The Federal Reserve System is required to publish pricing principles and "to put into effect a schedule of fees for such services which is based on those principles."  12 U.S.C. § 248a(a).  The fee schedule promulgated by the Federal Reserve includes essential services for a depository institution like Custodia, all of which require a master account.  12 U.S.C. § 248a(b).  Under 12 U.S.C. § 248a(c)(2), "[a]ll Federal Reserve bank services covered by the fee schedule *shall be available* to nonmember depository institutions" such as Custodia. (Emphasis added).

107.     The Board and the Kansas City Fed have a nondiscretionary statutory obligation to decide the master account applications that are submitted to them.  By statute, they must do so within one year of receiving a completed application. 12 U.S.C. § 4807.  The Board and the Kansas City Fed have disregarded this statutory deadline in the course of delaying a decision on Custodia's application for more than 19 months.

108.     Through this Complaint, Custodia has filed an appropriate pleading to have its rights declared.  The Court can resolve this controversy by declaring that Custodia has a right to have its master account application decided promptly.

109.     Custodia is therefore entitled under the Declaratory Judgment Act to a declaration from this Court that the Board and/or the Kansas City Fed must decide Custodia's master account application within a reasonable period of time.

### CLAIM FOR RELIEF V IN THE ALTERNATIVE
### Violation of U.S. Const. amend. V
### Claim for Violation of Due Process Clause Against All Defendants

110.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

J.A.74

111.    As an alternative to Custodia's above-pleaded claims for relief I and II, and in the event that the Court determines that the Kansas City Fed is not an "agency" subject to APA review and the Board's ultimate decision-making authority, Custodia asserts this claim under the Due Process Clause of the Constitution.  U.S. Const. amend. V.

112.    The Kansas City Fed is a "federal instrumentalit[y]" that acts as a "fiscal agent[] of the United States" as part of the Federal Reserve System.  Mot. to Dismiss 3, *TNB USA, Inc. v. Fed. Rsrv. Bank of N.Y.*, No. 1:18-cv-7978 (ALC) (S.D.N.Y. Mar. 8, 2019), ECF No. 21; Whitaker, *supra* n.6, at 8 n.3.  It is thus "part of the Government for purposes of" complying with the Constitution, *Lebron*, 513 U.S. at 399, and is subject to the Due Process Clause's requirements when determining applicants' ability to obtain a master account.  As a depository institution entitled to the services available to all depository institutions on a nondiscriminatory basis pursuant to 12 U.S.C. § 248a, Custodia has a property interest in a master account.  *Cf. Goldberg*, 397 U.S. at 262 & n.8.  This Court's equity jurisdiction empowers it to enforce and provide remedies for Defendants' violations of the Constitution.

113.    Under the Fifth Amendment, governmental entities must exercise "due process of law."  U.S. Const. amend. V.  The Due Process Clause requires "fairness" in the execution of the law.  *Assoc. of Am. R.R.s*, 821 F.3d at 27.  And, fairness necessitates that "an economically self-interested entity may [not] exercise regulatory authority over its rivals."  *Id.*

114.    Here, the Board of Directors of the Kansas City Fed in part comprises members "who shall be chosen and representative of the stockholding banks."  12 U.S.C. § 302. Stockholding banks are or may be competitors with all other banks requesting master accounts. Stockholding banks have particular and heightened competitive incentives to ensure that novel

35

**J.A.75**

banking institutions like Custodia cannot access master accounts so that stockholding "traditional" banks can retain a monopoly on access to the Federal Reserve System.

115.     To allow regulation by "private persons whose interests may be or often are adverse to the interests of others in the same business" is anathema to the presumption that the government acts in a fair, neutral, and disinterested fashion.  *See Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936).  To the extent that the Kansas City Fed's Board of Directors finally adjudicates the rights of would-be competitors like Custodia, the current master application review regime works "an intolerable and unconstitutional interference with personal liberty and private property" by vesting "self-interested" actors with "regulatory authority over [their] rivals."  *Id.*; *Assoc. of Am. R.R.s*, 821 F.3d at 27.

116.     If the Kansas City Fed is not an agency subject to APA review and the Board's ultimate decision-making authority, Custodia is entitled, under the Due Process Clause, to an order that the Kansas City Fed's processing and adjudication of Custodia's application—as well as any Board delegation of final decision-making authority—is unconstitutional and appropriate equitable relief to ensure Custodia receives a lawful administrative process.

### CLAIM FOR RELIEF VI IN THE ALTERNATIVE
#### Violation of U.S. Const. Art. II, § 2, cl. 2
#### Claim for Violation of Appointments Clause Against All Defendants

117.     Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

118.     As an alternative to Custodia's above-pleaded claims for relief I and II, and in the event that the Court finds that the Kansas City Fed has final decision-making authority over

J.A.76

Custodia's master account application, the Federal Reserve System's process for deciding master account applications violates the United States Constitution's Appointments Clause.

119.    "The executive Power" of the United States is vested in the President.  U.S. Const. Art. II, § 1, cl. 1.  Pursuant to the Appointments Clause, the President may be assisted in carrying out that responsibility by "Officers of the United States."  Art. II, § 2, cl. 2.  The Appointments Clause permits the vesting of the appointment of "inferior Officers" in the "President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*

120.    Under the Appointments Clause, only noninferior officers of the United States, otherwise known as "principal Officers," shall "exercis[e]" such "significant authority pursuant to the laws of the United States" in assisting the President in his executive powers.  *Buckley v. Valeo*, 424 U.S. 1, 126 (1976).  Unlike inferior Officers, principal Officers must be nominated by the President and confirmed by the Senate.  Art. II, § 2, cl. 2.

121.    The Board of Directors for the Kansas City Fed, and other regional Federal Reserve Banks, are not principal Officers because they are not appointed by the President and confirmed by the Senate.

122.    Like all regional Federal Reserve Banks, the Board of Directors for the Kansas City Fed is authorized and regulated by statute.  The Kansas City Fed's Board of Directors comprises three Class A members, "who shall be chosen and representative of the stockholding banks," three Class B members, "who shall represent the public," and three Class C members "who shall be designated by the Board of Governors of the Federal Reserve System."   12 U.S.C. § 302.  No members are appointed by the President, and no members are approved by the Senate.

123.    Because the Kansas City Fed's Board of Directors is not composed of principal Officers, the Kansas City Fed is not constitutionally permitted to exercise "final decision making

authority" on behalf of the United States—including rendering the decision regarding which institutions can access the United States Federal Reserve System via a master account. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1984 (2021). Such determinations involve the adjudication of public rights which must be decided by principal Officers. *Id*.

124.    Only three out of the nine members of the Board of Directors for the Kansas City Fed could even be considered inferior Officers of the United States because they are "designated by the Board of Governors of the Federal Reserve System." 12 U.S.C. § 302. The remaining six members of the Board of Directors of the Kansas City Fed are not even inferior Officers of the United States and can exercise no "significant" regulatory or decision-making authority "pursuant to the laws of the United States." *Buckley*, 424 U.S. at 125-26 (quoting *United States v. Germaine*, 99 U.S. 508, 509-10 (1879)).

125.    Instead, determinations on master accounts must be subject to the review and authority of a principal Officer. To allow members of the Kansas City Fed Board of Directors to exercise "unreviewable authority" in adjudicating public rights dilutes political accountability and, under the Appointments Clause, is "incompatible with their" status as either private-sector actors or inferior officers. *Arthrex*, 141 S. Ct. at 1983.

126.    Accordingly, because the members of the Kansas City Fed's Board of Directors are not appointed by the President or confirmed by the Senate, the Kansas City Fed cannot render a final decision on behalf of the United States government for any master account application, including Custodia's application. To the extent Defendants' current master account application review regime permits the Kansas City Fed to exercise final decision-making authority, it violates the Appointments Clause.

127.    Custodia is therefore entitled under the Appointments Clause to an order finding the Federal Reserve System's vesting of final master account determinations in the Reserve Banks to be unconstitutional and appropriate equitable relief to ensure Custodia receives a lawful administrative process.

## CLAIM FOR RELIEF VII IN THE ALTERNATIVE
### Relief Under the Mandamus Act, 28 U.S.C. § 1361
### Claim for Mandamus Against All Defendants

128.    Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

129.    Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

130.    As an alternative to Custodia's above-pleaded claims for relief I and II, and only in the event that Defendants deny Custodia's application for a master account, Custodia requests that the Court issue a writ of mandamus to the Board and Kansas City Fed directing them to grant Custodia's application for a master account.

131.    This Court has jurisdiction over Custodia's action under the Mandamus Act.

132.    Based on facts already alleged, *supra* ¶¶ 62-71, both the Board and Kansas City Fed are United States agencies subject to the mandamus power of this Court.

133.    Mandamus is appropriate here because Custodia, as a state-chartered, deposit-taking bank, has a clear and certain claim to have its master account application granted.  Pursuant to statute, Federal Reserve banking services "*shall* be available" on an equal and non-discriminatory basis to all eligible depository institutions.  12 U.S.C. § 248a(c)(2) (emphasis added); *see also Fourth Corner Credit Union*, 861 F.3d at 1068 (Bacharach, J.) (opining that the

term "shall" "indicates a congressional command," as 1) the language was unambiguous, 2) prior agency interpretations were consistent with this understanding, and 3) legislative history supported this conclusion).  Such services are only available through a master account.  Custodia is an eligible depository institution.  Yet despite its valid Wyoming charter and conceded eligibility, Custodia has been denied a master account.

134.    Custodia asks the Court to enforce Custodia's statutory right, as an eligible, deposit-taking bank, to have a master account.

135.    Mandamus is necessary in this case because there are no other adequate remedies available if Defendants deny Custodia's master account application.

136.    Without a master account, Custodia will incur unnecessary costs, encounter otherwise avoidable risks (such as settlement risk and counterparty risk), and will lose ground to competitors that already have a master account.

137.    Custodia is therefore entitled under the Mandamus Act to an order compelling the Board and/or the Kansas City Fed to comply with its statutory obligation to provide Custodia with a master account.

### CLAIM FOR RELIEF VIII IN THE ALTERNATIVE
### Relief Under the Declaratory Judgment Act, 28 U.S.C. § 2201
### Claim for Declaratory Judgment Against All Defendants

138.    Plaintiff repeats and realleges the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

139.    As an alternative to Custodia's above-pleaded claims for relief I and II, and only in the event that Defendants deny Custodia's application for a master account, Custodia seeks a declaratory judgment under 28 U.S.C. § 2201(a).  This statute provides that, "[i]n the case of an actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

140.    This case presents an actual controversy.  Custodia maintains that, as a state-chartered, deposit-taking bank, it is entitled to have its master account application granted. Without a master account, Custodia will incur unnecessary costs, encounter otherwise avoidable risks (such as settlement risk and counterparty risk), and will lose ground to competitors that already have a master account.

141.    The controversy arises in this Court's jurisdiction.  Custodia resides in Wyoming. And the Kansas City Fed and the Board both reside in Wyoming for purposes of this action because they have availed themselves of the opportunity to conduct business in Wyoming.  Additionally, many of the events giving rise to this claim have occurred in Wyoming, including the issuance of Custodia's charter and the preparation of the master account application.

142.    The Board and the Kansas City Fed have a statutory obligation to provide Custodia with a master account.  Pursuant to statute, Federal Reserve banking services "*shall* be available" on an equal and non-discriminatory basis to all eligible depository institutions.  12 U.S.C. § 248a(c)(2) (emphasis added); *see also Fourth Corner Credit Union*, 861 F.3d at 1068 (Bacharach, J.) (opining that the term "shall" "indicates a congressional command," as 1) the language was unambiguous, 2) prior agency interpretations were consistent with this understanding, and 3) legislative history supported this conclusion).  Such services are only available through a master account.  Custodia is an eligible depository institution.  Yet despite its valid Wyoming charter and conceded eligibility, Custodia has been denied a master account.

143.    Through this Complaint, Custodia has filed an appropriate pleading to have its rights declared.  The Court can resolve this controversy by declaring that Custodia has a right, as an eligible, deposit-taking bank, to have a master account.

144.    Custodia is therefore entitled under the Declaratory Judgment Act to a declaration from this Court that the Board and/or the Kansas City Fed has a statutory obligation to provide Custodia with a master account.

## REQUEST FOR RELIEF

WHEREFORE, Custodia respectfully requests the Court to:

a.    Order a speedy hearing on this action, thereby advancing this action on the Court's calendar as permitted by Federal Rule of Civil Procedure 57;

b.    Declare unlawful the Defendants' continuing delay in processing Custodia's application for a master account;

c.    Order the Kansas City Fed and the Board to process and decide Custodia's application for a master account within 30 days of the Court's Order, or such other time as the Court deems reasonable;

d.    Grant Plaintiff costs, fees, and other expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

e.    Grant any other and further relief that the Court deems just and proper.

DATED: June 7, 2022                  Respectfully submitted,

    /s/    SCOTT E. ORTIZ
WILLIAMS, PORTER, DAY & NEVILLE, PC
Scott E. Ortiz   WSB 5-2550
159 N. Wolcott Street
Suite 400
Casper, WY 82601
sortiz@wpdn.net

WILLIAMS & CONNOLLY LLP

J.A.82

John K. Villa (*pro hac vice* admission pending)
Ryan Scarborough (*pro hac vice* admission pending)
Whitney D. Hermandorfer (*pro hac vice* admission pending)
Jamie Wolfe (*pro hac vice* admission pending)
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
jvilla@wc.com
rscarborough@wc.com
whermandorfer@wc.com
jwolfe@wc.com

*Attorneys for Plaintiff Custodia Bank, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2022, I caused **Custodia Bank, Inc.'s Complaint** to be

served on the following via email:

Mark E. Van Der Weide
General Counsel, Board of Governors of the Federal Reserve System
mark.vanderweide@frb.gov
(202) 452-2263
20th Street and Constitution Avenue NW
Washington, DC 20551

Craig Zahnd
General Counsel, Federal Reserve Bank of Kansas City
craig.zahnd@kc.frb.org
(816) 881-2533
1 Memorial Drive
Kansas City, MO 64108

DATED: June 7, 2022                    By: /s/  SCOTT E. ORTIZ
                                           SCOTT E. ORTIZ

**J.A.84**

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Custodia Bank Inc

**DEFENDANTS**

FEDERAL RESERVE BOARD OF GOVERNORS,

**(b)** County of Residence of First Listed Plaintiff     Laramie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Washington DC
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Scott E. Ortiz , Williams , Porter , Day & Neville, 159 N. Wolcott suite 400 , Casper Wy 82601

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
        Plaintiff
- [ ] 3   Federal Question
        *(U.S. Government Not a Party)*
- [x] 2   U.S. Government
        Defendant
- [ ] 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | Product Liability | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | | 370 Other Fraud | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 710 Fair Labor Standards Act | | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 720 Labor/Management Relations | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | | 740 Railway Labor Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 890 Other Statutory Actions |
| | | | | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 864 SSID Title XVI | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | [x] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
? 12 USC 248a (the non-discrimination in Fed banking services provision)? 12 USC 4807 (the 1-year deadline provision) 5 USC 706
Brief description of cause:
Administrative Procedure Act/Review or Appeal of Agency Decision. "

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____   DOCKET NUMBER _____

DATE
June 7th, 2022

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**J.A.85**

# <u>Exhibit 1</u>

J.A.86

Avanti Financial Group, Inc -

**Federal Reserve Bank**
**Operating Circular 1, Appendix 1**
**Master Account Agreement**
Servicing FRB Office: _____
Effective Date: _____

FRBservices.org

## Section 1 – Master Account Agreement

The Institution named below agrees to the provisions of Operating Circular 1, Account Relationships, of the Federal Reserve Bank named above, and to the provisions of all operating circulars of each Federal Reserve Bank from which the Institution obtains services, as the circulars may be amended from time to time.  The transactions and fees for services obtained will be settled in the Master Account unless the Institution requests otherwise by submitting a Transaction and Service Fee Settlement Authorization (Operating Circular 1, Appendix 2) and/or a Letter of Agreement for Obtaining Advances Through a Correspondent (Operating Circular 10).

**All Fields Are Required**

| | | | |
|---|---|---|---|
| Routing (ABA) Number | TBD | | |
| Financial Institution Name | Avanti Financial Group, Inc | | |
| Street Address | 2120 Carey Street, 3rd Floor | | |
| City | Cheyenne | | |
| State & Zip Code | State: Wyoming | | Zip Code: 82001 |
| Official Signature* | *Britney Reddy* | | |
| Name | First: Britney | Middle Initial: D | Last: Reddy |
| Title | Chief Financial Officer and Chief Banking Officer | | |
| Date | 10/29/2020 | | |
| Anticipated Account Opening Date | January 2021 | | |

## Section 2 – Questions Regarding the Account Should be Directed to:

| | | | |
|---|---|---|---|
| Name | First: Britney | Middle Initial: D | Last: Reddy |
| Title | Chief Financial Officer and Chief Banking Officer | | |
| Telephone Number | Phone: ███ ███████ | | Extension |
| E-mail | ████████████████ | | |

## Section 3 – Questions Regarding the Account Should be Directed to Alternate:

| | | | |
|---|---|---|---|
| Name | First: Charles | Middle Initial: D | Last: Thompson |
| Title | Chief Legal Officer and Chief Compliance Officer | | |
| Telephone Number | Phone: ███ ███████ | | Extension |
| E-mail | ██████████████ | | |

* Official signature must be a signer designated on your institution's Official Authorization List.
Processing may take 5-7 business days. Please contact the Federal Reserve Bank to confirm the date that the master account will be established.

**J.A.87**

Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the
Federal Reserve System*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| CUSTODIA BANK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:22-cv-00125-SWS |
| v. | ) | |
| | ) | |
| BOARD OF GOVERNORS OF | ) | |
| THE FEDERAL RESERVE SYSTEM & | ) | |
| FEDERAL RESERVE BANK | ) | |
| OF KANSAS CITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S MOTION TO DISMISS

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, defendant Board of

Governors of the Federal Reserve System ("Board") hereby moves to dismiss this action for

failure to state a claim under the Administrative Procedure, Mandamus, or Declaratory Judgment

Acts, and for failure to establish justiciability or any constitutional violation.

**J.A.88**

In support of its motion, the Board respectfully refers the Court to its accompanying

Memorandum of Points and Authorities in Support.

Dated:  August 16, 2022

Respectfully submitted,

 /s/ *Joshua P. Chadwick*
Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the*
*Federal Reserve System*

**J.A.89**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2022, I electronically filed the foregoing using the

court's CM/ECF system, which will send notification of such filing to all parties of record.

By:     /s/ *Joshua P. Chadwick*
Joshua P. Chadwick

*Counsel for Defendant Board of Governors
of the Federal Reserve System*

Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the
Federal Reserve System*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| CUSTODIA BANK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:22-cv-00125-SWS |
| v. | ) | |
| | ) | |
| BOARD OF GOVERNORS OF | ) | |
| THE FEDERAL RESERVE SYSTEM & | ) | |
| FEDERAL RESERVE BANK | ) | |
| OF KANSAS CITY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
## MOTION TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.    The Federal Reserve ................................................................... 2

    B.    Master Accounts and the Board's Guidelines Regarding Access ........................... 4

    C.    Custodia's Novel Structure and Risks ................................................. 8

ARGUMENT ......................................................................................................... 10

I.    Custodia Has No Entitlement to a Master Account Decision on Its Preferred Timeline and Claims I (APA) and II (Mandamus Act) Fail As a Result ......................... 10

    A.    No Statutory Timeline Applies to Plaintiff's Master Account Request .............. 10

    B.    Plaintiff Fails to State a Claim for Unreasonable Delay ......................... 11

II.    Account Decisions are Discretionary and Committed by Statute to Reserve Banks ........ 17

    A.    Plaintiff Has No Statutory Entitlement to a Reserve Bank Account ................. 17

    B.    Plaintiff's Reliance on Contrary Dicta is Misplaced and Any Statutory Ambiguity Should Be Resolved in Favor of the Board's Reasonable Interpretation ............ 22

III.    Plaintiff's Allegations Fail to Establish Justiciability ................................. 26

    A.    Plaintiff's Constitutional Claims Are Non-Justiciable ........................... 27

    B.    Plaintiff's Contingent Claims Are Non-Justiciable .............................. 30

    C.    Plaintiff's Timeliness Claims Are Non-Justiciable .............................. 31

IV.    Plaintiff Fails to Allege Any Constitutional Violation ................................... 32

    A.    Plaintiff Fails to State a Claim for Violation of Due Process ..................... 33

        1.    Plaintiff fails to state a due process claim because it lacks a protected property interest ................................................. 33

2.     Plaintiff fails to state a due process claim based on vagueness ................ 33

3.     Plaintiff fails to state a due process claim based on delay ....................... 34

4.     Plaintiff fails to state a due process claim based on bias ......................... 35

B.    Plaintiff Fails to State a Claim for Improper Delegation of Legislative Power.... 37

C.    Plaintiff Fails to State a Claim for Violation of the Appointments Clause .......... 39

CONCLUSION .................................................................................................... 45

CERTIFICATE OF SERVICE

# TABLE OF AUTHORTIES

Page

**Cases**

*Allen v. Wright,*
        468 U.S. 737 (1984)...................................................................... 27

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
        941 F.3d 1320 (Fed. Cir. 2019),..................................................... 44

*Association of American Railroads  v. DOT,*
        821 F.3d 19 (D.C. Cir. 2016) .......................................................... 37

*Association of American Railroads v. DOT,*
        896 F.3d 539 (D.C. Cir. 2018) ........................................................ 37

*Audubon of Kansas, Inc. v. DOI,*
        568 F. Supp. 3d 1167 (D. Kan. 2021) ............................................. 12

*Barrios Garcia v. DHS,*
        25 F.4th 430 (6th Cir. 2022) .......................................................... 16

*Beckles v. United States,*
         137 S. Ct. 886 (2017)..................................................................... 34

*Bell Atlantic Corp. v. Twombly,*
        550 U.S. 544 (2007)........................................................................ 35

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Government,*
        533 F.3d 1183 (10th Cir. 2008) ...................................................... 17

*Billings Utility Co. v. Advisory Committee Board of Governors,*
        135 F.2d 108 (8th Cir. 1943) .......................................................... 19

*Board of Governors of the Federal Reserve System v. First Lincolnwood,*
        439 U.S. 234 (1978)........................................................................ 25

*Clapper v. Amnesty International USA,*
        568 U.S. 398 (2013)........................................................................ 28

*Coalition for Sustainable Resources, Inc. v. U.S. Forest Service,*
        259 F.3d 1244 (10th Cir. 2001) ................................................ 27, 30

J.A.94

*Collins v. Yellen*,
　　141 S. Ct. 1761 (2021) ........................................................................ 43

*Costello v. Grundon*,
　　651 F.3d 614 (7th Cir. 2011) ............................................................. 11

*CS–360, LLC v. SBA*,
　　20 F. Supp. 3d 104 (D.D.C. 2013) ..................................................... 14

*Dastagir v. Blinken*,
　　557 F. Supp. 3d 160 (D.D.C. 2021) ................................................... 15

*Edmond v. United States*,
　　520 U.S. 651 (1997) ............................................................................ 44

*Edwards v. Valdez*,
　　789 F.2d 1477 (10th Cir. 1986) ......................................................... 24

*Farmers and Merchants Bank v. Federal Reserve Bank of Richmond*,
　　262 U.S. 649 (1923) ...................................................................... 17, 18

*Farrell-Cooper Mining Company v. DOI*,
　　728 F.3d 1229 (10th Cir. 2013) ......................................................... 29

*Fasano v. Federal Reserve Bank of N.Y.*,
　　457 F.3d 274 (3d Cir. 2006) ................................................................. 2

*Federal Reserve Bank of St. Louis v. Metrocentre Improvement District*,
　　492 F. Supp. 353 (E.D. Ark. 1980) ..................................................... 3

*Financial Oversight & Management Board for P.R. v. Aurelius Inv., LLC*,
　　140 S. Ct. 1649 (2020) ................................................................. 40, 41

*First Bank & Trust Company v. Board of Governors of the Federal Reserve System*,
　　605 F. Supp. 555 (E.D. Ky. 1984) ................................................. 24, 25

*Fleming v. USDA*,
　　987 F.3d 1093 (D.C. Cir. 2021) ......................................................... 44

*Forest Grove School District v. T.A.*,
　　557 U.S. 230 (2009) ............................................................................ 20

*Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*,
　　861 F.3d 1052 (10th Cir. 2017) ........................................... 22, 23, 24, 25

*Fox News Network, LLC v. Board of Governors of the Federal Reserve System*,
    601 F.3d 158 (2d Cir. 2010)................................................................. 11

*Fraternal Order of Police v. Board of Governors of Federal Reserve System*,
    391 F. Supp. 2d 1 (D.D.C. 2005) .................................................. 26, 44

*Free Enterprise Fund v. PCAOB*,
    561 U.S. 477 (2010)................................................................. 42, 43

*Golan v. Holder*,
    565 U.S. 302 (2012)................................................................. 40

*Greater Buffalo Press, Inc. v. Federal Reserve Bank of N.Y.*,
    866 F.2d 38 (2d Cir. 1989)................................................................. 24

*Heckler v. Chaney*,
    470 U.S. 821 (1985)................................................................. 13

*Henderson v. Shinseki*,
    562 U.S. 428 (2011)................................................................. 22

*Hi-Tech Bed Systems Corporation v. GSA*,
    No. 11-cv-293, 2012 WL 12871622 (D. Wyo. Mar. 8, 2012) ......................................... 13

*Hyde Park Company v. Santa Fe City Council*,
    226 F.3d 1207 (10th Cir. 2000) .................................................. 33, 34

*In re A Community Voice*,
    878 F.3d 779 (9th Cir. 2017) .................................................. 13, 15

*In re Cooper Tire & Rubber Co.*,
    568 F.3d 1180 (10th Cir. 2009) .................................................. 16

*In re Stewart*,
    175 F.3d 796 (10th Cir. 1999) .................................................. 34

*Intercollegiate Broadcasting System Inc. v. Copyright Royalty Board*,
    684 F.3d 1332 (D.C. Cir. 2012).................................................. 44, 45

*Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*,
    713 F.2d 1221 (6th Cir. 1983) .................................................. 21, 25

*Kane County Utah v. Salazar*,
    562 F.3d 1077 (10th Cir. 2009) .................................................. 12, 28, 29

*Kingdomware Technologies, Inc. v. United States,*
    579 U.S. 162 (2016) ........................................................................ 17

*Labojewski v. Gonzales,*
    407 F.3d 814 (7th Cir. 2005) ......................................................... 14

*Landgraf v. USI Film Products,*
    511 U.S. 244 (1994) ........................................................................ 14

*Laufer v. Looper,*
    22 F.4th 871 (10th Cir. 2022) ....................................................... 26

*Lewis v. United States,*
    680 F.2d 1239 (9th Cir. 1982) ......................................................... 4

*Loughrin v. United States,*
    573 U.S. 351 (2014) ........................................................................ 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................ 31

*M'Culloch v. Maryland,*
    17 U.S. 316 (1819) ......................................................................... 42

*Martin Marietta Materials, Inc. v. Kansas Department of Transportation,*
    810 F.3d 1161 (10th Cir. 2016) ..................................................... 33

*Martin v. O'Rourke,*
    891 F.3d 1338 (Fed. Cir. 2018) ................................................ 15, 34

*McKinley v. Board of Governors of the Federal Reserve System,*
    647 F.3d 331 (D.C. Cir. 2011) ................................................... 2, 4

*Melcher v. FOMC,*
    644 F. Supp. 510 (D.D.C. 1986), *aff'd*, 836 F.2d 561 (D.C. Cir. 1987) ............................ 4

*Medtronic, Inc. v. Mirowski Family Ventures, LLC,*
    571 U.S. 191 (2014) ........................................................................ 10

*Merit Management Group, LP v. FTI Consulting, Inc.,*
    138 S. Ct. 883 (2018) ...................................................................... 21

*Mistretta v. United States,*
    488 U.S. 361 (1989) .................................................................. 37, 38

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018) .......................................................................... 38

*National Mining Association v. DOL*,
    292 F.3d 849 (D.C. Cir. 2002) ............................................................. 14

*NLRB v. Noel Canning*,
    573 U.S. 513 (2014) .............................................................................. 45

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) .......................................................................... 12, 13

*Phillips v. United States*,
    201 F. 259 (8th Cir. 1912) .................................................................... 36

*Qwest Communications International, Inc. v. FCC*,
    398 F.3d 1222 (10th Cir. 2005) ............................................................ 15

*Raichle v. Federal Reserve Bank of N.Y.*,
    34 F.2d 910 (2d Cir. 1929) ................................................................... 19

*Rios v. Ziglar*,
    398 F.3d 1201 (10th Cir. 2005) ............................................................ 12

*Robertson v. Colvin*,
    564 F. App'x 931 (10th Cir. 2014) ...................................................... 28

*Sanofi-Aventis U.S., LLC v. DHHS*,
    570 F. Supp. 3d 129 (D.N.J. 2021) ...................................................... 45

*Schutz v. Thorne*,
    415 F.3d 1128 (10th Cir. 2005) ...................................................... 31, 32

*Scott v. Federal Reserve Bank of Kansas City*,
    406 F.3d 532 (8th Cir. 2005) .................................................................. 3

