No. 24-8024

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

CUSTODIA BANK, INC.,

*Plaintiff-Appellant*,

v.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM and
FEDERAL RESERVE BANK OF KANSAS CITY,

*Defendants-Appellees*.

Appeal from the U.S. District Court for the District of Wyoming
Hon. Scott W. Skavdahl, U.S. District Judge
Civil No. 22-CV-00125-SWS

# BRIEF OF MEMBERS OF THE U.S. SENATE BANKING COMMITTEE
## AND U.S. HOUSE FINANCIAL SERVICES COMMITTEE
## AS *AMICI CURIAE* IN SUPPORT OF APPELLANT
## AND URGING REVERSAL

ORAL ARGUMENT NOT REQUESTED

Chris Land (Wyo. Bar #7-6006)
General Counsel
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510

(202) 224-3424
chris_land@lummis.senate.gov

Counsel for *Amici Curiae*

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

<div style="text-align:right"><u>Page</u></div>

TABLE OF CONTENTS ......................................................................i

TABLE OF AUTHORITIES ............................................... ii

STATEMENT OF INTEREST .............................................1

SUMMARY OF ARGUMENT .............................................2

ARGUMENT ....................................................................5

I.      Introduction ..............................................................5

II.    District Court Proceedings ..............................................6

III.   Key Statutes .............................................................7

       A.     12 U.S.C. § 248a(c)(2) ....................................7

       B.     12 U.S.C. § 461(b) ........................................9

       C.     12 U.S.C. § 342 ..........................................10

IV.   The Statutory Framework for Master Accounts ...........................12

       A.     Section 248a(c)(2) Is a Textual Mandate, Not a Pricing Principle .....12

       B.     Section 248a(c)(2) Applies to FRBKC ...............................13

       C.     Section 248a(c)(2) Applies to All NDIs ..............................16

       D.     Toomey Amendment Does Not Limit § 248a(c)(2) ...........................20

       E.     Section 342 Does Not Limit § 248a(c)(2) .........................22

       F.     Only Congress Can Limit the MCA's Reach ...................................24

CONCLUSION ..............................................................26

CERTIFICATE OF SERVICE...................................................28

CERTIFICATE OF COMPLIANCE ..............................................30

CERTIFICATE OF DIGITAL SUBMISSION......................................31

<div style="text-align:center">i</div>

# TABLE OF AUTHORITIES

**Cases**

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)…………..…………….7

*Briscoe v. Bank of Ky.*, 36 U.S. (11 Pet.) 257 (1837)............................................25

*Craig v. Missouri*, 28 U.S. (4 Pet.) 410 (1830) ................................................17, 25

*Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors, Fed. Rsrv. Bank of Kansas City*, 2023 U.S. Dist. LEXIS 237452 (D. Wyo. Jun. 3, 2023)………………..6, 7

*Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors, Fed. Rsrv. Bank of Kansas City*, 2024 U.S. Dist. LEXIS 76822 (D. Wyo. Mar. 29, 2024) ................7, 12, 14

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)......................11

*Fourth Corner Credit Union v. FRB*, 861 F.3d 1032 (10th Cir. 2017)…...………7, 21

*Genberg v. Porter*, 882 F.3d 1249 (10th Cir. 2018)...................................................3

*Kungys v. United States*, 485 U.S. 759 (1988)…………..…………..…..9, 11, 24

*Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213 (1827)............................................17

*Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998). ........................17, 18

*Stender v. Smith-Archstone Operating Trust*, 958 F.3d 938 (10th Cir. 2020) ..........9

*Wachovia Bank, N.A., v. Schmidt*, 546 U.S. 303 (2006) ..........................................9

**Constitutional Provisions**

U.S. Const. art. I, sec. 10, cl. 1 ........................................................................17, 25

**Statutes**

1 U.S.C. § 112 ........................................................................................................15

12 U.S.C. § 243 ....................................................................................14

12 U.S.C. § 248 ....................................................................................14

12 U.S.C. § 248-1 .................................................................................14

12 U.S.C. § 248a ............................................................................passim

12 U.S.C. § 248c .................................................................6, 7, 20, 21, 22

12 U.S.C. § 342 ..............................................................................passim

12 U.S.C. § 461 ..........................................................................6, 9, 10, 21

Depository Institutions Deregulation and
    Monetary Control Act of 1980 ................................................7, 9, 10

Federal Reserve Act of 1913 ...........................................................passim

Omnibus Excise Tax Act of 1865 ..........................................................25

Omnibus Excise Tax of 1866 ................................................................25

**Other Authorities**

126 Cong. Rec. 7070 (1980) ..................................................................26

Kyle Campbell, *Judge Rules Against Custodia in Fed Master Account Case*,
    American Banker, Apr. 1, 2024……………………….………………………..21

Chicago Daily Tribune, *Bill to Widen Reserve System Sent to Wilson*, Jun. 19,
    1917…………………………………………………………………….24

Conf. State Bank Supervisors, *Department Accreditation* (2024)………………..13

Peter Conti-Brown, *The Fed Wants to Veto State Banking Authorities. But Is that
    Legal? Brookings Institution* (2018) ………………………………..….24

CRS, *From Slip Law to United States Code: A Guide to Federal Statutes for
    Congressional Staff* (Updated May, 2018)......................................................16

Esther George, President, FRBKC, *Perspectives on 150 Years of Dual Banking*, Conf. State Bank Supervisors (2012) ...................................................................5

Fed. Rsrv. Bank of St. Louis, *Federal Reserve History: Depository Institutions Deregulation and Monetary Control Act of 1980* (2013)……...………………....8

FRB, *Reserve Maintenance Manual* (last updated Nov. 20, 2019)........................10