*Sierra Club v. Thomas*,
    828 F.2d 783 (D.C. Cir. 1987) ............................................................. 15

*Smith v. Illinois Bell Telephone Co.*,
    270 U.S. 587 (1926) .............................................................................. 34

*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009) ............................................................ 26

J.A.98

*Southern Utah Wilderness Alliance v. Palma*,
   707 F.3d 1143 (10th Cir. 2013) ............................................................ 29, 30

*Telecommunications Research & Action Center v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ...................................................................... 16

*Texas Department of Housing and Community Affairs v. Inclusive Communities Project*,
   576 U.S. 519 (2015)...................................................................................... 20

*Thacker v. Tennessee Valley Authority*,
   139 S. Ct. 1435 (2019).................................................................................. 40

*TNB USA, Inc. v. Federal Reserve Bank of N.Y.*,
   No. 1:18-cv-7978, 2020 WL 1445806 (S.D.N.Y. Mar. 25, 2020).................. 17

*Town of Castle Rock, Colo. v. Gonzales*,
   545 U.S. 748 (2005)...................................................................................... 33

*U.S. National Bank of N.Y. v. First National Bank of Little Rock*,
   79 F. 296 (8th Cir. 1897) .............................................................................. 36

*U.S. Shipping Board Emergency Fleet Corporation v. Western Union Telegraph Co.*,
   275 U.S. 415 (1928)........................................................................................ 3

*U.S. Women's Chamber of Commerce v. SBA*,
   No. 1:04-cv-01889, 2005 WL 3244182 (D.D.C. Nov. 30, 2005)............... 15, 16

*United States v. Arthrex, Inc.*,
   141 S. Ct. 1970 (2021)........................................................................ 43, 44, 45

*United States v. Brown*,
   348 F.3d 1200 (10th Cir. 2003) .................................................................... 38

*United States v. Hartwell*,
   73 U.S. 385 (1867)........................................................................................ 43

*United States v. Roberts*,
   185 F.3d 1125 (10th Cir. 1999) .................................................................... 38

*United States ex. rel. McLennan v. Wilbur*,
   283 U.S. 414 (1931).................................................................................. 12, 16

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)........................................................................................ 32

J.A.99

*Utah v. Babbitt,*
    137 F.3d 1193 (10th Cir. 1998) ........................................ 27

*Utah v. DOI,*
    210 F.3d 1193 (10th Cir. 2000) ........................................ 32

*Utah Association of Counties v. Bush,*
    455 F.3d 1094 (10th Cir. 2006) ........................................ 27

*Vietnam Veterans of America v. Shinseki,*
    599 F.3d 654 (D.C. Cir. 2010) ................................... 34, 35

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ........................................................ 34

*Whitman v. American Trucking Associations, Inc.,*
    531 U.S. 457 (2001) ................................................... 22, 38

*Wyoming v. Zinke,*
    871 F.3d 1133 (10th Cir. 2017) ................................... 29, 30

**Constitutional Provisions**

U.S. Const. art. I, § 1 ............................................................. 37, 38

U.S. Const. art. III, § 2, cl. 1 ....................................................... 27

U.S. Const. art. III, § 2, cl. 2 ................................................... 39, 42

**Statutes**

5 U.S.C. § 551 *et seq.* ............................................................. 11, 12

5 U.S.C. § 701(a)(2) ..................................................................... 13

5 U.S.C. § 706(1) ........................................................... 12, 13, 15, 16

5 U.S.C. § 7513(a) ....................................................................... 43

8 U.S.C. § 1184(p)(6) ................................................................... 16

12 U.S.C. § 2 ............................................................................. 43

12 U.S.C. §§ 241-52 ..................................................................... 21

12 U.S.C. § 241 ........................................................................... 2

12 U.S.C. § 248(a)(1) ................................................................................................ 2

12 U.S.C. § 248a .................................................................................... 20, 24, 33

12 U.S.C. § 248a(a) ............................................................................................ 22

12 U.S.C. § 248a(b) ........................................................................................... 20

12 U.S.C. § 248a(c) ................................................................................ 20, 21, 22

12 U.S.C. § 248a(c)(2) .............................................................. 21, 22, 23, 24, 25

12 U.S.C. § 248a(d) ........................................................................................... 44

12 U.S.C. § 248(f) ................................................................................... 2, 36, 43

12 U.S.C. § 248(h) ............................................................................................... 2

12 U.S.C. § 248(i) ......................................................................................... 2, 44

12 U.S.C. § 248(j) ........................................................................... 2, 5, 36, 44

12 U.S.C. § 248(k) ....................................................................... 2, 3, 11, 44

12 U.S.C. § 263(c) .............................................................................................. 39

12 U.S.C. § 302 .......................................................................................... 35, 36

12 U.S.C. § 305 ................................................................................................... 2

12 U.S.C. § 307 ................................................................................................. 44

12 U.S.C. §§ 341-61 ................................................................................ 3, 11, 21

12 U.S.C. § 341 .................................................................... 3, 35, 36, 42

12 U.S.C. § 341(5) ............................................................................................... 2

12 U.S.C. § 342 .................................................... 4, 5, 10, 11, 17, 18, 20, 21, 22, 33, 38

12 U.S.C. § 343 ................................................................................................... 5

12 U.S.C. § 347 ................................................................................................... 5

12 U.S.C. § 347b(a) ........................................................................................... 11

J.A.101

12 U.S.C. § 347c-d ............................................................................................ 5

12 U.S.C. § 348 ............................................................................................... 19

12 U.S.C. § 355(1) ............................................................................................ 5

12 U.S.C. §§ 391-95 .......................................................................................... 3

12 U.S.C. § 391 ............................................................................................... 17

12 U.S.C. § 411 ............................................................................................... 40

12 U.S.C. § 485 ................................................................................................. 2

12 U.S.C. § 601 ............................................................................................... 10

12 U.S.C. § 1813(z) .......................................................................................... 11

12 U.S.C. § 4801 ............................................................................................. 11

12 U.S.C. § 4807 ....................................................................................... 10, 11

12 U.S.C. § 5322(a)(1) .................................................................................... 39

12 U.S.C. § 5465 ............................................................................................... 5

18 U.S.C. § 208(a) ........................................................................................... 35

28 U.S.C. § 1361 ............................................................................................. 12

Act of Feb. 25, 1791, Pub. L. No. 1-10, §§ 1, 4, 7(I), 7(XV), 10, 11, 12,
    1 Stat. 191, 192-93, 95-96 ................................................................. 40, 41, 42

Act of Apr. 10, 1816, Pub. L. No. 14-1, §§ 1, 8, 15,
    3 Stat. 266-70, 269, 274 ............................................................................. 42

Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.* ........................................ 2, 45
    Pub. L. No. 63-43, 38 Stat. 251 .............................................................. 38, 39
    Pub. L. No. 63-43, §§ 3, 4, 10, 38 Stat. 251, 253-57, 260-61 ........................... 45
    Act of June 21, 1917, Pub. L. No. 65-25, §§ 2-3, 40 Stat. 232 .......................... 45
    Act of Sept. 26, 1918, Pub. L. No. 65-218, § 1, 40 Stat. 967-68 ....................... 45
    Act of June 3, 1922, Pub. L. No. 67-230, 42 Stat. 620-21 ................................ 45
    Act of June 26, 1930, Pub. L. No. 71-434, 46 Stat. 814, 815-16 ........................ 45
    Act of July 1, 1966, Pub. L. No. 89-485, § 13(e), 80 Stat. 236, 243 ................... 45
    Act of Nov. 16, 1977, Pub. L. No. 95-188, §§ 202, 204, 91 Stat. 1387-88 ............ 45

J.A.102

Banking Act of 1933, Pub. L. No. 73-66, §§ 3(b), 6(a)-(b), 48 Stat. 162,
    163-64, 166-67 .......................................................................................... 45
Banking Act of 1935, Pub. L. No. 74-305, §§ 201, 203(b)-(c), 49 Stat. 684, 703-05 ...... 45
Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203,
    §§ 1107, 1108(a)(1), 124 Stat. 1376, 2126 ............................................... 45
Terrorism Risk Insurance Program Reauthorization Act of 2015, Pub L. No. 114-1,
    § 109, 129 Stat. 3, 9 ................................................................................ 45

Monetary Control Act of 1980, Pub. L. No. 96-221,
    94 Stat. 132 (Oct. 1, 1980) ...................................................................... 20

Special Purpose Depository Institution Act, Pub. L. No. 74 (2019),
    Wyo. Stat. § 13-12-101 (amended 2020) .................................................. 8
    Wyo. Stat. § 13-12-115 ............................................................................ 31
    Wyo. Stat. § 13-12-116 ............................................................................ 31

**Legislative Materials**

126 Cong. Rec. 6250 (1980)
    (Conf. Rep.) ....................................................................................... 23, 24

H.R. Report No. 69, 63d Cong., 1st Sess. 16 (1913) ........................................... 3, 4, 20

**Regulatory Materials**

Avanti Financial Group, Inc., Comment Letter on Proposed Guidelines for Evaluating
    Account and Services Requests, Board of Governors of the Federal Reserve System
    (July 12, 2021) https://www.federalreserve.gov/SECRS/2021/July/20210721/OP-
    1747/OP-1747_071221_138730_420086027347_1.pdf.................................... 14

Guidelines for Evaluating Account and Services Requests (Proposed),
    86 Fed. Reg. 25,865 (May 11, 2021) ......................................................... 6, 14

Guidelines for Evaluating Account and Service Requests (Supplemental Notice),
    87 Fed. Reg. 12,957 (Mar. 8, 2022)........................................................ 6, 7, 14

Guidelines for Evaluating Account and Service Requests (Final),
    (Aug. 15, 2022) https://www.federalreserve.gov/newsevents/pressreleases
    /files/other20220815a1.pdf ........................................................ 7, 8, 14, 26, 39

**Rules**

Fed. R. Civ. P. 8(a)(1)................................................................................... 27

**Other Authorities**

Alexander Hamilton, Secretary of Treasury, Report to House of Representatives,
 *Report on a National Bank* (Dec. 14, 1790), *in* Legislative and Documentary History
 of the Bank of the United States, 29 (Clark & Hall eds., 1832),
 https://fraser.stlouisfed.org/title/legislative-documentary-history-bank-
 united-states-3632 ................................................................................................. 41

*Appointment & Removal of Federal Reserve Bank Members of the FOMC*,
 2019 WL 11594453, (Op. O.L.C. Oct. 23, 2019) ............................................. 43

Board of Governors of the Federal Reserve System,
 *DIRECTORS – Appointment of Reserve Bank Presidents and First Vice President*,
 (Feb. 9, 2017) https://www.federalreserve.gov/aboutthefed/directors/PDF/
 appointment-of-reserve-bank-presidents-first-vice-presidents.pdf .......................... 36, 37

Edmund Randolph, Attorney General of the United States, *Opinion to President
 Washington* (Feb. 12, 1791), *in* Legislative and Documentary History of the Bank
 of the United States, 86 (Clark & Hall eds., 1832), https://fraser.stlouisfed.org/title/
 legislative-documentary-history-bank-united-states-3632 ............................... 42

Federal Reserve Bank Operating Circular 1, Account Relationships
 (August 16, 2021), https://www.frbservices.org/binaries/content/assets/crsocms/
 resources/rules-regulations/081621-operating-circular-1.pdf ...................................... 5, 18

Federal Reserve Bank Operating Circular 5, Electronic Access
 (June 30, 2021), https://www.frbservices.org/binaries/content/assets/crsocms/
 resources/rules-regulations/063021-operating-circular-5.pdf........................................... 26

Federal Reserve Bank Operating Circular 6, Funds Transfers Through the Fedwire®
 Funds Service (March 8, 2021), https://www.frbservices.org/binaries/content/
 assets/crsocms/resources/rules-regulations/030821-operating-circular-6.pdf ................. 26

Federal Reserve Board, Reserve Maintenance Manual,
 https://www.federalreserve.gov/monetarypolicy/reserve-maintenance-
 manual-account-structure.htm (last updated Nov. 20, 2019) .............................................. 4

The Federal Reserve System, *The Fed Explained*, (11th ed. August 2021),
 https://www.federalreserve.gov/aboutthefed/files/the-fed-explained.pdf#page=8 ........ 2, 3

Financial Stability Board, *Assessment of Risks to Financial Stability from Crypto-assets*
 (Feb. 16, 2022) https://www.fsb.org/wp-content/uploads/P160222.pdf........................... 9

Janet Yellen, Chair, *The Federal Reserve's Monetary Policy Toolkit: Past, Present,
 and Future* (Aug. 26, 2016), https://www.federalreserve.gov/newsevents/
 speech/yellen20160826a.htm................................................................................... 5, 6

**J.A.104**

*On the Grant of Charter of 1816* (Mar. 6, 1816), *in* Legislative and Documentary
    History of the Bank of the United States, 666 (Clark & Hall eds., 1832),
    https://fraser.stlouisfed.org/title/legislative-documentary-history-bank-
    united-states-3632 ............................................................................................... 42

President's Working Group on Financial Markets, Federal Deposit Insurance Corporation,
    and Office of the Comptroller of Currency, *Report on Stablecoins* (Nov. 2021)
    https://home.treasury.gov/system/files/136/StableCoinReport_Nov1_508.pdf ................ 9

Stephen K. Halpert, *The Separation of Banking and Commerce Reconsidered*,
    13 J. Corp. L. 481 (1988) ................................................................................................. 41

## INTRODUCTION

This case involves a single entity's demand to dictate the timing and substance of decisions in the complex and rapidly developing areas of novel bank charters and cryptocurrency.  Although lack of care and diligence in such decisions would hinder sound development in this sphere and pose substantial risks to the U.S. financial system—and the request at issue in this action remains in active process—plaintiff elevates its short-term interests above all else to claim an entitlement to its preferred outcome on its preferred timeline. Plaintiff's demands are non-justiciable, unsupported by the law, and must be rejected.

Plaintiff, Custodia Bank, Inc., alleges an "unlawful delay in processing an application critical to Custodia's business" of cryptocurrency banking.  Compl. ¶¶ 2, 29.  It contends that, "[f]or more than 19 months, [d]efendants have refused to act upon Custodia's application for a master account with the Federal Reserve," *id.*, and that "the statute commands" that it be granted access to a master account.  *Id.* ¶ 3.  But as shown below, no statute "commands" the Board of Governors of the Federal Reserve System ("Board") to direct the Federal Reserve Bank of Kansas City ("FRBKC") to open a master account for plaintiff (or for any other particular entity), or for FRBKC to do so, much less on the specific timetable demanded by plaintiff.

Notably, the Board, a federal agency, does not exercise deposit-taking functions and would not be an appropriate defendant even if plaintiff had any cognizable claims (and it does not).  Rather, the relevant provision of the Federal Reserve Act gives the twelve regional Federal Reserve Banks, including FRBKC, discretion in accepting deposits, the essential activity of a master account, and therefore discretion over whether to issue—or, in appropriate circumstances, revoke—such accounts.  This is consistent with the role of Reserve Banks, which by design perform many functions traditionally associated with banking, such as deposit taking and directly

1

lending to institutions, and reflects Congress's careful construction of the Federal Reserve System.  Although the Board publishes guidance and exercises general supervisory authority over Reserve Banks, it has not been tasked with deciding individual master account requests.  Rather, Congress chose to vest that authority directly in the Reserve Banks and imposed no fixed timeline by which such decisions must be made.  Where, as here, such decisions are precedent-setting and involve complex and novel institutions and financial instruments that may present systemic financial risks, Reserve Banks appropriately treat them with the care and diligence that prudence dictates and the law permits.  The Court should dismiss this action as a result.

## BACKGROUND

### A.      The Federal Reserve

The Federal Reserve System, the nation's central bank, was established in 1913 by the Federal Reserve Act, 12 U.S.C. § 221 *et seq.* ("FRA").  It consists of the Board, the Federal Open Market Committee ("FOMC"), and twelve Federal Reserve Banks that serve financial institutions in their respective districts.  *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 277 (3d Cir. 2006).  The Board is a federal agency whose members are appointed by the President and confirmed by the Senate.  12 U.S.C. § 241.  Beyond exercising rulemaking authority, which may not be delegated, 12 U.S.C. §§ 248(i), (k), and carrying out other functions mandated by Congress, the Board exercises general supervisory authority over Reserve Banks.  *See generally* 12 U.S.C. §§ 248(a)(1), (f), (h)-(j); 305; 341(5); 485; *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 333 (D.C. Cir. 2011) (describing Board and Reserve Banks).

By contrast, the twelve regional Reserve Banks serve as the System's "operating arms," carrying out a variety of functions subject to the general supervisory authority of the Board.  *See The Federal Reserve System, The Fed Explained* 8, 10-11 (11th ed. Aug. 2021) (the "*Fed*

*Explained*").[1]  Reserve Banks perform certain functions vested in them by statute, 12 U.S.C.

§§ 341-61, 391-95, and other functions by Board delegation.  12 U.S.C. § 248(k).  Most notably

for present purposes, Reserve Banks are expressly authorized by statute (rather than Board

delegation) to provide various services in their capacity as "bankers' banks."  *Fed. Reserve Bank*

*of St. Louis v. Metrocentre Improvement Dist.*, 492 F. Supp. 353, 355 (E.D. Ark. 1980) (quoting

H.R. Report No. 69, 63d Cong., 1st Sess. 16 (1913) ("1913 House Report")); *see generally* 12

U.S.C. §§ 341-61.  They operate a wire transfer system, clear checks for depository institutions,

distribute currency and coin, extend mainly short-term credit to depository institutions, and serve

as depositories for banks within their districts, among other functions.  *Fed Explained* at 10-11.

Each Reserve Bank is a separate corporation with its own board of directors that appoints

officers to run the Bank's day-to-day operations.  *See* 12 U.S.C. § 341 (Reserve Banks are "a

body corporate").[2]  Reserve Banks can make contracts, adopt bylaws, and sue and be sued.  *Id.*

§ 341 (enumerating powers of Federal Reserve Banks).  The courts have repeatedly made clear

that Reserve Banks are instrumentalities[3] separate from federal agencies, including the Board.

*See, e.g.*, *U.S. Shipping Bd. Emergency Fleet Corp. v. W. Union Tel. Co.*, 275 U.S. 415, 425-26

(1928) ("Instrumentalities like . . . the federal reserve banks, in which there are private interests,

are not departments of the Government.  They are private corporations in which the Government

has an interest."); *Scott v. Fed. Reserve Bank of Kan. City*, 406 F.3d 532, 535 (8th Cir. 2005) ("it

is possible to be a fiscal agent or instrumentality of the government without being a federal

---

[1] https://www.federalreserve.gov/aboutthefed/files/the-fed-explained.pdf#page=8.

[2] Reserve Bank presidents and first vice-presidents are appointed subject to Board approval. 12 U.S.C. § 341(fifth).

[3] *See* Compl. ¶ 112 ("[t]he Kansas City Fed is a federal instrumentalit[y] that acts as a fiscal agent[] of the United States" (quotations omitted)).

3

agency"); *see also Melcher v. FOMC*, 644 F. Supp. 510, 521 (D.D.C. 1986), *aff'd*, 836 F.2d 561

(D.C. Cir. 1987) ("Ever since the birth of this nation, the regulation of the nation's monetary

systems has been governed by a subtle and conscious balance of public and private elements.").

While exercising "significant supervisory authority over Reserve Banks," *McKinley*,

647 F.3d at 333, the Board does not direct their day-to-day operations.  *See Lewis v. United

States*, 680 F.2d 1239, 1241 (9th Cir. 1982) ("[i]t is evident from the legislative history of the

Federal Reserve Act that Congress did not intend to give the federal government direction over

the daily operation of the Reserve Banks") (citing 1913 House Report at 18-19).  Indeed, the

legislative history of the FRA provides that while the Board "shall retain sufficient power over

the reserve banks to enable it to exercise direct authority when necessary," the Board "shall in no

way attempt to carry on . . . the routine operations and banking which require detailed knowledge

of local and individual credit and which determine the funds of the community in any given

instance."  1913 House Report at 18-19.

### B.    Master Accounts and the Board's Guidelines Regarding Access

A master account is a deposit account maintained by a depository institution at its

regional Reserve Bank.  It "is both a record of financial transactions that reflects the financial

rights and obligations of an account holder and of the Reserve Bank with respect to each other,

and the place where opening and closing balances are determined."[4]  As deposit accounts, master

accounts are governed by FRA § 13, 12 U.S.C. § 342, which provides that "[a]ny Federal reserve

bank may receive from any of its member banks, or other depository institutions . . . deposits of

current funds in lawful money . . . ."  *Id.*

The Board, a federal agency and not a bank, has neither the ability nor statutory authority

---

[4] Reserve Maintenance Manual, https://www.federalreserve.gov/monetarypolicy/reserve-maintenance-manual-account-structure.htm (last updated Nov. 20, 2019).

to receive deposits or carry out activities such as check clearing, wire transfers, automated

clearing house ("ACH") services, currency and coin services, and other services appurtenant to

the business of banking that Congress has vested in the Reserve Banks. *See, e.g.*, 12 U.S.C.

§§ 342, 343, 347, 347c, 347d, 355(1). In supervising and overseeing the activities of the Reserve

Banks, *see generally id.* § 248(j), the Board may issue guidance with regard to opening master

accounts and providing services, but the Board itself has no ability to open a master account and

with one limited exception[5] does not grant or deny a particular financial institution's request to

open any account. Rather, Congress has vested that authority in the Reserve Banks.

Operating Circulars, issued by Reserve Banks and subject to approval by the Board, and

other guidance make clear that a master account creates a contractual relationship between a

requesting depository institution and the Reserve Bank to which the Board is not a party. For

example, Operating Circular 1 ("OC-1")[6] "set[s] forth the terms under which a Financial

Institution may open, maintain and terminate" a master account with a Reserve Bank, *id.* at 1,

and does not list the Board as a party to the account relationship or state that Board approval is

necessary. Access to master accounts is a matter of substantial concern to the Board and entire

Federal Reserve System, however, as they provide a gateway to the Federal Reserve's balance

sheet—which is used to promote financial stability and conduct monetary policy—as well as its

payment systems. *See generally* Janet L. Yellen, *The Federal Reserve's Monetary Policy*

*Toolkit: Past, Present, and Future* (Aug. 26, 2016) (explaining how ability "to pay interest on

banks' reserve balances" held in Reserve Bank accounts is "essential" to the "expanded toolkit"

---

[5] The only instance where the Board can make account access determinations concerns opening a master account for Designated Financial Market Utilities. *See* 12 U.S.C. § 5465.

[6] Operating Circular 1, Account Relationships (Aug. 16, 2021), https://www.frbservices.org/binaries/content/assets/crsocms/resources/rules-regulations/081621-operating-circular-1.pdf.

of monetary policy and can "allow the Federal Reserve to control short-term interest rates").[7]

Consistent with its general supervisory function, and in light of the rapidly changing landscape of novel charters, digital assets, and increased efforts to obtain access to the Federal Reserve balance sheet and payment systems, in May 2021 the Board requested comments on proposed Account Access Guidelines for use by Reserve Banks in evaluating requests for master accounts and access to Reserve Bank services. Proposed Guidelines for Evaluating Account and Services Requests, 86 Fed. Reg. 25,865, 25,866 (May 11, 2021) ("Proposed Guidelines"). Apart from furthering policy goals of "ensuring the safety and soundness of the banking system," "effectively implementing monetary policy," "promoting financial stability," "protecting consumers," and "promoting a safe, efficient, inclusive, and innovative payment system," the Proposed Guidelines sought to "ensure that Reserve Banks evaluate a transparent and consistent set of factors when reviewing requests for accounts and services." *Id.* To this end, the Board requested comment on six principles for use by Reserve Banks in evaluating requests against the backdrop of a rapidly evolving payments landscape. *Id.* at 25,866-70. It noted that review of access requests by federally insured institutions (which are also federally regulated and supervised) would usually be "fairly straightforward," but requests from other institutions might "require more extensive due diligence." *Id.* at 25,866. Importantly, the Proposed Guidelines would not disturb the Reserve Banks' "discretionary authority to grant or deny requests." *Id.*

On March 8, 2022, the Board issued a supplemental notice and request for comment updating the Proposed Guidelines. Guidelines for Evaluating Account and Service Requests, 87 Fed. Reg. 12,957 (Mar. 8, 2022) ("Supplemental Notice"). The Supplemental Notice requested comment on a proposal to incorporate a three-tiered review framework into the previously

---

[7] https://www.federalreserve.gov/newsevents/speech/yellen20160826a.htm.

proposed six principles in order "to provide additional clarity on the level of due diligence and scrutiny to be applied to requests for Reserve Bank accounts and services." *Id*. at 12,957.  Under the proposed three-tiered review framework: 1) federally insured institutions would be subject to a more streamlined review because they "are already subject to a standard, strict, and comprehensive set of federal banking regulations"; 2) eligible institutions that are not federally insured, but subjected to federal prudential supervision, would receive an "intermediate" level of review; and 3) eligible institutions that are neither federally insured nor subject to federal prudential supervision would be subject to the strictest level of review. *Id.* at 12,962.[8]

On August 15, 2022, the Board issued its final Guidelines for Evaluating Account and Service Requests ("Account Access Guidelines" or "Guidelines").[9]  Section 1 of the Guidelines adopted the six principles for use by Reserve Banks in evaluating requests for master accounts and access to Reserve Bank services.  *Id*. at 30, 34-46.  In Section 2, the three-tiered framework, the Board made changes in response to comments to provide "more comparable treatment between non-federally insured institutions chartered under state and federal law."  *Id.* at 8.  The Board revised Tier 2 to include a narrower set of uninsured national banks and "emphasize[d] that the review of institutions' requests will be completed on a case-by-case, risk-focused basis within each of the three tiers."  *Id*.  The Board also recognized that "Reserve Banks may take comparatively longer to review access requests by institutions that engage in novel activities for which authorities are still developing appropriate supervisory and regulatory frameworks."  *Id*.

The Guidelines highlighted the range of comments received on the proposal.  While some commenters recommended "provid[ing] an easier path for institutions, particularly those with

---

[8] FRBKC has indicated an intention to consider any guidelines issued by the Board when evaluating plaintiff's request for a master account.  *See* Compl. ¶ 49.

[9] https://www.federalreserve.gov/newsevents/pressreleases/files/other20220815a1.pdf.

novel charters, to successfully gain access to accounts and services," *id*. at 10, others argued that institutions with novel charters should face greater scrutiny.  These commenters noted "that institutions with novel charters are not subject to the same strict and costly regulations or to the same rigorous reviews as apply to traditional institutions."  *Id*. at 11.  In issuing the Guidelines, the Board carefully considered all comments and sought to balance "responsible innovation and prudent risk management," *id.*, while providing Reserve Banks "a consistent, comprehensive, and transparent framework . . . to analyze access requests on a case-by-case . . . basis reflecting the institution's full risk profile."  *Id.* at 12.  As stated in the Proposed Guidelines and reiterated in the final Guidelines, "Reserve Banks . . . retain the discretion to deny a request for access to accounts and services where, in the Reserve Bank's assessment, granting access to the institution would pose risks that cannot be sufficiently mitigated."  *Id.*

## C.    Custodia's Novel Structure and Risks

In 2019 Wyoming created a new type of state charter called a Special Purpose Depository Institution ("SPDI").  According to plaintiff, SPDIs are "designed to provide a bridge connecting digital asset companies to the U.S. payment systems" and "to provide custody services for digital assets such as Bitcoin."  Compl. ¶¶ 28-29; Wyo. Stat. § 13-12-101, *et seq*.  Wyoming amended the SPDI Act in 2020, and the state's Division of Banking promulgated regulations in 2020 and adopted amendments to the regulations in 2021.[10]  SPDIs are generally prohibited from making loans with customer deposits of fiat currency and are not required to obtain insurance from the Federal Deposit Insurance Corporation ("FDIC").  *Id.*

Plaintiff received an SPDI charter in October 2020.  Compl. ¶ 10.  It seeks to "provide real-time settlement finality for U.S. dollar payments in digital asset transactions" (*e.g.*, those

---

[10] *See* https://wyomingbankingdivision.wyo.gov/banks-and-trust-companies/special-purpose-depository-institutions (last visited Aug. 16, 2022).

involving Bitcoin and similar cryptocurrencies) and plans to offer other services "including a tokenized, programmable U.S. dollar called Avit" (a "stablecoin"[11] variation).[12]  Plaintiff acknowledges that it is a novel banking institution, Compl. ¶ 114, and the careful assessment of potential risks from the interaction of novel cryptocurrency activities and the financial system is the subject of substantial government efforts.  *See, e.g.*, President's Working Group on Financial Markets, Federal Deposit Insurance Corporation, and Office of the Comptroller of Currency, *Report on Stablecoins* (Nov. 2021) (addressing risks to financial stability of certain digital assets including through destabilizing runs and disruptions in payment systems);[13] Financial Stability Board, *Assessment of Risks to Financial Stability from Crypto-assets* (Feb. 16, 2022).[14]

Plaintiff filed a request for a master account with FRBKC on October 29, 2020, and later initiated the separate process to become a member bank of the Federal Reserve System in 2021. Compl. ¶¶ 34, 39.  Based on their respective statutory responsibilities, FRBKC is responsible for determining plaintiff's account request and the Board is responsible for deciding its membership application.  Both have dedicated extensive time and resources to the consideration of these requests through interactive processes in which supplemental information has and is being sought from plaintiff.  *See id.* ¶ 37 (noting regular contact through letters, calls, emails, and meetings).  These are no simple tasks, as the risks presented are real, complex, and substantial.