Hartford Courant, *Will Strengthen Reserve Banks*, Jun. 19, 1917……………...…24

H. Rept. 65-35, *Amendments to the Federal Reserve Act*, *H.R. 3673,* H. Comm. on Banking and Currency, 65th Cong., 1st Sess. (Apr. 27, 1917)…………..……..2

H. Rep. No. 96-640, *Depository Institutions Deregulation and Monetary Control Act of 1980*, *H.R. 4986,* S. Comm. on Banking, Housing and Urban Affairs, 96th Cong., 2nd Sess. (1980) ....................................................................................19

H. Rep. No. 98-17, *The Role and Activities of the Federal Reserve System in the Nation's Check Clearing and Payments System*, H. Comm. on Banking, Finance and Urban Aff., 98th Cong., 2d Sess. (1984) ....................................................19

L.A. Times, *To Fortify Reserve Act*, Jun. 19, 1917……………………………….23

Anatoli Kuprianov, *Monetary Control Act and the Role of the Federal Reserve in the Interbank Clearing Market*, Fed. Rsrv. Bank of Rich. Econ. R. (1985)……20

OLRC, United States Code, "Search & Browse"....................................................16

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)…………………………………….9, 17

Statement by Paul Volcker, FRB Chairman, Before Subcomm. on Domestic Monetary Policy of the House Banking, Finance & Urban Affairs Comm. (1980) ............................................................8

Wall St. Journal, *Congress Again Has Reserve Act Amendments*, Apr. 18, 1917...24

# STATEMENT OF INTEREST

*Amici* U.S. Senator Cynthia M. Lummis (Wyoming), Senator Steve Daines (Montana) and Representative Warren E. Davidson (Ohio), Members of the U.S. Senate Banking Committee and U.S. House of Representatives Financial Services Committee ("Members") respectively, submit this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2).[1] Counsel obtained consent to file from all parties.

The Members have a distinct constitutional interest in the faithful execution of the laws enacted by Congress and the exercise of oversight over the Federal Reserve System as Members of the Congressional committees of jurisdiction. Additionally, the Members have a legislative interest in promoting responsible financial innovation, including through clear digital asset regulation and an effective, efficient and safe payments system.

---

[1] No counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici curiae* or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The District Court ignored the plain language of 12 U.S.C. § 248a(c)(2) enacted by Congress. That provision requires the Federal Reserve Banks and the Board of Governors of the Federal Reserve System ("FRB") to make the covered services listed in § 248a(b)[2] available to nonmember depository institutions ("NDIs").

The plain language of 12 U.S.C. § 248a(c)(2) provides that "all Federal Reserve bank services [listed in § 248a(b)] *shall* be available to nonmember depository institutions *and* . . . priced at the same fee schedule applicable to member banks." Neither the text nor legislative history of § 248a(c)(2) expressly provides or reasonably implies that the Federal Reserve Bank of Kansas City ("FRBKC") or FRB have any discretion beyond determining whether Custodia is legally eligible for an account[3] and requiring Custodia to maintain a sufficient clearing balance[4] and not engaged in illegal activity.

In their manifold novel arguments which claim "discretion" to provide access to the payment system to favored depository institutions but not others, the FRBKC

---

[2] Covered services are "(1) currency and coin services; (2) check clearing and collection services; (3) wire transfer services; (4) automated clearinghouse services; (5) settlement services; (6) securities safekeeping services; (7) Federal Reserve float; and (8) any new services which the Federal Reserve System offers, including but not limited to payment services to effectuate the electronic transfer of funds."
[3] *See* 12 U.S.C. § 461(b)(1).
[4] 12 U.S.C. § 248a(c)(2).

and FRB have embarked down a path that will lead to the Federal Reserve having an unreviewable veto over state bank chartering decisions—a result Congress expressly rejected in the Monetary Control Act, and which is incompatible with our dual banking system.

Since the District Court held that the FRBKC and FRB had unreviewable discretion to deny Custodia Bank a master account and thus direct access to the covered services as a matter of law, the standard of review is *de novo*.[5]

Twelve U.S.C. § 342, which provides Federal Reserve Banks with the discretion to receive deposits, cannot reasonably be construed to provide the FRBKC and FRB with the discretion to add any conditions to § 248a(c)(2). The relevant text of § 342 predated § 248a by nearly seventy years, having been part of the original Federal Reserve Act ("FRA") of 1913.[6] Read *in pari materia*, § 342 is best read as providing legal authorization to the Federal Reserve Banks to receive certain deposits from eligible entities, while the Monetary Control Act, enacted nearly 70 years later, requires the Reserve Banks to do so. If § 342 is construed to be subject to § 248a(c)(2), as text and purpose both support, § 342 still applies to certain services not listed in § 248a(b), including check deposits and extensions of credit. If

---

[5] *Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018).
[6] Pub. L. No. 63-43, 38 Stat. 251 (1913).

§ 248a(c)(2) is construed as subject to § 342, § 248a(c)(2) would become mere surplusage.

Finally, the District Court relied on the absence of the word "all" before "nonmember depository institutions" to hold that § 248a(c)(2) did not apply to Custodia Bank. The reasoning of the District Court would result in the mandate in § 248a(c)(2) applying to *no* NDI. That is not a reasonable construction of § 248a(c)(2). The Supreme Court has held that general words like "nonmember depository institutions" should be given their full and fair meaning in the absence of any express or implied limitation in the text, structure or legislative history.

The decision of the District Court should be reversed.