---

[11] "Stablecoins are digital assets that are designed to maintain a stable value relative to a national currency or other reference assets."  President's Working Group on Financial Markets, FDIC, and Office of the Comptroller of the Currency, *Report on Stablecoins*, at 1 (Nov. 2021), https://home.treasury.gov/system/files/136/StableCoinReport_Nov1_508.pdf.

[12] *See* https://custodiabank.com/; https://custodiabank.com/about/ (last visited Aug. 16, 2022) (describing Avit as a "digital dollar" that will "settle with the same mechanics of a cryptocurrency but leverage established commercial laws in a structure that addresses the accounting, tax and legal problems of existing stablecoins").

[13] https://home.treasury.gov/system/files/136/StableCoinReport_Nov1_508.pdf

[14] https://www.fsb.org/wp-content/uploads/P160222.pdf

**ARGUMENT**

I.  **Custodia Has No Entitlement to a Master Account Decision on Its Preferred Timeline and Claims I (APA) and II (Mandamus Act) Fail As a Result**

Because there is no statutory obligation for FRBKC to render a decision on plaintiff's request for a master account within a specified timeframe or for the Board to order FRBKC to do so, no Board action has been unlawfully withheld or unreasonably delayed.[15]

A.  **No Statutory Timeline Applies to Plaintiff's Master Account Request**

Plaintiff erroneously contends that a one-year statutory deadline applies to its master account request to FRBKC.  *See* Compl. ¶¶ 6, 46, 74, 87, 107 (citing 12 U.S.C. § 4807).  But Section 4807's text makes clear that it only applies to applications made to the Board, the FDIC, or the Comptroller of the Currency.  It thus does not encompass Custodia's submission at issue, which was necessarily made to FRBKC rather than the Board.

Section 4807 states:

(a) In general: Each *Federal banking agency* shall take final action on any application *to the agency* before the end of the 1-year period beginning on the date on which a completed application is *received by the agency*.

(b) Waiver by applicant authorized: Any person *submitting* an application *to a Federal banking agency* may waive the applicability of subsection (a) with respect to such application at any time.

12 U.S.C. § 4807 (emphases added).[16]  The provision repeatedly makes clear that it only concerns applications to a "Federal banking agency"—by its own terms it sets limits on final

---

[15] Plaintiff's Claim IV, which seeks a declaration that defendants "must decide Custodia's master account application within a reasonable period of time," Compl. ¶ 109, is not an independent cause of action and fails for the various reasons stated herein.  *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) ("[T]he . . . Declaratory Judgment Act [is] only procedural, leaving substantive rights unchanged." (citations omitted)).

[16] Section 4807 applies to a range of matters under the Board's authority that, in contrast to section 342, require application *with the Board*.  *See, e.g.*, 12 U.S.C. § 601 (national banks "may file application *with the Board* . . . for permission to" engage in certain international banking activities (emphasis added)).

10

**J.A.115**

action by a *Federal banking agency* on applications *to the agency* that are *received by the agency*, unless the person *submitting* the application *to a Federal banking agency* waives this requirement.  12 U.S.C. § 4801 states that "'Federal banking agencies' [has] the same meaning[] as in section 1813 of this title," and section 1813, in turn, does not refer to Reserve Banks, stating instead that "'Federal banking agency' means the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, or the [FDIC]."  12 U.S.C. § 1813(z).  There is no provision for submitting master account requests to the Board, as the FRA places this within the powers of *Reserve Banks*, and plaintiff in fact alleges that "Custodia submitted its application to the Federal Reserve Bank responsible for its district, the Kansas City Fed."  Compl. ¶ 18.

Submission to FRBKC of a request for a master account is not made "to the" Board. "The Board and the Federal Reserve Banks are 'two expressly independent statutory entities.'" *Costello v. Grundon*, 651 F.3d 614, 632 (7th Cir. 2011) (citation omitted).  Although the Board may delegate certain of its own functions to Reserve Banks, 12 U.S.C. § 248(k), it has not done so here.  *See* Compl. ¶ 66 ("no such delegation exists").  Nor could it, as the power to open master accounts is not a Board function; instead, it is provided for by 12 U.S.C. § 342, which appears in subchapter IX of the FRA, 12 U.S.C. §§ 341-61, entitled "Powers of the Federal Reserve Banks."  *Cf. Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 158, 161 (2d Cir. 2010) ("The power to make loans is explicitly granted by statute only to the Federal Reserve Banks themselves.  12 U.S.C. § 347b(a). . . . [T]he Federal Reserve Banks did not issue each loan on 'behalf of the Board,' or under the 'delegated authority' of the Board.").  Because section 4807 only applies to applications to the Board, it is not implicated by plaintiff's master account request, which was not and could not have been made to the Board.

### B.    Plaintiff Fails to State a Claim for Unreasonable Delay

Plaintiff's claims for unreasonable delay under the Administrative Procedure Act, 5

U.S.C. § 551 *et seq.* ("APA"), and Mandamus Act, 28 U.S.C. § 1361, must be dismissed for failure to state a claim.  *See* Compl. ¶¶ 61-81 (Count I); *id.* ¶¶ 82-91 (Count II).[17]  The APA allows courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1)), and the Mandamus Act permits courts to "compel . . . the United States or any agency thereof to perform a duty owed to the plaintiff."  Plaintiff claims the Board has "unlawfully withheld or unreasonably delayed" action on its master account request, *id.* ¶ 80 (quoting 5 U.S.C. § 706(1)), and that it is entitled to a writ of mandamus compelling such action, *id.* ¶ 91.  But it fails to meet threshold APA and mandamus standards and those claims must be dismissed.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* action that it is *required to take*."  *Kane Cnty. Utah v. Salazar*, 562 F.3d 1077, 1086 (10th Cir. 2009) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*")).  Likewise, a writ of mandamus is available "only where the duty to be performed is ministerial and the obligation to act peremptory and clearly defined."  *United States ex. rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931); *see also Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005).  As the Court held in *SUWA,* "the only agency action that can be compelled . . . is action that is legally required [such as] the failure to promulgate a [mandatory] rule or take some decision by a statutory deadline."  542 U.S. at 63.  "[C]hallenges to discretionary matters cannot be compelled."  *Audubon of Kansas, Inc. v. DOI*, 568 F. Supp. 3d 1167, 1181 (D. Kan. 2021) (quoting *SUWA*, 542 U.S. at 64-65).

As discussed elsewhere herein, *see infra* Part II, Congress did not task the Board with final decisionmaking authority in this matter.  As a result, the Board has no statutory duty to act on plaintiff's request *to FRBKC* for a master account, nor is there any obligation for the Board to

---

[17] There is no question that the Board, a federal agency, is generally subject to the APA.

impose a specific timeline on Reserve Banks statutorily vested with responsibility for such decisions.  In the absence of any statute or regulation requiring discrete action by the Board by a specified deadline in relation to plaintiff's request for a master account, plaintiff cannot state a claim for unreasonable delay under the APA or for mandamus.  *See SUWA*, 542 U.S. at 63 n.1 ("Of course § 706(1) also authorizes courts to 'compel agency action . . . unreasonably delayed'—but a delay cannot be unreasonable with respect to action that is not required."); *In re A Cmty. Voice*, 878 F.3d 779, 784 (9th Cir. 2017) ("an agency cannot unreasonably delay that which it is not required to do"); *Hi-Tech Bed Sys. Corp. v. GSA*, No. 11-cv-293, 2012 WL 12871622, at *7 (D. Wyo. Mar. 8, 2012) ("Having failed to cite a discrete, mandatory duty, [plaintiff] has similarly failed to identify any agency action unlawfully withheld or unreasonably delayed." (quotation omitted)) (dismissing complaint for mandamus and APA relief).

Although plaintiff contends that "it is incumbent upon the Board to exercise its supervisory authority" over the Reserve Bank to ensure master account decisions are "fair and timely," Compl. ¶ 72, the Board has no mandatory duty to enforce a particular timeline against Reserve Banks considering master account requests, and whether to enforce such requirements against a supervised entity is a matter committed to agency discretion by law.  *See* 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821 (1985); *Hi-Tech Bed Sys.*, 2012 WL 12871622, at *5-7 (failure to identify "the violation of any mandatory duty" or "any statute, regulation, or policy that requires" agency to enforce a particular standard fails to overcome the "presumption of unreviewability" of such matters and the "Court lacks jurisdiction to hear [such] claims").[18]

---

[18] As articulated in the Guidelines: "Reserve Banks face challenges in balancing the desire by requestors for a specific timeline with Reserve Banks' need to perform thorough reviews of requestors with novel, complex, or high-risk business plans, along with requestors that are subject to novel regulatory regimes.  Setting a specific timeline could result in an increased

And, even if any requirement for the Board to facilitate master account decisionmaking by Reserve Banks existed, the Board has done so by using notice and comment proceedings to issue Guidelines related to account access, which plaintiff has supported in its submitted comments.[19]  The Board published the original notice on May 11, 2021, and a supplemental notice on March 8, 2022, 86 Fed. Reg. 25,865; 87 Fed. Reg. 12,957, on both occasions seeking public comment.[20]  Given the complex issues presented by novel charters, the time taken to date to address these issues is far from unreasonable.  *See* 86 Fed. Reg. at 25,866-67 (explaining that requests for master accounts from novel charter types occurred, until recently, on an exceptional

---

number of premature or unnecessary denials of access requests in cases where the specified timeline does not allow the Reserve Banks sufficient time to understand the intricacies of the requesting institutions' risk profiles.  Accordingly, the Board has not adopted a timeline expectation . . . ."  Guidelines at 15.

[19] *See* https://www.federalreserve.gov/SECRS/2021/July/20210721/OP-1747/OP-1747_071221 _138730_420086027347_1.pdf, at 1 n.1, 4 (plaintiff's statement, submitted under its former name Avanti, "support[ing] the principles of clarity and predictability" in the Board's Proposed Guidelines and "embrac[ing] the level of supervision and oversight the Federal Reserve should choose to apply to state-chartered, non-FDIC insured" institutions like plaintiff).

[20] Any assertion by plaintiff that the Account Access Guidelines cannot apply to its request, *see* Compl. ¶¶ 53, 79, is incorrect.  "In the administrative context, a rule is retroactive if it takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." *Nat'l Mining Ass'n v. DOL*, 292 F.3d 849, 859 (D.C. Cir. 2002) (quotations omitted).  Because the Guidelines clarify the factors that Reserve Banks should consider when evaluating requests for account access—without compelling a particular outcome—the rule is not "impermissibly retroactive."  *See id.* at 860; Guidelines at 31 ("decisions regarding individual access requests remain at the discretion of the individual Reserve Banks").  Moreover, since retroactivity concerns apply only to "completed" acts, *Landgraf v. USI Film Products*, 511 U.S. 244, 269-70 (1994), any such concern is misplaced here because plaintiff's efforts to obtain account access are not yet complete and the mere act of seeking account access does not create a vested right in securing access.  *See* Guidelines at 31 ("[I]t is important to make clear that legal eligibility does not bestow a right to obtain an account and services.");  *Labojewski v. Gonzales*, 407 F.3d 814, 822 (7th Cir. 2005) (finding that filing a visa application, which was a prerequisite for applying for adjustment of status, "is not the sort of 'completed transaction' that gives rise to vested rights or settled expectations for purposes of the presumption against retroactivity");  *CS-360, LLC v. SBA*, 20 F. Supp. 3d 104, 110-11 (D.D.C. 2013) (applying recently promulgated procedural rule after holding that plaintiff's application was "plainly not closed" because the agency could, *inter alia*, engage in additional factfinding).

14

basis, and determinations of such requests have "potential to set a precedent that could affect the Federal Reserve's ability to achieve its policy goals now or in the future").

Indeed, depending on the matter before an agency, courts "have noted that delays between three to five years are often not unreasonable." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (dismissing unreasonable delay claim related to the adjudication of a visa application that had been filed five years prior and pending in administrative processing for 29 months at the time petitioner brought suit); *see also In re A Cmty. Voice*, 878 F.3d at 787 (distinguishing an unreasonable eight-year delay from Ninth Circuit precedents "where the delay has been only months or a few years"). Particularly where the decision at issue involves complex issues and policy questions—such as the important issues of risk to the U.S. financial system, financial stability, and implementation of monetary policy at issue here—the law is clear that agency deliberations that may reasonably span a period of years do not amount to unreasonable delay. *See, e.g.*, *Martin v. O'Rourke*, 891 F.3d 1338, 1345-46 (Fed. Cir. 2018) ("[i]t is reasonable that more complex and substantive agency actions take longer"); *Sierra Club v. Thomas*, 828 F.2d 783, 799 (D.C. Cir. 1987) (finding that the passage of almost three years, with "little more than one year since the close of the public comment period," could "hardly be considered unreasonable" "[g]iven the complexity of the issues facing EPA and the highly controversial nature of the proposal"), *abrogated in part on other grounds by statute*; *cf. Qwest Commc'ns Int'l, Inc. v. FCC*, 398 F.3d 1222, 1238-39 (10th Cir. 2005) (rejecting petitioners' request under 5 U.S.C. § 706(1) for agency implementation of a statutorily compliant pricing scheme on any "arbitrary deadline" given FCC's "complex" task).

Additionally, where—as here—the interests involved are "purely economic in nature, delay impacting these interests is . . . entitled to greater indulgence." *U.S. Women's Chamber of*

J.A.120

*Com. v. SBA*, No. 1:04-cv-01889, 2005 WL 3244182, at \*17 (D.D.C. Nov. 30, 2005); *cf.*
*Telecommc'ns Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("delays that might
be reasonable in the sphere of economic regulation are less tolerable when human health and
welfare are at stake").

And, given the discretion in master account issuance discussed below, FRBKC is
similarly not bound by timing restrictions imposed by the APA or Mandamus Act even if it were
covered by the statutes (an issue the Court need not reach given that the passage of time on
plaintiff's master account request does not violate their requirements).  *See Barrios Garcia v.*
*DHS*, 25 F.4th 430, 450-51, 455 (6th Cir. 2022) (holding that "federal courts cannot invoke
5 U.S.C. § 706(1) to force USCIS to speed up an unduly delayed prewaitlist work-authorization
adjudication, which is a nonmandatory agency action under 8 U.S.C. § 1184(p)(6)" because the
statute's "use of 'may' . . . render[ed] discretionary the decision to issue work authorizations");
*McLennan*, 283 U.S. at 420 (for a writ of mandamus, "[t]he law must not only authorize the
demanded action, but require it; [and] the duty to act must be clear and undisputable").  Given
that plaintiff's master account request remains under active consideration by FRBKC, the
Board's issuance of guidance in this area has proceeded appropriately, and no mandatory
deadline applies, plaintiff cannot state a claim based on its disagreement over the passage of
time.  As a result, mandamus—a "drastic remedy" that "is to be invoked only in extraordinary
circumstances," *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1186 (10th Cir. 2009)
(quotation omitted)—is not appropriate here.  And because the relief plaintiff seeks in this action
is limited to remedying its allegations of undue delay, *see* Compl. at 42 ("Request for Relief"),
the Court need proceed no further to dispose of the action.

II.    **Account Decisions are Discretionary and Committed by Statute to Reserve Banks**

    A.    **Plaintiff Has No Statutory Entitlement to a Reserve Bank Account**

Contrary to plaintiff's allegations, the FRA does not require that FRBKC grant its request for a master account.[21]  A master account is a deposit account maintained at a Reserve Bank.  As such, master accounts are governed by FRA § 13, 12 U.S.C. § 342, which expressly gives Reserve Banks discretion over whether to open such accounts.  The relevant language of the statute includes the permissive "may," providing that "[a]ny Federal reserve bank *may* receive [deposits] from any of its member banks, or other depository institutions . . . ."  *Id.*

Courts have long held that such language denotes a discretionary power.  *See, e.g., Farmers and Merchants Bank v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 662 (1923) (section 342's provision that a Reserve Bank "may receive" deposits from a member bank of checks for collection "imposes upon reserve banks [no] obligation to receive checks for collection.  The act merely confers authority to do so.").[22]  Indeed, Congress's use of the word "may" in a statute is ordinarily construed as "permissive, rather than mandatory."  *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1186 (10th Cir. 2008); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) ("The word 'may,'

---

[21] As noted above, the Court need not reach the entitlement question because, even if there were any general right to a master account—and there is not—there would be no such entitlement on plaintiff's demanded timeline.  *See TNB USA, Inc. v. Fed. Reserve Bank of N.Y.*, No. 1:18-cv-7978, 2020 WL 1445806, at *8 (S.D.N.Y. Mar. 25, 2020) ("[Plaintiff] argues that it is entitled by statute to a master account, but even assuming that is correct," it has not identified "a right for the [Reserve Bank] to provide that account within a certain time period.  [Plaintiff] does not object, after all, to the fact that there is an application process for the accounts, and implicit in the acceptance of that process is the understanding that a decision will not be immediate.").

[22] A different provision of the FRA, by contrast, *requires* Reserve Banks to accept deposits of moneys from the general fund of the U.S. Treasury: such funds "may, *upon the direction of the Secretary of the Treasury*, be deposited in Federal reserve banks, which banks, when required by the Secretary of the Treasury, *shall* act as fiscal agents of the United States . . . ."  12 U.S.C. § 391 (emphases added).

when used in a statute, usually implies some degree of discretion." (quotation omitted)).  Here, the use of "may" in section 342 makes clear Congress's intent that Reserve Banks have authority to accept deposits or open deposit accounts but are not required to do so.

Consistent with this understanding, the Board and Reserve Banks have long viewed such deposit-taking authority as discretionary.  OC-1, which sets the terms and conditions applicable to master accounts, expressly provides that "[e]ach Master Account Agreement" executed by a financial institution "is subject to approval by the Financial Institution's Administrative Reserve Bank," OC-1 at ¶ 2.6, and that "[a] Reserve Bank may terminate a Master Account Agreement . . . or any Other Account Agreement at any time."  *Id.* at ¶ 2.10.[23]  Indeed, OC-1 ¶ 2.11 refers to the first paragraph of FRA § 13, 12 U.S.C. § 342, underscoring the longstanding interpretation of section 342 as governing account relationships such as creation of a master account.

This reading is consistent with judicial interpretations of section 342.  Addressing section 342 shortly after passage of the FRA in 1913, the Supreme Court in *Farmers and Merchants* rejected an argument similar to plaintiff's that "the Federal Reserve Bank of Richmond is obliged to receive for collection any check upon any North Carolina state bank."  262 U.S. at 662.  Interpreting section 342's language that, "solely for the purposes of collection," a Reserve Bank "may receive from any nonmember bank . . . deposits of checks . . . payable upon presentation," the Court held that "neither § 13, nor any other provision of the Federal Reserve Act, imposes upon reserve banks any obligation to receive checks for collection."  *Id*.  The Court noted that Congress had from time to time enlarged the "the class of cases" to which the Reserve Banks' authority under section 342 applied, *id.*, "[b]ut in each amendment, as in § 13, the words

---

[23] https://www.frbservices.org/binaries/content/assets/crsocms/resources/rules-regulations/
081621-operating-circular-1.pdf.

used were 'may receive'—words of authorization merely." *Id.* (quoting FRA).

The Court further observed that the FRA "appears to have been drawn with great care. Throughout the act the distinction is clearly made between what the Board and the Reserve Banks 'shall' do and what they 'may' do." *Id.* at 663 (quoting FRA).  The Court listed some twenty-one provisions of the original FRA where both "may" and "shall" were used, and another seven where only "shall" was used, to illustrate the precision Congress took in distinguishing actions the Board and Reserve Banks were allowed to take from those they were required to take. *Id.* at 663 n.6; *see also Billings Utility Co. v. Advisory Comm. Bd. of Governors*, 135 F.2d 108, 111 (8th Cir. 1943) (listing provisions of the FRA in which Congress distinguished what a Reserve Bank "may" do from what it "must" do, and holding that the "may" provisions "seem so clearly to be permissive as to make any other construction of them by interpretation or construction judicial legislation"); *Raichle v. Fed. Reserve Bank of N.Y.*, 34 F.2d 910, 914 (2d Cir. 1929) (interpreting the phrase "any Federal Reserve Bank *may* . . . discount notes, drafts, and bills of exchange," in FRA § 13A, 12 U.S.C. § 348 (emphasis added), and holding that "it is important to note that [the Federal Reserve Bank] is not under any compulsion to rediscount eligible paper, for the words of the act in respect to rediscounting are wholly permissive").

The unambiguous text of Section 13, as interpreted by the Supreme Court and courts of appeals shortly after passage of the FRA, thus makes clear that Reserve Banks are *authorized* to accept deposits—and therefore open deposit accounts—but are not *required* to do so.  Because opening a master account is intrinsically a deposit-taking activity, plaintiff's claims that FRBKC is required to open a master account for it must be rejected based on the statute's language.

While the text of the FRA alone should end any inquiry into whether the FRA gives the FRBKC discretion to deny master account requests, legislative history lends additional support

19

to the conclusion that it does.  The House Report on the FRA made clear that the permissive

"may receive" language in Section 13 "authorized" Federal Reserve Banks "to receive current

deposits from their [member banks]."  1913 House Report at 48 (1913).  The legislative history

nowhere suggests the receipt of deposits is in any way mandatory.  Notably, when Congress later

amended Section 13 as part of the Monetary Control Act of 1980 ("MCA"), Pub. L. No. 96-221,

94 Stat. 132, 139, to permit Reserve Banks to receive deposits from "other depository

institutions," in addition to member banks, it did *not* alter the permissive "may receive"

language.  Congress can therefore be presumed to have "accepted and ratified" the Supreme

Court's reading of "may receive" in Section 13 as discretionary.  *Texas Dep't of Housing and*

*Cmty. Affairs v. Inclusive Cmtys. Project*, 576 U.S. 519, 536 (2015); *see also Forest Grove*

*School Dist. v. T.A.*, 557 U.S. 230, 243 n.11 (2009) ("When Congress amended [the Act] without

altering the text [at issue], it implicitly adopted [the Court's] construction of the statute.").

Plaintiff's contrary claim that it has an unambiguous right to open a master account at

FRBKC under the provisions of FRA § 11A, 12 U.S.C. § 248a(c), lacks merit.  *See* Compl.

¶¶ 27, 57.  Section 11A is directed at the Board, not the Reserve Banks, and merely requires the

Board to adopt "pricing principles" for certain services offered by Reserve Banks to depository

institutions and publish a schedule of fees for priced services.  *See* 12 U.S.C. § 248a ("the Board

shall publish for public comment a set of pricing principles . . . and a . . . schedule of fees . . . for

Federal Reserve Bank services").  The language plaintiff relies on in section 248a(c) is merely

described as a principle on which "[t]he schedule of fees prescribed pursuant to this section shall

be based."  It contains no command to open a master account and, indeed, makes no reference to

master accounts, which are deposit accounts subject to section 342 and not "services" covered by

section 248a.  *See* 12 U.S.C. § 248a(b) (listing services to be covered by fee schedule).  Nothing

in that section requires that any particular institution receive a master account, or that each and every institution is entitled to access Reserve Bank services.  Rather, it requires only that nonmember institutions that do obtain Reserve Bank services pay the same amount for those services as member banks.  *See* 12 U.S.C. § 248a(c)(2) ("The schedule of fees . . . shall be based on the following principles: . . . All Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and such services shall be priced at the same fee schedule applicable to member banks."); *Jet Courier Servs., Inc. v. Fed. Reserve Bank of Atlanta*, 713 F.2d 1221, 1227 (6th Cir. 1983) (holding that the MCA provided that nonmember banks could receive Reserve Bank services "at the same fees charged member banks").  Its title, "Pricing of Services," further indicates that it concerns *principles for setting prices* rather than availability of services.  *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) (section headings "supply cues as to what Congress intended" (quotation omitted)).

Indeed, section 248a(c)(2) expressly provides that "nonmembers shall be subject to any other terms, including a requirement of balances sufficient for clearing purposes, that the Board may determine are applicable to member banks," 12 U.S.C. § 248a(c)(2), again making clear that section 248a(c) is directed at the Board, not Reserve Banks.  And by empowering the Board to impose other conditions on access to Reserve Bank services, provided that the same terms are applicable to member and nonmember banks alike, this language necessarily means that there is no absolute right to obtain master accounts or access services, as plaintiff incorrectly claims.

Moreover, section 248a(c) appears in subchapter II of the FRA, 12 U.S.C. §§ 241-52, titled "Board of Governors of the Federal Reserve System," which generally sets out powers and duties of the Board, and requires the Board, not Reserve Banks, to publish a fee schedule.  By contrast, FRA § 13, 12 U.S.C. § 342, appears in subchapter IX, 12 U.S.C. §§ 341-61, titled

"Powers and Duties of Federal Reserve Banks." *Cf., e.g.*, *Henderson v. Shinseki*, 562 U.S. 428, 439 (2011) (placement of time limit in subchapter titled "Procedure" and not subchapter titled "Organization and Jurisdiction," indicates that Congress regarded it as nonjurisdictional). It makes no sense—as plaintiff alleges—that Congress meant section 248a(c), enacted in 1980 as part of a section titled "Pricing of Services," which sets out a "pricing principle[]" used to establish a "Schedule of fees," 12 U.S.C. § 248a(a), (c), to overturn the discretion permitted the Reserve Banks since 1913 to accept deposits by requiring them to open master accounts for all comers regardless of risk or other considerations. "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

### B. Plaintiff's Reliance on Contrary Dicta is Misplaced and Any Statutory Ambiguity Should Be Resolved in Favor of the Board's Reasonable Interpretation

The split decision in *Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*, 861 F.3d 1052 (10th Cir. 2017), does not compel a different result, as plaintiff suggests. Compl. ¶¶ 133, 142. In that case, the Tenth Circuit vacated a district court order dismissing with prejudice a Colorado-chartered credit union's complaint seeking a master account, and remanded with instructions to dismiss without prejudice. 861 F.3d at 1053. Writing for himself, one panel member argued that section 342 "does not affect [a depository's institution's] entitlement to a master account" because it "does not address which institutions can access Federal Reserve services; that subject is governed instead by § 248a(c)(2)." *Fourth Corner*, 861 F.3d at 1074 (opinion of Judge Bacharach). Notably, however, this conclusion was reached in an entirely different context—one that did not implicate the complex issues presented by the novel charter and business model at issue here—and its statutory construction cannot withstand scrutiny. It is also contrary to the Board's published interpretation of the relevant FRA provisions in the

22

J.A.127

subsequent Account Access Guidelines, and should not be adopted by the Court as a result.

As an initial matter, as discussed above, the pricing principle on which the opinion relies provides that Reserve Bank services "shall be available to nonmember depository institutions" and "shall be priced at the same fee schedule applicable to member banks," but does not provide that all services necessarily must be available to *all* nonmember banks.  12 U.S.C. § 248a(c)(2). Congress's exclusion of the second "all" is significant, as it signals Congress's intent that services covered by the fee schedule be available to member and nonmember banks alike—as they generally are—but not that each and every nonmember bank, *even those that may present a variety of unmitigated risks*, are entitled to all services.  While Judge Bacharach's opinion noted that the use of "all" before the "nonmember depository institutions" was not grammatically necessary to indicate that all such banks were intended to receive access to the services on the schedule, 861 F.3d at 1070, it overlooked the fact that Congress chose to use "all" elsewhere in the *same sentence* to express universal applicability but omitted it in this context.  But "when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning."  *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation omitted).

Moreover, the opinion incorrectly concluded that section 248a(c)(2)'s legislative history indicates that "Congress hoped to . . . establish open access to Federal Reserve services."  861 F.3d at 1072.  In support, it cites a single sentence from a conference report stating that a House amendment includes a provision to "open access to [Federal Reserve] services to all depository institutions on the same terms and conditions as member banks."  *Id.* at 1072-73 (citing 126 Cong. Rec. 6250 (1980)).  The full excerpt of the report, however, like the statute, states:

> *Pricing of Federal Reserve Services*. The House amendment includes a provision
> for the Federal Reserve to price services provided by the Federal Reserve Banks

23

and open access to these services to all depository institutions on the same terms
and conditions as member banks.

126 Cong. Rec. 6250 (1980).  This history provides no more support for plaintiff's
position than the statute; it again labels section 248a as being about "pricing" rather than
access to a deposit account, and while it mentions "open[ing] access to all depository
institutions," it does so in the same breath with "on the same terms and conditions" as
member banks, rather than including a standalone reference to a mandatory grant of
access.  And it expresses no intent to overrule the prior statutory authority giving Reserve
Banks discretion in the matter.  "The proper function of legislative history is to solve, and
not create, ambiguity," *Edwards v. Valdez*, 789 F.2d 1477, 1482 n.6 (10th Cir. 1986), and
the cited history does not aid plaintiff here.