**ARGUMENT**

## I.   Introduction

Former FRBKC President Esther George stated:

> "The dual banking system has provided and continues to provide significant benefits to our financial system and the economy. One of the primary benefits of dual banking is that the multiple options for state and federal charters have led to considerable innovation and improvement in banking services. We have seen these benefits have existed from the beginning."[7]

Those remarks underscored some of the key benefits of our dual banking system and the importance of responsible innovation. This case involves another example of the "considerable innovation and improvement in banking services" which emerges from our dual banking system—an NDI that provides seeks to bring digital assets into the regulatory perimeter.

The position advanced by the FRBKC and FRB would establish an unaccountable, nonreviewable process for State-chartered NDIs to gain access to our national payment system through a master account with a Federal Reserve Bank. This position exceeds the statutory authority of both the FRBKC and FRB. It threatens to transform our dual banking system into one that Congress did not create—one in which State banking agencies do not operate on a level playing field

---

[7] Esther George, President, FRBKC, *Perspectives on 150 Years of Dual Banking*, Conf. State Bank Supervisors (2012), *available at* https://www.kansascityfed.org/documents/2644/speeches-2012-george-ga-csbs-05-22.pdf.

with Federal banking agencies, but can be consigned to the back bench if the so Fed wishes it.

## II. District Court Proceedings

The District Court held that Custodia Bank was a Wyoming-chartered NDI under 12 U.S.C. § 461, and as a result, is legally eligible for a master account under 12 U.S.C. § 248a. The only question addressed in its opinion was whether the FRBKC or FRB was required to grant Custodia Bank's application for a master account and thereby obtain direct access to the covered services or whether they had the discretionary authority to deny such an application.

The FRBKC and FRB argued that they had discretion to deny Custodia Bank's application. The FRBKC had denied the application because Custodia Bank had a "novel charter," which permitted Custodia Bank to engage in digital asset related activities. The FRBKC determined that such activities exposed the Federal Reserve System to undue risk and that Custodia Bank's robust risk-management system did not mitigate this risk.

The District Court, inexplicably reversing its prior ruling on a key question of law,[8] agreed with the reasoning advanced by FRBKC and the FRB and upheld the

---

[8] The District Court held in its order denying a Motion to Dismiss that 12 U.S.C. § 248c did not have bearing on whether the FRBKC or the FRB had discretion to deny a master account. Without oral argument or an opportunity to brief this issue further, the District Court reserved itself and then relied on § 248c. *Compare* Order on Def. Mot. to Dismiss Amended Compl., *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of*

denial of Custodia Bank's application, despite the mandate in 12 U.S.C. § 248a(c)(2).

In doing so, the District Court effectively held that the mandate in § 248a(c)(2) does not mean what it says. Despite stating that "Congress 'does not … hide elephants in mouseholes[,]'"[9] the District Court proceeded create a whopper of its own by holding that § 248c somehow granted the Fed new denial authority.[10]

## III. Key Statutes

### A. 12 U.S.C. § 248a(c)(2)

Section 248a(c)(2) codified Section 107 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("MCA"),[11] which added new

---

*Governors, Fed. Rsrv. Bank of Kansas City*, 2023 U.S. Dist. LEXIS 237452, at *20 (D. Wyo. Jun. 3, 2023) ("Section 248c does not, expressly or impliedly, carry the statutory construction load the Board of Governors asserts it does."), *with* Order on Dispositive Mot., 2024 U.S. Dist. LEXIS 76822, at *27 (D. Wyo. Mar. 29, 2024) ("The Court respectfully deviates from Judge Bacharach's opinion in *Fourth Corner* based in large part on certain legislation enacted by Congress since then, which was not available for Judge Bacharach's consideration in 2017.").

[9] Order on Dispositive Mot., *Custodia,* 2024 U.S. Dist. LEXIS 76822, at *33 (D. Wyo. Mar. 29, 2024).

[10] The District Court's later reliance on § 248c requires that statute to carry an unbearable "statutory construction load" (as the District Court first referred to this argument on the Motion to Dismiss) in which the Court found Congress somehow granted the Federal Reserve a new power to reject master account applications through the use of one word in a transparency provision establishing a database of master account holders. It is a fundamental tenet of statutory interpretation (the so-called elephants in mouseholes canon) that "Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Bostock v. Clayton Cnty.*, *Georgia*, 590 U.S. 644, 680 (2020) (citation omitted).

[11] Pub. L. No. 96-221, § 107, 94 Stat. 132, 140–41 (Mar. 31, 1980).

Section 11A to the FRA.[12] Then FRB Chairman Paul Volcker noted that the legislation would "undoubtedly take [its] place among the most important pieces of financial legislation enacted in this century."[13]

Section 248a(c)(2) expressly requires Federal Reserve Banks to provide covered services to all NDIs. Since all covered services are provided through master accounts, it logically follows that § 248a(c)(2) also requires the Federal Reserve Banks to provide NDIs with master accounts so they can obtain direct access to the covered services and comply with requirements to maintain reserves in their master accounts. The FRB characterized such reserves as "essential" to its mission of conducting monetary policy in its filings with the District Court, which directly follows the Congressional command that "each" depository institution maintain reserves at their Reserve Bank to better effectuate the transmission of monetary policy.[14] Congress made the reasoned judgment at the time that requiring "each" depository institution to maintain reserves better enabled the Fed to control interest rates.[15]

---

[12] Pub L. No. 63-43, 38 Stat. 251 (Dec. 23, 1913).

[13] Statement by Paul Volcker, FRB Chairman, Before Subcomm. on Domestic Monetary Policy of the House Banking, Finance & Urban Affairs Comm., at *1 (1980).

[14] *See* 12 U.S.C. 461(b)(2)(B); Fed. Rsrv. Bank of St. Louis, *Federal Reserve History: Depository Institutions Deregulation and Monetary Control Act of 1980* (2013), https://www.federalreservehistory.org/essays/monetary-control-act-of-1980 (last visited Jul. 1, 2024).