Indeed, contrary to Judge Bacharach's conclusion, the legislative history shows that
Congress enacted the MCA, including section 248a(c)(2), out of concern over the Federal
Reserve's growing lack of control over the money supply, and its ramifications for the national
economy, not in order to "entitle[] every nonmember depository institution to Federal Reserve
services."  861 F.3d  at 1073.  Prior to enactment of the MCA, Reserve Banks provided services,
such as check collection and wire transfers, free of charge to member banks in order to
compensate them "for the costs associated with having to maintain non-interest bearing reserves
with the Federal Reserve," which nonmember banks were not required to do.  *See Greater
Buffalo Press, Inc. v. Fed. Reserve Bank of N.Y.*, 866 F.2d 38, 40 (2d Cir. 1989).  During the
1970s, the Federal Reserve experienced a decline in membership due to "the growing loss of
profits occasioned by [the] Federal Reserve's relatively high percentage of required reserves."
*First Bank & Trust Co. v. Bd. of Governors of the Fed. Reserve Sys.*, 605 F. Supp. 555, 558 (E.D.
Ky. 1984).  This decline in membership "did not escape Congress' attention . . . [which] in 1979,

24

[introduced] at least five bills . . . aimed at correcting the Federal Reserve's growing lack of control over the money supply." *Id.* Congress's efforts "to curb the rising tide of bank flight from the [Federal] Reserve System" resulted in enactment of the MCA in 1980. *Id*. at 565.

The MCA was enacted largely to restore Federal Reserve control over the money supply and monetary policy—of which master account discretion plays an important role—by requiring nonmember as well as member banks to maintain reserves (balances) at Federal Reserve Banks (*i.e.*, on the Federal Reserve balance sheet). In exchange, the MCA provided that nonmember banks would be able to receive Federal Reserve Bank services "at the same fees charged member banks." *Jet Courier Servs.*, 713 F.2d at 1227. While Judge Bacharach cited portions of the legislative history indicating that Congress supported "wide access to Federal Reserve services for nonmember banks," 861 F.3d at 1072 (quoting House report), there is no indication that Congress intended the MCA as a *mandatory* right of access to Reserve Bank services to *all* nonmember banks regardless of circumstances or risks to the central bank or financial system that access to the Federal Reserve balance sheet and payment systems may present.

Finally, the Board's interpretation of the statute is no mere "litigating position," 861 F.3d at 1071, but a view it has long taken, culminating in the issuance of the Guidelines. To the extent section 248a(c)(2) is ambiguous, the Board's interpretation as the agency primarily responsible for implementing the FRA is entitled to deference so long as it is reasonable. *See Bd. of Gov. of the Fed. Reserve Sys. v. First Lincolnwood*, 439 U.S. 234, 251 (1978) ("courts should defer to an agency's construction of its own statutory mandate, particularly when that construction accords with well-established congressional goals") (citations omitted)). Thus, the clear position articulated in the Board's Guidelines—issued after notice and comment—that decisions to grant a master account or make services available to any particular depository

25

J.A.130

institution are within the discretion of Reserve Banks,[24] is entitled to deference.  *See, e.g.,*

*Fraternal Ord. of Police v. Bd. of Governors of Fed. Reserve Sys.*, 391 F. Supp. 2d 1, 5-6

(D.D.C. 2005) (granting deference to Board's construction of FRA provisions relating to Reserve

Banks).

## III.   Plaintiff's Allegations Fail to Establish Justiciability

Plaintiff bears the burden of establishing this Court's jurisdiction, but its complaint fails

to sufficiently allege a present injury, thus depriving this Court of jurisdiction on both standing

and ripeness grounds.[25]  Claims V through VIII, which relate to the final decision that will be

made on plaintiff's request, are not justiciable given that a final decision may be favorable to

plaintiff.  And plaintiff's failure to allege legal authorization to do business, *see* Part III.C., *infra*,

---

[24] *See, e.g.*, Guidelines at 2 (Guidelines are "to be used *by Reserve Banks in evaluating requests* for accounts and services" (emphasis added)); *id.* at 31 ("decisions regarding individual access requests remain at the discretion of the individual Reserve Banks"); *id.* at 46 ("a Reserve Bank has the authority to grant or deny an access request by an institution in any of the three proposed tiers").  Consistent with this reading, the guidance issued through Operating Circulars has long made clear that Reserve Banks may deny or terminate services for a variety of reasons.  For example, Reserve Banks "immediately may terminate" a depository institution's electronic connection "if the Reserve Bank, in its sole discretion, determines that continued use of the Electronic Connection poses a risk to the Reserve Bank or others."  Operating Circular 5, Electronic Access ¶ 7.1 (June 30, 2021), https://www.frbservices.org/binaries/content/assets/ crsocms/resources/rules-regulations/063021-operating-circular-5.pdf.  Similarly, a "Reserve Bank may terminate or restrict Fedwire Funds Service access . . . at any time without notice if the Reserve Bank has reason to believe that" use "does not comply with any Reserve Bank agreement . . . [or] otherwise poses a risk to a Reserve Bank."  Operating Circular 6, Funds Transfers Through the Fedwire Funds Service, ¶ 9.1, https://www.frbservices.org/ content/assets/crsocms/resources/rules-regulations/030821-operating-circular-6.pdf.

[25] The Board is making only a facial attack on justiciability in this motion, pointing out that the allegations in plaintiff's complaint are insufficient to establish justiciability (rather than contesting the facts alleged by plaintiff in support of jurisdiction).  *See Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022) ("A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction.  A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction.").  "A facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency [which] is a question of law."  *Smith v. United States*, 561 F.3d 1090, 1097-98 (10th Cir. 2009) (citations omitted).

renders even its claims purporting to seek redress for alleged delay (Claims I-IV) premature.[26]

### A.     Plaintiff's Constitutional Claims Are Non-Justiciable

Plaintiff's constitutional attacks on purported flaws in the manner that a *final decision* might be made on its request, which focus on claims of potential participation by allegedly biased officials whom plaintiff contends were not properly appointed (*see* Claims V-VI), are untethered to present injury and should be dismissed on standing and ripeness grounds.

This Court is constitutionally limited to resolving "Cases" or "Controversies," U.S. Const. art. III § 2 cl. 1, and both standing and ripeness implicate this requirement.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  Because plaintiff challenges alleged acts or omissions of the Board, an Executive Branch agency, as well as the constitutionality of an Act of Congress, "the necessity of a case or controversy is of particular import" to protect "against unrestrained exercise of the power of judicial review over the conduct of the executive or congressional branches . . . ."  *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998).  Plaintiff bears the burden of establishing standing and ripeness, *id.*; *Coal. for Sustainable Res. v. U.S. Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001); Fed. R. Civ. P. 8(a)(1), but fails to do so.

To establish standing, a plaintiff must demonstrate "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen*, 468 U.S. at 751.  "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone."  *Id.* at 754 (1984)*.  Injury is assessed as of the time suit is brought, *Utah Ass'n of Cntys. v. Bush*, 455 F.3d 1094, 1099, 1101 (10th Cir. 2006), and "threatened injury must be certainly impending"—"allegations of possible future injury are not sufficient."

---

[26] To the extent Claim III includes a claim for delay, *see* Compl. ¶¶ 98-99, it is not justiciable for the same reason as the statutory timeliness claims.  And to the extent it concerns the standards under which a final decision will be made, it is not justiciable for the same reason as plaintiff's other constitutional claims.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).  Causation requires injury to be "fairly traceable" to the challenged conduct without resort to speculation.  *Id.* at 411.

But plaintiff makes no allegations showing how matters such as the particular official(s) it contends will make a future final decision on its request cause it present injury.[27]  Assuming for the sake of argument that plaintiff's account request could be decided by allegedly biased officials who were not properly appointed, *id.* ¶¶ 14, 123, it has not alleged any facts indicating how a final decision to be made *in the future* has caused present injury.  It thus fails to make the critical showing of standing *at the time it filed suit*, and if it ultimately receives a favorable decision from FRBKC, these purported infirmities will have caused it no injury.  *See Kane Cnty. Utah*, 562 F.3d at 1090 (no standing where "the District's Application remains pending before the BLM. . . .  In other words, it is entirely possible that the BLM will grant the District's Application, in which event the District will have suffered no injury."); *see also Robertson v. Colvin*, 564 F. App'x 931, 934 (10th Cir. 2014) (no standing to seek judicial review of favorable agency decision); *Utah Ass'n of Cntys.*, 455 F.3d at 1100-01 (no standing at time of filing where statute and proclamation challenged on constitutional grounds did not cause immediate injury).[28]

---

[27] Nor does plaintiff demonstrate at more than a speculative level that these purported defects relating to the manner in which a final decision might be reached would cause it imminent harm in the form of a "certainly impending" adverse decision.  For example, plaintiff complains about the purported lack of "discernable standards" and "intelligible principles" for review of its request, Compl. ¶ 95, but since *clearer* standards and principles would not necessarily be favorable to plaintiff, it is unclear how a *lack* of such criteria hurts its chances of ultimately securing an account.  And plaintiff's entire bias claim rests on speculative assertions about who might (or might not) participate, *e.g.*, Compl. ¶ 115 (contending that plaintiff's due process rights would be violated "*[t]o the extent* that the Kansas City Fed's Board of Directors finally adjudicates" its request (emphasis added)), as does its Appointments Clause claim.

[28] Plaintiff also fails to demonstrate redressability, which requires showing that "it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury."  *Utah Ass'n of Cntys.*, 455 F.3d at 1099-100.  It would be beyond speculative to assume that a grant of relief in this case, *i.e.*, an order that a decision be made within 30 days, *see* Compl. at 42, would redress any injury arising from the alleged constitutional violations.

28

For similar reasons, plaintiff fails to establish the ripeness of its constitutional claims.  *Cf.*
*S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1157 (10th Cir. 2013) ("The doctrines of
standing and ripeness substantially overlap in many cases." (citation omitted)).  Ripeness
doctrine "prevents courts 'from entangling themselves in abstract disagreements over
administrative policies,' while also 'protect[ing] the agencies from judicial interference until an
administrative decision has been formalized and its effects felt in a concrete way by the
challenging parties.'"  *Id.* at 1158 (citations omitted).  Ripeness depends on the 'fitness of the
issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'"
*Id.* (citation omitted).  Plaintiff cannot carry its burden as to either factor.

First, plaintiff's allegations fail to demonstrate fitness, which depends on such factors as
"whether the issue is a purely legal one, whether the agency decision in dispute was final, . . .
whether further factual development would significantly advance [the court's] ability to deal
with the legal issues presented," and whether adjudication would be a "wasteful use of limited
judicial resources."  *Wyoming v. Zinke*, 871 F.3d 1133, 1141-42 (10th Cir. 2017) (cleaned up).
Here, there is no final decision; adjudicating the propriety of how such a decision might be made
is thus a "wasteful use of limited judicial resources," *id.*, because the very process plaintiff
attacks may lead to a favorable decision, leaving it uninjured.  *Cf. Kane Cnty*, 562 F.3d at 1090
("[I]t is entirely possible that the BLM will grant the District's Application, in which event the
District will have suffered no injury."); *see also Farrell-Cooper Mining Co. v. DOI*, 728 F.3d
1229, 1238 (10th Cir. 2013) ("Farrell–Cooper is currently seeking review of the disputed
OSMRE actions before the Department of the Interior.  If that review vacates the contested
OSMRE actions, Farrell–Cooper would receive the relief it seeks.").  And given that some of
plaintiff's claims rest on factual speculation about who will make a final decision, the complaint

is not "purely legal" for ripeness purposes because "not *all* the issues are purely legal." *Coal. for Sustainable Res.*, 259 F.3d at 1250 (emphasis added) (issue not fit for review although a ruling for one side would be dispositive since a contrary ruling would not dispose of related issues dependent on subsequent events).  Plaintiff thus fails to meet the fitness test.

Nor can plaintiff demonstrate relevant hardship from withholding judicial review of its claims about the way in which a *final* decision will be made.  First, plaintiff has not shown that purported constitutional infirmities in *how* a final decision may be made presently impact it.  Second, relevant hardships for ripeness purposes must be "direct and immediate," *Zinke*, 871 F.3d at 1143.  Thus, when the consequences of withholding immediate review are attenuated, courts have found claims unripe.  *E.g.*, *Palma*, 707 F.3d at 1160 (no hardship where intervening events must occur before a challenged action directly impacts the plaintiff).  Here, the claims concerning the way in which a final decision might be made seek relief relating to *how* that decision will be made, rather than its outcome.  Even favorable relief would not guarantee the grant of an account to plaintiff, and thus withholding such relief does not directly impact plaintiff.  Accordingly, its constitutional claims relating to a final decision are not ripe.

### B.    Plaintiff's Contingent Claims Are Non-Justiciable

Claims VII and VIII all but concede non-justiciability, as they acknowledge that they are implicated "only in the event that Defendants deny Custodia's application for a master account."  Compl. ¶¶ 130, 139.  For the reasons discussed above, particularly the fact that no adverse decision has been made and that a final decision could be favorable to plaintiff, these Claims must be dismissed for lack of standing and ripeness.  These claims would in any event fail on the merits.  Claim VII, which seeks mandamus to compel the grant of an account, fails because the decision to grant an account is discretionary.  *See* Part II.B., *supra*.  Since plaintiff has no right to an account, Claim VIII, which seeks relief under the Declaratory Judgment Act, also fails, as the

30

Act provides no additional grounds for relief.  *See* n.15, *supra*.

### C.   Plaintiff's Timeliness Claims Are Non-Justiciable

Plaintiff's remaining claims are also non-justiciable because its conclusory allegations do not establish that it has suffered an injury from any purported delay that immediate action by defendants would redress.  They are thus insufficient to establish its standing to seek prospective relief for alleged delay and the ripeness of its claims for adjudication.

Importantly, plaintiff does not allege that it has commenced business, or even that it legally *can* commence business as a depository institution, such that it suffers any injury from a present lack of a master account.  It alleges that "[i]t was granted a Special Purpose Depository Institution bank charter by the Wyoming State Banking Board in October of 2020."  *Id.* ¶ 8.  It further alleges that it must launch its business by partnering with a bank that has a master account, which it contends is a "costlier" and less desirable alternative.  Compl. ¶ 8.  But plaintiff has failed to allege that it is legally authorized to commence business.

The SPDI statute under which plaintiff alleges it was chartered states that the charter granted by the State Banking Board is, on its own, insufficient to allow an SPDI to commence business.  Rather, "[i]f an application is approved and a charter granted by the board under W.S. 13-12-115, the special purpose depository institution shall not commence business before receiving a certificate of authority to operate from the commissioner."  Wyo. Stat. § 13-12-116.  Plaintiff has not alleged that it has received or will receive such a certificate from the Commissioner despite conceding that no master account is required.  Compl. ¶ 8.

Without such allegations, plaintiff has not carried its burden of establishing standing or ripeness over its claims related to delay.  *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be" do not establish justiciability); *Schutz v. Thorne*, 415

**J.A.136**

F.3d 1128, 1133 (10th Cir. 2005) ("Whether a plaintiff has standing to sue turns on the precise allegations of the parties seeking relief." (cleaned up)).  Courts have routinely dismissed claims on standing or ripeness grounds where the effects of a defendant's actions would only be felt once a necessary license or permit were issued, or other action taken by a different governmental entity.  Thus, in *Schutz*, a plaintiff's assertions that he had applied for a hunting license—but not "that he actually drew" a license—were insufficient to give him standing to challenge a requirement that he retain a guide when hunting.  415 F.3d at 1135; *id.* n.2.  Similarly, a challenge to the Department of Interior's approval of a lease to a firm intending to store nuclear waste was deemed unripe because the firm still needed to obtain a license from the Nuclear Regulatory Commission.  *Utah v. DOI*, 210 F.3d 1193, 1197-98 (10th Cir. 2000).  Given plaintiff's failure to allege that it had been granted an operating certificate at the time it sued, plaintiff has failed to establish the justiciability of its timeliness claims.

## IV.    Plaintiff Fails to Allege Any Constitutional Violation

Even assuming *arguendo* that plaintiff's constitutional claims were justiciable, they fail on the merits.  The due process claims fail because plaintiff lacks a property interest that implicates due process, and because its allegations fail to demonstrate that it has been deprived of due process due to claimed vagueness, delay, or bias.  Its legislative delegation claim fails because Congress has provided intelligible principles for defendants to follow in this matter.  And its Appointments Clause claim fails because opening a bank account is not a matter that implicates the Clause and, even if it did, the decision can be and is made by FRBKC's president, whose appointment conforms with the Clause.[29]

---

[29] Because "a statute is to be construed where fairly possible so as to avoid substantial constitutional questions," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994), the Court should construe the FRA in a manner that eliminates such constitutional questions.

A.      **Plaintiff Fails to State a Claim for Violation of Due Process**

1.      **Plaintiff fails to state a due process claim because it lacks a protected property interest**

Plaintiff's various due process claims (Count III and (alternative) Count V) fail because it lacks a property interest in a master account, which is a prerequisite to the attachment of due process rights.  *Martin Marietta Materials, Inc. v. Kansas DOT*, 810 F.3d 1161, 1171 (10th Cir. 2016).  Plaintiff contends that it has a property interest in an account by virtue of 12 U.S.C. § 248a.  *See* Compl. ¶ 94.  But as explained in Part II, *supra*, section 248a does not mandate the grant of a master account, which 12 U.S.C. § 342 places at a Reserve Bank's discretion, and plaintiff therefore lacks an interest subject to due process protections.  For due process purposes, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).  Absent legal provisions mandating "'a particular outcome' . . . no property interest exists" that implicates due process protections.  *Martin Marietta*, 810 F.3d at 1178 (citations omitted).  Thus, plaintiff's lack of entitlement to a master account precludes it from asserting any due process claim.

2.      **Plaintiff fails to state a due process claim based on vagueness**

Plaintiff contends that its due process rights have been violated by an allegedly standardless process, *e.g.*, Compl. ¶ 97, and asks the Court to require defendants to review its request for an account in accordance with "discernable standards."  *Id.* ¶ 101.  Plaintiff's assertions in this regard prove too much and are insufficient to state a claim.

As explained above, to show it has a property interest implicating due process, plaintiff must demonstrate a lack of discretion to deny it an account.  But the purported lack of standards claimed by plaintiff, if true, results in *unconstrained* discretion and thus underscores the lack of an interest to which due process rights attach, barring plaintiff's claim.  *See, e.g., Hyde Park Co.*

33

*v. Santa Fe City Council*, 226 F.3d 1207, 1212-13 (10th Cir. 2000) ("Because the ordinances as written contain *no standards* governing the City Council's . . . exercise of discretion, [appellant] has no protectible property interest on which to base its due process claims." (emphasis added)).

Plaintiff also fails to state a claim in this regard because it does not allege that any statute or regulation is compelling or prohibiting its conduct. Due process limits on vagueness serve to prevent rules that "regulate persons or entities" from being so vague as to allow "arbitrary *enforcement*." *Beckles v. United States*, 137 S. Ct. 886, 892, 894 (2017) (citation omitted).[30] A purported lack of standards for *Reserve Bank* action therefore does not implicate plaintiff's due process rights. *See id*. at 895 (rejecting criminal defendant's challenge to advisory guidelines meant to guide courts in exercising sentencing discretion because the guidelines did not "regulate the public" and thus did not implicate due process vagueness concerns).

### 3.    Plaintiff fails to state a due process claim based on delay

Plaintiff, citing *Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587 (1926), claims that the timeframe for processing its request violates its due process rights. Compl. ¶ 100. In *Smith*, the Court found that a public body reviewing an application "for a period of two years remained practically dormant, and nothing in the circumstances suggests that it had any intention of going further with the matter." 270 U.S. at 591. In contrast, the System has most certainly indicated an "intention of going further with the matter," as shown by the process leading to issuance of the Guidelines and ongoing engagement with plaintiff. *Smith* is thus readily distinguishable. Moreover, action that does not constitute an unreasonable delay under the APA does not violate due process. *O'Rourke*, 891 F.3d at 1349; *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654,

---

[30] Moreover, far less clarity is required outside the criminal or First Amendment context, *In re Stewart*, 175 F.3d 796, 811 (10th Cir. 1999) (citation omitted), and in the area of "economic regulation." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982).

660 (D.C. Cir. 2010).  For the same reasons that plaintiff fails to state an APA claim for delay, *supra* at Part I.B., it has not suffered a delay that violates due process.

### 4.    Plaintiff fails to state a due process claim based on bias

Plaintiff wrongly implies that the FRA improperly gives FRBKC "Class A" directors "who shall be chosen and representative of [member] banks" (with which it claims to compete) decisionmaking power over master accounts.  Compl. ¶ 114 (quoting 12 U.S.C. § 302).

As a preliminary matter, plaintiff has not identified any FRBKC member bank that directly competes in the cryptocurrency services market plaintiff hopes to enter, despite the Rules' requirement that a plaintiff provide sufficient "factual matter," and not merely recite "labels and conclusions," in order to survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Plaintiff also carefully avoids alleging that FRBKC directors will *actually be* the decisionmakers on its request, *e.g.*, Compl. ¶ 115 ("*To the extent that* the Kansas City Fed's Board of Directors finally adjudicates the rights of would-be competitors like Custodia" (emphasis added)), and its allegations recognize that the official exercising decisionmaking power in this matter is in fact FRBKC's *president*.  *See* Compl. ¶¶ 41-42.[31]  The FRA provides that Reserve Bank powers can be exercised by the "board of directors, *or duly authorized officers or agents*."  12 U.S.C. § 341(seventh) (emphasis added).  The president, whom plaintiff does not allege is biased,[32] is certainly a duly authorized "officer or agent," and more.  The FRA makes her "the chief executive officer of the bank [to whom] all other executive

---

[31] These conditional allegations further show why the constitutional claims are not ripe.  Even if Reserve Bank directors were the decisionmakers—which plaintiff does not allege—it requires speculation to predict *which* directors would make a decision, since, *inter alia*, they are subject to various limits on participating in matters involving conflicts of interest.  *E.g.*, 18 U.S.C. § 208(a).

[32] In fact, the Class A directors whom plaintiff accuses of bias are barred from participating in the appointment of FRBKC's president.  *See* 12 U.S.C. § 341(fifth).

officers and all employees of the bank shall be directly responsible," 12 U.S.C. § 341(fifth), which at the time of the statute's enactment was understood to encompass authority to control the conduct of a bank's business, including matters relating to deposits.  *See, e.g.*, *Phillips v. United States*, 201 F. 259, 265 (8th Cir. 1912) ("The defendant . . . was the chief executive officer of the bank, and as such actually had control and direction of its affairs while it was a going concern."); *U.S. Nat'l Bank of N.Y. v. First Nat'l Bank of Little Rock*, 79 F. 296, 299 (8th Cir. 1897) (bank's president, as chief executive officer, may "indorse notes and bills, draw drafts and checks, certify checks, *or issue certificates of deposit*" (emphasis added)).  This is unsurprising; as plaintiff alleges, it has been FRBKC's "President and Chief Executive Officer"—and not its directors—with whom it has met with respect to its master account request and whom it has "urged . . . to consider Custodia's application."  Compl. ¶¶ 41-42.

Moreover, plaintiff's claim fails because even if the directors it focuses on were relevant decisionmakers, which they are not, they constitute a minority of the Reserve Bank's board, holding only three directorships, with the other six required to "represent the public" or the *non-banking* interests of "agriculture, commerce, industry, services, labor, and consumers." 12 U.S.C. § 302.  They are also subject to supervision, suspension, and removal by the Board, *id.* § 248(f), (j), which plaintiff does not allege is a competitor.  The Board has construed its powers as allowing it to order directors' recusal from matters that may present conflicts of interest, even where their participation is expressly authorized by statute, *see, e.g.*, Board of Governors of the Federal Reserve System, *DIRECTORS – Appointment of Reserve Bank Presidents and First Vice President* (Feb. 9, 2017)[33] (barring certain Class B directors from participating in the selection of

---

[33] https://www.federalreserve.gov/aboutthefed/directors/PDF/appointment-of-reserve-bank-presidents-first-vice-presidents.pdf.

Reserve Bank presidents due to potential conflicts of interest).

Plaintiff's reliance on *Ass'n of American Railroads v. DOT*, 821 F.3d 19 (D.C. Cir. 2016), Compl. ¶ 113, is therefore misplaced.  In that case, the court held that giving Amtrak the ability to impose its decisions on competing railroads violated due process.  821 F.3d at 31.  But it subsequently held that striking a portion of the offending statute in a manner that left Amtrak unable to unilaterally impose its will without concurrence of a disinterested party, the Federal Railroad Administration, cured any constitutional defect.  *Ass'n of Am. R.R.s v. DOT*, 896 F.3d 539, 546, 548 (D.C. Cir. 2018).  In so doing, it explained that the stricken provision had left the Railroad Administration unable to "temper or prevent Amtrak from adopting measures that promoted its own self-interest at the expense of its freight railroad competitors."  *Id.* at 545.  But by severing this provision, Amtrak could not act without the Administration's concurrence, and such "joint action" requiring assent of a disinterested party was permissible.  *Id.* (citations omitted).  Since the Reserve Bank directors alleged to be biased are a minority, even if they were to participate in the decision they would be outnumbered by disinterested directors and thus cannot impose their will unilaterally; moreover, any threat of bias is further "temper[ed]" because *all* directors are subject to supervision by *another* disinterested party—the Board— which can order their recusal if it perceives an actual or potential conflict of interest.

### B.     Plaintiff Fails to State a Claim for Improper Delegation of Legislative Power

Plaintiff's contention that Congress has improperly delegated its legislative authority by failing to set "intelligible principles," Compl. ¶¶ 93, 95 (citing U.S. Const. art. I § 1), is wrong. Except for two rulings issued in 1935, the Supreme Court has consistently "upheld . . . without deviation, Congress' ability to delegate power under broad standards."  *See Mistretta v. United*

*States*, 488 U.S. 361, 373 (1989).[34]  Such standards can be phrased in extremely general terms.  *See Whitman*, 531 U.S. at 474 ("[W]e have found an 'intelligible principle' in various statutes authorizing regulation in the 'public interest.'").  Nor must the standards appear in the specific provision at issue.  For example, a guiding principle can be inferred from legislative history, *United States v. Roberts*, 185 F.3d 1125, 1137 (10th Cir. 1999), or an implied requirement to "fit" action under the provision to objectives and requirements of the overall statutory scheme of which it is a part.  *See United States v. Brown*, 348 F.3d 1200, 1217 (10th Cir. 2003) ("implicit in the delegation of authority was that the regulations would 'fit' within the rest of the tax laws").

The authority to accept deposits in 12 U.S.C. § 342, which is the basis for Reserve Banks' authority to open accounts, is clearly subject to sufficient intelligible principles to pass master under this standard.  To begin with, the provision itself identifies the types of institutions from which deposits can be accepted and the manner in which funds may be deposited.  *Id.*  Congressional intent and the overall statutory scheme provide additional guiding principles.  For example, the FRA stated that the enacting Congress intended, among other goals, "to furnish an elastic currency [and] establish a more effective supervision of banking in the United States."  38 Stat. 251.  It was subsequently amended to identify a monetary policy of "accommodating commerce and business and with regard to their bearing upon the general credit situation of the

---

[34] An alleged violation of Article I § 1 results from *Congress* improperly giving the Executive *too much interpretive power* by enacting a vague statute lacking an "intelligible principle," and thus on the two occasions when the Supreme Court found such a delegation unconstitutional, it struck the offending statute.  *See Mistretta*, 488 U.S. at 373.  But plaintiff oddly asserts that the purported violation here is a *failure to exercise* interpretive authority by *the defendants* whom it wants compelled to process its request under "constitutionally required discernable standards."  Compl. ¶¶ 96-97, 101.  It does not challenge Reserve Banks's authority to accept deposits.  It thus is unclear how the Court could grant any relief on this claim, further undermining Plaintiff's standing.  *See Murphy v. NCAA*, 138 S. Ct. 1461, 1482 (2018) (courts "cannot rewrite a statute"); *cf.* Compl. ¶¶ 53, 79 (claiming that no new standards could be applied to plaintiff's request).

38

country." 12 U.S.C. § 263(c).  Other provisions of the banking laws implicate additional policy

goals as significant as ensuring the financial stability of the economy as a whole.  *E.g.*, 12 U.S.C.

§ 5322(a)(1).  The Board's Guidelines with respect to master account requests, in fact, reflect an

effort to "fit" the exercise of Reserve Bank discretion to some of these broader goals.  *See, e.g.*,

Guidelines at 2 (noting, *inter alia*, that the Guidelines are meant to facilitate policy goals related

to "effectively implementing monetary policy [and] promoting financial stability").  The

authority to open master accounts is thus not an improper delegation of legislative power.

### C.      Plaintiff Fails to State a Claim for Violation of the Appointments Clause

Plaintiff contends that the FRA, which allows the decision on whether to grant it an

account to be made by an FRBKC official not subject to Presidential appointment and Senate

confirmation, violates the Appointments Clause, U.S. Const. art. II, § 2, cl. 2.  Compl. ¶ 126.

But plaintiff is wrong—the master account decision does not implicate the Clause in light of

historical practice indicating that similar decisions may be made by officials not appointed under

the Clause.  And even if the Clause were implicated, FRBKC's president is authorized by law to

make the decision on whether to grant a master account, *see* Part IV.A.4., *supra*, and her ability

to make this decision does not render her a "principal officer" who must be nominated by the

President and confirmed by the Senate.  The Board's removal powers vis-à-vis the FRBKC

president (on their own or in combination with its supervisory powers over FRBKC) mean that,

at most, she is an inferior officer, and the manner in which she was elevated to her role as

president of FBRKC complies with the Clause's requirements as to the appointments of such

officers.