[15] *Id.*

Under the whole text and surplusage canons of statutory construction, courts are required to construe a statute as a whole and give every part meaning and not treat any element as surplusage.[16] These canons apply to §§ 248a, 342 and 461(b) since they are all part of a single statute—the FRA. If these provisions are treated as separate but related statutes, the *in pari materia* canon would similarly require courts to construe them as a single, whole body of law and not treat any of them as surplusage.[17] The District Court's decision does not satisfy these canons because it construes § 248a(c)(2) in a manner that makes it superfluous to § 342, which is even more puzzling since 248 was enacted nearly seventy years later than 342.

### B.     12 U.S.C. § 461(b)

Section 461(b) codified Section 19(b) of the FRA, which was amended by Section 103 of the MCA.[18] It includes a definition of "depository institution" and provides that "*each* depository institution *shall* maintain reserves against its transaction accounts" for the purposes of "implementing monetary policy."[19] NDIs are required to comply with their reserve requirements either by maintaining

---

[16] *See, e.g.*, *Kungys v. United States*, 485 U.S. 759, 778 (1988). *See also* Antonin Scalia & Bryan A. Garner*, Reading Law: The Interpretation of Legal Texts* 167–69, 174–79 (2012).

[17] *See, e.g., Wachovia Bank, N.A.*, *v. Schmidt*, 546 U.S. 303, 315–16 (2006); *Stender v. Smith-Archstone Operating Trust*, 958 F.3d 938, 942 (10th Cir. 2020).

[18] Monetary Control Act, Pub. L. 96-221, § 107, 94 Stat. 132, 133–38 (Mar. 31, 1980).

[19] 94 Stat. 132, at 134 (emphasis added).

reserves in their master account with a Federal Reserve Bank, as deposits with a correspondent depository institution (similarly subject to Federal Reserve approval under Operating Circular 1), or as cash in the vault.[20] The reserve requirements apply unambiguously to "*each* depository institution." Like § 248a(c)(2), the language of § 461(b) is mandatory ("shall"). Section 461's command is unambiguous.

### C.    12 U.S.C. § 342

Section 342 codified Section 13 of the FRA, as amended by Section 105 of the Monetary Control Act. Section 103 of the MCA amended the definitions of certain terms used in § 342.[21] § 342 provides that "[a]ny Federal reserve bank *may receive* from any of its member banks or other depository institutions, and from the United States, *deposits* of current funds in lawful money . . . ."[22] The term "may" means that the authority to receive deposits is discretionary, subject to the mandate in § 248a(c)(2) for the covered services. Section 342 provides discretionary authority to receive certain instruments as deposits in addition to the covered services, but does not address *at all* other services covered by § 248a, including wires, automated clearinghouse services and other settlement methods integral to the functioning of a bank.[23] It is conceivable that a depository institution could access § 248a without

---

[20] FRB, *Reserve Maintenance Manual* (last updated Nov. 20, 2019).
[21] Pub. L. No. 96-221, §§ 103, 105, 94 Stat. 132, 133, 139–40 (Mar. 31, 1980).
[22] 12 U.S.C. § 342.
[23] 12 U.S.C. § 248a(c).

relying on the need to deposit instruments under § 342. However, it is simply not possible for an NDI to obtain direct access to the covered services without a master account under § 248a.

The relevant language of § 342 predated § 248a by nearly seventy years. As a general rule, a specific statute enacted later in time is construed to modify an earlier more general statute to the extent of its specific terms. As explained by the Supreme Court in *FDA v. Brown & Williamson*:

> "The 'classic judicial task of reconciling many laws enacted over time, and getting them to "make sense" in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.' [citation omitted] This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand."[24]

This principle applies to §§ 248a(c)(2) and 342 because § 342 was enacted well before § 248a(c)(2), and § 248a(c)(2) is more specific than § 342. If § 248a(c)(2) is construed to be overridden by § 342, § 248a(c)(2) would be drained of all meaning; it would become mere surplusage. As noted above, the Supreme Court has held that every word in a statute or a group of related statutes should be given meaning, and not be construed as mere surplusage, if at all possible.[25]

---

[24] 529 U.S. 120, 143 (2000).
[25] *See supra* notes 16 and 17.

## IV. The Statutory Framework for Master Accounts

### A.    Section 248a(c)(2) Is a Textual Mandate, Not a Pricing Principle

As noted above, § 248a expressly provides that "all Federal Reserve bank services [listed in § 248a(b)] *shall* be available to nonmember depository institutions *and* . . . priced at the same fee schedule applicable to member banks." (emphasis added). The District Court held that this mandate did not apply to the FRBKC or FRB because it is contained in a section under the heading "Pricing of Services" that otherwise deals solely with pricing principles. It held that the mandate is therefore just a pricing principle, rather than a textual command.[26]

The District Court did not explain how the mandate could be construed to be a mere pricing principle, rather than a true mandate, nor did it explain what pricing principle the mandate stood for. The mandate is not worded as a pricing principle despite being contained in a section under the heading "Pricing of Services."

The relevant language is worded as a genuine command. It directs the Federal Reserve Banks and the FRB to make all covered services available to NDIs. There is nothing in the text, structure or legislative history of § 248a(c)(2) that supports the District Court's conclusion other than the heading and other pricing content in the section where the mandate appears. While section headings and context are

---

[26] Order on Dispositive Mot., *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors, Fed. Rsrv. Bank of Kansas City*, 2024 U.S. Dist. LEXIS 76822, at \*10 (D. Wyo. Mar. 29, 2024).

permissible indicators of meaning, they are not sufficient to overcome the plain language of § 248a(c)(2). The District Court did not explain how the heading and context transformed a clear mandate into a mere pricing principle. The reason is simple: because these secondary, interpretive aids do not do so, nor did Congress intend for them to do so.