As an initial matter, a Reserve Bank's decision on whether to open a master account does

not implicate the Clause at all, as shown by practice under the First Congress.  Indeed, not all

exercises of statutorily authorized actions by government-affiliated entities necessarily implicate the type of power that only officers subject to the Clause may wield, much less the requirement of presidential nomination and Senate confirmation required for "principal" officers. *See, e.g.*, *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1654-55 (2020) (offices with purely local responsibilities in D.C. and U.S. territories not subject to the Clause). The First Congress' establishment of the First Bank of the United States indicates that a decision on whether to open an account at a government-affiliated bank is not the type of sovereign power implicating the Clause.[35]  Such practice by "men who were contemporary with [the Constitution], many of whom were members of the convention which framed it, is of itself entitled to very great weight."  *Golan v. Holder*, 565 U.S. 302, 321 (2012); *see also Aurelius*, 140 S. Ct. at 1659 (citing legislation by the First Congress in construing scope of the Clause).

Specifically, the First Congress passed an "Act to incorporate the subscribers to the Bank of the United States," Act of Feb. 25, 1791, Pub. L. No. 1-10, 1 Stat. 191, which created an entity whose notes were accepted as payment to the government, and which was granted the exclusive right to bank under such "full faith of the United States." *Id.* §§ 10, 12, 1 Stat. at 196.  In this respect its notes were not unlike Federal Reserve notes, which are "receivable . . . for all taxes, customs, and other public dues." 12 U.S.C. § 411.  The bank was expected to serve a number of public goals.  Act of Feb. 25, 1791, 1 Stat at 191 (noting Congressional expectation that the bank would facilitate the "successful conducting of the national finances" and "give facility to the obtaining of loans, for the use of the government, in sudden emergencies").  Like Reserve Banks,

---

[35] *Cf. Thacker v. Tennessee Valley Auth.*, 139 S. Ct. 1435, 1442 (2019) ("[T]he discretionary acts of hybrid entities like the TVA may be not governmental but commercial in nature.")

it was authorized to accept deposits.  *Id.* § 7(XV), 1 Stat. at 195.[36]

The Act provided for appointment of the bank's leadership without utilizing the procedures of the Appointments Clause.  Its directors were elected by shareholders, *id.* § 4, 1 Stat. 192-93, rather than being subject to Senate confirmation or appointment by the President or Head of Department, and the directors in turn selected the bank's president; *see also id.* §§ 7(I), 11, 1 Stat. 193, 196 (limiting the government's ownership share and thereby precluding it from electing a majority of the directors).  The decision not to conform to the Appointments Clause was intentional; Treasury Secretary Alexander Hamilton explained to Congress that "[t]o attach full confidence to an institution of this nature, it appears to be an essential ingredient in its structure, that it shall be under a *private*, not a *public* direction . . . ."[37]  *Report on a National Bank* (Dec. 14, 1790), *in* Legislative and Documentary History of the Bank of the United States 29 (Clark & Hall eds., 1832).[38]

The First Congress' decision not to make the 1791 Act comport with the Appointments Clause indicates that the banking functions it authorized—although meant to serve public purposes—do not implicate the Clause.  *Cf. Aurelius*, 140 S. Ct. at 1659 (legislation by the First Congress for filling territorial offices using procedures not provided under the Appointments Clause indicates that the Clause does not apply to such offices).  Contemporaneous criticism focused on whether Congress could or should charter a bank, and not on any purported failure

---

[36] The only limit on such deposit-taking was that branch offices had to accept such deposits "upon the same terms, and in the same manner, as at the Bank."  *Id.*

[37] It is hardly surprising that the Founders did not view the bank as exercising the type of governmental power implicating the Clause; its charter was modeled on that of the national bank with which they were most familiar—the Bank of England—which was privately owned despite performing quasi-public functions.  Stephen K. Halpert, *The Separation of Banking and Commerce Reconsidered*, 13 J. Corp. L. 481, 491 (1988).

[38] https://fraser.stlouisfed.org/title/legislative-documentary-history-bank-united-states-3632.

41

comply with the Clause.  *See, e.g.*, Edmund Randolph, Attorney General of the United States, *Opinion to President Washington* (Feb. 12, 1791), *in* Legislative and Documentary History 86 ("It must be acknowledged, that, if any part of the bill does either encounter the constitution, or is not warranted by it, the clause of incorporation is the only one.").  When the Supreme Court subsequently addressed the constitutionality of a second bank chartered in 1816, it cited to the First Congress' enactment of the 1791 Act as evidence that the statute was constitutional, *M'Culloch v. Maryland*, 17 U.S. 316, 402 (1819), although the second bank was given more resources and more public responsibilities.[39]  The First Congress' manner of providing for selection of leaders of a bank created for public purposes and authorized by statute to accept deposits thus substantially refutes Plaintiff's assertion that FRBKC's decision to open a master account for purposes of accepting deposits implicates the Appointments Clause.

Moreover, even if the Appointments Clause were implicated by a decision on a master account, the authority to make the decision lies with FRBKC's President, whose appointment comports with the Clause.  Her appointment required approval of the Board of Governors.  *See* 12 U.S.C. § 341(fifth).  Such approval by the Board, which heads a federal agency, meets the Clause's requirement that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper . . . in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2; *Free Enter.*

---

[39] For example, the second bank's capitalization was 250% greater than the first bank's, *compare* Act of Feb. 25, 1791 § 1, 1 Stat. 191 *with* Act of Apr. 10, 1816, Pub. L. No. 14-1, § 1, 3 Stat. 266, and it was expressly required to provide "necessary facilities for transferring the public funds from place to place, within the United States . . . and for distributing the same in payment of the public creditors."  Act of Apr. 10, 1816 § 15, 3 Stat. 269, 274.  The 1816 Act required presidential nomination and Senate confirmation for five directors, but gave private shareholders the power to elect the remaining twenty directors, with the directors electing a bank president, *id.* § 8, 3 Stat. 269-70, thus continuing to vest overall control of the bank in officials not installed in accordance with the Appointments Clause.  The House had rejected a provision that would have required the bank's president to be one of the directors chosen by the government.  *See On the Grant of Charter of 1816* (Mar. 6, 1816), *in* Legislative and Documentary History 666-67.

*Fund v. PCAOB*, 561 U.S. 477, 512-13 (2010) (a multimember body heading an independent

agency is a "Head of Department" for Appointments Clause purposes); *id.* at 512 n.13 (Head of

Department approval of selection by another official satisfies the Clause (citing *United States v.*

*Hartwell*, 73 U.S. 385, 393-94 (1867) and other cases)).

      Plaintiff's reliance on *United States v. Arthrex*, *Inc.*, 141 S. Ct. 1970 (2021), to argue that

an FRBKC official responsible for the final decision on its request for a master account is a

"principal officer," Compl. ¶ 123, is misplaced.  The statute at issue in *Arthrex* allowed for final

decisions made by officials whom a department head could not "meaningfully control . . .

because she can fire them only 'for such cause as will promote the efficiency of the service.'"

141 S. Ct. at 1972 (quoting 5 U.S.C. § 7513(a)).  But the Board may remove FRBKC's president

or other officials without such restrictions and thereby "meaningfully control" their actions.

Specifically, the Board may "suspend or remove any officer or director of any Federal reserve

bank, the cause of such removal to be forthwith communicated in writing by the Board of

Governors of the Federal Reserve System to the removed officer or director and to said bank."

12 U.S.C. § 248(f).  It thus is not restricted to removal only "for such cause as will promote the

efficiency of service," as in *Arthrex*.  The Executive Branch construes section 248(f) as allowing

the Board to remove FRBKC officials at will, *Appointment & Removal of Fed. Reserve Bank*

*Members of the FOMC*, 2019 WL 11594453, at *7 (Op. O.L.C. Oct. 23, 2019), consistent with

judicial construction of similar language in 12 U.S.C. § 2 allowing the President to remove the

Comptroller of the Currency "upon reasons to be communicated by him to the Senate."  *Collins*

*v. Yellen*, 141 S. Ct. 1761, 1785 n.19 (2021) (Comptroller "removable at will by the President").

      The ability to remove FRBKC's president, together with the Board's supervisory

authority over Reserve Banks, 12 U.S.C. § 248(j),[40] is sufficient to render her an inferior officer rather than a principal officer.  *Arthrex* expressly characterized its holding as applying to the *combination* of "significant authority" assigned to the officials at issue with legal provisions "insulating their decisions from review *and their offices from removal*."  141 S. Ct. at 1985 (citation omitted) (emphasis added).  In fact, the *Arthrex* Court reaffirmed its prior holdings that it has not "set forth an exclusive criterion for distinguishing between principal and inferior officers for Appointments Clause purposes."  *Id.* at 1985 (quoting *Edmond v. United States*, 520 U.S. 651, 661 (1997)); *see also id.* at 1987 (declining to determine whether "at-will removal by the Secretary would cure the constitutional problem" because striking a different provision "better reflect[ed] the structure of supervision within the [agency] and the nature of [the official's] duties").  Importantly, *Arthrex* noted that "the threat of removal from federal service entirely" can allow for "meaningful" control.  *Id.* at 1972; *see also Edmond*, 520 U.S. at 664 ("The power to remove officers . . . is a powerful tool for control." (citations omitted)).

Thus, *Arthrex* did not call into question the validity of the lower court's reasoning that sufficiently broad removal powers can render officials who make unreviewable final decisions inferior officers, *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1337-38 (Fed. Cir. 2019), as well as other rulings reaching the same conclusion.  *See, e.g.*, *Fleming v. USDA*, 987 F.3d 1093, 1103 (D.C. Cir. 2021) (rejecting a categorical argument that "an inferior officer's decisions must be subject to review by a principal officer" where at-will removal and other provisions allow for meaningful control); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341 (D.C. Cir. 2012) (ability of agency head to provide some guidance,

---

[40] The Board's general supervisory powers are extremely broad.  *See Fraternal Ord. of Police*, 391 F. Supp. 2d at 5-6.  The Board also controls Reserve Bank operating budgets and salaries, 12 U.S.C. §§ 248a(d), 307, and has exclusive rulemaking authority under the FRA.  *Id.* § 248(i), (k).

combined with at-will removal, was sufficient to make official whose decision was unreviewable an inferior officer); *see also Sanofi-Aventis U.S., LLC v. DHHS*, 570 F. Supp. 3d 129, 180-81 (D.N.J. 2021) (citing at-will removal power as grounds for distinguishing *Arthrex*). Here, as in *Intercollegiate Broadcasting System*, the Board has construed its supervisory authority over Reserve Banks as allowing it to provide guidance to Reserve Bank officials in various ways, and has in fact issued guidance concerning the grant of master accounts. Combined with its removal power over FRBKC's president, this level of supervision means that she is not a principal officer even if the Appointments Clause were to apply to the decision and even though she exercises final decisionmaking authority in this matter.[41]

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the case be dismissed.

---

[41] Historical practice further undermines plaintiff's assertion that the decision at issue must be made by a principal officer. *See NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) ("long settled and established practice . . . of at least twenty years duration on the part of the executive department, acquiesced in by the legislative department is entitled to great regard in determining the true construction of a constitutional provision" concerning the separation of powers (cleaned up)). Besides the 40 years that the Banks of the United States operated under leadership primarily elected by private shareholders, the 1913 FRA provided for Senate confirmation of the Board's Governors but not of any Reserve Bank officials. FRA §§ 3, 4, 10, 38 Stat. 253-57, 260-1. The FRA has never provided otherwise despite numerous amendments over more than a century, including ten subsequent statutes specifically addressing the provisions governing selection or appointment of Board and Reserve Bank officials that were enacted between 1917 and 2015. *See* Act of June 21, 1917, Pub. L. No. 65-25, §§ 2-3, 40 Stat. 232; Act of Sept. 26, 1918, Pub. L. No. 65-218, § 1, 40 Stat. 967-68; Act of June 3, 1922, Pub. L. No. 67-230, 42 Stat. 620-21; Act of June 26, 1930, Pub. L. No 71-435, 46 Stat. 814, 815-16; Banking Act of 1933, Pub. L. No. 73-66, §§ 3(b), 6(a)-(b), 48 Stat. 162, 163-64, 166-67; Banking Act of 1935, Pub. L. No. 74-305, §§ 201, 203(b)-(c), 49 Stat. 684, 703-05; Act of July 1, 1966, Pub. L. No. 89-485, § 13(e), 80 Stat. 236, 243; Act of Nov. 16, 1977, Pub. L. No. 95-188, §§ 202, 204, 91 Stat. 1387-88; Dodd-Frank Wall Street Reform and Consumer Protection Act §§ 1107, 1108(a)(1), 124 Stat. 1376, 2126; Terrorism Risk Insurance Program Reauthorization Act of 2015, Pub. L. No. 114-1, § 109, 129 Stat. 3, 9. Thus, for the majority of the time that the Republic has existed, Congress and the Executive Branch have acquiesced in a regime under which government-affiliated banks serving public goals could render decisions about opening deposit accounts, without requiring that these banks be under the control of Senate-confirmed leadership.

Dated: August 16, 2022

Respectfully submitted,

 /s/ *Joshua P. Chadwick*
Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the Federal Reserve System*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2022, I electronically filed the foregoing using the

court's CM/ECF system, which will send notification of such filing to all parties of record.

By:   /s/ *Joshua P. Chadwick*
      Joshua P. Chadwick

      *Counsel for Defendant Board of Governors*
      *of the Federal Reserve System*

**J.A.152**

Billie L.M. Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson (*pro hac vice* admission pending)
Laura Harris (*pro hac vice* admission pending)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice* admission pending)
Joshua N. Mitchell (*pro hac vice* admission pending)
Christine M. Carletta (*pro hac vice* admission pending)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500

*Counsel for Defendant the Federal Reserve Bank of Kansas City*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CUSTODIA BANK, INC.,<br><br>    *Plaintiff,*<br><br>      v.<br><br>FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY,<br><br>    *Defendants.* | No. 1:22-cv-00125-SWS |

## DEFENDANT FEDERAL RESERVE BANK OF
## KANSAS CITY'S MOTION TO DISMISS

Defendant Federal Reserve Bank of Kansas City ("FRBKC") hereby moves the Court for an order dismissing the claims against it by Plaintiff Custodia Bank, Inc., pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In support of this Motion to Dismiss, FRBKC relies on its *Memorandum in Support of Motion to Dismiss*.

     ***NOW THEREFORE***, FRBKC respectfully requests that the Court dismiss FRBKC from this case, and award FRBKC any and all other relief the Court deems appropriate as a result of the dismissal.

Dated:  16 August 2022.          Respectfully submitted,

                     s/ Billie LM Addleman
                    Billie LM Addleman, #6-3690
                    John P. Fritz**, #7**-6318
                    HIRST APPLEGATE, LLP
                    Attorneys for Defendant FRBKC
                    P. O. Box 1083
                    Cheyenne, WY 82003-1083
                    Phone: (307) 632-0541
                    Fax: (307) 632-4999
                    baddleman@hirstapplegate.com
                    jfritz@hirstapplegate.com

                    Andrew Michaelson (*pro hac vice* admission pending)
                    Laura Harris (*pro hac vice* admission pending)
                    KING & SPALDING LLP
                    1185 Avenue of the Americas
                    34th Floor
                    New York, NY 10036
                    212-556-2100
                    amichaelson@kslaw.com
                    lharris@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice* admission pending)
Joshua N. Mitchell (*pro hac vice* admission pending)
Christine M. Carletta (*pro hac vice* admission pending)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
202-737-0500
jbucholtz@kslaw.com
jmitchell@kslaw.com
ccarletta@kslaw.com

*Counsel for Defendant the Federal Reserve Bank of Kansas City*

## CERTIFICATE OF SERVICE

I certify the foregoing *Defendant Federal Reserve Bank Of Kansas City's Motion to Dismiss* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 16 August 2022, and that copies were served as follows:

| | |
|---|---|
| John K. Villa<br>Ryan Thomas Scarborough<br>Whitney D Hermandorfer<br>Jamie Wolfe<br>WILLIAMS & CONNOLLY<br>680 Maine Avenue SW<br>Washington, DC 20024<br>*Attorneys for Plaintiff* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |
| Scott E Ortiz<br>WILLIAMS PORTER DAY & NEVILLE<br>159 North Wolcott, Suite 400<br>P O Box 10700<br>Casper, WY 82602<br>*Attorneys for Plaintiff* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |
| Angela Tarasi<br>KING & SPALDING LLP<br>1401 Lawrence Street<br>Suite 1900<br>Denver, CO 80202<br>*Attorneys for Defendant Federal Reserve Bank of Kansas City* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |

Joshua P. Chadwick, Senior Special Counsel
Yvonne F. Mizusawa, Senior Counsel
Yonatan Gelblum, Senior Counsel
Katherine Pomeroy, Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C.  20551
*Attorneys for Defendant Federal Reserve Board of*
*Governors*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE


  /s Shannon M. Ward
OF HIRST APPLEGATE, LLP
Attorneys for Defendant

Billie L.M. Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson (*pro hac vice* admission pending)
Laura Harris (*pro hac vice* admission pending)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice* admission pending)
Joshua N. Mitchell (*pro hac vice* admission pending)
Christine M. Carletta (*pro hac vice* admission pending)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500

*Counsel for Defendant the Federal Reserve Bank of Kansas City*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CUSTODIA BANK, INC.,<br><br>    *Plaintiff,*<br><br>       v.<br><br>FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY,<br><br>    *Defendants.* | No. 1:22-cv-00125-SWS |

**DEFENDANT FEDERAL RESERVE BANK OF KANSAS CITY'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ........................................................................... 1

BACKGROUND .............................................................................. 4

    A.  The Federal Reserve System Is Designed to Ensure Financial Stability ..................... 4

    B.  Reserve Banks Consider Risks When Evaluating Master Account Requests .............. 6

    C.  Cryptocurrencies Present Novel Risks ........................................................ 8

    D.  Wyoming "Special Purpose Depository Institutions" Have Unique Features ............ 10

    E.  Custodia Seeks Both a Master Account and Federal Reserve Membership ............... 11

LEGAL STANDARD ...................................................................... 12

ARGUMENT ................................................................................. 13

I.     Count I: Custodia's APA Claim Fails Because FRBKC Is Not an Agency nor Has Custodia Suffered an Unreasonable Delay ........................................ 13

    A.  FRBKC is not an agency ....................................................................... 13

    B.  Custodia has not suffered an unreasonable delay under the APA .............................. 17

II.    Counts III and V: Because FRBKC Has Discretion Over Master Account Requests, Custodia Does Not Have a Property Interest and Its Due Process Claims Fail. ................................................................. 20

    A.  FRBKC has discretion to determine whether to grant a master account (Counts III and V) ............................................................................ 20

    B.  Because a master account is discretionary, Custodia does not have a cognizable property interest (Counts III and V) ........................................ 29

    C.  Master account decisions do not implicate a delegation of legislative authority (Count III) ............................................................................ 30

    D.  The master account decision is not being made by Custodia's "competitors" (Count V) ............................................................................ 31

III.   Count VI: Custodia's Appointments Clause Claim Is Unripe and Meritless ................. 33

    A.  Custodia's Appointments Clause claim is unripe because FRBKC has not taken action on Custodia's request .................................................. 33

B. Custodia's Appointments Clause claim is meritless because a decision on a master account request is not an exercise of the "executive Power" of the United States and because FRBKC is in any event constituted in accordance with that Clause..................................................................................34

IV. Counts II, IV, VII, and VIII: Custodia's Declaratory Judgment Act and Mandamus Act Claims Are Improper, Inadequately Pleaded, and Unripe......................35

A. The Declaratory Judgment Act does not provide an independent right of action (Counts IV and VIII).................................................................35

B. The Mandamus Act does not apply to FRBKC nor has Custodia adequately pleaded any claim arising under it (Counts II and VII) ...............................36

C. Counts VII and VIII are not ripe................................................................36

V. All Counts: Custodia Lacks Standing and This Case Is Constitutionally and Prudentially Unripe..................................................................................37

A. Custodia lacks standing.............................................................................37

1. Custodia has not suffered an injury-in-fact...................................38

2. Custodia has not demonstrated that its requested relief is likely to redress its claimed injury ...............................................................39

B. Custodia's claims are prudentially unripe...................................................40

CONCLUSION..................................................................................................45

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
  300 U.S. 227 (1937) ........................................................................... 35

*Am. Bankers Ass'n v. United States,*
  932 F.3d 1375 (Fed. Cir. 2019) .......................................................... 8

*Ash Creek Min. Co. v. Lujan,*
  969 F.2d 868 (10th Cir. 1992) ....................................................... 37, 39

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 12

*Assoc. of Am. R.Rs. v. U.S. Dep't of Transp.,*
  821 F.3d 19 (D.C. Cir. 2016) ............................................................ 31

*Awad v. Ziriax,*
  670 F.3d 1111 (10th Cir. 2012) .................................................... 38, 40

*Bagherian v. Pompeo,*
  442 F. Supp. 3d 87 (D.D.C. 2020) ..................................................... 20

*Bd. of Regents of State Colls. v. Roth,*
  408 U.S. 564 (1972) ...................................................................... 20, 29

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 12

*Biden v. Texas,*
  142 S. Ct. 2528 (2022) ....................................................................... 21

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta,*
  955 F.3d 971 (Fed. Cir. 2020) ........................................................... 16

*Camuglia v. City of Albuquerque,*
  448 F.3d 1214 (10th Cir. 2006) ......................................................... 20

*Carter v. Carter Coal Co.,*
  298 U.S. 238 (1936) ........................................................................... 31

*Coleman v. Darden,*
  595 F.2d 533 (10th Cir. 1979) ........................................................... 29

*Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.,*
  693 F.3d 1195 (10th Cir. 2012) ......................................................... 35

iii

**J.A.160**

*Dong v. Smithsonian Inst.*,
125 F.3d 877 (D.C. Cir. 1997) ............................................................ 13, 14, 15

*Dubbs v. Head Start, Inc.*,
336 F.3d 1194 (10th Cir. 2003) ................................................................... 12

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
438 U.S. 59 (1978) ............................................................................. 37, 39

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*,
466 F. Supp. 3d 100 (D.D.C. 2020) ............................................................. 13

*Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*,
262 U.S. 649 (1923) ................................................................................ 21

*Fasano v. Fed. Rsrv. Bank of N.Y.*,
457 F.3d 274 (3d Cir. 2006) ....................................................................... 5

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ................................................................................ 13

*Fed. Rsrv. Bank of Boston v. Comm'r of Corps. & Tax'n*,
499 F.2d 60 (1st Cir. 1974) ....................................................................... 24

*Fed. Rsrv. Bank of St. Louis v. Metrocentre Imp. Dist. No. 1*,
657 F.2d 183 (8th Cir. 1981), *aff'd*, 455 U.S. 995 (1982) ................................. 16

*Firebaugh Canal Water Dist. v. United States*,
712 F.3d 1296 (9th Cir. 2013) .................................................................... 19

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ........................................................................ 5, 15, 16

*Fletcher v. Peck*,
10 U.S. (6 Cranch) 87 (1810) ..................................................................... 31

*Flight Int'l Grp., Inc. v. Fed. Rsrv. Bank of Chi.*,
583 F. Supp. 674 (N.D. Ga. 1984) ............................................................... 16

*Flight Int'l, Inc. v. Fed. Rsrv. Bank of Chi.*,
597 F. Supp. 462 (N.D. Ga. 1984) ............................................................... 16

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999) ............................................................. 18, 19

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*,
861 F.3d 1052 (10th Cir. 2017) ........................................................... *passim*

iv

*Gliana v. Blinken*,
— F. Supp. 3d — , 2022 WL 910338 (D.D.C. Mar. 29, 2022) ............................................. 20

*Greater Buffalo Press, Inc. v. Fed. Rsrv. Bank of N.Y.*,
866 F.2d 38 (2d Cir. 1989) ...................................................................................................... 8

*In re Hoag Ranches*,
846 F.2d 1225 (9th Cir. 1988) ............................................................................................. 15

*Irwin Mem'l Blood Bank of S.F. Med. Soc'y v. Am. Nat'l Red Cross*,
640 F.2d 1051 (9th Cir. 1981) ............................................................................................. 15

*Jefferson Cnty. v. Acker*,
137 F.3d 1314 (11th Cir. 1998),
*rev'd on other grounds*, 527 U.S. 423 (1999) ...................................................................... 17

*Katsiavelos v. Fed. Rsrv. Bank of Chi.*,
859 F. Supp. 1183 (N.D. Ill. 1994) ..................................................................................... 16

*Lee Constr. Co. v. Fed. Rsrv. Bank of Richmond*,
558 F. Supp. 165 (D. Md. 1982) .................................................................................... 16, 17

*Lewis v. United States*,
680 F.2d 1239 (9th Cir. 1982) ..................................................................................... 5, 14, 15

*Lombardo v. Handler*,
397 F. Supp. 792 (D.D.C. 1975),
*aff'd*, 546 F.2d 1043 (D.C. Cir. 1976) ................................................................................. 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................... 37, 39

*McGregor v. Gibson*,
248 F.3d 946 (10th Cir. 2001) ............................................................................................... 4

*McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*,
647 F.3d 331 (D.C. Cir. 2011) ............................................................................................. 15

*McKinney v. Caldera*,
141 F. Supp. 2d 25 (D.D.C. 2001) ...................................................................................... 14

*Melcher v. Fed. Open Market Comm.*,
644 F. Supp. 510 (D.D.C. 1986) ........................................................................................... 5

*Mun. Ass'n of S.C. v. USAA Gen. Indem. Co.*,
709 F.3d 276 (4th Cir. 2013) ............................................................................................... 17

J.A.162

*N. Mill Street, LLC v. City of Aspen*,
  6 F.4th 1216 (10th Cir. 2021) ............................................ 45

*New York v. Atl. States Marine Fisheries Comm'n*,
  609 F.3d 524 (2d Cir. 2010) .............................................. 13

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ........................................................ 36

*OK's Cascade Co. v. United States*,
  97 Fed. Cl. 635 (2011),
  *aff'd,* 467 F. App'x 888 (Fed. Cir. 2012) ........................... 44

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ....................................................... 29

*Rios v. Ziglar*,
  398 F.3d 1201 (10th Cir. 2005) ....................................... 36

*Robbins v. U.S. Bureau of Land Mgmt.*,
  438 F.3d 1074 (10th Cir. 2006) ....................................... 29

*Salgado-Toribio v. Holder*,
  713 F.3d 1267 (10th Cir. 2013) ....................................... 30

*Scott v. Fed. Rsrv. Bank of Kansas City*,
  406 F.3d 532 (8th Cir. 2005) ................................... 6, 14, 16

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  140 S. Ct. 2183 (2020) .................................................... 33

*Sinochem Int'l Co. v. Malaysia Int'l. Shipping Corp.*,
  549 U.S. 422 (2007) ....................................................... 45

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................... 37

*Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*,
  906 F. Supp. 2d 202 (S.D.N.Y. 2012),
  *aff'd*, 742 F.3d 37 (2d Cir. 2014) ...................................... 5

*Sunshine Anthracite Coal Co. v. Adkins*,
  310 U.S. 381 (1940) ....................................................... 31

*Teigen v. Renfrow*,
  511 F.3d 1072 (10th Cir. 2007) ....................................... 21

vi

J.A.163

*Telecomms. Rsch. & Action Ctr. v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ................................................... 18, 19

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project*,
   576 U.S. 519 (2015) ................................................................. 21

*Texas v. United States*,
   523 U.S. 296 (1998) ............................................................. 36, 43

*TNB USA Inc. v. Fed. Rsrv. Bank of N.Y.*,
   No. 1:18-CV-7978 (ALC),
   2020 WL 1445806 (S.D.N.Y. Mar. 25, 2020) .......................... *passim*

*Twitter, Inc. v. Paxton*,
   26 F.4th 1119 (9th Cir. 2022) ................................................... 45

*United States ex rel. Holbrook v. Brink's Co.*,
   336 F. Supp. 3d 860 (S.D. Ohio 2018) ...................................... 14

*United States v. Arthrex, Inc.*,
   141 S. Ct. 1970 (2021) ........................................................... 33

*United States v. Brown*,
   381 U.S. 437 (1965) ............................................................... 31

*United States v. Sup. Ct. of N.M.*,
   839 F.3d 888 (10th Cir. 2016) ................................................. 40

*United States v. Wells Fargo & Co.*,
   943 F.3d 588 (2d Cir. 2019) .................................................... 16

*Utah Animal Rts. Coal. v. Salt Lake City Corp.*,
   371 F.3d 1248 (10th Cir. 2004) ............................................... 39

*Utah Housing Corp. v. Country Pines, Ltd.*,
   541 F. Supp. 3d 1288 (D. Utah 2021) ...................................... 35

*Van Woudenberg ex rel. Foor v. Gibson*,
   211 F.3d 560 (10th Cir. 2000) ................................................... 4

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ..................................................... 22, 24, 28

*Wyoming v. U.S. Dep't of the Interior*,
   493 F. Supp. 3d 1046 (D. Wyo. 2020) ...................................... 43

*Wyoming v. Zinke*,
   871 F.3d 1133 (10th Cir. 2017) ............................................... 40