Moreover, because the only way for NDIs to obtain direct access to the covered services is through a master account, it logically follows that § 248a also requires the Federal Reserve Banks to open master accounts for eligible NDIs upon request. When a state-chartered depository institution is in good standing with its state banking regulator (accredited by the Conference of State Bank Supervisors),[27] that means that it is lawfully organized under state law, and engaged in activities that are lawful under state law and not prohibited or limited by Federal law.

Just as the text, structure and legislative history do not transform the mandate to provide covered services into a mere pricing principle, so they do not transform the implied mandate to open a master account into a mere pricing principle.

### B.  Section 248a(c)(2) Applies to FRBKC

The mandate to provide covered services applies to FRBKC. The District Court held that § 248a(c)(2) does not apply to the FRBKC at all, because it was

---

[27] *See, e.g.*, Conf. State Bank Supervisors, *Department Accreditation* (2024), https://www.csbs.org/department-accreditation (last visited Jul. 2, 2024). Wyoming has been accredited since 1992. *Id.*

codified in Subchapter II to Chapter 3 of the United States Code, under the heading "Board of Governors of the Federal Reserve System." The court cited former Justice Scalia for the proposition that headings in legal texts are permissible indicators of meaning.[28]

Headings cannot surmount statutory text, and proves too much when applied to § 248a(c)(2). If the heading of that subchapter means that the mandate in § 248a(c)(2) does not apply to FRBKC, then it must mean that none of the other provisions in that subchapter apply to the FRBKC. That assertion would be absurd, however, since the subchapter includes numerous provisions that apply to Federal Reserve Banks, including §§ 243, 248 (b), (f), (g) and (h) and 248-1.

Moreover, all of the covered services required by § 248a(c)(2) would be provided to Custodia Bank exclusively by the FRBKC, subject to the FRB's oversight, and not by the FRB itself, because the FRB is not a Reserve Bank and does not provide services, though, as this matter makes clear, it has a dispositive role in determining which institutions may gain access.

The House Committee Report on the MCA stated that "the House amendment includes a provision for the Federal Reserve to price services provided by the Federal Reserve Banks *and open access to these services to all depository institutions* on the

---

[28] Order on Dispositive Mot., *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors, Fed. Rsrv. Bank of Kansas City*, 2024 U.S. Dist. LEXIS 76822, at *10 (D. Wyo. Mar. 29, 2024). (citation omitted).

same terms and conditions as member banks."[29] This clearly evidences that § 248a is intended to apply to the Reserve Banks. The FRB is responsible for the general supervision of the Reserve Banks, including regulations governing the covered services and the pricing principles and proposed schedules of fees mandated by § 248a(a). Congress would have been aware of this context when it enacted § 248a(c)(2) in 1980. Congress intended § 248a(c)(2) to apply to the Federal Reserve Banks, including the FRBKC, either directly or indirectly through the FRB.

Finally, the heading for the relevant subchapter of the U.S. Code does not appear in the U.S. Statutes at Large that was codified by that subchapter. Whenever there is a conflict between a U.S. Statute at Large and a codification of that statute in the U.S. Code, the Statute at Large controls because the U.S. Code is merely *prima facie* evidence of the law, and not the actual law.[30] Neither the heading in the relevant subchapter of the U.S. Code nor any similar heading appears in the U.S. Statutes at Large (i.e., the MCA) that the relevant subchapter codifies. As a result, the heading in the U.S. Code conflicts with the absence of a heading in the relevant U.S. Statute at Large (the MCA). As explained by the Congressional Research Service ("CRS"), "the U.S. Code is an *unofficial restatement* of the Statutes at Large organized by

---

[29] H. Rept. 96-842, *Depository Institutions Deregulation and Monetary Control Act of 1980 Conference Committee Report,* 96th Cong., 2d Sess., at 71 (March 21, 1980)

[30] 1 U.S.C. § 112 ("The United States Statutes at Large shall be legal evidence of laws . . . in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.").

topic for ease of access."[31] The only exception to this general rule is "when a particular title of the *U.S. Code* has been enacted into positive law."[32]

The Office of the Law Revision Counsel ("OLRC") of the U.S. House of Representatives is responsible for identifying those titles of the U.S. Code that have been enacted into positive law. It does so by placing an asterisk next to such titles on its "Search & Browse" page. There is currently no asterisk next to Title 12 or any portion of it.[33] Thus, the heading to the relevant subchapter in the U.S. Code has not been separately enacted into law. Because the heading of the relevant subchapter in the U.S. Code conflicts with the absence of any heading in the relevant U.S. Statute at Large (the MCA), the absence of any heading controls.