**J.A.164**

**Constitutional Provisions**

U.S. Const. art. II, § 1 .................................................................................... 34

U.S. Const. art. II, § 2 .................................................................................... 34

**Statutes**

5 U.S.C. § 551(1) ........................................................................................... 13

5 U.S.C. § 701(b)(1) ...................................................................................... 13

12 U.S.C. § 221 ............................................................................................... 4

12 U.S.C. § 248(f) .................................................................................... 32, 35

12 U.S.C. § 248(k) ................................................................................... 6, 14

12 U.S.C. § 248a(a) ...................................................................................... 22

12 U.S.C. § 248a(b) .................................................................................. 6, 22

12 U.S.C. § 248a(c)(2) ........................................................... 8, 22, 23, 27, 29

12 U.S.C. § 248a(d) ...................................................................................... 22

12 U.S.C. § 303 .............................................................................................. 32

12 U.S.C. § 321 ......................................................................................... 8, 12

12 U.S.C. § 324 .............................................................................................. 43

12 U.S.C. § 341 ........................................................................... 6, 32, 34, 35

12 U.S.C. § 342 ....................................................................................... *passim*

12 U.S.C. § 1813(z) ...................................................................................... 17

12 U.S.C. § 4801(1) ...................................................................................... 17

12 U.S.C. § 4807 ........................................................................................... 17

12 U.S.C. §§ 241-252 .................................................................................... 22

12 U.S.C. §§ 341-364 ............................................................................... 6, 22

28 U.S.C. § 1361 ........................................................................................... 36

Monetary Control Act of 1980 ("MCA"),
   Pub. L. No. 96-221 ............................................................................... 7, 24

J.A.165

Wyo. Stat. § 12-12-116 (2019) .................................................................... 11, 41

Wyo. Stat. § 13-12-103 .............................................................................. 10, 18

Wyo. Stat. § 13-12-105(b)(ii) .......................................................................... 44

Wyo. HB0074 § 1(a)(i) .................................................................................. 10

**Regulations & Rules**

12 C.F.R. § 201.1 ............................................................................................ 7

12 C.F.R. § 265.11 .......................................................................................... 6

Proposed Guidelines for Evaluating Account and Services Requests,
86 Fed. Reg. 25,865 (May 11, 2021) .................................................... 42

Proposed Guidelines for Evaluating Account and Services Requests,
87 Fed. Reg. 12,957 (Mar. 8, 2022) ...................................................... 42

Board of Governors of the Federal Reserve System,
*Guidelines for Evaluating Account and Service Requests*,
Docket No. OP-1747, https://bit.ly/3C59BiP ..................................... 7, 42

Fed. R. Civ. P. 12(b)(1) .................................................................................. 13

Fed. R. Civ. P. 12(b)(6) .................................................................................. 12

Wyo. Rules & Regs. 021.0002.20 § 2(a) ....................................................... 41

**Other Authorities**

Andrew P. Scott, Cong. Rsrch. Serv.,
No. R47014, An Analysis of Bank Charters and
Selected Policy Issues (Jan. 21, 2022), https://bit.ly/3Qh5Qei ....................... 8, 11, 12

Appointment and Removal of Federal Reserve Bank Members of the Federal Open
Market Committee, 43 Op. Att'y Gen. __, Slip op. (Oct. 23, 2019) ......................... 35

Avanti Fin. Grp., Inc.,
Comment Letter on Proposed Guidelines for Evaluating Accounts
and Services Requests (July 12, 2021), https://bit.ly/3JIAf2N ........................... 11, 18

Bd. of Governors, Fed. Rsrv. Sys.,
Money and Payments: The U.S. Dollar in the Age of
Digital Transformation (Jan. 2022), https://bit.ly/3SFQ4uY ............................... 9

**J.A.166**

David Yaffe-Bellany, Erin Griffith, and Ephrat Livni,
*Cryptocurrencies Melt Down in a 'Perfect Storm' of Fear and Panic*,
N.Y. Times, (May 12, 2022), https://nyti.ms/3SIUYHV ....................................... 10

Exec. Order No. 14,067
(Mar. 9, 2022), https://bit.ly/3IYJ4VI.................................................................. 10

Fed. Rsrv. Sys., The Fed Explained: What the Central Bank Does,
35 Fed. Rsrv. Sys. 1 (11th ed. 2021)................................................................ 4, 5, 6

Federal Reserve Policy on Payment System Risk,
FederalReserve.gov (Mar. 19, 2021), https://bit.ly/3zVvBd1 ................................... 7

*Monetary Policy, Credit and Liquidity Programs and the Balance Sheet*,
FederalReserve.gov (Nov. 15, 2021), https://bit.ly/3dnokva.................................... 7

Nate DiCamillo,
*Unpacking the Avit, Avanti Bank's New Digital Asset Being Built With
Blockstream*, CoinDesk.com (Sept. 14, 2021), https://bit.ly/3dujLPP ............... 11, 26

Office of the Comptroller of the Currency,
*Bank Secrecy Act (BSA)*, https://bit.ly/3zzwND5 ................................................. 26

President's Working Group on Fin. Mkts.,
the Fed. Deposit Ins. Corp., and the Office of the Comptroller of the Currency,
Report on Stablecoins (Nov. 1, 2021), https://bit.ly/3PQdJXv ...................... 9, 10, 25

Press Release, State of N.Y.,
*DFS Superintendent Harris Announces $30 Million Penalty on
Robinhood Crypto for Significant Anti-Money Laundering, Cybersecurity, &
Consumer Protection Violations* (Aug. 2, 2022), https://on.ny.gov/3vX1CAy ...................... 26

Press Release, U.S. Dep't of Justice,
*CEO of Titanium Blockchain Pleads Guilty in $21 Million
Cryptocurrency Fraud Scheme* (July 25, 2022), https://bit.ly/3dmrX4F ................................... 9

Press Release, U.S. Dep't of Justice,
*Justice Department Announces Enforcement Action Charging Six Individuals with
Cryptocurrency Fraud Offenses in Cases Involving Over $100 Million in Intended
Losses*, (June 30, 2022), https://bit.ly/3SB8z3L .......................................... 9

Press Release, U.S. Dep't of Treasury,
*U.S. Treasury Sanctions Notorious Virtual Currency Mixer Tornado Cash*
(Aug. 8, 2022), https://bit.ly/3bQcoS8 ................................................. 9, 26

*Reserve Maintenance Manual*,
FederalReserve.gov (Nov. 19, 2018), https://bit.ly/3QnjMUl................................... 6

**J.A.167**

SEC, Div. of Examinations,
     The Division of Examinations' Continued Focus on Digital Asset Securities
     (Feb. 26, 2021), https://bit.ly/3Afdr7M ................................................................. 9

SEC Staff Accounting Bulletin No. 121,
     17 C.F.R. Part 211 (Apr. 11, 2022) ............................................................. 25, 26

State of Wyoming, Div. of Banking,
     General Overview of the Special Purpose Depository Institution
     Chartering Process, https://bit.ly/3dvljcf ............................................... 11, 41

*The Discount Window and Discount Rate*,
     FederalReserve.gov (July 12, 2022), https://bit.ly/3z504Fl ................................ 25

U.S. House Comm. on Fin. Servs.,
     Monetary Policy and the State of the Economy (June 23, 2022),
     https://bit.ly/3QoglMQ .................................................................................... 10

U.S. Treasury, Fin. Crimes Enforcement Network,
     No. FIN-2019-A003, Advisory on Illicit Activity Involving
     Convertible Virtual Currency (May 9, 2019), https://bit.ly/3bFYJgE ................... 26

U.S. Treasury, Office of Foreign Assets Control,
     Sanctions Compliance Guidance for the Virtual Currency Industry
     (Sept. 21, 2021), https://bit.ly/3JMMbjP .......................................................... 26

*When a Bank Fails—Facts for Depositors, Creditors, and Borrowers*,
     FDIC.gov (last visited July 22, 2022), https://bit.ly/3zcXo8x .............................. 11

Zeke Faux and Muyao Shen,
     *A $60 Billion Crypto Collapse Reveals a New Kind of Bank Run*,
     Bloomberg (May 19, 2022), https://bloom.bg/3SRjsie ....................................... 10

**J.A.168**

## INTRODUCTION

Plaintiff Custodia, a digital asset startup focused on serving as a bridge between the U.S. payment system and cryptocurrencies, has requested a "master account" with the Federal Reserve Bank of Kansas City ("FRBKC"). A master account would provide Custodia direct access to FRBKC financial services that Custodia would otherwise be required to access through an arrangement with a commercial bank, and it would result in Custodia's deposits sitting on the Federal Reserve balance sheet as liabilities of the nation's central bank. A master account for a novel entity focused on digital assets presents unique risks to FRBKC and the broader Federal Reserve System, and Custodia's request remains under careful consideration while FRBKC assesses these risks. This case is about whether Custodia can force FRBKC to rush a decision on Custodia's request before FRBKC has finished assessing the implications and risks related to granting Custodia direct access to the U.S. payment system and the Federal Reserve's balance sheet.

Custodia's request raises novel and unique questions because it is among the first entities with a Wyoming "Special Purpose Depository Institution" ("SPDI") charter to request a master account. By legislative design, an SPDI is not a traditional bank; Wyoming law prohibits Custodia from engaging in the traditional bank activity of lending and excuses it from insurance requirements that protect depositors. Thus, Custodia is seeking to become the first cryptocurrency-focused business—without Federal Deposit Insurance Corporation ("FDIC") insurance or any federal supervisor—to obtain direct access to FRBKC financial services.

This is not the first time a nontraditional business has tried to force access to Reserve Bank master accounts. Federal courts confronted similar claims in two recent lawsuits—*Fourth Corner*

and *TNB*—and both times the courts denied the plaintiffs relief.[1] This Court should follow suit and dismiss Custodia's Complaint. Were the Court to grant Custodia's demand, it would mark the first time that a Reserve Bank has been compelled to decide a master account request before it had adequately analyzed and mitigated the associated risks.

As a threshold matter, Custodia lacks standing and its suit is not ripe. In *TNB*, the plaintiff contended that the lack of a decision on its master account request after eighteen months constituted an actionable "constructive denial." The court disagreed and dismissed the complaint, concluding that the plaintiff lacked standing because FRBNY was still considering the request. Custodia, which is similarly situated, contorts its Complaint to try to avoid a similar fate. Instead of directly asking this Court to order FRBKC to grant its request for a master account (as TNB did), Custodia asks this Court to order FRBKC to *decide* the request. This is just obfuscation, as shown by Counts VII and VIII, which ask the Court to overrule FRBKC if its decision is to deny the request. And regardless, even in this contorted form, Custodia still lacks standing on the Complaint's own terms because the recast relief that Custodia seeks in Counts I through VI—that FRBKC make a decision—may not redress the injury it alleges (incurring bank fees, which Custodia would continue to incur if the decision is a denial). Meanwhile, Counts VII and VIII are contingent on future events and premature on their face.

Apart from these constitutional standing and ripeness deficiencies, Custodia's case at the very least is prudentially unripe. FRBKC continues to work on Custodia's request while both the executive and legislative branches of the federal government analyze regulation of the

---

[1] *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1053 (10th Cir. 2017) (two members of panel affirming dismissal of suit); *TNB USA Inc. v. Fed. Rsrv. Bank of N.Y.*, No. 1:18-CV-7978 (ALC), 2020 WL 1445806, at *6 (S.D.N.Y. Mar. 25, 2020) (holding that plaintiff lacked standing to challenge the Federal Reserve Bank of New York's ("FRBNY") continued deliberation on its master account request).

cryptocurrency industry in general and its potential access to master accounts in particular. For example, the Federal Reserve Board of Governors has finalized guidelines to assist the Reserve Banks in evaluating master account requests like this one. *See* Compl. ¶ 49 (referencing the Board's proposed guidelines). Instead of prematurely addressing Custodia's barrage of constitutional and statutory claims, this Court should allow these deliberative processes to play out.

While Custodia's entire Complaint fails due to a lack of standing and ripeness, its individual counts also fail to state a valid claim:

- Count I, asserted under the Administrative Procedure Act, fails because FRBKC is not an executive agency and even if it were, there has been no unreasonable delay.

- Counts III and V, asserted under the Due Process Clause, fail because due process claims require a plaintiff to show deprivation of a cognizable property interest and Custodia has no property interest in a master account. To the contrary, Congress unambiguously granted Reserve Banks discretion over whether to accept deposits from eligible depository institutions.

- Count VI, asserted under the Appointments Clause, fails because FRBKC's decision whether to grant a master account is not an exercise of the "executive Power" of the United States and because the individual tasked with that decision, FRBKC's president, is in any event an "inferior Officer" appropriately appointed and removable by the executive.

- Counts II, IV, VII, and VIII are claims for declaratory and mandamus relief that fail because (among other reasons) the Declaratory Judgment Act does not provide a private right of action and the Mandamus Act does not apply to FRBKC.

J.A.171

This memorandum addresses Custodia's claims and explains why each lacks merit. Ultimately, however, analysis of the myriad legal issues raised by Custodia's claims reinforces that this lawsuit is not ripe, either constitutionally or prudentially, so this memorandum closes by explaining why the Court should decline to decide this suit until FRBKC completes its review of Custodia's request. Custodia's master account request raises serious and novel issues and requires time for appropriate consideration. Rather than allowing Custodia to substitute its judgment for that of FRBKC, the Court should allow FRBKC to complete its review consistent with its mandate to ensure the safety and soundness of the nation's financial system.

## BACKGROUND

### A.     The Federal Reserve System Is Designed to Ensure Financial Stability

The Federal Reserve System, the nation's central bank, was established by the Federal Reserve Act of 1913 ("FRA"), 12 U.S.C. § 221 *et seq*. During the first 125 years of the Republic, the United States' financial system suffered recurrent fiscal emergencies including bank panics, bank failures, and scarce credit. In 1913, Congress passed the FRA, creating the Federal Reserve System to promote "the stability of the financial system and … to minimize and contain systemic risks through active monitoring." Fed. Rsrv. Sys., The Fed Explained: What the Central Bank Does, 35 Fed. Rsrv. Sys. 1, 1 (11th ed. 2021) [hereinafter "The Fed Explained"].[2] Among other things, the Federal Reserve serves the public interest by promoting a stable financial system and by setting and implementing monetary policy. *Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*, 906 F.

---

[2] Any factual materials discussed in this Background section are matters of public record appropriate for judicial notice. *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of … facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001) (en banc). Of course, legal materials are proper for the Court's consideration even without a request for judicial notice.

Supp. 2d 202, 232 (S.D.N.Y. 2012) (FRA entrusts Federal Reserve with maintaining stability of financial system), *aff'd*, 742 F.3d 37 (2d Cir. 2014). The Federal Reserve also works to promote a sound and well-functioning financial intermediation system—the process through which banks both act as the middleman between two parties in a financial transaction and take in funds from depositors and lend them out to borrowers.

The System consists of the Board of Governors of the Federal Reserve System (the "Board of Governors"); the Federal Open Market Committee (the "FOMC"); and twelve regional Reserve Banks, including FRBKC. This decentralized system reflects Congress's desire to balance government oversight with insulation from undue political pressure. *See Fasano v. Fed. Rsrv. Bank of N.Y.*, 457 F.3d 274, 277 (3d Cir. 2006); *Lewis v. United States*, 680 F.2d 1239, 1241 (9th Cir. 1982). Congress thoroughly considered this structure; indeed, "[f]ew issues in the history of this nation have been as thoroughly considered and debated as central banking and the regulation of the money supply." *Melcher v. Fed. Open Market Comm.*, 644 F. Supp. 510, 524 (D.D.C. 1986).

By deliberate congressional design, Reserve Banks serve governmental interests, but stand apart from the government. They are federal instrumentalities—corporations chartered pursuant to federal law (the FRA) to perform federal functions, namely the central bank's operational responsibilities. *See Starr*, 742 F.3d at 40; *see also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 624-25 (1983) (government's corporate instrumentalities have distinctive ownership structure and features that "permit [them] to manage their operations on an enterprise basis while granting them a greater degree of flexibility"). Consistent with their federal instrumentality status, Reserve Banks do not receive federal appropriations (but instead finance their operations through a combination of service fees and accumulated interest on securities they possess), *see* The Fed Explained at 4; they lack the authority

5

J.A.173

to promulgate regulations having the force of law, *see Scott v. Fed. Rsrv. Bank of Kansas City*, 406 F.3d 532, 536 (8th Cir. 2005); 12 U.S.C. § 248 (k); and they may enter into contracts and sue and be sued in their own names, 12 U.S.C. § 341 (Third), (Fourth).

Throughout the FRA, Congress authorized the Reserve Banks to carry out certain banking functions. *See, e.g.*, 12 U.S.C. §§ 341-361. In effect, Reserve Banks operate as bankers' banks to much of the banking industry. They carry out many payment, clearing, and settlement functions (many of which echo those that commercial banks provide to end-user customers), including distributing currency and coin to depository institutions, clearing checks, operating the FedWire and automated clearinghouse (ACH) systems, and serving as a bank for the U.S. Treasury. *See* 12 U.S.C. § 248a(b) (enumerating the services provided by Reserve Banks); The Fed Explained at 48.

While the FRA authorizes the Reserve Banks to perform certain functions, in some instances the Reserve Banks perform functions delegated to them by the Board of Governors. *See, e.g.*, 12 U.S.C. § 248(k) (allowing the Board to delegate certain functions to "administrative law judges, members or employees of the Board, or Federal Reserve banks"). For example, the Board of Governors has delegated to the Reserve Banks certain of the tasks associated with supervising and examining state member banks (state-chartered banks that have chosen to become members of the Federal Reserve System). *See* 12 C.F.R. § 265.11. Granting a master account, however, is not a delegated function. *See* 12 U.S.C. § 342.

## B.    Reserve Banks Consider Risks When Evaluating Master Account Requests

A master account allows a depository institution to make deposits into and withdrawals from an account held at and administered by a Reserve Bank without using an intermediary. *Reserve Maintenance Manual*, FederalReserve.gov (Nov. 19, 2018), https://bit.ly/3QnjMUl. A master account centralizes the account relationship between a depository institution and a Reserve

Bank. *Id.* Banks located in a geographic area that encompasses Wyoming direct requests for a master account to FRBKC. FRBKC's decision whether to grant a master account involves consideration of both the Reserve Bank's own risk related to the account holder (*e.g.*, credit risk, Bank Secrecy Act/anti-money-laundering compliance) and evaluation of broader policy concerns and systemic risks. Board of Governors of the Federal Reserve System, *Guidelines for Evaluating Account and Service Requests*, Docket No. OP-1747 ("Guidelines") at 8, https://bit.ly/3C59BiP.[3]

When a Reserve Bank provides certain services to master account holders, it may end up extending credit to them, even where the Reserve Bank takes steps to limit any extension of intraday or overnight credit to the institution. For example, check payment activity and incoming ACH items can result in check or ACH debits causing a master account to go negative. *See* 12 C.F.R. § 201.1, *et seq.* (establishing rules under which a Reserve Bank may extend credit to depository institutions and others); Federal Reserve Policy on Payment System Risk, FederalReserve.gov (Mar. 19, 2021), https://bit.ly/3zVvBd1 (outlining the methods used to provide intraday credit to ensure the smooth functioning of payment and settlement systems, while controlling credit risk to the Reserve Banks associated with such intraday credit). Furthermore, a Reserve Bank account holder's deposits—as recorded in a master account—sit on the Federal Reserve's balance sheet as liabilities, which has implications for the Federal Reserve's ability to effectuate monetary policy (through, for example, setting the interest rates paid on reserves held in master accounts) and promote U.S. financial stability. *See Monetary Policy, Credit and Liquidity Programs and the Balance Sheet*, FederalReserve.gov (Nov. 15, 2021), https://bit.ly/3dnokva.

Before Congress passed the Monetary Control Act of 1980 ("MCA"), Pub. L. No. 96-221,

---

[3] The Guidelines have not yet been published in the Federal Register. Page numbers in this Memorandum's citations to the Guidelines refer to PDF document pages.

Reserve Bank accounts and direct access to Reserve Bank services were generally reserved only for Federal Reserve "member" banks and the U.S. government. Member banks are subject to supervision by the Board of Governors. They are required to subscribe to stock in their regional Reserve Bank and maintain certain reserve amounts. *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1379 (Fed. Cir. 2019)*.* Because being a member bank comes with those responsibilities, the Reserve Banks offered payment services to members free of charge. *Greater Buffalo Press, Inc. v. Fed. Rsrv. Bank of N.Y.*, 866 F.2d 38, 40 (2d Cir. 1989).

In 1980, through the MCA, Congress amended the FRA to enable nonmember depository institutions to obtain direct access to Reserve Bank services. 12 U.S.C. § 342 (adding "other depository institutions" to the list of entities from which Reserve Banks "may" receive deposits). The MCA then required the Board of Governors to set a uniform, nondiscriminatory pricing schedule for services Reserve Banks offer, provided that "nonmembers shall be subject to any other terms, including a requirement of balances sufficient for clearing purposes, that the Board may determine are applicable to member banks." 12 U.S.C. § 248a(c)(2). Since the MCA's enactment, nonmember master account holders typically have been engaged in the traditional business of banking—taking deposits and lending—under traditional banking charters, subject to FDIC insurance requirements and federal supervision. *See* Andrew P. Scott, Cong. Rsch. Serv., No. R47014, An Analysis of Bank Charters and Selected Policy Issues at 7 (Jan. 21, 2022), https://bit.ly/3Qh5Qei [hereinafter "CRS Bank Charter Report"]; *see also* 12 U.S.C. § 321 (describing member banks).

### C.     Cryptocurrencies Present Novel Risks

Cryptocurrencies are digital assets, certain of which have the potential to streamline access to banking services, improve cross-border payment systems, and lower transaction costs. *See, e.g.*, Bd. of Governors, Fed. Rsrv. Sys., Money and Payments: The U.S. Dollar in the Age of Digital

Transformation at 14-16 (Jan. 2022), https://bit.ly/3SFQ4uY. The cryptocurrency industry remains in its infancy, however, and the assets themselves face a number of significant questions and are subject to an uncertain regulatory landscape.

One set of questions is operational in nature, such as how digital assets can be safely custodied. *See, e.g.*, SEC, Div. of Examinations, The Division of Examinations' Continued Focus on Digital Asset Securities (Feb. 26, 2021), https://bit.ly/3Afdr7M (discussing "the risks and practices related to the custody of digital assets"). A second set of questions relates to the pseudonymous nature of the markets: cryptocurrency transactions occur between "wallets" whose owners are anonymized, which means cryptocurrencies can be more easily used to move proceeds of criminal conduct. *See, e.g.*, President's Working Group on Fin. Mkts., the Fed. Deposit Ins. Corp., and the Office of the Comptroller of the Currency, Report on Stablecoins at 19-21 (Nov. 1, 2021), https://bit.ly/3PQdJXv [hereinafter "Report on Stablecoins"]; Press Release, U.S. Dep't of Treasury, *U.S. Treasury Sanctions Notorious Virtual Currency Mixer Tornado Cash* (Aug. 8, 2022), https://bit.ly/3bQcoS8; Ltr. from Sen. Maggie Hassan to Attorney Gen. Merrick Garland (Sept. 26, 2021), https://bit.ly/3bKjSWN (writing that the "anonymity provided by cryptocurrency has helped facilitate its use by criminals in a myriad of ways"). A third set of questions relates to manipulation and fraud, which can proliferate in markets where regulatory oversight is weak or uncertain. *See, e.g.*, Press Release, U.S. Dep't of Justice, *CEO of Titanium Blockchain Pleads Guilty in $21 Million Cryptocurrency Fraud Scheme* (July 25, 2022), https://bit.ly/3dmrX4F; Press Release, U.S. Dep't of Justice, *Justice Department Announces Enforcement Action Charging Six Individuals with Cryptocurrency Fraud Offenses in Cases Involving Over $100 Million in Intended Losses*, (June 30, 2022), https://bit.ly/3SB8z3L. And a fourth set of questions concerns the volatility of the assets and how such volatility can contribute to runs on, and collapses of, entire

asset classes. *See, e.g.*, David Yaffe-Bellany, Erin Griffith, and Ephrat Livni, *Cryptocurrencies Melt Down in a 'Perfect Storm' of Fear and Panic*, N.Y. Times, (May 12, 2022), https://nyti.ms/3SIUYHV. Indeed, even "stablecoins," a type of cryptocurrency theoretically pegged to the value of a second asset (including national currencies like the U.S. dollar), have suffered runs and collapses. *See* Zeke Faux and Muyao Shen, *A $60 Billion Crypto Collapse Reveals a New Kind of Bank Run*, Bloomberg (May 19, 2022), https://bloom.bg/3SRjsie.

Cryptocurrency's risks and potential benefits have garnered attention from the White House, Congress, and federal financial agencies. *See, e.g.*, Exec. Order No. 14,067 (Mar. 9, 2022), https://bit.ly/3IYJ4VI; Report on Stablecoins at 1. Public officials have called for further review and regulation of responsible development of digital assets and their potential integration into the financial system. *See* U.S. House Comm. on Fin. Servs., Monetary Policy and the State of the Economy (June 23, 2022), https://bit.ly/3QoglMQ. For all the promise that blockchain technology and digital assets may bring to payments and banking (among other domains), many significant questions and concerns remain.

### D.   Wyoming "Special Purpose Depository Institutions" Have Unique Features

As part of its effort to encourage cryptocurrency businesses to form in Wyoming, Wyoming promulgated the SPDI charter in 2018 to assist "blockchain innovators" in accessing "secure and reliable banking services." Wyo. HB0074 § 1(a)(i). SPDIs may provide cryptocurrency custody services, accept deposits, and provide payment services. *See* Wyo. Stat. § 13-12-103. SPDIs may not make loans; they attempt to derive profit from fee-based businesses (such as cryptocurrency custody). *See* Wyo. Stat. § 13-12-103(c).

SPDIs have unique features that distinguish them from banks and that weaken or remove protections that exist for standard bank customers. *See* Compl. ¶¶ 28-29. For example, SPDIs are exempt from Wyoming's requirement that its banks obtain FDIC insurance. *See* Wyo. Stat. § 13-

**J.A.178**

2-103(a). FDIC insurance "protects depositors if a bank fails … and helps prevent bank runs by providing consumers with the confidence that their money will be available during periods of economic or financial stress." CRS Bank Charter Report at 7. FDIC insurance also provides a well-established process for the orderly resolution of a failed bank that protects the bank's customers by preserving depositors' access to their money and their ability to make and receive payments during the transfer of the customer relationship to another bank. *See When a Bank Fails—Facts for Depositors, Creditors, and Borrowers*, FDIC.gov (last visited July 22, 2022), https://bit.ly/3zcXo8x.

Wyoming law prohibits an SPDI from "commenc[ing] business" until it has not only received an SPDI charter from the State but also a "certificate of authority to operate from the [Banking] commissioner." Wyo. Stat. § 13-12-116 (2019); *see* State of Wyoming, Div. of Banking, General Overview of the Special Purpose Depository Institution Chartering Process, https://bit.ly/3dvljcf.

### E.      Custodia Seeks Both a Master Account and Federal Reserve Membership

Custodia (formerly known as Avanti) is an SPDI that plans to offer customers a variety of digital-asset-related services including custody of cryptocurrencies. To facilitate its business, it intends to issue the "Avit," a stablecoin-like payment product of its own creation recorded on a blockchain. Nate DiCamillo*, Unpacking the Avit, Avanti Bank's New Digital Asset Being Built With Blockstream*, CoinDesk.com (Sept. 14, 2021), https://bit.ly/3dujLPP; *see also* Avanti Fin. Grp., Inc., Comment Letter on Proposed Guidelines for Evaluating Accounts and Services Requests (July 12, 2021), https://bit.ly/3JIAf2N.

On October 29, 2020, Custodia submitted a request for a master account to FRBKC. Compl. ¶ 18. Since that time, FRBKC has engaged extensively with Custodia regarding its request. *See* Compl. ¶¶ 37, 42-43, & 54. Custodia alleges that it intends to begin operating without a master

J.A.179

account, instead working with what it characterizes as a "correspondent" bank (through a traditional bank-customer relationship) that has its own master account. Compl. ¶ 8. Custodia does not allege that it has received the "certificate of authority" required by Wyoming law to "commence business." *See supra* at 11.

After requesting a master account, Custodia also filed an application with the Board of Governors seeking membership in the Federal Reserve System. Compl. ¶ 4; *see* 12 U.S.C. § 321 (Board of Governors reviews membership applications). Membership is separate from a request to a Reserve Bank for a master account. If Custodia is granted membership to the Federal Reserve System, it will then be subject to federal banking supervision and regulation. *See* CRS Bank Charter Report at 2-3 (explaining that nonmember banks are usually subject to FDIC oversight and member banks are subject to Federal Reserve oversight).

But Custodia has not waited for a decision on either its request for a master account or its membership application. Instead, Custodia filed this action to cut short FRBKC's evaluation of its master account request.

## LEGAL STANDARD

The Court's function on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (cleaned up). To overcome a Rule 12(b)(6) motion to dismiss, a complaint's well-pleaded factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Though the Court construes well-pleaded factual allegations in the light most favorable to the plaintiff, it does not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The Court must dismiss any claim over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

**I.     Count I: Custodia's APA Claim Fails Because FRBKC Is Not an Agency nor Has Custodia Suffered an Unreasonable Delay**

Count I of Custodia's Complaint fails for two reasons. First, the APA is inapplicable to FRBKC because it is not an agency. Second, regardless of whether FRBKC is an agency, Custodia has not suffered an "unreasonable delay."