### C. Section 248a(c)(2) Applies to All NDIs

The District Court held that § 248a(c)(2) does not apply to *all* NDIs because the word "all" does not appear in front of the term "nonmember depository institutions" whereas the word "all" appears in front of "Federal Reserve bank services" in the same sentence. Under the general words canon of statutory construction, general words in a statute are supposed to be given their full and fair meaning, unless some limit is expressly included or fairly implied by the text,

---

[31] CRS, *From Slip Law to United States Code: A Guide to Federal Statutes for Congressional Staff*, at 5 (updated May 2018) (emphasis added).
[32] *Id.* (emphasis in original).
[33] OLRC, "Search & Browse," https://uscode.house.gov/ (last visited Jul. 2, 2024).

structure or legislative history of a statute.[34] Thus, in referring to the provision in the Constitution that prohibits any state from emitting bills of credit,[35] Chief Justice John Marshall explained in *Craig v. Missouri*[36] that:

> "The prohibition is *general*. It extends to *all* bills of credit, not to bills of a particular description. That tribunal must be bold indeed, which, without aid of other explanatory words, could venture on this construction [of being limited to bills of credit that have been declared legal tender]."[37]

Similarly, in *Ogden v. Saunders*,[38] Chief Justice Marshall stated that the "provisions [of a statute] are neither to be restricted into insignificance, nor extended to objects not comprehended in them, nor contemplated by its framers."[39]

More recently, in *Oncale v. Sundowner Offshore Services*,[40] the Supreme Court *unanimously* held that the prohibition of discrimination "because of . . . sex" in Title VII of the Civil Rights Act of 1964 applies to all forms of sexual harassment, in addition to male-on-female sexual harassment.[41] Although the Court acknowledged that the original purpose of that provision was to protect women against discrimination on the basis of sex, including male-on-female sexual

---

[34] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 101–06 (2012).
[35] U.S. Const. art. I, sec. 10, cl. 1.
[36] 28 U.S. (4 Pet.) 410 (1830).
[37] *Id*. at 434 (emphasis added).
[38] 25 U.S. (12 Wheat.) 213 (1827).
[39] *Id.* at 332 (op. of Marshall, C.J.).
[40] 523 U.S. 75 (1998) (Scalia, J).
[41] *Id.* at 79–80.

harassment, it saw "no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII."[42] The Court explained that "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."[43]

As applied to § 248a(c)(2), the general words canon of statutory construction would treat the term "nonmember depository institutions" as the general words. Those words would be construed to mean *all* NDIs unless the text, structure or legislative history contains an express or implied limitation. The presence of the word "all" in front of Federal Reserve bank services is not nearly sufficient evidence to imply that Congress intended for the absence of the word in front of "nonmember depository institutions" to mean that the mandate only applied to some NDIs.

Moreover, the District Court did not specify which NDIs the mandate applied to and which it did not. The District Court effectively held that the mandate does not apply to *any* of them by holding that the FRBKC and the FRB have the discretion to deny a master account and direct access to covered banking services to Custodia Bank and by extension any other NDI. While the absence of the word "all" before

---

[42] *Id.* at 79.
[43] *Id.*

NDIs can certainly inform meaning, it does not determine it. It also cannot possibly support an interpretation that § 248a(c)(2) does not apply to any of them.

This construction of § 248a(c)(2) as applying to *all* NDIs is supported by the legislative history. For example, the Conference Report on the Monetary Control Act contains the following statement:

> "The House amendment includes a provision for the Federal Reserve to price services provided by the Federal Reserve Banks and open access to these services to *all* depository institutions on the same terms and conditions as member banks."[44]

Four years after passage of the MCA, the House Committee on Banking, Finance and Urban Affairs conducted a review of the implementation of that legislation.[45] The House Committee concluded that the MCA changed the status quo in various ways, including by requiring the Federal Reserve to provide the covered services "to *all* depository institutions and not just member banks."[46]

Finally, the Federal Reserve understood § 248a to grant access to *all* depository institutions. Among a mountain of original public meaning cited in appellant's brief, a report issued by the Federal Reserve Bank of Richmond in 1985

---

[44] H. Rep. No. 96-640, *Depository Institutions Deregulation and Monetary Control Act of 1980*, *H.R. 4986,* S. Comm. on Banking, Housing and Urban Affairs, 96th Cong., 2nd Sess., at 71 (1980).
[45] H. Rep. No. 98-17, *The Role and Activities of the Federal Reserve System in the Nation's Check Clearing and Payments System*, H. Comm. on Banking, Finance and Urban Aff., 98th Cong., 2d Sess., at VII (1984).
[46] *Id.* (emphasis added).

noted that the "Monetary Control Act radically changed the terms governing the Federal Reserve's participation in the operation of the nation's payment system[,]" and that it "required services which had previously been made available free of charge to Federal Reserve member banks, to be priced competitively and made available to all depository institutions on equal terms."[47]

### D. Toomey Amendment Does Not Limit § 248a(c)(2)

Senator Pat Toomey inserted an amendment into the National Defense Authorization Act of 2022, later codified at 12 U.S.C. § 248c, to require the FRB to initiate and maintain a public database disclosing information about the master account applications it grants or denies. The District Court reasoned that this amendment shows that Congress did not intend for § 248a(c)(2) to modify § 342 and that the Federal Reserve Banks and FRB therefore retained the discretion to grant or deny applications for master accounts from NDIs to obtain direct access to the covered services.

It is unreasonable to construe the Toomey Amendment as modifying § 248a(c)(2) or implying Congressional intent for § 342 to override the mandatory language of § 248a(c)(2). Master accounts are required not only to obtain direct access to the covered services, but also to obtain access to a variety of non-covered

---

[47] Anatoli Kuprianov, *Monetary Control Act and the Role of the Federal Reserve in the Interbank Clearing Market*, Fed. Rsrv. Bank of Rich. Econ. R. 23, 35 (1985).

services. The mandate in § 248a(c)(2) does not apply to those non-covered services. The Federal Reserve Banks and FRB retain some discretion under § 342 to grant or deny access to those non-covered services to any NDI even if it has a master account.

Moreover, former Senator Toomey has submitted an *amicus brief* vehemently denying that his amendment was evidence that Congress intended his amendment to modify § 248a(c)(2) or imply that the discretionary language of § 342 should be construed to override the mandatory language of § 248a(c)(2). The language in § 248c(b)(B)(ii) referencing rejected applications merely recognizes that applications can be rejected on non-discretionary grounds, including failure to qualify as an eligible "depository institution" under § 461(b)(1)(A), or engaging in activities that are illegal under federal law.[48] This interpretation gives effect to the whole body of §§ 248c, 248a, 342 and 461, unlike the Federal Reserve's cherry picked interpretation.