### A.     FRBKC is not an agency

*1. The Reserve Banks are not "agencies" under the APA.* The APA defines "agency" as an "authority of the Government of the United States." 5 U.S.C. § 701(b)(1); *see also* 5 U.S.C. § 551(1) (same); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 525 n.6 (2009). When assessing whether an entity is an agency within the meaning of the APA, courts "examine the structure, function, and mandate of the entity in question." *New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 531 (2d Cir. 2010). Courts have cautioned that "[t]he wording of section 701(b)(1) indicates that we should not give the definition of 'agency' a more expansive reading" than what is present in the text. *Id*. at 532.

To qualify as an agency, an entity must "exercise substantial independent authority" or, put differently, be the "center of gravity in the exercise of administrative power." *Dong v. Smithsonian Inst.*, 125 F.3d 877, 881-82 (D.C. Cir. 1997) (holding that the Smithsonian is not an agency). If an entity "does not make binding rules of general application or determine rights and duties through adjudication" and "issues no orders and performs no regulatory functions," it is not an agency. *Id*. at 882; *see also Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 110 (D.D.C. 2020) (finding that National Security Commission on AI was not an agency under the

13

APA); *McKinney v. Caldera*, 141 F. Supp. 2d 25, 34 (D.D.C. 2001) (finding that Judge Advocate General's Office was not an agency under the APA).

The Reserve Banks are not the center of gravity of the exercise of administrative power and do not make binding rules of general application or determine rights and duties through adjudication. *See Dong*, 125 F.3d at 881-82. The Reserve Banks cannot promulgate regulations with the force of law. *See Scott*, 406 F.3d at 536; 12 U.S.C. § 248(k). Indeed, the Federal Reserve's rulemaking authority is vested in the Board of Governors and may not be delegated. 12 U.S.C. § 248(k). Moreover, Reserve Bank employees are not federal government employees. *Scott*, 406 F.3d at 536. They do not participate in the Civil Service Retirement System, are not subject to federal travel regulations, and are not covered by the Federal Employees' Compensation Act. *United States ex rel. Holbrook v. Brink's Co.*, 336 F. Supp. 3d 860, 868-69 (S.D. Ohio 2018) (citing *Lewis*, 680 F.2d at 1241); *cf. Dong*, 125 F.3d at 883 (even though Smithsonian employees are covered by Federal Employees' Compensation Act, Smithsonian is not an agency).

Nor do the banking services performed by Reserve Banks, including decisions regarding master accounts, amount to such "substantial" and "independent" powers that they transform the Reserve Banks into agencies under the APA. *See Dong*, 125 F.3d at 881. The ability to make decisions on matters such as a master account request is not sufficient to qualify an entity as an agency. *See Lombardo v. Handler*, 397 F. Supp. 792, 794 (D.D.C. 1975) (National Academy of Sciences is not an "agency" under the APA even though it has authority to veto Environmental Protection Agency's suspension of vehicle-emission standards), *aff'd*, 546 F.2d 1043 (D.C. Cir. 1976). As the D.C. Circuit explained in *Dong*, "that an organization makes decisions does not always mean that it is a government agency." 125 F.3d at 881. For example, the Smithsonian museum at issue in *Dong* had a police force, received federal funds and grants, and made decisions

on how to distribute funds to research grantees, but the court reasoned that these did not make it an agency because private research universities also receive federal funds and private museums also have security personnel. *Id*. at 882. Similarly, services that may be provided upon grant of a master account—accepting deposits, offering banking services, permitting account holders to request credit—are akin to services provided by private-sector banks and are not governmental in nature. Moreover, the Board of Governors' general oversight of the Reserve Banks means that they lack the executive "independence" required to qualify as APA agencies. *See id*. at 881; *see supra* at 5-6 (describing relationship between Reserve Banks and Board of Governors).

Finally, the Reserve Banks' status as federal instrumentalities, *see* Compl. ¶ 112, does not make them agencies within the meaning of the APA. *See Bancec*, 462 U.S. at 626-27 (stating that U.S. law should "respect the separate juridical identities of different agencies or instrumentalities"); *In re Hoag Ranches*, 846 F.2d 1225, 1227 (9th Cir. 1988) (referencing Reserve Banks while stating that "[m]any financial institutions are federally chartered and regulated and are considered federal instrumentalities, without attaining the status of government agencies"); *Lewis*, 680 F.2d at 1243 (Reserve Banks are not federal agencies under the Federal Tort Claims Act)[4]; *cf. McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) (treating Reserve Banks as not being agencies under FOIA definition, which includes any entity that qualifies as an agency under APA definition); *Irwin Mem'l Blood Bank of S.F. Med. Soc'y v. Am. Nat'l Red Cross*, 640 F.2d 1051, 1052 (9th Cir. 1981) (finding that the Red Cross was not an agency under FOIA).

---

[4] The Ninth Circuit's holding in *Lewis* that Reserve Banks are not agencies under the Federal Tort Claims Act is especially telling, as that statute uses a broader definition of agency than the APA. *See Dong*, 125 F.3d at 878-80 (explaining that definition of agency under FOIA and FTCA is broader than APA definition).

*2. Reserve Banks have not been considered agencies under a variety of statutes.* In addition to the precedent just described concerning the APA's definition of "agency," many courts have held, for many purposes and under numerous statutory schemes, that the Reserve Banks are not agencies of the federal government. *See, e.g.*, *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 976 (Fed. Cir. 2020) (Reserve Banks are distinct from the government and thus "persons" for the review provisions of the America Invents Act); *United States v. Wells Fargo & Co.*, 943 F.3d 588, 597 (2d Cir. 2019) (Reserve Banks are not federal agencies under the False Claims Act); *Scott*, 406 F.3d at 538 (Reserve Banks are not federal agencies for purposes of Federal Rule of Appellate Procedure 4 or Title 28 of the U.S. Code); *Fed. Rsrv. Bank of St. Louis v. Metrocentre Imp. Dist. No. 1*, 657 F.2d 183, 186 (8th Cir. 1981) (Reserve Banks are instrumentalities for purposes of special assessments imposed by state and local governments), *aff'd*, 455 U.S. 995 (1982); *Katsiavelos v. Fed. Rsrv. Bank of Chicago*, 859 F. Supp. 1183, 1185 (N.D. Ill. 1994) (Reserve Banks are not federal agencies under the Rehabilitation Act).

*3. Custodia's claims to the contrary are without merit.* Custodia relies on two cases to assert that FRBKC is an agency under the APA: *Flight International Group, Inc. v. Federal Reserve Bank of Chicago*, 583 F. Supp. 674 (N.D. Ga. 1984), and *Lee Construction Co. v. Federal Reserve Bank of Richmond*, 558 F. Supp. 165 (D. Md. 1982). In *Flight International Group*, the Northern District of Georgia incorrectly reasoned that being an instrumentality of the government is the same as being an agency, 583 F. Supp at 678 (citing cases)—a position the Supreme Court had rejected the prior year in *Bancec*, 462 U.S. at 624. *Flight International Group*, moreover, was vacated and "shall have no precedential effect." *Flight Int'l, Inc. v. Fed. Rsrv. Bank of Chi.*, 597 F. Supp. 462 (N.D. Ga. 1984) (Mem.).

*Lee* fares no better. The *Lee* court wrote that the Reserve Banks "are seemingly not

designated as agencies for any purpose," 558 F. Supp. at 179, before incorrectly relying on cases finding the Reserve Banks to be *instrumentalities* as support for an illogical leap that they must therefore be *agencies*, *see id.* at 179 n.20. The faulty reasoning displayed in both cases is underscored by their subsequent treatment. In the years since *Flight International Group* and *Lee* were decided, the Fourth and Eleventh Circuits have described the Reserve Banks not as agencies but as federal instrumentalities. *See, e.g.*, *Mun. Ass'n of S.C. v. USAA Gen. Indem. Co.*, 709 F.3d 276, 284 (4th Cir. 2013); *Jefferson Cnty. v. Acker*, 137 F.3d 1314, 1321-22 (11th Cir. 1998), *rev'd on other grounds*, 527 U.S. 423 (1999).

For all these reasons, FRBKC is not an "agency" under the APA.

### B.      Custodia has not suffered an unreasonable delay under the APA

Regardless of whether FRBKC is considered an agency, Custodia's APA claim should be dismissed. Custodia's allegation that it has suffered an "unreasonable delay" is without merit. At the heart of Custodia's claim is its assertion that 12 U.S.C. § 4807 sets a one-year period for FRBKC to act on its request for a master account. *See* Compl. ¶¶ 6, 46, 74, 87, & 107. But 12 U.S.C. § 4807 does not apply to FRBKC. That statute provides that "[e]ach Federal banking agency" shall take action on "applications" within 12 months from the date on which a completed application is received. 12 U.S.C. § 4807. "Federal banking agency" is a defined term encompassing three specific agencies: the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, and the FDIC. 12 U.S.C. §§ 1813(z) & 4801(1). The Reserve Banks are not listed and are therefore not Federal banking agencies within the meaning of § 4807. Congress has promulgated no timetable for FRBKC's decision whether to "receive … deposits" from an institution. *See* 12 U.S.C. § 342.

Where no statute sets a mandatory deadline for action, a delay is not unreasonable as a matter of law so long as the agency has a reasonable explanation for it. *See Forest Guardians v.*

*Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999). For a delay to warrant a court to order agency action within a specific time frame, the delay must be "egregious." *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984). Even if FRBKC were an agency under the APA, Custodia's Complaint itself makes clear that FRBKC has not taken an unreasonable amount of time to consider Custodia's request, given the extraordinary nature of that request. The Court need not look beyond three core facts about Custodia's request to understand why the time spent considering of the request has been reasonable and certainly not "egregious": (1) an SPDI is permitted by statute to provide cryptocurrency services to customers, but it is forbidden from lending and excused from insurance requirements, *see* Wyo. Stat. § 13-12-103(a), (c); (2) Custodia would be the first SPDI to obtain a master account, *see* Compl. ¶ 31 n.1; and (3) Custodia has not pleaded that it intends to seek or has sought FDIC insurance, and it is presently not subject to supervision by any federal regulator. Almost all state-chartered deposit-taking banks are required to have FDIC insurance, which comes with an accompanying set of applicable laws and federal supervision that together provide enhanced oversight and standards for capital, liquidity, and other prudential requirements.

Custodia has itself acknowledged that "the digital asset industry's interactions with traditional U.S. dollar intermediaries pose unique risks and regulatory challenges to U.S. payment system regulators, some of which have not yet manifested." Avanti Fin. Grp., Inc., Comment Letter on Proposed Guidelines for Evaluating Accounts, *supra*. FRBKC, both on its own and as part of the larger Federal Reserve System, has a responsibility to maintain the stability of the U.S. financial system and act in the public interest. *See id.* at 4 ("Avanti supports the Federal Reserve's paramount goal of ensuring the safety and soundness of the U.S. payment system."). Introducing links between the Federal Reserve's balance sheet and cryptocurrencies, including stablecoins and

other similar instruments, poses credit and stability risks both to the individual Reserve Bank and to the Federal Reserve System as a whole. For example, given that direct access to certain FRBKC services necessarily involves credit risk to FRBKC from account holders, *see supra* at 7, what measures must FRBKC take to protect itself and Custodia's customers against the risk of Custodia failing? Given that the Federal Reserve's balance sheet will reflect Custodia's deposits as liabilities, how large should FRBKC anticipate those balances will be, how will they scale if other similar SPDIs are granted master accounts, and what impact might they have on monetary policy and financial stability? Given the pseudonymous nature of cryptocurrency transactions, how will Custodia's compliance with Bank Secrecy Act and Anti-Money Laundering laws be monitored? How does Custodia's reliance on the cryptocurrency industry to generate revenue complicate or compound these questions? What about the absence of FDIC insurance or any federal regulator or supervisor? And how does Custodia's business model, which is entirely digital and has international reach, impact its ability to scale quickly, and how would rapid growth affect these other questions?

Resolving these and other serious, complex questions requires time and careful consideration. Moreover, Custodia's master account request involves economic considerations, where courts are more tolerant of longer periods of deliberation. *See Forest Guardians*, 174 F.3d at 1191 n.18 (citing *TRAC*, 750 F.2d at 80, for the proposition that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"). This further supports the reasonableness of FRBKC's consideration of the request, and indeed courts have approved significantly longer timetables even for routine issues. *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013) (holding that Department of Interior's approximately six-year delay in implementing drainage plan was "understandable"

19

**J.A.187**

given "the scope and cost of the project"); *Gliana v. Blinken*, — F. Supp. 3d —, 2022 WL 910338, at *6 (D.D.C. Mar. 29, 2022) (granting motion to dismiss claim that 15-month wait in processing K-1 visa application was an unreasonable delay); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020) (granting motion to dismiss claim that 25-month delay in processing waiver eligibility claim for foreign national was unreasonable). In light of courts' routine acceptance of multiyear deliberations, Custodia's complaint that it has suffered an unreasonable delay is meritless.

## II.   Counts III and V: Because FRBKC Has Discretion Over Master Account Requests, Custodia Does Not Have a Property Interest and Its Due Process Claims Fail.

Counts III and V, alleging due process violations, should also be dismissed. Assuming that the Due Process Clause applies to FRBKC as a non-agency instrumentality, FRBKC has discretion to grant or deny a master account. Consequently, Custodia does not have a property interest cognizable under the Due Process Clause.

### A.   FRBKC has discretion to determine whether to grant a master account (Counts III and V)

Custodia's due process claims fail because Custodia does not have a property interest in a master account. To survive a motion to dismiss a due process claim, a plaintiff must show that it possesses "a protected property interest to which due process protection was applicable" and was not "afforded an appropriate level of process" when being deprived of that property interest. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). A property interest requires "more than an abstract need or desire" or a "unilateral expectation" that one will receive a benefit. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, Custodia must "have a legitimate claim of entitlement to it." *Id.* "Such an interest … is created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007).

20

*1. The FRA explicitly gives Reserve Banks discretion regarding whether to accept deposits.* No statute entitles Custodia to a "master account." Rather, the FRA unambiguously grants FRBKC discretion to decide whether to accept deposits from a depository institution. Section 342 provides that a Reserve Bank "*may* receive from any of its member banks, or other depository institutions, ... deposits...." 12 U.S.C. § 342 (emphasis added). "'May' does not just suggest discretion, it *clearly* connotes it." *Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) (cleaned up). Reserve Banks' discretion to *receive* a deposit plainly includes the discretion to *decline to receive* a deposit—or all deposits—from an institution. The Supreme Court held as much in the Reserve Banks' early days, concluding that § 342 does not "impose[] upon reserve banks any obligation to receive" deposits; it merely "confers authority to do so." *Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*, 262 U.S. 649, 662 (1923). This plain statutory text makes clear that while Federal Reserve Banks have the authority to accept deposits—and therefore to open deposit accounts, such as master accounts—the FRA does not require them to do so.

*2. Congress confirmed that discretion when it passed the MCA.* Had Congress disagreed with the Supreme Court's interpretation in *Farmers*, it could have revoked the Reserve Banks' discretion when it revised § 342. Instead, through the MCA, Congress amended § 342 to expand Reserve Banks' discretion, allowing them to decide whether to receive deposits from "other depository institutions"—*i.e.*, nonmember entities. Congress could easily have changed "may" to "shall," but it chose to leave Reserve Bank discretion intact. When Congress amends a statute without changing language previously interpreted by courts, that "is convincing support for the conclusion that Congress accepted and ratified" the courts' interpretation of that language. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project*, 576 U.S. 519, 536 (2015).

*3. Section 248a Does Not Create an Entitlement to a Master Account.* Passing over

21

§ 342's unambiguous grant of discretion to create deposit accounts, Custodia hangs its hat on 12 U.S.C. § 248a. But § 248a does not apply here; it discusses powers and actions of the *Board of Governors*, not the Reserve Banks. The section is contained in a subchapter titled "Board of Governors of the Federal Reserve System." *See* 12 U.S.C. §§ 241-252; *compare* 12 U.S.C. §§ 341-364 (subchapter titled "Powers and Duties of Federal Reserve Banks"). It directs *the Board* to take certain actions. *See* § 248a(a) ("the Board shall publish for public comment a set of pricing principles"); *id.* ("the Board shall … put into effect a schedule of fees for such services"); *id.* § 248a(d) ("The Board shall require reductions in the operating budgets of the Federal Reserve banks"). It would be anomalous for Congress to hide a requirement—and a revolutionary one at that—that Reserve Banks must grant direct access to the U.S. payment system to all nonmember depository institutions, irrespective of risk presented, in a provision that isn't even addressed to the Reserve Banks. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (courts should interpret statutes with a recognition that Congress does not "hide elephants in mouseholes").

Even if § 248a placed requirements on FRBKC, it does not create an obligation to provide Custodia or any other institution a master account. Section 248a instructs the Board to "put into effect a schedule of fees," 12 U.S.C. § 248a(a), for certain payment services and requires those services to be made available on a nondiscriminatory pricing basis to nonmember banks, so long as the nonmembers meet criteria that the Board has set for members, including maintaining minimum "balances sufficient for clearing purposes," *see* 12 U.S.C. § 248a(c). This section says nothing about whether a depository institution is entitled to a master account in the first instance—nor would one expect it to; that subject is addressed in § 342. Custodia alleges it is entitled to a master account because (1) the services listed in § 248a(b) are purportedly conditioned on having a master account and (2) as a nonmember depository institution, it is entitled to an account under

22

the principle that covered services are "available to" such institutions. *See* Compl. ¶ 106. But the fact that a master account may be a prerequisite to obtaining some Federal Reserve Bank services does not mean that every depository institution is automatically entitled to one.

To the contrary, discretion is baked into § 248a. While § 248a(c)(2) calls for services to be priced the same for nonmember and member banks, it authorizes the Board to make the availability of services contingent on "any other terms, including a requirement of balances sufficient for clearing purposes, that the Board may determine are applicable to member banks." 12 U.S.C. § 248a(c)(2). Even the provision on which Custodia pins its argument, in other words, reinforces the basic truth that the exercise of discretion is necessary to further the mission of the Federal Reserve System.

All told, when read together, § 248a and § 342 stand for the propositions that (i) Federal Reserve Banks have discretion to accept (or reject) deposits—and thus master account requests—from a given depository institution and (ii) if a Reserve Bank elects to accept deposits from a nonmember depository institution, then that institution can seek access to any enumerated service that requires a master account at the same price paid by member banks. These statutes do not stand for the proposition that any nonmember depository institution has a statutory right to such services, or to a master account, irrespective of the risk its business presents to the Reserve Bank or the Federal Reserve System more broadly. If that is what Congress intended, it would have amended § 342 to change "may" to "shall." Far from negating the discretion provided in § 342, the mandatory language of § 248a highlights the importance of that discretion.

Custodia's position—that every eligible depository institution holding any state charter is automatically entitled to a master account—would turn Congress's carefully crafted structures on their head. Custodia is seeking a right to transact business directly with FRBKC: to make deposits

into and withdrawals from an account held on the books of and administered by FRBKC without using an intermediary. Reading the FRA to entitle every depository institution to a master account without Reserve Bank review would put each individual state in control of access to the national payment system, Federal Reserve financial services, and the Federal Reserve balance sheet. A state could create new charters with whatever standards and business powers it chose, subject to whatever review or ongoing oversight that state might choose to provide, and the Reserve Banks could then be obligated to provide master accounts and services directly to any depository institution that the state saw fit to charter.

Through the FRA, Congress charged the Board of Governors, the FOMC, and the Reserve Banks with ensuring the safety and reliability of the entire nation's payment system and operating "in furtherance of the *national* fiscal policy." *See Fed. Rsrv. Bank of Boston v. Comm'r of Corps. & Tax'n*, 499 F.2d 60, 62 (1st Cir. 1974) (emphasis added). Given that the FRA and MCA were intended to strengthen federal oversight of the banking system and control over the implementation of monetary policy, Custodia's proffered construction cannot be correct. Nothing in the text, structure, or history of the FRA suggests that Congress intended to substitute the judgment of an individual state for that of the Federal Reserve System to ensure a safe, reliable, and smooth-functioning U.S. payment system. *Whitman*, 531 U.S. at 468.

*4. SPDIs highlight why discretion was built into the FRA.* While FRBKC has long encouraged state innovations in banking and maintained positive relationships with state banking authorities, the SPDI charter highlights precisely why careful review and discretion are necessary before a novel entity may access directly the national payment system and the Federal Reserve balance sheet. Granting an SPDI—or another digital asset business lacking insurance and federal oversight—a master account could present risk to FRBKC and the Federal Reserve System in a

24

number of ways:

*First,* a master account would result in FRBKC potentially extending credit to Custodia through, for example, checks or ACH transfers taking Custodia's master account balance negative (creating a daylight overdraft) or through short-term borrowing from the discount window. *See supra* Background, Section B.[5] As explained in Background Sections C and D, Custodia's focus on providing cryptocurrency-adjacent services to customers presents increased risk of failure, and the absence of FDIC insurance presents risk to FRBKC and Custodia's customers that FRBKC would have to evaluate and manage in the event of insolvency/resolution. If volatility in the cryptocurrency market or the collapse of a particular cryptocurrency were to affect multiple depository institutions with master accounts (or even one large, interconnected depository institution), the risk to FRBKC, the public, and U.S. financial stability could be significant. *See* Report on Stablecoins at 11-12.

*Second,* these risks are magnified by fraud and manipulation of cryptocurrencies and other digital assets, and those assets' current volatility. *See supra* Background, Section C. Enacting a regulatory framework for the cryptocurrency industry may help mitigate these risks. But in the meantime, the magnitude of these dynamics, their potential impact on Custodia, and the risk that impact poses to FRBKC and the Federal Reserve System require further assessment.

*Third*, depository institutions' custody or issuance of cryptocurrency presents unique compliance challenges. *See* SEC Staff Accounting Bulletin No. 121, 17 C.F.R. Part 211 (Apr. 11, 2022). Bank Secrecy Act rules require that financial institutions work with the government to

---

[5] The discount window is a Reserve Bank function providing an extension of credit to a depository institution to help alleviate liquidity strains at the institution and in the banking system. It is a safety-valve measure designed to relieve pressures in reserve markets. *See The Discount Window and Discount Rate*, FederalReserve.gov (July 12, 2022), https://bit.ly/3z504Fl.

J.A.193

detect financial crimes, while anti-money-laundering rules seek to directly combat money laundering.[6] But a key feature of cryptocurrencies is that, although the transactions are publicly recorded on the blockchain, the identities of the individuals or entities transacting generally are not. This has made cryptocurrencies a desirable method to move proceeds of criminal conduct, and the extent to which cryptocurrency depositories know the true identities of their customers—or, even if so, would know when a customer transfers ownership of a digital asset to an unknown third party—requires careful consideration.[7]

*Fourth*, the Federal Reserve balance sheet will reflect Custodia's deposits as liabilities. FRBKC has substantial experience with how master accounts held by traditional banks typically affect the balance sheet. But the extent to which Custodia or other SPDIs may place deposits on the balance sheet, and the impact that this may have on the Federal Reserve System's goals of effectuating monetary policy and preserving U.S. financial stability, is a subject of ongoing

---

[6] *See, e.g.*, Office of the Comptroller of the Currency, *Bank Secrecy Act (BSA)*, https://bit.ly/3zzwND5.

[7] The New York Department of Financial Services recently announced its first penalty against a cryptocurrency platform, imposing a $30 million fine against Robinhood Crypto, LLC for significant failures in its consumer protection and anti-money laundering obligations, plus cybersecurity lapses. *See* Press Release, State of N.Y., *DFS Superintendent Harris Announces $30 Million Penalty on Robinhood Crypto for Significant Anti-Money Laundering, Cybersecurity, & Consumer Protection Violations* (Aug. 2, 2022), https://on.ny.gov/3vX1CAy. Numerous federal agencies have issued guidance regarding anti-money laundering and know-your-customer requirements as they relate to cryptocurrency. *See, e.g.*, U.S. Treasury, Fin. Crimes Enforcement Network, No. FIN-2019-A003, Advisory on Illicit Activity Involving Convertible Virtual Currency (May 9, 2019), https://bit.ly/3bFYJgE; U.S. Treasury, Office of Foreign Assets Control, Sanctions Compliance Guidance for the Virtual Currency Industry (Sept. 21, 2021), https://bit.ly/3JMMbjP; *see also* Press Release, U.S. Dep't of Treasury, *U.S. Treasury Sanctions Notorious Virtual Currency Mixer Tornado Cash*, *supra*. These latest sanctions against Tornado Cash are particularly relevant since Tornado Cash operates on the Ethereum blockchain, the same blockchain Custodia plans to launch with. *See* Nate DiCamillo, *Unpacking the Avit*, *supra*.

analysis.

These risks and open questions underscore why it is so important for FRBKC to carefully evaluate requests for master accounts by cryptocurrency-focused businesses, particularly those that lack FDIC insurance or any federal supervision. If FRBKC lacked discretion over whether to grant Custodia's request, any number of SPDIs could automatically obtain direct access to FRBKC financial services and place deposits on the Federal Reserve balance sheet, irrespective of the risks to the Federal Reserve and to the stability of the U.S. payment system.

**5. *Custodia's reliance on Judge Bacharach's* Fourth Corner *opinion is unpersuasive.***

These considerations also help explain why Custodia's reliance on Judge Bacharach's separate opinion in *Fourth Corner Credit Union* is misguided. *See Fourth Corner*, 861 F.3d at 1068; Compl. ¶¶ 51, 133, 142. In *Fourth Corner¸* a divided panel affirmed dismissal of Fourth Corner's complaint against FRBKC with each judge writing separately. Judge Moritz believed that Fourth Corner's case was legally meritless because the bank sought to provide banking services to the marijuana industry, an illegal activity under the Controlled Substances Act. *Id.* at 1058. Judge Matheson believed that Fourth Corner's case was not ripe because its business model was evolving and it was uncertain how FRBKC might respond to an updated master account request. *Id.* at 1060-61. In reaching those conclusions, both judges necessarily rejected the notion that every state-chartered depository institution is automatically entitled to a master account and instead presumed that FRBKC had discretion to consider Fourth Corner's request. Similarly, in *TNB*, the court likewise presumed that FRBNY had discretion over issuance of master accounts when it granted FRBNY's motion to dismiss on standing and ripeness grounds. *See TNB*, 2020 WL 1445806, at *4.

Judge Bacharach, in contrast, argued that § 248a(c)(2) creates a nondiscretionary right to a

27

**J.A.195**

master account. *Fourth Corner*, 861 F.3d at 1068. But Judge Bacharach erred by concluding that § 248a(c)(2)'s provisions directed to the Board of Governors regarding nondiscriminatory pricing of Federal Reserve services negated § 342's direct grant of discretion to Reserve Banks to decide whether to accept deposits. His view that "§ 342 does not address which institutions can access Federal Reserve services," *id.* at 1073-74, misses the point of the discretion conferred by § 342: that provision does not specify which institutions are entitled to master accounts precisely because it instead gives the Reserve Banks discretion to decide from which institutions they wish to accept deposits.

Judge Bacharach's opinion also fails to account for the monumental shift in regulation of the nation's financial system that his reading could create. Each state could have the authority to dictate the operations of the Federal Reserve and potentially frustrate national monetary policy by chartering novel and risky institutions to which FRBKC and other Reserve Banks could then be forced to grant accounts. As a result, the Federal Reserve could be forced to assume the risks those businesses pose to the payment system, monetary policy, financial stability, and the Federal Reserve balance sheet without the ability to control or mitigate those risks on the front end. But Congress created the Federal Reserve System to *improve* the stability and efficiency of payment systems and charged the System with responsibility to *maintain* this stability and efficiency. Holding that Reserve Banks have no discretion to deny master accounts would not only contradict the text of § 342, it would also undermine the FRA by removing a vital tool for the Reserve Banks to guard against money laundering, protect the broader payment system from financial contagion, contain cybersecurity breaches, and address a myriad of other risks. The Court should not conclude that Congress so drastically altered and endangered the U.S. payment and settlements systems absent a truly unambiguous command. Congress "does not alter the fundamental details of a

28

regulatory scheme in vague terms or ancillary provisions." *Whitman*, 531 U.S. at 468. Even putting § 342 aside, § 248a(c)(2) cannot bear the weight Custodia (and Judge Bacharach) seek to put on it.

**B.    Because a master account is discretionary, Custodia does not have a cognizable property interest (Counts III and V)**

Because it is not entitled to a master account, Custodia cannot plead a valid due process claim. A property interest requires "a legitimate claim of entitlement." *Roth*, 408 U.S. at 577; *see also Coleman v. Darden*, 595 F.2d 533, 538 (10th Cir. 1979) (applying same standard in the Fifth Amendment context). The interest must be more than an "abstract need or desire" or a "unilateral expectation of" a benefit. *Roth*, 408 U.S. at 577.