Former Senator Toomey argued that his amendment was designed solely to provide more transparency into the master account application process. After the District Court opinion, former Senator Toomey publicly disagreed with the District Court's characterization of his amendment.[49]

---

[48] *See, e.g.*, *Fourth Corner Credit Union v. FRB*, 861 F.3d 1032 (10th Cir. 2017) (discussing the illegality of marijuana under Federal law).
[49] Kyle Campbell, *Judge Rules Against Custodia in Fed Master Account Case*, American Banker, Apr. 1, 2024, https://www.americanbanker.com/news/judge-rules-against-custodia-in-fed-master-account-case (quoting former Senator Toomey

### E.     Section 342 Does Not Limit § 248a(c)(2)

The District Court held that the existence of § 342, which grants Federal Reserve Banks the discretionary authority to take deposits from depository institutions, shows Congress did not intend for § 248a(c)(2) to be mandatory solely by virtue of an applicant being an NDI.

Section 342, which provides Federal Reserve banks with the discretionary authority over certain instruments, cannot reasonably be construed to provide the FRBKC or FRB with discretionary authority to add any conditions to § 248a(c)(2). If Congress had intended for the discretionary authority of § 342 to override the mandatory provisions in § 248a(c)(2) with respect to the covered services, it would have said so or given some clear indication of such an intent.

As noted above, the relevant language of § 342 predated § 248a by nearly seventy years**.** The history of § 342 is colorful. Section 342 was originally enacted as § 13 of the FRA in 1913, and was amended several times in 1916, 1917 and 1980. In 1917, when Congress enacted amendments, the House Committee Report stated that the meaning of this provision was to:

> *[P]ermit* nonmember State banks and trust companies, even though too small to be eligible for membership in the Federal reserve banks, *to avail themselves* of the clearing and collection facilities of the Federal Reserve System, *provided they* cover at par checks on themselves sent for collection by the Federal reserve bank, and *provided further* that

---

that the District Court's interpretation is "a willful refusal to read the English language as it's written.").

they keep a compensating balance with the Federal reserve banks in an amount to be determined under the rules proscribed by the Federal Reserve Board.[50]

This House Committee Report states § 13 was enacted to "permit" nonmember state banks to avail themselves of Federal Reserve clearing and collection system, provided they meet two (and only two) conditions: (1) that they cover certain checks at par; and (2) that a clearing balance be maintained at their Reserve Bank.[51] Through authorizing nonmember institutions to participate in the Federal Reserve clearing system, the intent of this provision was to bring the clearing of *all* checks into the Federal Reserve System, and give a legal entitlement to *all* banks to clear checks.[52]

Newspaper reports surrounding the passage of the 1917 amendments evidence a broad public understanding that any state depository institution that wanted to access the Federal Reserve's payments and clearing system could do so, as long as it deposited a portion of its reserves at a Reserve Bank.[53] If § 248a(c)(2) is construed

---

[50] H. Rept. 65-35, *Amendments to the Federal Reserve Act*, *H.R. 3673,* H. Comm. on Banking and Currency, 65th Cong., 1st Sess., at 2 (Apr. 27, 1917) (emphasis added).

[51] *Id.*

[52] *Id.* (emphasis added) ("Any clearing and collection plan to be effective must be so comprehensive as to include all checks.").

[53] *See, e.g., To Fortify Reserve Act*, L.A. Times, Jun. 19, 1917 (noting that "[a]ccession of trust companies and state banks will be brought about in two ways. The institutions may join the system outright [membership] … or they may, by depositing a portion of their reserves with a Federal reserve bank, become members of the Federal reserve clearance system, the most effective in the country."); *Bill to*

to be overridden by § 342, § 248a(c)(2) would be drained of all meaning; it would become mere surplusage. As noted above, the Supreme Court has repeatedly held that every word in a statute or group of statutes should be given meaning.[54]

### F.    Only Congress Can Limit the MCA's Reach

Only Congress has the authority to limit the mandate in § 248a(c)(2) by legislation. According to Professor Peter Conti-Brown, without a master account a depository "can't really function as a financial institution."[55] Prof. Conti-Brown stated that if the Federal Reserve has the ability to determine which NDIs can and cannot have a master account, the Federal Reserve Banks and FRB would essentially become a chartering authority and the ultimate decision-maker for what a bank is, upsetting our dual banking system.[56]

Congress never stated or implied that the FRB or Federal Reserve Banks should have unaccountable authority to determine what NDIs are "real" NDIs and which are not in our dual-banking system. Congress intended for states to charter NDIs under their banking laws. As long as NDIs are legally eligible, Congress intended for them to have access to the covered services. Congress did not intend for

---

*Widen Reserve System Sent to Wilson*, Chicago Daily Tribune, Jun. 19, 1917; *Will Strengthen Reserve Banks*, The Hartford Courant, Jun. 19, 1917; *Congress Again Has Reserve Act Amendments*, Wall St. J., Apr. 18, 1917.
[54] *See supra* notes 16 and 17.
[55] *See* Peter Conti-Brown, *The Fed Wants to Veto State Banking Authorities. But Is that Legal? Brookings Institution* (2018).
[56] *Id.*

the FRB or Federal Reserve Banks to denigrate the competence or integrity of state banking agencies. To allow the FRB and Federal Reserve Banks to do so would create a major restructuring of our dual banking system. This restructuring would be similar to attempts to ill-conceived attempts to drive state-chartered banks out of business in the 19th century by holding that states violated the constitutional prohibition on issuing bills of credit,[57] if they chartered banks to issue paper money,[58] or by imposing a 10% excise tax on paper money issued by state-chartered banks, but not on paper money issued by national banks.[59]