As a threshold matter, to avoid the fate of the plaintiff in *TNB*, Custodia recasts the relief that it seeks, requesting not that it be granted a master account but rather that FRBKC be forced to make a decision on its request. This is a request for *process*, but a demand for process cannot be the basis for a property interest. *See Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006) ("It is well established that an entitlement to nothing but procedure cannot be the basis for a property interest." (cleaned up)). For that reason alone, Custodia's due process claims fail. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").

Moreover, even taking Custodia's due process claims—contrary to how Custodia has pleaded them—as claims of a property interest in a master account, *see* Compl. ¶ 94, those claims still fail because Custodia has no right to a master account. As explained above, FRBKC has discretion regarding whether to grant a master account. 12 U.S.C. § 342. There is no property interest in a discretionary benefit. *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir.

2013). Because Custodia has no entitlement to a master account, it has no protected property interest at stake and its due process claims in Counts III and V should be dismissed.

Custodia's allegation that FRBKC's decision-making process is "standardless," Compl. ¶ 2, does nothing to solve the fundamental problem with Custodia's due process claims, namely, that it cannot have a cognizable property interest in a master account given FRBKC's discretion regarding whether to grant one. Custodia's allegation also fails on its own terms, as Congress made its purposes in the FRA and the MCA clear via the provisions it enacted. *See supra* Background, Section A (describing Congress's directives to the Federal Reserve System to safeguard the nation's payment system).

### C.   Master account decisions do not implicate a delegation of legislative authority (Count III)

If the Court concludes that Custodia lacks a property interest in a master account, Count III must be dismissed and the Court need not consider the adequacy of the process involved in a master account request. In any event, Custodia's attacks on that process are also meritless.

Embedded in Count III, which Custodia styles a "Separation of Powers" claim, is the contention that FRBKC's review of Custodia's master account request constitutes an improper delegation of the United States' legislative power. Compl. ¶¶ 95, 101 (tying Count III to "Article I"). This contention conflicts with Custodia's suggestion that FRBKC's review of Custodia's master account request constitutes an improper use of the United States' *executive* power. *See* Compl. ¶¶ 117-127. But like that claim, this contention too is meritless.

A master account is a Reserve Bank account in the name of a depository institution, enabling the institution to make deposits and withdrawals with the Reserve Bank and to perform directly its customers' transactions with customers of other depository institutions. The grant or denial of an individual master account request does not impose any obligations on any other

requestor. Consequently, deciding whether to grant or deny the request is not "regulation"—that is, it is not the exercise of legislative authority through making rules of general application that govern the rights or behaviors of *groups* of entities and individuals. *E.g.*, *United States v. Brown*, 381 U.S. 437, 446 (1965) ("It is the peculiar province of the legislature to prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of other departments.") (quoting *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87 (1810)). Nor would such a grant or denial bind FRBKC to grant or deny any future request from a different SPDI—or even from Custodia itself. As a result, that decision is in no way legislative. *Compare, e.g.*, *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) (emphasizing that "*regulating* [the] production" of coal "is necessarily a governmental function"), *with Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940) (concluding that "[s]ince *law-making* is not entrusted to the industry, this statutory scheme is unquestionably valid") (emphases added); *cf. Assoc. of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 32 (D.C. Cir. 2016) (holding that Amtrak had improperly been given "power to regulate its competitors" by promulgating "metrics and standards" for the use of railroad tracks with which those competitors could be obligated to comply). Accordingly, Count III does not state a claim for violation of the separation of powers because granting a master account is not a legislative function.

### D. The master account decision is not being made by Custodia's "competitors" (Count V)

Custodia's second due process claim, Count V, also fails for an additional reason. In Count V, Custodia alleges that Federal Reserve member banks "have particular and heightened competitive incentives to ensure that novel banking institutions like Custodia cannot access master accounts so that stockholding 'traditional' banks can retain a monopoly on access to the Federal Reserve System." Compl. ¶ 114. Because those member banks elect some members of FRBKC's

board of directors, Custodia contends that its competitors are improperly engaged in "regulation" of Custodia. *Id.*; *see also id.* at ¶ 115 (citing *Carter & Assoc. of Am. R.Rs.*). In addition to the defects discussed in the preceding sections, Count V fails because Custodia does not and cannot plausibly allege that Custodia's competitors control FRBKC's master account decision.

*First*, the statutorily mandated structure of FRBKC's board belies the notion that the board is acting in the competitive interest of FRBKC's member banks. FRBKC's board consists of nine directors, six of whom (Class B and Class C directors)—a supermajority—are elected to "represent the public." 12 U.S.C. § 302. Those directors are to be chosen "with due … consideration to the interests of agriculture, commerce, industry, services, labor, and consumers." *Id.* None of the Class B or Class C directors may be an "officer, director, or employee of any bank," and the Class C directors are prohibited even from owning stock in a bank or affiliate. 12 U.S.C. § 303. Further, to the extent any Class B or Class C director *ceases* to represent the public interest, the Board of Governors may remove that individual. 12 U.S.C. § 248(f). Thus, even if FRBKC's board of directors were somehow engaged in "regulation" of Custodia, that board does not represent Custodia's competitors; it represents the public. The concerns raised in *Carter* and *American Railroads*, therefore, have no application to this case.

And *second*, even Custodia essentially concedes that the master account decision will be made not by FRBKC's board of directors but by its president. *See* Compl. ¶ 41 (stating that Custodia "sent a letter to Esther George, the President and Chief Executive Officer of the Kansas City Fed," and that it "urged Ms. George to consider Custodia's application"). The Reserve Banks' presidents are, by statute, selected by the Class B and Class C directors—those chosen to represent the public—with the approval of the Board of Governors. 12 U.S.C. § 341 (Fifth). Custodia's professed concern about regulation by its competitors therefore has no application to its master

account request.

## III.   Count VI: Custodia's Appointments Clause Claim Is Unripe and Meritless

In Count VI, Custodia contends that FRBKC's structure offends the Appointments Clause because FRBKC's board of directors is not appointed by the President or a presidential appointee. But Custodia has not identified any action taken by FRBKC's board of directors, so this claim is unripe. In any event, a decision on a master account request is not an exercise of the "executive Power" of the United States, so the Appointments Clause is not applicable. And even if it were applicable, the appointment of FRBKC's president satisfies that Clause.

### A.   Custodia's Appointments Clause claim is unripe because FRBKC has not taken action on Custodia's request

The crux of Custodia's Complaint is that FRBKC has *not* taken action on its request for a master account. As a result, no justiciable controversy exists concerning whether an action that might be taken in the future would be taken by a constitutionally appointed individual. Custodia has not identified a case in which a court has held that a plaintiff may challenge the constitutionality of an appointment before the appointee has done anything. In *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), the case Custodia relies on, Arthrex did not challenge the constitutionality of the appointment process for the Patent Trial and Appeal Board in the abstract; it made that argument as part of its challenge to a final decision by that Board invalidating its patent. *See id*. at 1978. Similarly, in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), for example, the plaintiff law firm challenged a civil investigative demand issued by a board that the law firm contended was unconstitutional because its director was removable only for cause and not at the pleasure of the President. *See id*. at 2194, 2197.

Custodia asks the Court to take the extraordinary step of assessing the constitutionality of FRBKC's structure even though Custodia cannot identify any harm caused by FRBKC's

purportedly unconstitutional structure. *See* Compl. ¶ 116 (alleging that FRBKC's "processing and adjudication of Custodia's application … is unconstitutional," even though FRBKC is still reviewing the request). The Court should decline Custodia's invitation to prematurely reach the merits of whether a decision that *has not been made* is in the hands of a constitutionally appointed body.

> **B.     Custodia's Appointments Clause claim is meritless because a decision on a master account request is not an exercise of the "executive Power" of the United States and because FRBKC is in any event constituted in accordance with that Clause**

Custodia's Appointments Clause claim is meritless as well as unripe. According to Custodia, because a supermajority of FRBKC's board of directors is elected by the member banks and not appointed by the President, the board of directors cannot constitutionally act on a request for a master account. *Id.* ¶¶ 120-27. But the Appointments Clause applies only to the exercise of the "executive Power" of the United States. U.S. Const. art. II, §§ 1 & 2; Compl. ¶ 119. And when considering a master account request, FRBKC is not exercising the "executive Power" of the United States. Custodia can point to no court that has held that a Reserve Bank's grant or denial of a master account—a *bank account*—somehow implicates that "executive Power." Instead, FRBKC is making an essentially commercial decision, albeit one with significant implications. When FRBKC takes an action on a master account request, it is exercising business judgment concerning the risks posed to its own balance sheet by doing business with a particular entity. Neither the time required to assess particularly complex risks and make that decision nor any broader implications from the decision transform it into an exercise of the "executive Power."

In any event, FRBKC's structure complies with the Appointments Clause. In its zeal to conjure constitutional issues, Custodia focuses on FRBKC's board of directors. But the FRA expressly vests the powers of the Reserve Bank in any "duly authorized officer," 12 U.S.C. § 341

(Seventh), and authorizes the Reserve Bank's president to act as its Chief Executive Officer, *id.* § 341 (Fifth). That is why Custodia's Complaint demonstrates that Custodia has addressed its request to FRBKC's president. *See* Complaint ¶¶ 41-42. FRBKC's president is a constitutionally appointed inferior officer because she was appointed with approval of the Board of Governors, *see id.*, and may be removed by the Board of Governors, 12 U.S.C. § 248(f). *See* Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee, 43 Op. Att'y Gen. __, Slip op. at 2 (Oct. 23, 2019). Thus, even if a master account decision were an exercise of the United States' "executive Power," it is in the hands of an "inferior Officer" appointed consistently with the Appointments Clause.

## IV.   Counts II, IV, VII, and VIII: Custodia's Declaratory Judgment Act and Mandamus Act Claims Are Improper, Inadequately Pleaded, and Unripe.

Counts II, IV, VII, and VIII all suffer from procedural flaws requiring dismissal. First, Counts IV and VIII fail because the Declaratory Judgment Act does not create a cause of action; it merely provides a remedy. Second, Counts II and VII fail because the Mandamus Act does not apply to FRBKC. Third, Counts VII and VIII are based on a contingent future event—the denial of Custodia's pending master account request—and are thus unripe.

### A.   The Declaratory Judgment Act does not provide an independent right of action (Counts IV and VIII)

Counts IV and VIII fail as a matter of law because the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create a right of action. *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012). A declaratory judgment is a remedy, not a cause of action. *Utah Housing Corp. v. Country Pines, Ltd.*, 541 F. Supp. 3d 1288, 1295 n.1 (D. Utah 2021) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Because the Declaratory Judgment Act does not confer an independent cause of action, Counts IV and VIII must be dismissed.

## B.   The Mandamus Act does not apply to FRBKC nor has Custodia adequately pleaded any claim arising under it (Counts II and VII)

Counts II and VII also fail. The Mandamus Act, 28 U.S.C. § 1361, grants district courts the authority to issue a writ of mandamus compelling an "agency" of the United States to "perform a duty owed to the plaintiff." First, FRBKC is not an "agency" of the United States for reasons discussed above. *See supra* Section I.A. Section 1361 thus does not apply to FRBKC. Second, Custodia cannot demonstrate that FRBKC owes it a duty; FRBKC has discretion to decide whether to grant a master account. *See supra* Section II.A; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004) ("The only agency action that can be compelled … is action legally required" such as "the failure to promulgate a rule or take some decision by a statutory deadline.") (cleaned up). Third, relief under the Mandamus Act is limited to situations in which the plaintiff "has a clear right to relief" and the defendant's "duty to perform the act in question is plainly defined and peremptory." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005). The complexities of this case make Custodia's "right to relief" far from "clear" and any duty by FRBKC far from ministerial. *See id.* at 1206-07.

## C.   Counts VII and VIII are not ripe

On the face of the Complaint, Custodia concedes that Counts VII and VIII are not ripe. The Complaint states that these claims are "only in the event that Defendants deny Custodia's application for a master account." Compl. ¶¶ 130, 139. Because that has not happened, *see* Compl. ¶¶ 42, 101, these causes of action "rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). Accordingly, Counts VII and VIII are "not ripe for adjudication," *id.*, and should be dismissed.

V.    **All Counts: Custodia Lacks Standing and This Case Is Constitutionally and Prudentially Unripe.**

For the reasons set forth above, each count in Custodia's Complaint fails to state a valid claim. But even more fundamentally, the complexity and significance of the questions discussed in the preceding sections highlight why this Court should not decide the merits of Custodia's claims at this premature juncture. First, Custodia lacks standing because FRBKC is still considering its request and because the relief Custodia seeks—for FRBKC to decide its request—would not redress any claimed injury if the decision were a denial. Second, for the same basic reasons, Custodia's claims are not constitutionally ripe. Third, Custodia's suit is not prudentially ripe: The Court should decline to wade into the issues Custodia seeks to litigate because those issues could be mooted—and at least will be clarified—by future action. The Court should therefore dismiss this action without prejudice and without deciding the legal issues raised on the merits by Custodia's various claims.

A.    **Custodia lacks standing**

To establish standing, Custodia must have suffered an injury in fact, meaning "an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury-in-fact must be both (1) particularized ("affect the plaintiff in a personal and individual way") and (2) concrete ("real, and not abstract"). *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (cleaned up). Custodia must also demonstrate a substantial likelihood that the relief requested will redress the injury claimed. *Ash Creek Min. Co. v. Lujan*, 969 F.2d 868, 875 (10th Cir. 1992) (quoting *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)); *see also Spokeo*, 578 U.S. at 338. And just as a plaintiff must demonstrate that it has standing to sue, it must show that its claims are "ripe" so as to constitute a present case or controversy. The

constitutional requirements for ripeness are coterminous with those for standing. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012).

Custodia does not have standing (and thus its claims are not constitutionally ripe) no matter how it frames its alleged injury. In *TNB*, the plaintiff alleged that FRBNY's period of deliberation on its master account request injured it on the theory that it constituted a "constructive denial" of that request. The court disagreed and dismissed the case on standing grounds. 2020 WL 1445806, at *7. To avoid the same fate, Custodia attempts to allege that FRBKC's ongoing consideration of its request has itself caused injury, on the theory that the pendency of Custodia's master account request is forcing Custodia to begin operations with a banking partner. Compl. ¶ 8. This effort to circumvent *TNB* fails. Custodia has not alleged an injury-in-fact, nor has it demonstrated a substantial likelihood that the relief it seeks will redress its claimed injury.

### 1.    Custodia has not suffered an injury-in-fact

While Custodia purports to claim unreasonable delay, *see* Compl. ¶¶ 34-44, its real complaint is that it has not been *granted* a master account, *see* Compl. ¶¶ 8, 130, 139. Its actual grievance appears to concern what it thinks is a constructive denial of a master account, just like the plaintiff in *TNB*.

Custodia may have pivoted away from alleging a constructive denial to avoid the outcome of *TNB*. In *TNB*, the Southern District of New York confronted a challenge from a non-traditional financial institution to FRBNY's review of its master account request. 2020 WL 1445806. There, the plaintiff alleged a constructive denial after FRBNY had been reviewing its application for more than 18 months. *See id.* at *5. The court refused to treat FRBNY's ongoing review as a constructive denial and held that TNB lacked standing: "[B]ecause the denial has not occurred, TNB has no qualifying imminent injury and thus this case must be dismissed on standing grounds." *Id.* at *7.

Custodia's only alleged injury, incurring costs to prepare to launch with a banking partner,

is alleged to be caused by the lack of a master account; that is a quintessential constructive denial claim. But FRBKC has not denied Custodia a master account, constructively or otherwise. FRBKC is evaluating Custodia's request and may ultimately grant it. Custodia cannot manufacture an injury out of its own impatience and its decision to incur costs to prepare to begin operating without the benefit of a master account. This Court should follow *TNB*'s lead and find this claimed injury too conjectural to provide standing. *Id.; see Lujan*, 504 U.S. at 560.

Moreover, even taking Custodia at its word that it has suffered injury from "delay" alone, *see* Compl. ¶ 47, that would still not amount to a legally cognizable injury. To constitute an invasion of a legally protected interest, "delay alone" must be a "concrete injury," which courts have generally recognized only in the case of entitlements—not discretionary benefits. *See Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) ("If UARC is correct on the merits, it was *entitled* to receive an answer to its permit application long before November[] 2001.") (emphasis added). Because, as explained elsewhere, FRBKC's decision as to whether and when to grant a master account is discretionary, delay in that decision-making process is insufficient to establish injury-in-fact.

## 2. Custodia has not demonstrated that its requested relief is likely to redress its claimed injury

Custodia also lacks standing for a second reason: it cannot demonstrate that its alleged injury is likely to be redressed by the relief it seeks. *Ash Creek*, 969 F.2d at 875 ("To satisfy the 'redressability' prong of the standing test, the plaintiff must demonstrate that a '"substantial likelihood" [exists] that the relief requested will redress the injury claimed.'" (quoting *Duke Power*, 438 U.S. at 75 n.20)). Custodia claims that it is injured because, without a master account, it will be forced to access FRBKC services indirectly, through the use of a banking partner that charges fees. *See, e.g.*, Compl. ¶ 8. The relief that Custodia seeks, however, is only that this Court

order FRBKC to make a *decision* on its request. *See id*. ¶¶ 81, 91, 101, 109 (each requesting an order that defendants "decide" the master account request); *id*. ¶¶ 116, 127 (each requesting an order directing "a lawful administrative process"); *id*. at 42 ("Request for Relief" requesting an order that defendants "process and decide" the request).[8]

If the Court were to grant Custodia's requested relief and FRBKC were to deny the request, then Custodia's alleged injury would not be redressed. Custodia has failed to demonstrate that its request would likely be granted in that scenario. Indeed, Custodia's Complaint runs away from the challenges presented by its request, making barely any mention of its digital asset business or proposed "stablecoin" and leaving it entirely speculative whether a decision on its request, if one were compelled in the near future, would be favorable to it.

**B.      Custodia's claims are prudentially unripe**

For the reasons just explained, Custodia's claims fail to satisfy Article III's requirements for standing or ripeness. Ripeness also has a prudential dimension, and Custodia's claims at the very least are unripe as a prudential matter. "Ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction." *Awad*, 670 F.3d at 1124. At bottom, ripeness doctrines "address[] a timing question: when in time is it appropriate for a court to take up the asserted claim"? *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 903 (10th Cir. 2016). Prudential ripeness is a two-pronged inquiry into (i) "the fitness of the issues for judicial decision," and (ii) "the hardship to the parties of withholding court consideration." *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017). The complex and far-reaching issues Custodia's Complaint presents are far from fit for a judicial

---

[8] Counts VII and VIII assert that Custodia is entitled to a master account, but those counts are plainly unripe on their face, as they are pleaded "only in the event that Defendants deny Custodia's application for a master account," which has not happened. *Id*. ¶¶ 130, 139; *see* Section V.C, *supra*.

J.A.208

decision, and little if any hardship would result from waiting until Custodia's request for a master account and its application for Federal Reserve membership have been resolved.

*First*, Custodia has not alleged that it is authorized to even begin operations in Wyoming, regardless of whether it receives a master account. For example, while Custodia has alleged that it has a Wyoming charter, *see, e.g.*, Compl. ¶ 10, a charter is not all Custodia needs before it may launch its business. Wyoming does not permit an institution to "commence business before receiving a certificate of authority to operate from the commissioner." Wyo. Stat. § 12-12-116 (2019); *see* State of Wyoming, Div. Of Banking, General Overview of the Special Purpose Depository Institution, *supra*. Custodia has not alleged that it has received a certificate of authority. And that certificate is no mere *pro forma* requirement. Wyoming requires that an SPDI "have initial capital, subscribed for as fully paid stock, which is commensurate with the risk profile and proposed activities of the institution, as determined by the Commissioner," and that capital must "be subscribed and fully paid in at the time the institution applies for a certificate of authority." *See* Wyo. Rules & Regs. 021.0002.20 § 2(a), *available at* https://bit.ly/3zTb4px. Wyoming law also requires SPDIs "to have a paid-up surplus fund of not less than three (3) years of operating expenses prior to applying for a certificate of authority under W.S. 13-12-116." *Id.* at § 2(c). Custodia has not alleged that it has satisfied these requirements. If Custodia is not otherwise ready to commence operations regardless of the status of its master account request, there is no reason for the Court to entertain Custodia's suit at this time.[9]

*Second,* while FRBKC has ultimate discretion regarding whether to accept deposits from

---

[9] Custodia's failure to allege that it has obtained the necessary certificate under Wyoming law to begin operations also confirms that this action fails to satisfy Article III's redressability requirement to confer standing. Ordering FRBKC to decide Custodia's master account request would not enable Custodia to operate: even if FRBKC were to grant that request, Custodia still could not lawfully begin operations without satisfying Wyoming law's separate requirements.

Custodia, it must carefully consider how to exercise its discretion in the context of ongoing work related to digital assets by the Federal Reserve System, federal banking agencies, and Congress. As Custodia acknowledges in its Complaint, the Board of Governors has been actively working on guidelines for Reserve Banks to use in assessing risk and evaluating requests for access to master accounts. *See* Proposed Guidelines for Evaluating Account and Services Requests, 86 Fed. Reg. 25,865 (May 11, 2021); Proposed Guidelines for Evaluating Account and Services Requests, 87 Fed. Reg. 12,957 (Mar. 8, 2022); Compl. ¶¶ 49-52. The Board of Governors has now finalized those guidelines.

The Board of Governors' Guidelines relate to access requests that Reserve Banks may receive from novel institutions like Custodia, with the goal of helping to ensure that "the Reserve Banks apply a consistent set of guidelines when reviewing such access requests to promote consistency across Reserve Banks and to facilitate equitable treatment across institutions." Guidelines at 31. The Guidelines outline six risk-based principles that the Reserve Banks can consider when evaluating such requests: (1) legal eligibility, (2) risk to the Reserve Bank, (3) risk to the overall payment system, (4) risk to the stability of the U.S. financial system, (5) risk of facilitating illicit activity, and (6) risk of adverse effects on the ability to implement monetary policy. Guidelines at 34-45.

The Guidelines also provide a tiered framework that prescribes the scrutiny of review based on the level of oversight to which the requesting institution is subject. Guidelines at 46-49. Account requests from institutions with more oversight (those that are federally insured and subject to a comprehensive set of federal banking regulations) receive less scrutiny from the Reserve Banks. Guidelines at 46. Requests from institutions like Custodia that fall into "Tier 3"—based in part on the absence of either federal insurance or prudential supervision by a federal banking agency—

J.A.210

receive the strictest level of review. *Id.* Because these new Guidelines have just been finalized and can now be taken into consideration by FRBKC in connection with Custodia's request, the Court should dismiss Custodia's Complaint as prudentially unripe. *See Wyoming v. U.S. Dep't of the Interior*, 493 F. Supp. 3d 1046, 1055 (D. Wyo. 2020) (Skavdahl, J.) (noting that rulemaking process that was ongoing at earlier stage of the case raised prudential ripeness concerns); *see also* Guidelines at 8-9 (noting that "[to] promote consistency, the Reserve Banks are working together, in consultation with the Board, to expeditiously develop an implementation plan for the final Guidelines" and that "Reserve Banks may take comparatively longer to review access requests by institutions that engage in novel activities for which authorities are still developing appropriate supervisory and regulatory frameworks").

*Third*, Custodia has applied for membership in the Federal Reserve System, and that application is under active evaluation. Compl. ¶ 4. As Custodia notes, *see id.*, state-chartered banks that become members of the System are subject to supervision and regulation by federal authorities. *See* 12 U.S.C. § 324. As a result, membership could significantly impact FRBKC's analysis of the risks of granting Custodia a master account.

The implementation of the new Guidelines and the potential for action on Custodia's membership application present "contingent future events" that may alter the circumstances of this case and thus show that these issues are not yet fit for judicial determination. *See Texas*, 523 U.S. at 300; *see also Fourth Corner*, 861 F.3d at 1060 (op. of Matheson, J.) (declaratory action seeking to compel opening of master account was unripe: "We cannot know what the facts would be, making this case premature.").

Nor can Custodia point to any hardship that could outweigh these substantial fitness concerns. Custodia may complain of the need to partner with a bank to access federal payment

systems. *See* Compl. ¶ 8. But having to open an account at a traditional bank to access the payment system is no mere "makeshift solution." *See id*. It is, indeed, one of the options that Wyoming's statute expressly contemplates for SPDIs. *See* Wyo. Stat. § 13-12-105(b)(ii) (requiring an SPDI to "maintain unencumbered liquid assets valued at not less than one hundred percent (100%) of its depository liabilities" and defining liquid assets as, in part, "United States currency held for the special purpose depository institution *by a federal reserve bank or a federally insured financial institution*" (emphasis added)). Custodia had abundant notice that its novel and high-risk cryptocurrency-focused business would take time to review. *See Fourth Corner*, 861 F.3d at 1060 (op. of Matheson, J.); *TNB USA*, 2020 WL 1445806, at *5. Even assuming Custodia has made financial expenditures it might have avoided if it had already been granted a master account, those expenditures do not constitute the sort of hardship that should weigh in favor of deciding the issues raised by Custodia's claims now, before future events either moot those claims or provide a more concrete context in which to evaluate them. Custodia incurred any costs as a calculated business decision made with knowledge of the uncertainty that exists in this emerging economic space. *See OK's Cascade Co. v. United States*, 97 Fed. Cl. 635, 640-41, 650 (2011) (dismissing case on ground that company did not suffer any injury from Forest Service's termination for convenience because company's expenditures to upgrade equipment in anticipation of receiving government award were "made …. at its own risk, with no guarantee of repayment or reimbursement from the Government"), *aff'd,* 467 F. App'x 888 (Fed. Cir. 2012).

In similar circumstances, both the *TNB* court and Judge Matheson in *Fourth Corner* found that the plaintiffs' claims were not prudentially ripe. *Fourth Corner*, 861 F.3d at 1063 (op. of Matheson, J.) (plaintiff's claim was prudentially unripe despite its inability to "conduct legal business" where the "scope of the hardship [was] far from clear" and the "potential hardship does

not overcome the fitness concerns outlined…"); *TNB*, 2020 WL 1445806, at \*9 ("Although the reasoning behind a potential denial may not prove relevant to adjudicating whether the FRA entitles banks like TNB to a master account, it could, and regardless, it is information a federal court should and can have before reaching a decision on the merits."); *but see Fourth Corner*, 861 F.3d at 1080 (op. of Bacharach, J.) (disagreeing with Judge Matheson on prudential ripeness). Simply put, it takes time for a Reserve Bank to reach a decision on the risks posed by a novel and untested business model and charter type that, by design, is largely outside the perimeter of federal regulation. With actions pending that will bear significantly on FRBKC's decision, including implementation of the Guidelines and a decision on Custodia's application for membership, Custodia's claims are not ripe for adjudication.[10]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

---

[10] Because prudential ripeness is a threshold non-merits ground for dismissal, the Court is free to dismiss this action as prudentially unripe regardless of whether Custodia satisfies Article III's standing and ripeness requirements and, therefore, without needing to reach those constitutional justiciability questions. *See N. Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1235 (10th Cir. 2021) (dismissing plaintiff's complaint as prudentially unripe even though plaintiff established Article III standing); *see also Sinochem Int'l Co. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."); *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1124 (9th Cir. 2022) (dismissing case on prudential ripeness grounds without deciding constitutional ripeness or personal jurisdiction).

Dated 16 August 2022.

Respectfully submitted,
/s Billie LM Addleman
Billie LM Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
Attorneys for Defendant FRBKC
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson (*pro hac vice* admission pending)
Laura Harris (*pro hac vice* admission pending)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice* admission pending)
Joshua N. Mitchell (*pro hac vice* admission pending)
Christine M. Carletta (*pro hac vice* admission pending)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
jmitchell@kslaw.com
ccarletta@kslaw.com

*Counsel for Defendant the*
*Federal Reserve Bank of Kansas City*

INTERNAL FR/OFFICIAL USE // SECURE EXTERNAL

## CERTIFICATE OF SERVICE

I certify the foregoing ***Defendant Federal Reserve Bank of Kansas City's Memorandum of Points and Authorities in Support of Its Motion to Dismiss*** was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 16 August 2022, and that copies were served as follows:

|  |  |
|---|---|
| John K. Villa<br>Ryan Thomas Scarborough<br>Whitney D Hermandorfer<br>Jamie Wolfe<br>WILLIAMS & CONNOLLY<br>680 Maine Avenue SW<br>Washington, DC 20024<br>*Attorneys for Plaintiff* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |
| Scott E Ortiz<br>WILLIAMS PORTER DAY & NEVILLE<br>159 North Wolcott, Suite 400<br>P O Box 10700<br>Casper, WY 82602<br>*Attorneys for Plaintiff* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |
| Angela Tarasi<br>KING & SPALDING LLP<br>1401 Lawrence Street<br>Suite 1900<br>Denver, CO 80202<br>*Attorneys for Defendant Federal Reserve Bank of Kansas City* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |
| Joshua P. Chadwick, Senior Special Counsel<br>Yvonne F. Mizusawa, Senior Counsel<br>Yonatan Gelblum, Senior Counsel<br>Katherine Pomeroy, Senior Counsel<br>Board of Governors of the Federal Reserve System<br>20th Street and Constitution Avenue, N.W.<br>Washington, D.C.  20551<br>*Attorneys for Defendant Federal Reserve Board of Governors* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |

/s Shannon M. Ward
_____
OF HIRST APPLEGATE, LLP
Attorneys for Defendant

**J.A.215**