During debate on the MCA, Congress dismissed the possibility that the Federal Reserve Banks, the FRB or the Federal government more generally might assume the power of determining which state-chartered banks are in fact NDIs under Federal law. Senator Proxmire, then-Chairman of the Senate Banking Committee, noted that:

> "[T]he Federal Government does not replace the State chartering of banks. The Federal Government does not replace the Federal insurance for State banks. The Federal Government does not replace examination and supervision of State banks by the State examiners and the State instructors under State control. The States retain authority to define the power of State-chartered banks."[60]

---

[57] U.S. Const., art. I, sec. 10, cl. 1.

[58] *See, e.g., Craig v. Missouri,* 28 U.S. (4 Pet.) 410 (1830); *Briscoe v. Bank of Ky.*, 36 U.S. (11 Pet.) 257, 328-50 (1837) (Justice Story, dissenting).

[59] Omnibus Excise Tax Act of 1865, § 6, 13 Stat. 469, 484 (1865); Omnibus Excise Tax of 1866, § 9, 14 Stat. 98, 146 (1866).

[60] 126 Cong. Rec. 7070 (1980).

Despite original concerns by some that the MCA would destroy our dual banking system,[61] application of the law over the past 44 years has proven that those fears were unfounded because the dual banking system remains alive and well today, as Congress intended. Should the District Court's decision be affirmed, however, it would serve as a quasi-legislative paradigm shift that would subvert the states' role within our dual-banking system.

## CONCLUSION

Contrary to the decision of the District Court, § 248a(c)(2) restricts FRBKC and the FRB from denying Custodia Bank's application for a master account to obtain direct access to the covered services. As noted above, when a state-chartered NDI is in good standing with its state banking agency, that means that it is lawfully organized under state law and engaged in activities that are lawful under state law and not prohibited or limited by Federal law. While § 342 provides the FRBKC and the FRB with some discretion to deny master accounts for non-covered services, it does not override or limit the mandatory terms of § 248a(c)(2) with respect to the covered services, which includes access to wire, clearinghouse and other services.

The mandate in § 248a(c)(2) is a command, not merely a pricing 'principle,' and it applies to the FRBKC either directly or indirectly through the FRB to *all* NDIs.

---

[61] *Id.* at 7072 (Sen. Tower: "this will further erode the dual banking system and increase the possibility of creating a single bank regulatory agency, at the Federal level, for all financial institutions.").

Additionally, the Toomey Amendment clearly intends to reinforce the existing statutory scheme, and unlike the District Court's finding, was not an attempt to hide an elephant in a mousehole by Congress through sequestering a broad new power to deny inside a transparency provision.

For these reasons, we request this Court reverse the District Court's decision.

Dated: July 3, 2024

Respectfully submitted,

By: /s/ Chris Land

Chris Land (Wyo. Bar #7-6006)
General Counsel
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510

(202) 224-3424
chris_land@lummis.senate.gov

Counsel for *Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify, on July 3, 2024, a true and correct copy of this amicus brief

was served on counsel, via the Court's electronic system, addressed to:

Joshua Paul Chadwick
Katherine Pomeroy
Yonatan Gelblum
Yvonne Facchina Mizusawa
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
20th Street and Constitution Avenue NW
Washington, DC 20551
202-263-4835
joshua.p.chadwick@frb.gov
katherine.pomeroy@frb.gov
yonatan.gelblum@frb.gov
yvonne.f.mizusawa@frb.gov

Andrew Michaelson
Angela Tarasi
Christine Carletta
Jared Lax
Laura Harris
Jeffrey S. Bucholtz
Joshua Nathaniel Mitchell
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Suite 900
Washington, DC 20006
202-737-0500
amichaelson@kslaw.com
atarasi@kslaw.com
ccarletta@kslaw.com
jlax@kslaw.com
lharris@kslaw.com
jbucholtz@kslaw.com
jmitchell@kslaw.com

Billie L.M. Addleman
Erin Berry
HIRST APPLEGATE LLP
1720 Carey Avenue, Suite 400
Cheyenne, WY 82003-1083
307-632-0541
307-632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

Scott E. Ortiz
WILLIAMS PORTER DAY NEVILLE PC
159 North Wolcott Street, Suite 400
Casper, WY 82602
307-265-0700
sortiz@wpdn.net

Ryan T. Scarborough
Jamie Wolfe
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
202-434-5173
rscarborough@wc.com
jwolfe@wc.com

/s/ Chris Land

Chris Land (Wyo. Bar #7-6006)
General Counsel
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510

(202) 224-3424
chris_land@lummis.senate.gov

Counsel for *Amici Curiae*

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5)(G), (a)(5), and 32(a)(7), (g) because excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 6,444 words, which is less than the maximum of 6,500 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  July 3, 2024

<div style="margin-left: 50%;">

/s/ Chris Land

Chris Land (Wyo. Bar #7-6006)
General Counsel
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510

(202) 224-3424
chris_land@lummis.senate.gov

Counsel for *Amici Curiae*

</div>

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Anti-Virus, and according to the program are free of viruses.

/s/ Chris Land

Chris Land (Wyo. Bar #7-6006)
General Counsel
Office of Senator Cynthia M. Lummis
UNITED STATES SENATE
127A Russell Senate Office Building
Washington, D.C. 20510

(202) 224-3424
chris_land@lummis.senate.gov

Counsel for *Amici Curiae*